IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

PA ADVISORS, LLC,

                                        Plaintiff,

        -against-

 (1)  GOOGLE INC.,
 (2)  YAHOO! INC.,                                   CIVIL ACTION NO. 2-07 CV-480 TJW
 (3)  FACEBOOK, INC.,
 (4)  CONTEXTWEB, INC.,
 (5)  SPECIFIC MEDIA, INC.,
 (6)  FAST SEARCH & TRANSFER ASA,
 (7)  FAST SEARCH & TRANSFER, INC.,
 (8)  AGENT ARTS, INC.,
 (9)  SEEVAST CORPORATION.
(10)  PULSE 360, INC.,
(11)  WPP GROUP USA, INC.,
(12)  WPP GROUP PLC, AND
(13)  24/7 REAL MEDIA, INC.,

                                        Defendants.


**DEFENDANT WPP GROUP USA, INC.'S MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), defendant WPP

Group USA, Inc. ("WPP") hereby moves to dismiss all claims against it.  In the alternative,

pursuant to Rule 12(e), WPP moves for a more definite statement.

## I.    INTRODUCTION

WPP does not belong in this lawsuit.  WPP has no contacts with the forum state – either

pertaining to Plaintiff's claims of patent infringement, or arising out of WPP's general business

activities – that would give rise to personal jurisdiction over it in this case. Nor are there any grounds to pierce the corporate veil and subject WPP to jurisdiction for the actions of its indirect subsidiary, co-defendant 24/7 Real Media, Inc. As Plaintiff has not met, and cannot meet, its burden of pleading, dismissal for lack of personal jurisdiction is proper.

WPP also hereby moves to dismiss this action against it for failure to state a claim upon which relief can be granted. Because Plaintiff's Complaint does not contain any allegations of fact sufficient to support its claims against WPP (or any other defendant) the Complaint does not satisfy the requirements of Rule 8 and should be dismissed. In the alternative, WPP moves for a more definite statement of Plaintiff's claims against it.

## II.    STATEMENT OF FACTS

### A.    Facts Pertinent To Lack of Personal Jurisdiction

WPP is a corporation organized under the law of Delaware with a single office location in New York City. Declaration of Firouzeh Bahrampour ("Bahrampour Dec.") at ¶¶ 2-3. WPP was formed in 1997 as a wholly-owned indirect subsidiary of co-defendant WPP Group plc, a public limited company organized under the laws of England and Wales and headquartered in London, England. *Id.* at ¶ 3.[1] WPP has no publicly-held equity or debt. *Id.* WPP is a holding company which indirectly owns co-defendant 24/7 Real Media Inc. *Id.* at ¶ 5.[2] WPP is not engaged in any advertising or communications services directly. All such business is conducted by subsidiaries and affiliated companies. *Id.* at ¶ 6

---

[1]    WPP Group plc must be served via the Hague Convention. *See* Complaint ¶ 13. As of the filing of this Motion, WPP Group plc has not been served with the Complaint.

[2]    On July 13, 2007, WPP Group plc acquired 24/7 Real Media, Inc., which until that time had been a publicly traded company on NASDAQ. Prior to that time, WPP and 24/7 Real Media were unrelated entities. *See, e.g.,* Ex. 1 ("24/7 Real Media Announces Agreement to be Acquired by WPP", May 17, 2007, *at* http://www.247realmedia.com/EN-US/news/article_221.html.) and Ex. 2 ("2007 In the News" *at* http://www.247realmedia.com/EN-US/news/in-the-news-2007.html.).

NY\1361409.1

WPP is not and never has been a resident of Texas, has never been registered to do business in Texas, has no offices or other physical presence in Texas, and has never had any employees here. *Id.* at ¶¶ 7-9, 15. It has never paid or owed any taxes in Texas, been a party to a lawsuit in Texas (with the exception of this action), and does not maintain any real property, personal property, or bank accounts here. *Id.* at ¶¶ 11-14. It has never committed a tort in Texas, has no shareholders in Texas, and has never sought to incorporate or form a business partnership here. *Id.* at ¶¶ 20-23.

WPP has never manufactured, sold or distributed any products in Texas. *Id.* at ¶¶ 16-17. In particular, WPP has never sold or distributed in Texas (or anywhere else) any "methods and systems implemented by and through various websites that comprise systems and methods for automatically generating personalized user profiles and for utilizing the generated profiles to perform adaptive Internet or computer data searches," as alleged in the Complaint filed in this action. *Id.* at ¶ 18; *see also* Complaint at ¶ 31. Moreover, WPP has never sold or distributed in Texas (or anywhere else) "Open AdStream," which product Plaintiff identified as infringing the patent-in-suit in its December 11, 2007 letter to WPP's counsel. Rather, Open AdStream is a product distributed and sold in the United States exclusively by co-defendant 24/7 Real Media, Inc. *Id.* at ¶ 19 and Ex. A.

B.    Facts Pertinent To Plaintiff's Failure To State A Claim

The Complaint makes no specific allegations of fact against WPP – it does not identify any product or service that WPP offers or specify any technology or feature that allegedly infringes. The only statement pertaining to WPP's alleged infringement reads:

> Upon information and belief, Defendant WPP Group USA has been and now is directly, literally and/or, upon information and belief, jointly, equivalently and/or indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '067 Patent in the State of Texas, in this judicial district, and elsewhere in the

3

United States by providing, among other things, methods and systems implemented by and through various websites that comprise systems and methods for automatically generating personalized user profiles and for utilizing the generated profiles to perform adaptive Internet or computer data searches as covered by one or more claims of the '067 Patent. Defendant WPP Group USA is thus liable for infringement of the '067 Patent pursuant to 35 U.S.C. § 271.

Compl. ¶ 30.

## III.    ARGUMENT

### A.    The Claims Against WPP Should be Dismissed Pursuant To Fed. R. Civ. P 12(b)(2)

In a patent case, on a motion to dismiss for lack of personal jurisdiction, the precedent of the Federal Circuit rather than the Fifth Circuit Court of Appeals applies. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001). The burden rests on the plaintiff to make a prima facie showing of personal jurisdiction over each defendant. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

Whether personal jurisdiction exists over a given defendant is determined by a two-step inquiry: (1) whether the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located;" and (2) that "maintenance of the suit does not offend... the Due Process Clause." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998) (internal citations omitted). Where, as here, a state's long-arm statute extends to the full limits of the Due Process Clause (*see Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)), the inquiry collapses into a single question: whether the exercise of personal jurisdiction over the defendant would satisfy the requirements of due process. *Red Wing Shoe Co.*, 148 F.3d at 1358.

Where, as here, personal jurisdiction is asserted over a non-resident corporate defendant (*i.e.*, WPP), due process requires that the defendant have certain "minimum contacts" with the

4

forum, and that the exercise of jurisdiction over that defendant "not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted).

As discussed more fully below, personal jurisdiction may be satisfied by a finding of either specific or general jurisdiction over the defendant. *See Helicopteros Nacionales*, 466 U.S. at 414 n.8, n.9. As WPP is not subject to either, this action against it must be dismissed.

1.     WPP Is Not Subject to Specific Personal Jurisdiction in Texas.

Specific jurisdiction may exist where the acts giving rise to plaintiff's cause of action – here, alleged patent infringement – took place at whole or in part in the forum state. *See id.* at 414; *T-Netix, Inc. v. Global Tel*Link Corp.*, No. 06-CV-426, 2007 WL 2819742, at *1 (E.D. Tex. Sept. 26, 2007) (Ward, J.). In this case, Plaintiff's claims of patent infringement against WPP are boilerplate – indeed, the Complaint does not identify any specific WPP product or service as infringing the patent-in-suit and does not contain any specific allegation of fact linking WPP to any allegedly infringing product or service. This is unsurprising, as WPP does not provide any products or services to customers in Texas or elsewhere (Bahrampour Dec. ¶ 6) – let alone any allegedly infringing "systems and methods for automatically generating personalized user profiles and for utilizing the generated profiles to perform adaptive Internet or computer data searches." *Id.* at ¶¶ 18-19; *see also* Complaint at ¶ 31. Moreover, in a recent letter from Plaintiff's counsel to WPP's counsel on discovery matters, Plaintiff did not identify any product or service offered by WPP that allegedly infringes the patent-in-suit; the letter listed "Open

AdStream," a product of co-defendant 24/7 Real Media. *Id.* at ¶ 19 and Ex. A.   WPP does not sell or distribute "Open AdStream." *Id.* [3]

Thus, although not pleaded in the Complaint, it seems that the sole basis of purported liability on the part of WPP (as well as on the part of co-defendant WPP Group plc) is its indirect corporate relationship with co-defendant 24/7 Real Media, Inc.  Mere ownership of a subsidiary entity, however, does not give rise to personal jurisdiction over the parent.  *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998).   Further, the Complaint does not allege (nor could it) that co-defendant 24/7 Real Media is the "alter ego" of WPP -- these two entities do not share any of the common indicia that would support such an allegation.   The Federal Circuit has held that a corporation may be treated as the "alter ego" of its controller where there exists "such unity of interest and ownership that the separate personalities of the corporation and [its parent] no longer exist." *Systems Div. Inc. v. Teknek Elecs., Ltd.*, No. 2007-1162, 2007 WL 3151697, at *2 (Fed. Cir. Oct. 26, 2007) (internal citations omitted).   Although the Federal Circuit has not articulated any test for determining whether, for purposes of determining personal jurisdiction, a subsidiary is the alter ego of the parent, the Fifth Circuit has set out a five-factor test, which calls for the consideration of: (1) the amount of stock owned by the parent; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's daily activities.  *Freudensprung v. Offshore Tec. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004).

---

[3]    Even if the Complaint did allege a specific WPP product that allegedly infringes the patent-in-suit, the Complaint would still be deficient since it contains no allegation linking such alleged infringement to Texas. As explained above, WPP does not maintain any offices or employees in Texas and does not provide advertising or communications services in Texas. Bahrampour Dec. at ¶¶ 7-9.

Plaintiff has not pled and could not plead any facts imputing 24/7 Real Media's actions to WPP. 24/7 Real Media is an indirectly-held subsidiary of WPP; until mid-2007, when 24/7 Real Media was acquired, WPP and 24/7 Real Media had no corporate relationship. 24/7's headquarters and management are wholly separate from those of WPP. *Compare* Ex. 3 (http://www.wpp.com/WPP/About/WhoWeAre/Leadership.htm;      http://www.wpp.com/WPP/Contact.htm) *with* Ex. 4.    http://www.247realmedia.com/EN-US/contact/New_york.html; http://www.247realmedia.com/EN-US/us/executive-management-board-directors.html).      The Complaint is devoid of any allegation that 24/7 Real Media does not observe corporate formalities, does not maintain its own accounting systems, or does not exercise control over its own day-to-day operations.  Nor can it be alleged that WPP acts as a shell organization simply for the purposes of shielding 24/7 Real Media from liability.  *Cf. Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) (foreign shell company created solely to hold and license-back patents for operating entities subject to personal jurisdiction under alter ego theory).

In sum, there is no basis to pierce the corporate veil and exercise specific personal jurisdiction over WPP solely for the acts of its indirect subsidiary, 24/7 Real Media.  Because WPP is not alleged to have committed any direct tortious action in Texas, and because its corporate relationship with 24/7 Real Media does not give rise to liability, WPP is not subject to specific jurisdiction in Texas.

2.    WPP Is Not Subject to General Jurisdiction in Texas

Plaintiff's allegations regarding general jurisdiction are equally insufficient to satisfy its burden of establishing jurisdiction over WPP.   The Supreme Court has held that, even in the absence of specific jurisdiction, a defendant may be subject to "general" jurisdiction if it maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales,*

7

466 U.S. at 416. "Contacts that are 'random,' 'fortuitous,' 'attenuated,' or 'due to the unilateral activity of another party or a third person' are insufficient to confer jurisdiction." *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, No 05-CV-0185, 2005 WL 3299718, at *1 (E.D. Tex. Dec. 5, 2005) (Ward, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)); *see also World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 298 (1980).

Here, Plaintiff's sole allegation – that "Defendants are ... regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial district" (Complaint ¶ 17) – is pure boilerplate and, as applied to WPP, wholly incorrect.

Simply put, WPP has no contacts with the State of Texas sufficient to constitute purposeful availment of its laws and benefits. As described above, WPP has no offices or other physical presence in Texas; is not and has never been registered to do business in Texas; does not pay taxes in Texas; has no employees in Texas, and does not offer products or services in Texas; and has otherwise never availed itself of the benefits of doing business here. *See* Bahrampour Aff. at ¶¶ 7-19. It does not pay dividends in Texas, has no shareholders in Texas, and has never sought to incorporate or form a business partnership here. *Id.* at ¶¶ 20-23. Its sole purpose is to act as a holding company for various operating entities, each of which offers advertising and communications services directly to customers.[4]

WPP's sole contact to Texas – its Web presence through its indirect parent, co-defendant WPP Group plc – is so attenuated as to fall far short of the "minimum contacts" necessary for the exercise of personal jurisdiction. Indeed, there are not even any allegations in the Complaint

---

[4]    For example, WPP recently announced a partnership with Dell Inc., a Texas-based computer manufacturer, to create a marketing and communications agency. As with its other business operations, WPP will not itself serve as Dell's advertising agency; rather, a separate entity will be established with its own legal existence, management, and employees. *See id.*; Bahrampour Dec. at ¶ 24.

8

seeking to base personal jurisdiction on WPP's Web presence. As a rule, the maintenance of a passive web site, in particular one not particularly targeted at the forum state, is insufficient to give rise to personal jurisdiction. *See Trintec Indus., Inc. v. Pedre Promotional Prods, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). Here, WPP's Web presence, accessible at www.wpp.com, provides information about co-defendant WPP Group plc and its subsidiaries and affiliated companies, including annual reports and policies, management information, office locations, and finances. *See* http://www.wpp.com. This website is not owned or operated by WPP; rather, it is maintained in the United Kingdom by WPP Group plc. Bahrampour Dec. at ¶ 25. WPP Group plc also maintains another website at www.insidewpp.com, used solely by employees of WPP Group plc and its worldwide subsidiaries and affiliated companies, and a limited number of selected non-employee users such as WPP Group plc's auditors, for internal communications. *Id.* at ¶ 30. None of the content on these sites is directed particularly at Texas; nor do they contain any "interactive" content or enable electronic commerce to be transacted directly.[5] *Id.* at ¶¶ 27-28.

3.    The Exercise of Personal Jurisdiction Over WPP Would Offend
      Traditional Notions of Fair Play and Substantial Justice.

Even if this Court were to find that WPP had minimum contacts with the forum, it should nonetheless conclude that subjecting WPP to jurisdiction would offend traditional notions of fair play and substantial justice. The Supreme Court has stated that, in determining whether an exercise of jurisdiction would so offend the Due Process Clause, the trial court should look to five factors:

---

[5]    The website does offer certain printed materials by or related to employees for sale; however, the site simply offers either links to other transactional sites where the materials can be purchased, such as Amazon.com, or email addresses of salespersons who can be contacted for further information about these materials. *See, e.g.*, http://www.wpp.co.uk/WPP/Marketing/Books/.

> (1) the burden that the exercise of jurisdiction will impose on the defendant, (2) the interests of the forum state in adjudicating the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and (5) the shared interest of the states in furthering substantive social policies

*T-Netix, Inc.*, 2007 WL 2819742, at *2 (quoting *Asahi Metal Ind. Co., Ltd. v. Superior Ct. of Cal., Solano City*, 480 U.S. 102, 113-14 (1987)). The first factor – burden on an out-of-state defendant – "is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1096 (10th Cir. 1998).

Here, the burden on WPP would be substantial – its operations and employees are located solely in New York. Bahrampour Dec. at ¶ 3. Further, the interests of the forum state, and the Plaintiff's interests in "convenient and effective" relief, are not implicated in this matter. While the named Plaintiff, PA Advisors, is allegedly a Texas limited liability company, the face of the patent-in-suit, attached as Exhibit A to the Complaint, states that the inventor and original assignee of the '067 Patent are located in Brooklyn, New York. Moreover, *none* of the other co-defendants are incorporated or have their principal place of business in Texas – four others are headquartered in New York; the remainder are located in California, Massachusetts, England and Norway. In addition, Plaintiff's sole claim is one of patent infringement – a matter governed solely by federal law and the precedent of the Federal Circuit. There is no compelling state interest here that would compel the exercise of personal jurisdiction over an otherwise unrelated non-domiciliary. Finally, there is no reason of judicial efficiency or "social policy" that would call for the exercise of personal jurisdiction over WPP. As noted above, WPP does not sell or distribute any products in the State of Texas, and there are no common questions of fact as between it and any other defendant that would advance the cause of judicial efficiency. And as the policy considerations at play in this case are those of the federal government and its interest

10

in the uniform administration of the patent system, there is no compelling reason of social policy to hale WPP into this District, subjecting it to considerable expense and inconvenience.

> B.    The Claims Against WPP Should be Dismissed Pursuant To Fed. R. Civ. P 12(b)(6) or, in The Alternative, WPP's Motion For A More Definite Statement Should be Granted.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (2006). As such, it requires allegations of fact that "could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007) (internal citations omitted). The rule "does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Id.*

The law regarding the requirements of Rule 8 has been fully articulated by defendants Yahoo! Inc., Facebook Inc., Pulse 360, Inc., Seevast Corp., Fast Search & Transfer, Inc., Agent Arts, Inc. and ContextWeb, Inc. in their earlier-filed motions to dismiss in this action, all of which WPP incorporates herein by reference. The authority and arguments set forth in those motions apply with equal, if not greater, force to WPP: the Complaint does not specify a single WPP product, or feature thereof, that allegedly infringes the '067 Patent, let alone how or in what manner such a product allegedly infringes.[6] *Compare* Compl. ¶ 21 (listing at least one specific Yahoo! product that allegedly infringes) *with* Compl. ¶ 30 (asserting simply that WPP provides "methods and systems implemented by and through various websites" that infringe).

---

[6]    On December 11, 2007, Plaintiff's counsel sent a letter to counsel for WPP Group USA, Inc., WPP Group plc, and 24/7 Real Media regarding discovery. The letter does not identify any WPP products or services. *See* Bahrampour Dec., Ex. A.

Such boilerplate "allegations" are insufficient under Rule 8, and cannot support a claim for relief.[7]

## IV.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that WPP's motion to dismiss should be granted.   In the alternative, WPP's motion for a more definite Statement should be granted.

Dated:  December 27, 2007                          Respectfully submitted,


                                                   By: */s/ James S. Blank*


                                                   Harry L. Gillam, Jr.
                                                   Bar #: 07921800
                                                   GILLAM & SMITH, L.L.P.
                                                   303 S. Washington Avenue
                                                   Marshall, TX  75670
                                                   Tel.:  (903) 934-8450
                                                   Fax:  (903) 934-9257
                                                   Email: gil@gillamsmith.com

                                                   James S. Blank (*admitted pro hac vice*)
                                                   LATHAM & WATKINS LLP
                                                   885 Third Avenue
                                                   New York, NY  10022
                                                   Tel.:  (212) 906-1200
                                                   Fax:  (212) 751-4864
                                                   Email: james.blank@lw.com

                                                   Attorneys for Defendant WPP Group USA, Inc.

---

[7]    At a minimum, should the Court permit Plaintiff's action to go forward, Plaintiff must provide a more definite statement pursuant to Rule 12(e).

# EXHIBIT 1

# 24/7 Real Media Announces Agreement to be Acquired by WPP

Home | Corporate home

site search

News & Events > Press releases

| You | Us | Digital Intelligence | News & Events | Join Us | Contact Us |

The latest news
In the news
Press releases
Events
Awards & Recognition



## 24/7 Real Media Announces Agreement to be Acquired by WPP

24/7 Real Media Shareholders to Receive $11.75 per Share;
Acquisition will create a powerful combination of technology and services to benefit global marketers

Highlights:

- WPP Group and 24/7 Real Media, Inc. signed a definitive agreement on May 17, 2007 under which WPP agreed to acquire 100% of the shares of 24/7 Real Media through a friendly cash tender offer;
- WPP Group will pay 24/7 Real Media, Inc. shareholders $11.75 for each 24/7 Real Media share, in a transaction valued at approximately $649 million, net of cash acquired;
- The offer price represents a premium of 30% over the average closing price of 24/7 Real Media's shares for the last sixty (60) trading days;
- The transaction has received the unanimous approval of the Boards of Directors of the two companies;
- The 24/7 Real Media Board of Directors unanimously recommends that its shareholders accept the WPP Group tender offer.

24/7 Real Media Announces Agreement to be Acquired by WPP

NEW YORK - May 17, 2007 – 24/7 Real Media, Inc. (NASDAQ: TFSM), a leading global digital marketing company, today announced that it has signed a definitive agreement to be acquired by WPP Group plc ("WPP"), one of the world's largest communications services groups, in an all-cash transaction valued at approximately $649 million, net of cash acquired.  The transaction has been unanimously approved by the respective Boards of Directors of 24/7 Real Media and WPP and is expected to be completed in the third quarter of 2007.

Under the terms of the agreement WPP will commence a cash tender offer for all 24/7 Real Media shares for $11.75 per share. The offer price represents a 30% premium over the average closing price of 24/7 Real Media's shares for the last sixty (60) trading days.

"This deal provides a great value to all 24/7 Real Media shareholders," said David J. Moore, chairman and chief executive officer of 24/7 Real Media, Inc. "Additionally, the transaction further validates the importance of emerging, digital media to the global advertising market and 24/7 Real Media's role in strengthening the role of digital media among WPP companies."

The acquisition of 24/7 Real Media by WPP will create a powerful combination of technology and services that will provide significant added-value for clients of 24/7 Real Media and WPP companies. Advertisers will gain access to emerging technologies designed to more effectively segment, target, and reach customers through digital media such as search marketing and display advertising.  Publishers will benefit from expansive relationships with the world's largest advertisers and an acceleration of sophisticated ad management tools. Commenting on the announcement, Sir Martin Sorrell, CEO, WPP, said:  "Our clients and therefore our industry are becoming more technology driven.  24/7 Real Media significantly enhances our capabilities, technological resources and talent, as well as adding to our geographic coverage and our measurable skills."

"The digital marketplace is developing very rapidly.  24/7 Real Media brings to WPP very strong capabilities and technological skills in digital media and marketing," said Mark Read, Strategy Director, WPP and CEO of WPP Digital.  "We are looking forward to working with the team at 24/7 Real Media to bring their relationships, skills and technologies to our operating companies and people for the benefit of our clients.  As all media go digital, the combination of technology with client relationships and media and marketing expertise will become even more critical in delivering the best solutions to our clients."

The tender offer is subject to certain conditions, including the tender of at least a majority of the fully diluted shares of 24/7 Real Media, Inc., clearance under the Hart-Scott-Rodino Act and approval by certain foreign antitrust regulatory authorities.

24/7 Real Media Announces Agreement to be Acquired by WPP

Lehman Brothers Inc. and Piper Jaffray & Co. are serving as financial advisors and Proskauer Rose LLP is acting as legal advisor to 24/7 Real Media in connection with the transaction.

Members of 24/7 Real Media management will participate in a conference call hosted by WPP today, May 17, 2007 at 9:30 a.m. Eastern Daylight Time to discuss the transaction. Dial in details are:

US Dial-in Number  +1 210 795 0472
US Dial-in Toll Free  +1 877 818 6787

UK Dial-in Number  +44 207 019 0812
UK Dial-in Toll Free  0800 018 0795
Please visit WPP's corporate web site at www.wpp.com for additional information about this conference call.

About 24/7 Real Media, Inc.

24/7 Real Media, Inc. is a leading global digital marketing company, empowering advertisers and publishers to engage their target audiences with greater precision, transparency and ROI.  Using its award winning ad serving, targeting, tracking and analytics platform, powerful search marketing capabilities and global network of specialized Web sites, the company has turned the art of reaching audiences across virtually any digital medium into a measurable science.  The company is headquartered in New York, with 20 offices in 12 countries throughout North America, Europe and the Asia Pacific region.  For more information, please visit www.247realmedia.com.

24/7 Real Media: The Science of Digital Marketing.

24/7 Real Media is a member of the NAI and adheres to the NAI privacy principles that have been applauded by the FTC. These principles are designed to help ensure Internet user privacy. For more information about online data collection associated with ad serving, including online preference marketing and an opportunity to opt-out of 24/7 Real Media cookies, go to: www.networkadvertising.org.

About WPP

WPP is one of the world's leading communications services groups. Through its operating companies it provides a comprehensive range of communications services. These services include: advertising; media investment management; information, insight and consultancy;

communications. The Company employs approximately 100,000 people (including associates) in 2,000 offices in 106 countries, providing communications services to more than 300 of the companies that comprise the Fortune 500, over one half of the companies that comprise the NASDAQ 100 and more than 30 of the companies that comprise the Fortune e-50. As of May 16, 2007, WPP had a market capitalisation of approximately £9.3 billion ($18 billion).

Important Information

THIS DOCUMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN OFFER TO BUY OR THE SOLICITATION OF AN OFFER TO SELL ANY SECURITIES. THE SOLICITATION AND THE OFFER TO BUY SHARES OF 24/7 REAL MEDIA'S COMMON STOCK WILL ONLY BE MADE PURSUANT TO AN OFFER TO PURCHASE AND RELATED MATERIALS THAT WPP INTENDS TO FILE WITH THE SECURITIES AND EXCHANGE COMMISSION. 24/7 REAL MEDIA WILL FILE A SOLICITATION/RECOMMENDATION STATEMENT WITH RESPECT TO THE OFFER. ONCE FILED, 24/7 REAL MEDIA STOCKHOLDERS SHOULD READ THESE MATERIALS CAREFULLY PRIOR TO MAKING ANY DECISIONS WITH RESPECT TO THE OFFER BECAUSE THEY CONTAIN IMPORTANT INFORMATION, INCLUDING THE TERMS AND CONDITIONS OF THE OFFER. ONCE FILED, 24/7 REAL MEDIA STOCKHOLDERS WILL BE ABLE TO OBTAIN THE OFFER TO PURCHASE, THE SOLICITATION/RECOMMENDATION STATEMENT AND RELATED MATERIALS WITH RESPECT TO THE OFFER FREE OF CHARGE AT THE SEC'S WEBSITE AT WWW.SEC.GOV, FROM THE INFORMATION AGENT NAMED IN THE TENDER OFFER MATERIALS, FROM 24/7 REAL MEDIA OR FROM WPP.

Cautionary Statement Regarding Forward-Looking Statements

This document contains certain forward-looking statements about 24/7 Real Media AND WPP. When used in this document, the words "anticipates", "may", "can", "believes", "expects", "projects", "intends", "likely", similar expressions and any other statements that are not historical facts, in each case as they relate to 24/7 Real Media and WPP, the management of either such company or the transaction are intended to identify those assertions as forward-looking statements. In making any such statements, the person making them believes that its expectations are based on reasonable assumptions. However, any such statement may be influenced by factors that could cause actual outcomes and results to be materially different from those projected or anticipated. These forward-looking statements are subject to numerous risks and uncertainties. There are various important factors that could cause actual results to differ materially from those in any such forward-

24/7 Real Media Announces Agreement to be Acquired by WPP

Page 5 of 6

looking statements, many of which are beyond the control of 24/7 Real Media and WPP, including: the successful consummation of the proposed transaction, the impact of general economic conditions in regions in which either such company currently does business, industry conditions, including competition, fluctuations in exchange rates and currency values, capital expenditure requirements, legislative or regulatory requirements, changes in the tax laws, interest rates and access to capital markets. The actual results or performance by WPP or 24/7 Real Media could differ materially from those expressed in, or implied by, these forward-looking statements. Accordingly, no assurances can be given that any of the events anticipated by the forward-looking statements will transpire or occur, or if any of them do so, what impact they will have on the results of operations or financial condition of WPP or 24/7 Real Media. Neither WPP nor 24/7 Real Media assumes an obligation to update or revise any such statements, whether as a result of new information or otherwise.

For more information please contact:

24/7 Real Media, Inc. Media Relations:

Stephen Sumner
Weber Shandwick
Tel: 212-445-8475
Cell: 845-489-5067
Email: ssumner@webershandwick.com

24/7 Real Media, Inc. Investor Relations:

Sushene S. Leitch
Director, Investor Relations
24/7 Real Media, Inc.
Telephone: 212-231-7990
Email: investorrelations@247realmedia.com

Copyright © 2007, 24/7 Real Media – A WPP Company | Corporate governance | Privacy policy | Site map

12/27/2007

24/7 Real Media Announces Agreement to be Acquired by WPP

24/7 Real Media — leader in providing multi-platform marketing strategies that include targeted, response-oriented Web advertising campaigns, search engine marketing, ad serving, Web analytics, and implementation.


Call on us

Give us a little inf and a 24/7 Real M representative car a lot more.

# EXHIBIT 2

**FOR IMMEDIATE RELEASE**                                          **13 July 2007**

## WPP Completes Acquisition of 24/7 Real Media

---

**New York, NY, and London, England, July 13, 2007** — WPP Group plc (NASDAQGS:WPPGY) (LSE:WPP.L) ("WPP") today announced the completion of its acquisition of 24/7 Real Media, Inc. ("24/7 Real Media").

WPP's acquisition of 24/7 Real Media was structured as a cash tender offer for all the outstanding shares of common stock of 24/7 Real Media followed by a merger of a WPP subsidiary into 24/7 Real Media.  In the merger, outstanding 24/7 Real Media shares that were not tendered in the tender offer were converted into the right to receive $11.75 per share, in cash, without interest.

As a result of the merger, 24/7 Real Media is now an indirect-wholly owned subsidiary of WPP.

**Contact:**
**Feona McEwan, WPP**                      **T +44 (0)20 7408 2204**
**Fran Butera, WPP**                        **T +1 212 632 2200**
**www.wpp.com**

### About WPP

WPP is one of the world's leading communications services groups. Through its operating companies it provides a comprehensive range of communications services. These services include: advertising; media investment management; information, insight and consultancy; public relations and public affairs; branding and identity, healthcare and specialist communications. The Company employs approximately 100,000 people (including associates) in 2,000 offices in 106 countries, providing communications services to more than 300 of the companies that comprise the Fortune 500, over one half of the companies that comprise the NASDAQ 100 and more than 30 of the companies that comprise the Fortune e-50.

### About 24/7 Real Media

24/7 Real Media is a leading global digital marketing company, empowering advertisers and publishers to engage their target audiences with greater precision, transparency and ROI. Using its award winning ad serving, targeting, tracking and analytics platform, powerful search marketing capabilities and global network of specialized Web sites, the company has turned the art of reaching audiences across virtually any digital medium into a measurable science.  The company is headquartered in New York, with 20 offices in 12 countries throughout North America, Europe and the Asia Pacific region.  For more information, please visit www.247realmedia.com.

**24/7 Real Media: The Science of Digital Marketing.**

24/7 Real Media is a member of the NAI and adheres to the NAI privacy principles that have been applauded by the FTC. These principles are designed to help ensure Internet user privacy. For more information about online data collection associated with ad serving, including online preference marketing and an opportunity to opt-out of 24/7 Real Media cookies, go to: www.networkadvertising.org.

**Forward-looking Statement**

This release includes statements that are, or may be deemed to be, "forward-looking" statements. These forward-looking statements can be identified by the use of forward-looking terminology, including inter alia the terms "believes", "plans", "expects", "may", "will" or "should" or, in each case, their negative or other variations or comparable terminology.

These forward-looking statements include matters that are not historical facts and include statements regarding WPP's intentions, beliefs or current expectations concerning, among other things, WPP's results of operations, financial condition, liquidity, prospects, growth, strategies, the outlook for relevant markets and the acquisition of 24/7 Real Media. By their nature, forward-looking statements involve risk and uncertainty because they relate to future events and circumstances. A number of factors could cause actual results and developments to differ materially from those expressed or implied by the forward-looking statements. Forward-looking statements may and often do differ materially from actual results. Any forward-looking statements in this release reflect WPP's view with respect to future events as of the date of this release and are subject to risks relating to future events and other risks, uncertainties and assumptions relating to WPP's operations, results of operations, growth strategy and liquidity.

Except as required by relevant law or regulation, WPP undertakes no obligation publicly to release the results of any revisions to any forward-looking statements in this release that may occur due to any change in its expectations or to reflect events or circumstances after the date of this release. Information in this release should not be relied upon as a guide to future performance.

# EXHIBIT 3

# WPP

## WPP leadership

WPP's Board of directors is collectively responsible for promoting the success of the Company by directing and supervising the Group's strategy and is responsible to shareowners for the Group's financial and operational performance.

Philip Lader
Sir Martin Sorrell
Paul Richardson
Mark Read
Colin Day
Esther Dyson
Orit Gadiesh
David Komansky
Christopher Mackenzie
Stanley (Bud) Morten
Koichiro Naganuma
Lubna Olayan
John Quelch
Jeffrey Rosen
Timothy Shriver
Paul Spencer

### Philip Lader
Non-Executive chairman
Philip Lader was appointed chairman in 2001. The US Ambassador to the Court of St. James' from 1997 to 2001, he previously served as a Member of the President's Cabinet and as White House Deputy Chief of Staff. A lawyer, he is also a Senior Advisor to Morgan Stanley, a director of RAND, Marathon Oil and EAS Corporations, a member of the Council of Lloyd's (Insurance Market), a trustee of the British Museum and a member of the Council on Foreign Relations.

### Sir Martin Sorrell
Chief executive
Sir Martin Sorrell joined WPP in 1985 as a director, becoming Group chief executive in 1986.

### Paul Richardson
Finance director
Paul Richardson became Group finance director in 1996 after four years as director of treasury. He is responsible for the Group's worldwide functions in finance, information technology, procurement and property. Previously with the central finance team of Hanson PLC, he is a non-executive director of Chime Communications PLC and STW Communications Group Limited in Australia.

### Mark Read
Strategy director
Mark Read was appointed a director in March 2005. He has been WPP's director of strategy since 2002. He worked at WPP between 1989 and 1995 in both parent company and operating company roles. Prior to rejoining WPP in 2002, he was a principal at Booz-Allen & Hamilton and founded and developed the company WebRewards in the UK.

**Colin Day**
Non-Executive director
Appointed a Non-Executive Director in July 2005. He is Group Finance Director of Reckitt Benckiser plc, having been appointed to its Board in September 2000. Prior to joining Reckitt Benckiser he as Group Finance Director of Aegis Group plc and previously held a number of senior finance positions with ABB Group plc and De La Rue Group plc. He is a Non-Executive Director of WPP Group plc and until 30 September 2005 of easyjet PLC.

**Esther Dyson**
Non-Executive director
Esther Dyson was appointed a director in 1999. An acknowledged luminary in the online/information technology industry and the emerging information technology markets of Central and Eastern Europe, she is editor of Release 1.0, hosts the annual PC Forum conference and as an angel investor recently participated in the sale of Flickr to Yahoo!. She sits on the boards of other IT start-ups including EVDB, Meetup.com, NewspaperDirect (Canada), CV-Online (Hungary) and Yandex (Russia).

**Orit Gadiesh**
Non-Executive director
Orit Gadiesh was appointed a director in April 2004. She is chairman of Bain & Company, Inc. and a world-renowned expert on management and corporate strategy. She holds an MBA from Harvard Business School and was a Baker Scholar. She is a board member of the HBS Visiting Committee (Harvard Business School) and Dean's Advisory Board (Kellogg School) in the US and the Haute Ecole Commerciale in France. She sits on the Boards of the Federal Reserve Bank of New England and the Peres Institute for Peace and is a member of the Council on Foreign Relations.

**David Komansky**
Non-Executive director
Appointed a director in January 2003, David Komansky was chairman of the Board of Merrill Lynch & Co, Inc, until his retirement in 2003. He served as chief executive officer from 1996 to 2002, having begun his career there in 1968. He serves as a director of Black Rock, Inc., is a member of the International Advisory Board of the British American Business Council and serves on the Boards of the New York Presbyterian Hospital, the American Museumof Natural History and the National Academy Foundation.

**Christopher Mackenzie**
Non-Executive director
Christopher Mackenzie was appointed a director in 2000. He is chief executive of Equilibrium, a London-based financial advisory partnership, and Executive Chairman of Brunswick Capital, Russia's leading investment bank and non-bank financial services group. He is also a board member of ALJ, Saudi Arabia's largest non-government industrial group. Previously he was president and CEO of Trizec Properties and a company officer of GE, heading GE Capital's international business development.

**Stanley (Bud) Morten**
Non-Executive director
Bud Morten was appointed a director in 1991. A consultant and private investor, he is currently the independent consultant to Citigroup/Smith Barney with responsibility for its independent research requirements. Previously he was the chief operating officer of Punk, Ziegel & Co, a New York investment banking firm. Before that he was the managing director of the equity division of Wertheim Schroder & Co, Inc. in New York. He is a non-executive director of Register.com Inc., a NASDAQ-listed US public company.

**Koichiro Naganuma**
Non-Executive director
Koichiro Naganuma was appointed a director in February 2004. He is president and group chief operating officer of Asatsu-DK. Having joined ADK in 1981, he began his career with the international arm of the agency, his mandate expanding the total operation of the group. He replaced ADK Chairman Masao Inagaki on the Board. ADK is Japan's third largest advertising and communications company. WPP took a 20% interest in ADK in 1998.

**Lubna Olayan**
Non-Executive director
As CEO of Olayan Financing Company, Lubna Olayan is responsible for the Olayan Group's business and investments in Saudi Arabia and the Middle East. In December 2004, she was elected to the Board of Saudi Hollandi Bank. From 1996 through 2004, she served on the board of Chelsfield, the UK property developer. She is a member of INSEAD's International Council and a trustee of the Arab Thought Foundation. She is also a member on the Arab Business Council and the Women's Leadership Initiative of the World Economic Forum.

**John Quelch**
Non-Executive director
Appointed a director in 1988, Jon Quelch is Senior Associate Dean and Lincoln Filene Professor of Business Administration at Harvard Business School. Formerly Dean of the London Business School, he is an expert in global business practice in emerging and developed markets and international marketing, non-executive director of Inverness Medical Innovations, Inc., Pepsi Bottling Group Inc and chairman of the Massachusetts Port Authority. He has served on the boards of Blue Circle Industries plc, easyJet plc, Pentland Group plc and Reebok International Limited. John Quelch presents how-to marketing advice on the ever-changing world of marketing, in his blog *Marketing KnowHow*.

**Jeffrey Rosen**
Non-Executive director
Jeffrey Rosen was appointed a director in December 2004. He is a deputy chairman and managing director of Lazard LLC. Previously, he was a managing director of Wasserstein Perella & Co., Inc. since its inception in 1988, and chairman of Wasserstein Perella International. He has over 30 years' experience in international investment banking and corporate finance. He is a member of the Council on Foreign Relations. He is president of the Board of Trustees of the International Center of Photography in New York.

**Timothy Shriver**
Non-Executive director
Appointed a director in August 2007, Mr Shriver is Chairman of Special Olympics, a global organisation founded in 1968 by his mother, Eunice Kennedy Shriver, which provides sports training and athletic competition for people with intellectual disabilities. He is also a distinguished educator, social champion and a successful Hollywood film and television producer. He currently serves on the Board of the Education Commission of the United States Compact for Learning and Citizenship, chairs the Board of the Collaborative for Academic, Social and Emotional Learning and is a member of the Council on Foreign Relations and a regular participant in the World Economic Forum.

**Paul Spencer**
Non-Executive director
Appointed a director in April 2004, Paul Spencer brings 20 years' experience in the financial management of blue chip companies including British Leyland PLC, Rolls-Royce PLC, Hanson PLC and Royal & Sun Alliance PLC, for which he served as UK chief executive between 1999 and 2002. He is the non-executive chairman of State Street Managed Pension Funds and Goshawk Insurance Group PLC, chairman of the Association of Corporate Treasurers' Advisory Board and of NS&I (National Savings). He is also on the boards of Nipponkoa Insurance Europe Ltd, Sovereign Reversions Group plc and Britannic Group plc, and is a governor of Motability, a UK charity for the disabled.

© 1999-2007

# EXHIBIT 4



Us > Executive management

You     Us     Digital Intelligence     News & Events     Join Us     Contact Us

Company overview
Executive management
Vision & Values
Products & Services
Technologies
Partners
Global locations
Media kit



# Management

David J. Moore
**Chairman & Chief Executive Officer**

Jonathan Hsu
**EVP, Chief Operating Officer, and Chief Financial Officer**

Ari Bluman
**Senior Vice President, North American Sales & Operations**

Jack Smith
**SVP, Product Strategy**

Oleg Vishnepolsky
**Chief Technology Officer**

Anthony Borruso
**Chief Infrastructure Officer**

Jae Woo Chung
**President, K.K. 24-7 Search**

Ian Leuchars
**SVP, Search Marketing Services**

Copyright © 2007, 24/7 Real Media - A WPP Company | Corporate governance | Privacy policy | Site map

24/7 Real Media — leader in providing multi-platform marketing strategies that include targeted, response-oriented Web advertis
engine marketing, ad serving, Web analytics, and implementation.