IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PA ADVISORS, LLC<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC., ET AL.<br><br>Defendants. | No. 2:07-cv-480-TJW<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO CONTEXTWEB, INC.'S MOTION TO
TRANSFER AND ITS MEMORANDUM IN SUPPORT THEREOF**

Plaintiff PA Advisors, LLC ("PA Advisors") files this Response in opposition to Defendant ContextWeb, Inc.'s Motion to Transfer and its Memorandum in Support thereof ("ContextWeb's Motion to Transfer") (Dkt. No. 117).

## I. INTRODUCTION

For at least the following reasons, the Court should deny ContextWeb's Motion to Transfer:

- Venue is proper in this Court. ContextWeb admittedly has committed infringing acts in the Eastern District of Texas, and ContextWeb's website indicates that its presence in this District is even greater.

- ContextWeb has waived its right to object to venue as "improper." ContextWeb answered PA Advisors' Amended Complaint before filing its Motion to Transfer and, further, filed a counterclaim specifically alleging that venue is *proper* in this judicial district.

- ContextWeb's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is without merit. The § 1404(a) "private" and "public" factors weigh against transfer. PA Advisors rightfully owns the patent-in-suit, including the right to enforce the patent against infringers; thus, PA Advisors' choice to file in this District should not be disturbed.

- ContextWeb's Motion to Transfer is essentially a motion to sever this lawsuit into two parallel proceedings before two different judges. Such an outcome would be extremely inefficient and burdensome on both PA Advisors and the judicial system.

1

Dockets.Justia.com

Because ContextWeb's Motion lacks any legal or factual merit, it should be seen for what it is—an attempt to delay this litigation and to burden both PA Advisors and this Court.

## II.  FACTS

**A.  Procedural Background.**

This lawsuit has been pending for almost five months. On November 2, 2007, PA Advisors filed its Original Complaint for Patent Infringement against ContextWeb and twelve other defendants.[1] In response to PA Advisors' Original Complaint, ContextWeb filed a Rule 12(b)(6) Motion to Dismiss alleging that PA Advisors failed to meet the pleading standards.[2] Although PA Advisors' Original Complaint was adequate in all respects, in good faith, PA Advisors filed an Amended Complaint, which sets forth its claims against ContextWeb in more detail by specifically naming four ContextWeb advertising services—ContextAd, ADSDAQ, Selling Desk, and Buying Desk.[3] PA Advisors' Amended Complaint prompted ContextWeb to withdraw its Rule 12(b)(6) Motion to Dismiss,[4] and, on January 22, 2008, ContextWeb answered and filed a counterclaim to PA Advisors' Amended Complaint.[5] In its Counterclaim, ContextWeb alleged that "[v]enue is *proper* in this judicial district under 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b)."[6]

Over a month after filing its Answer and Counterclaim, ContextWeb filed its Motion to Transfer alleging, for the first time, that venue is "improper" in this judicial district.[7]

---

[1] *See* Dkt. No. 1, Original Complaint for Patent Infringement.

[2] *See* Dkt. No. 44, Defendant ContextWeb, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

[3] *See* Dkt. No. 58, First Amended Complaint for Patent Infringement, at ¶ 23.

[4] *See* Dkt. No. 78, Unopposed Motion to Withdraw ContextWeb, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

[5] *See* Dkt. No. 86, Defendant ContextWeb, Inc.'s Answer and Counterclaim to First Amended Complaint for Patent Infringement.

[6] *Id.* at ¶ 43 (emphasis added).

[7] *See* Dkt. No. 117, ContextWeb's Motion to Transfer, at 5-7.

ContextWeb also disingenuously claimed that it did not know which of its products were at issue in this case when it responded to PA Advisors' claims, despite the fact that it had withdrawn its Rule 12(b)(6) Motion to Dismiss and answered PA Advisors' Amended Complaint.[8]

**B.    ContextWeb is a web-based business that targets the Eastern District of Texas.**

As ContextWeb states in its Motion to Transfer, "ContextWeb's principal business is the placement of Internet advertisements, through its ADSDAQ system."[9] The ADSDAQ system—which includes "Selling Desk" and "Buying Desk" and uses "ContextAd" technology—is the focus of PA Advisors' infringement claims.[10] ContextWeb's ContextAd technology, though the use of "cookies," automatically tracks users who visit ContextWeb's customers' websites and generates user profiles so that users can be specifically targeted by advertisers.

ContextWeb's ADSDAQ customers fall into two categories: (1) sellers of online advertising space, such as online newspapers and other online publishers; and (2) buyers of online advertising space, such as large advertisers and ad agencies. Anyone who wishes to advertise online, including individuals and businesses in the Eastern District of Texas, can sign-up for ADSDAQ.[11] ContextWeb claims to have only one small ADSDAQ customer in the Eastern District of Texas,[12] but ContextWeb also admittedly derives a substantial amount of revenue from ADSDAQ sales to customers residing in Frisco, which is in the Eastern District of Texas.[13]

---

[8] *See id.* at 6-7.

[9] *Id.* at 3.

[10] *See* Dkt. No. 58, First Amended Complaint for Patent Infringement, at ¶ 23.

[11] *See* Declaration of Amy E. LaValle in Support of PA Advisors' Response to ContextWeb's Motion to Transfer ("LaValle Decl.") at ¶ 3, Ex. 1-A.

[12] Dkt. No. 117-2, Declaration of Richard Sheldon in Support of ContextWeb, Inc.'s Motion to Dismiss or Transfer ("Sheldon Decl."), at ¶¶ 2, 4.

[13] *See id.*, at ¶ 4.

ContextWeb also lists a few of its top "Sellers" and "Buyers" customers on its website, and both groups include businesses that have a large presence in the Eastern District of Texas.[14] For example, one of ContextWeb's largest "Sellers" is the Belo Corporation, which, according to ContextWeb, "consists of five daily newspapers and 20 TV stations with a combined readership of more than eight million people, including the flagship *Dallas Morning News* (www.dallasnews.com) . . . ."[15]  One of the other Belo daily newspapers is the Denton-Record Chronicle (www.dentonrc.com), and two of the 20 Belo TV stations are WFAA-TV (ABC) (www.wfaa.com) in Dallas and KHOU-TV (CBS) (www.khou.com) in Houston.[16]  As this Court knows, Denton is in the Eastern District of Texas, and Dallas and Houston both border the Eastern District of Texas, so potentially many thousands of Eastern District residents are affected by ContextWeb's infringing ADSDAQ technology.[17]  Specifically, any person who visits Belo's websites (www.dallasnews.com, www.dentonrc.com, www.wfaa.com, and www.khou.com) is likely being tracked by ContextWeb through the use of "cookies."[18]

On the "Buyers" side, one of ContextWeb's largest customers is Circuit City, which has retail stores in Tyler and Longview.[19]  In addition, two of ContextWeb's largest online advertising customers are Agency.com and Carat Fusion, which both have offices in Dallas.[20] Indeed, ContextWeb does enough business in Texas such that one of its current job openings is for an Account Executive in Dallas.[21]  According to ContextWeb's job description, an "Account

---

[14] *See* LaValle Decl. at ¶ 4, Ex. 1-B.

[15] *See id.* at ¶ 5, Ex. 1-C.

[16] *See id.* at ¶¶ 6-8, Ex. 1-D, Ex. 1-E, and Ex. 1-F.

[17] *See id.* at ¶ 9, Ex. 1-G.

[18] *See id.* at ¶ 10, Ex. 1-H.

[19] *See id.* at ¶¶ 4, Ex. 1-B; 11, Ex. 1-I.

[20] *See id.* at ¶¶ 12-13, Ex. 1-J and Ex. 1-K.

[21] *See id.* at ¶ 14, Ex. 1-L.

Executive is responsible for landing new business, up selling existing clients and driving revenue for new and existing clients."[22]

Because ContextWeb's activities mostly occur in cyberspace, the extent of ContextWeb's presence in the Eastern District of Texas is not precisely known to PA Advisors, but the following is clear:

- ContextWeb offers its ADSDAQ online advertising service to potential customers in the Eastern District of Texas because anyone can sign-up for ContextWeb's ADSDAQ service on the ADSDAQ website;

- ContextWeb admits to having one small customer in the Eastern District of Texas and substantially more business in Frisco, which is in the Eastern District of Texas;

- ContextWeb has existing customers with a large presence in the Eastern District of Texas (e.g., Belo and Circuit City); and

- ContextWeb has committed and continues to commit infringing acts in the Eastern District of Texas as it tracks and targets users of ContextWeb's customers' websites with ADSDAQ ads.

Thus, it is clear that ContextWeb does business in and commits acts of infringement in the Eastern District of Texas.

**C.    PA Advisors owns the patent-in-suit and has chosen this Judicial District.**

ContextWeb incorrectly alleges throughout its Motion to Transfer that PA Advisors' title to the patent-in-suit is "clouded" and that venue is proper in the Eastern District of New York where the inventor, Ilya Geller, and prior owner, Mightiest Logicon Unisearch, Inc. ("MLU"), reside.[23] It is true that MLU and PA Advisors mistakenly executed an assignment draft dated September 28, 2007, before PA Advisors was formally organized as a Texas Limited Liability Company, and this draft assignment was inadvertently forwarded to Hershkovitz & Associates,

---

[22] *See id.*

[23] *See* Dkt. No. 117, ContextWeb's Motion to Transfer, at 2, 4, 9-10.

5

LLC for recordation with the U.S. Patent and Trademark Office.[24] But MLU and PA Advisors corrected the inadvertent mistake by executing the final assignment document, with an effective date of October 23, 2007 (the date that PA Advisors was legally formed and before the filing date of this lawsuit).[25] The correct, final assignment has been recorded with the U.S. Patent and Trademark Office.[26] Thus, PA Advisors is the rightful owner of the patent-in-suit and venue is proper in this Judicial District where PA Advisors chose to file the lawsuit. Further, it is misleading for ContextWeb to imply that Mr. Geller or MLU would want the lawsuit to be transferred to New York when MLU has assigned all of its rights to sue and recover for infringement to PA Advisors.

### III.  ARGUMENT

**A.    Venue is proper in this Judicial District.**

Pursuant to 28 U.S.C. § 1400(b) "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For venue purposes, a corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). If a state has more than one judicial district, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." *Id.*

---

[24] *See* LaValle Decl. at ¶ 15, Ex. 1-M.

[25] *See id.* at ¶¶ 15-16, Ex. 1-M and Ex. 1-N.

[26] *See id.* at ¶ 17, Ex. 1-O.

Because personal jurisdiction in a patent case is intimately related to patent law, Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). If the parties have not conducted jurisdictional discovery, a plaintiff only needs to make a *prima facie* showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *Id.* A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). *See* LSI *Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). Although federal courts hearing patent cases defer to the forum state's interpretation of its long-arm statute, Federal Circuit law controls whether the exercise of personal jurisdiction comports with federal due process. *See 3D Sys.*, 160 F.3d at 1377.

"The Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806, 45 Tex. Sup. Ct. J. 1008 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays*, P.L.C., 815 S.W.2d 223, 226, 34 Tex. Sup. Ct. J. 376 (Tex. 1991)). Thus, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry. *AdvanceMe, Inc. v. Rapidpay, LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006). Due process requires an out-of-state defendant have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316.

A court has specific jurisdiction over the defendant when the litigation arises out of the defendant's minimum contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

7

472-73, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Patent infringement occurs by the production, use, sale, or offer for sale of a patented product. 35 U.S.C. § 271. Thus, this Court has personal jurisdiction over ContextWeb if ContextWeb uses, sells, or offers to sell the allegedly infringing ADSDAQ services in the Eastern District of Texas. *See AdvanceMe*, 450 F. Supp. 2d at 673.

ContextWeb uses its infringing services in the Eastern District of Texas as it tracks and targets users of ContextWeb's customers' websites with ADSDAQ ads. As stated above, any person who visits Belo's websites (www.dallasnews.com, www.dentonrc.com, www.wfaa.com, and www.khou.com) is likely being tracked by ContextWeb through the use of "cookies."[27] Moreover, it is undisputed that ContextWeb is a web-based advertising business and has some ADSDAQ customers in the Eastern District of Texas. ContextWeb claims to have only one small ADSDAQ customer in the Eastern District of Texas,[28] but according to ContextWeb's website, at least two of its top customers have a large presence in the Eastern District of Texas— Belo and Circuit City.[29] ContextWeb also admittedly derives a substantial amount of revenue from ADSDAQ sales to customers in Frisco, which is in the Eastern District of Texas.[30] Finally, ContextWeb offers its ADSDAQ online advertising service to potential customers in the Eastern District of Texas because anyone can sign-up for ContextWeb's ADSDAQ service on the ADSDAQ website.[31] Therefore, ContextWeb's website, its infringing sales to entities in the Eastern District of Texas, and its use of the infringing technology in the Eastern District of Texas are sufficient contacts to provide this Court with specific jurisdiction over ContextWeb.

---

[27] *See* LaValle Decl. at ¶ 10, Ex. 1-H.

[28] Dkt. No. 117-2, Sheldon Decl., at ¶¶ 2, 4.

[29] *See* LaValle Decl. at ¶ 4, Ex. 1-B.

[30] *See* Sheldon Decl., at ¶ 4.

[31] *See* LaValle Decl. at ¶ 3, Ex. 1-A.

**B.     ContextWeb waived its right to object to venue as "improper."**

Even if venue were not proper in this Judicial District, ContextWeb waived its opportunity to assert a Rule 12(b)(3) defense or move to transfer pursuant to 28 U.S.C. § 1406 because it did not include this challenge in its answer or in a timely pre-answer motion. *See* FED. R. CIV. P. 12(h); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 759 (E.D. Tex. 2000). As discussed above, on January 22, 2008, ContextWeb answered and filed a counterclaim to PA Advisors' Amended Complaint.[32] In its Counterclaim, ContextWeb alleged that "[v]enue is ***proper*** in this judicial district under 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b)."[33] By filing this responsive pleading, ContextWeb clearly waived its right to object to venue as "improper."

ContextWeb disingenuously claims in its Motion to Transfer that it has not waived its right to object to venue under Rule 12(b)(3) because it did not know which of its products were at issue in this case when it responded to PA Advisors' claims.[34] This argument squarely contradicts ContextWeb's behavior. Once PA Advisors filed its an Amended Complaint, ContextWeb withdrew its Rule 12(b)(6) Motion to Dismiss alleging that PA Advisors failed to meet the pleading standards,[35] and ContextWeb answered and filed a counterclaim to this lawsuit.[36] The Court should, therefore, ignore ContextWeb's argument that it did not waive its right to assert a Rule 12(b)(3) defense or move for a transfer pursuant to section 1406.

---

[32] *See* Dkt. No. 86, Defendant ContextWeb, Inc.'s Answer and Counterclaim to First Amended Complaint for Patent Infringement.

[33] *Id.* at ¶ 43 (emphasis added).

[34] *See* Dkt. No. 117, ContextWeb's Motion to Transfer, at 6-7.

[35] *See* Dkt. No. 78, Unopposed Motion to Withdraw ContextWeb, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

[36] *See* Dkt. No. 86, Defendant ContextWeb, Inc.'s Answer and Counterclaim to First Amended Complaint for Patent Infringement.

**C.    ContextWeb's Motion to Transfer based on 28 U.S.C. § 1404(a) is meritless.**

When presented with a motion to transfer venue pursuant to § 1404(a), the Court balances the private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private factors are: (1) the plaintiffs' choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 771 (E.D. Tex. 2000). The public interest factors involve: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.*

**1.    The Private Factors weigh against transfer.**

*a.    The plaintiff's choice of forum.*

The plaintiff's choice of forum is neither controlling nor determinative, but is a factor to be considered. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). The plaintiff's choice of forum, however, should not be disturbed unless it is clearly outweighed by other factors. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830 (E.D. Tex. 2002). PA Advisors chose to bring this suit in the Eastern District of Texas, Marshall Division. The Court should respect that choice because the other factors do not strongly support the view that a transfer of venue is proper. Furthermore, the Court should give no weight to ContextWeb's argument that PA Advisors' title to the patent-in-suit is "clouded" because, as detailed above, PA Advisors is the rightful owner of the patent-in-suit and venue is proper in this Judicial District. Moreover, PA Advisors is a Texas limited liability company with no ties to the Eastern District of New York.

### *b. The convenience of the parties and material witnesses.*

The convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). In this case, PA Advisors is a Texas limited liability company with its principal place of business in Marshall, Texas. ContextWeb is a Delaware corporation with its principal place of business in New York, New York. Someone will be inconvenienced regardless of whether the case is litigated in this Court or in New York.

Generally, in a venue transfer analysis, the most important factor considered is whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed*, 90 F. Supp. 2d at 774. Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses. *Shoemake*, 233 F.Supp. 2d at 832. The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Mohamed*, 90 F. Supp. 2d at 775 (quoting *Hupp v. Siroflex of America, Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)). In its Motion to Transfer, ContextWeb identified only two potential third-party witnesses who reside (or are believed to reside) in Brooklyn, New York: Ilya Geller, the inventor, and Edward Etkin, the prosecuting attorney of the patent-in-suit.[37]

On the other hand, as the Court knows, many patent infringement cases are driven by expert testimony. *See Source, Inc. v. Rewards Network, Inc.*, No. 2:04-cv-347-TJW, 2005 U.S. Dist. LEXIS 44949, at *7-8 (E.D. Tex. Sept. 27, 2005). The parties have not yet identified their respective expert witnesses, but they are just as likely to be located in Texas as in New York or

---

[37] *See* Dkt. No. 117, ContextWeb's Motion to Transfer, at 11. ContextWeb also vaguely identified "other persons from the Mightiest Logicon Unisearch, Inc." as potential third-party witnesses, but to PA Advisors' knowledge, the only person affiliated with MLU who might be a "key witness" is Mr. Geller.

11

spread out across the country. Thus, the location of the key third-party witnesses does not overwhelmingly support a transfer to the Eastern District of New York.

### c. *The place of the alleged wrong.*

As discussed above, it is undisputed that alleged acts of infringement occurred in this district. Accordingly, this factor weighs against transfer.

### d. *The cost of obtaining the attendance of witnesses and the availability of compulsory process.*

As with the convenience of the parties and material witnesses factor, this factor does not overwhelmingly support a transfer to the Eastern District of New York.

### e. *The accessibility and location of sources of proof.*

Documentary proof is likely to be located in various areas of the country. Although a substantial portion of it might be located in New York, the increasing ease of storage and transportation, however, makes this factor less significant. *See Tinkers & Chance v. Leapfrog Enterprises, Inc.*, No. 2:05-cv-349-TJW, 2006 U.S. Dist. LEXIS 10115, at *5-6 (E.D. Tex. Feb. 23, 2006). Documents can easily be transported to Texas or to New York; therefore, this factor is neutral as to transfer.

### f. *The possibility of delay and prejudice if transfer is granted.*

In this case, ContextWeb's Motion to Transfer is essentially a motion to sever. If the transfer is granted, PA Advisors' case against ContextWeb will move to New York, but its case against the other defendants would stay in Texas. Such an outcome would be extremely inefficient and burdensome on both PA Advisors and the judicial system as two parallel proceedings would go forward before two different judges. Two claim constructions would be held, and potentially two trials would occur. Moreover, ContextWeb's case against ContextWeb likely would be delayed over a year. As ContextWeb points out in its Motion to Transfer, "the

time from filing to trial is 16.6 months greater in Eastern District of New York than in this District."[38] This factor, therefore, weighs heavily against transfer.

### 2. The Public Factors also weigh against transfer.

#### a. *The administrative difficulties caused by court congestion.*

Again, because ContextWeb's Motion is essentially a motion to sever this litigation into two parallel proceedings, which would be extremely inefficient and burdensome on the judicial system, this factor weighs heavily against transfer.

#### b. *The local interest in adjudicating local disputes.*

ContextWeb offers and sells its infringing advertising services throughout the United States, including in the Eastern District of Texas. The admitted sale of allegedly infringing services in the Eastern District of Texas is an event that is significant and relevant to the citizens of this District. *See Cummins-Allison Corp. v. Glory Ltd.*, No. 2-03-cv-358-TJW, 2004 U.S. Dist. LEXIS 13839, at *20 (E.D. Tex. May 26, 2004). PA Advisors, moreover, is a Texas limited liability company that has chosen to file this case against ContextWeb and the other defendants in this District. Accordingly, this factor weighs against transfer.

#### c. *The unfairness of burdening citizens in an unrelated forum with jury duty.*

It would be unfair to unnecessarily burden citizens in New York with jury duty when citizens in this district will decide PA Advisors' case against the other defendants. This factor also weighs against transfer.

#### d. *The avoidance of unnecessary problems in conflict of laws.*

Patent claims are governed by federal law. This Court and the court in the Eastern District of New York are both capable of applying patent law to infringement claims. However, if ContextWeb's Motion to Transfer is granted and this case is severed into two parallel

---

[38] *See* Dkt. No. 117, ContextWeb's Motion to Transfer, at 13.

13

proceedings, it is possible that PA Advisors could get two different claim construction rulings or two different findings regarding the validity of the patent-in-suit. For this reason, the factor weighs against transfer.

## IV.  CONCLUSION

In sum, ContextWeb's Motion has no merit. It is merely an attempt to delay and burden both PA Advisors and the judicial system. Venue is proper in this Judicial District, and ContextWeb has waived its right to assert that it is not proper. Further, because the § 1404(a) private and public interest factors weigh against transfer, PA Advisors' choice of forum should not be disturbed. For these reasons, and all of the reasons detailed herein, the Court should deny ContextWeb's Motion to Transfer.

Dated: March 27, 2008                                              Respectfully submitted,

**PA ADVISORS, LLC**

By: /s/ Amy E. LaValle
David M. Pridham
R.I. State Bar No. 6625
LAW OFFICE OF DAVID PRIDHAM
25 Linden Road
Barrington, Rhode Island 02806
Telephone: (401) 633-7247
Facsimile: (401) 633-7247
E-mail: david@pridhamiplaw.com

Amy E. LaValle
Texas State Bar No. 24040529
THE LAVALLE LAW FIRM
3811 Turtle Creek Boulevard
Suite 1620
Dallas, Texas 75219
Telephone: (214) 732-7533
Facsimile: (214) 292-8831
E-mail: lavalle@lavallelawfirm.com

        Danny L. Williams
        Texas State Bar No. 21518050
        J. Mike Amerson
        Texas State Bar No. 01150025
        WILLIAMS, MORGAN & AMERSON, P.C.
        10333 Richmond, Suite 1100
        Houston, Texas 77042
        Telephone: (713) 934-7000
        Facsimile: (713) 934-7011
        E-mail: danny@wmalaw.com
        E-mail: mike@wmalaw.com

        Of Counsel:
        Joseph Diamante
        JENNER & BLOCK LLP
        919 Third Avenue, 37th Floor
        New York, New York 10022-3908
        Telephone: (212) 891-1600
        Facsimile:  (212) 891-1699
        E-mail:  jdiamante@jenner.com

        **ATTORNEYS FOR PLAINTIFF**
        **PA ADVISORS, LLC**

## CERTIFICATE OF SERVICE

    I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: March 27, 2008                       /s/ Amy E. LaValle