# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **PA ADVISORS, LLC** | Civil Action No. 2:07-cv-480-TJW |
| **Plaintiff,** | JURY |
| v. | |
| **GOOGLE INC., et al.,** | |
| **Defendants.** | |

## PLAINTIFF'S REPLY BRIEF REGARDING CLAIM CONSTRUCTION

2995-010 090824 PA Advisors Reply re Markman Brief.doc

## TABLE OF CONTENTS

Page No.

I. INTRODUCTION. ..................................................................................................1

II. THE CLAIMS MUST NOT BE NARROWLY LIMITED TO THE DISCLOSED EMBODIMENTS................................................................................................2

    A. "Linguistic Pattern"..............................................................................2

        i. Defendants' Construction Is Inconsistent With How The Phrase Is Used In The Claims...........................................................2

        ii. The Portion Of The Specification Relied On By Defendants Is Not Definitional. ..................................................................3

        iii. Defendants' "Fundamental Purpose" Argument Is Misplaced. ......4

        iv. Defendants' Proposed Requirement That A "Linguistic Pattern" Must Be "Repeating" Is Unsupported. ................................4

    B. "Segment"..............................................................................................5

    C. "User Profile" and "User Data Profile" ..................................................6

    D. "Data Item Profile"................................................................................7

    E. "Search Request Profile".........................................................................8

    F. "Psychological Profile" ..........................................................................9

    G. "Data Item" ..........................................................................................9

III. CONCLUSION..................................................................................................10

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*,
    340 F.3d 1298 (Fed. Cir. 2003)..................................................................................6

*Boss Control, Inc. v. Bombardier, Inc.*,
    410 F.3d 1372 (Fed. Cir. 2005)..................................................................................4

*CIAS, Inc. v. Alliance Gaming Corp.*,
    504 F.3d 1356 (Fed. Cir. 2007)..................................................................................6

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001)..................................................................................9

*Nazomi Communs., Inc. v. Arm Holdings, PLC*,
    403 F.3d 1364 (Fed. Cir. 2005)..................................................................................8

*Northrop Grumman Corp. v. Intel Corp.*,
    325 F.3d 1346 (Fed. Cir. 2003)..................................................................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)...............................................................................7, 8

*Prompt Medical Systems, L.P. v. McKesson Corp.*,
    No. 6:05-cv-485-LED, 2006 U.S. Dist. LEXIS 54808 (E.D. Tex July 21, 2006)..............6

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001)..................................................................................7

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)....................................................................................6

## I. INTRODUCTION.

Defendants' Responsive Claim Construction Brief ("Response") is an extended exercise in importing every nuance of the preferred embodiments from the specification of the '067 Patent into the construction of the claims, notwithstanding the prohibitions in Federal Circuit law against doing so. It is clear that the Defendants are focused on importing as many improper limitations as possible to advance their non-infringement positions rather than being focused on assisting a trier of fact in understanding certain terms of the '067 Patent. According to Defendants, every explanation in a patent specification is a definition and each discussion of a preferred embodiment reflects a complete disclaimer of scope. If one were to read Defendants' Response without referring to the '067 Patent, one would be left with the distinct impression that the words "I claim" precede the text of the specification instead of the claims themselves.

Defendants' Response complains that Plaintiff's claim constructions have changed throughout the meet and confer process, as if to suggest that engaging in meaningful dialogue and a sincere attempt to bridge the gap and narrow issues for the Court is not the very purpose of the Meet and Confer process. Indeed, despite Plaintiff's efforts (or maybe as a result), Defendants have now acknowledged that the parties do not have meaningful disputes regarding six of the terms that Defendants forced Plaintiff to brief. (Response at 8 n.4.)

Accordingly, the only terms with disputed constructions are: "linguistic pattern," "segment," "user profile/user data profile," "data item profile," "search request profile," "psychological profile," and "data item."[1] Because Defendants' proposed constructions violate Federal Circuit law, and seek improperly to limit the claims to the preferred embodiments, and only Plaintiff's constructions comport with the intrinsic evidence and Federal Circuit law,

---

[1] Although Defendants assert that "user linguistic data," "text item," and "search request data" are among the terms that are still disputed (Response at 8), they do not brief those terms. Accordingly, Plaintiff assumes that those terms are also not disputed. To the extent they are disputed, Plaintiff requests that the Court enter those constructions set forth in Plaintiff's Opening Brief.

Plaintiff respectfully requests that the Court adopt its constructions for the remaining disputed terms.

## II. THE CLAIMS MUST NOT BE NARROWLY LIMITED TO THE DISCLOSED EMBODIMENTS.

### A. "Linguistic Pattern"

| NXN TECH'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A combination of various parts of speech (nouns, verbs, adjectives, etc.). | A repeating combination of various parts of speech (nouns, verbs, adjectives, etc.) that appears in a sentence and reflects a specific user's cultural, educational, social background, and the user's psychological profile. |

#### i. Defendants' Construction Is Inconsistent With How The Phrase Is Used In The Claims.

Claim 1 recites three different uses of "linguistic pattern": 1) "a first linguistic pattern of the said user linguistic data"; 2) "a second linguistic pattern of a . . . data item"; and 3) a third linguistic pattern of said search request data." '067 Patent (Ex. A. the Opening Brief (D.I. 248)) at 25:34-35, 41, and 54-55. The Claims thus make clear that the method involves matching the linguistic patterns of the user (extracted from the user's linguistic data) to the linguistic patterns in the data items, in light of the linguistic patterns of the search string. The definition of "linguistic pattern" must account for and be consistent with each of these three uses.

While Defendants' construction arguably makes sense for the "first linguistic pattern" of the user linguistic data, it does not make sense for the "second linguistic pattern" of the data item or the "third linguistic pattern" of the search request data. There is no "user's cultural, educational, social background" or a "user's psychological profile" associated with the data items.

### ii. The Portion Of The Specification Relied On By Defendants Is Not Definitional.

In the full context of Claim 1, it is clear that the quote from the specification is only describing one example of a "linguistic pattern" – the *first* linguistic pattern of a user's linguistic data. The quoted portion of the specification states:

> All texts composed by the user, or adopted by the user as favorite or inimical (such as a favorite book or short story), contain certain recurring linguistic patterns, or combinations of various parts of speech (nouns, verbs, adjectives, etc.) in sentences that reflect the user's cultural, educational, social backgrounds and the user's psychological profile.

'067 Patent (Ex. A) at 3:45–51. This portion is discussing linguistic patterns as they exist in "texts composed by the user, or adopted by the user." Therefore, the phrase "sentences that reflect the user's cultural, educational, social backgrounds and the user's psychological profile" logically refers only to those texts, and not to linguistic patterns generally. This distinction is significant, as the claims recite three particular kinds of linguistic patterns. Specifically, the "second linguistic pattern" in Claim 1 is based on data items based on texts that are neither authored by, nor adopted by the user. Adopting Defendants' definition would exclude second linguistic patterns from the definition of linguistic pattern.

In addition to the foregoing passage, the specification also discusses linguistic patterns of data items and of search requests. See, e.g., Ex. A at 5:21-34 (discussing second stage in which program extracts linguistic patterns of data items); 5:35-51 (discussing third stage in which program extracts linguistic patterns of search string); 6:34-38 ("The final value is representative of the degree to which the linguistic pattern of the data item matches the linguistic pattern of the user in light of the linguistic pattern and subject matter of the search string.") Thus, Defendants' argument that the specification somehow "defines" the term linguistic pattern, and that such definition "appears in the 'Summary of the Invention' section" and is therefore "binding" completely misses the mark. (*See* Response at 10.)

### iii. Defendants' "Fundamental Purpose" Argument Is Misplaced.

Defendants argue that additional language—"cultural, educational, social backgrounds and the user's psychological profile"—must be incorporated because it is a "fundamental feature and the purpose of the invention," relying on *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306 (Fed. Cir. 2008). (Response at 10.) This argument is without merit. The decision in *Praxair* turned on "the specification's consistent emphasis on this fundamental feature of the invention." *Praxair*, 543 F.3d at 1324. Unlike the patent in the *Praxair* case, the '067 Patent's references to the cultural, educational, and social backgrounds of a user and the user's psychological profile is aspirational, not an expression of a fundamental feature. Moreover, the claims separately expressly require that the "linguistic characteristics of the data item correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile." '067 Patent (Ex. A) at 26:16-21. Thus, Defendants' argument that the construction of "linguistic pattern" must include the requirement of reflecting the background of the user in order to meet the fundamental purpose of the invention fails.

Similarly, Defendants' reliance on *Boss Control, Inc. v. Bombardier, Inc.*, 410 F.3d 1372 (Fed. Cir. 2005), is misplaced. In *Boss Control*, the specification did not merely distinguish the prior art. Rather, it described the claim term being construed in a manner that was incompatible with the use of that term in the prior art. *See Boss Control*, 410 F.3d at 1377 (noting the specification's contrast between "simple on-off interruption" in the prior art, and "interruption that occurs in two stages" in the described invention). The specification in the '067 Patent does not disclaim searching for words or content, as Defendants suggest. Moreover, there is no use of the term "linguistic pattern" in describing the prior art against which the invention described in the '067 Patent can be compared. Thus, *Boss Control* is inapposite and does not apply.

### iv. Defendants' Proposed Requirement That A "Linguistic Pattern" Must Be "Repeating" Is Unsupported.

Defendants' proposal to include the term "repeating" in the construction of the term "linguistic pattern" is inconsistent with the passage in the specification cited above because

including "repeating" in the construction of "linguist pattern" would render the word "recurring" in the passage redundant. Defendants have failed to cite anything in the intrinsic record that would require a combination of words to be repeating in order to constitute a linguistic pattern. In other words, the inventor did not clearly and unmistakably disclaim any combinations of words that only appear once. *See Northrop Grumman Corp. v. Intel Corp.,* 325 F.3d 1346, 1355 (Fed. Cir. 2003) ("Absent a *clear disclaimer* of particular subject matter, the fact that the inventor may have anticipated that the invention would be used in a particular way does not mean that the scope of the invention is limited to that context.") (emphasis added).

### B. "Segment"

| NXN TECH'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A part of a sentence. | One or more predetermined types of parts of speech arranged in a predetermined order. |

Defendants urge the adoption of their proposed construction on the theory that the following passage in the specification was definitional: "A segment consists of one or more predetermined types of POS arranged in a predetermined order." '067 Patent (Ex. A) at 14:59–61. Defendants' argument fails because 1) this passage is merely a description of the preferred embodiment (it occurs in the section entitled, "Detailed Description of Preferred Embodiments"); and 2) the specification makes clear that "segments" can be in any order.

The specification makes clear that segments can come in multiple configurations. '067 Patent (Ex. A) at 14:60-64 ("The number, the type, and the order of POS [parts of speech] in a segment may be selected as a matter of design choice."); 14:65 ("preferably each segment is a triad . . . of three POS arranged as follows: noun-verb-adjective"); 15:5-9 ("Alternatively, the following other arrangement may be used for the segment if desired . . ."); 15:11-12 ("in an alternate embodiment of the present invention, the segments may consist of one or more POS").

The specification then gives an example that makes clear that the various parts of speech can be in any order. The specification states that the following segments could be extracted from the example sentence, "Joe walked to his beautiful new house":

Joe-walk-beautiful

Joe-walk-new

House-walk-beautiful

House-walk-new

'067 Patent (Ex. A) at 15:18–26.

As these examples make clear, the various parts of speech can be in any order and still constitute a segment. Thus, Defendants' definition is overly restrictive, inconsistent with the specification, and would even exclude preferred embodiments. Such a construction is inconsistent with Federal Circuit law and must be rejected. *See Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) ("It is axiomatic that claim construction that excludes a preferred embodiment … is rarely if ever correct.") (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).[2]

    C.    **"User Profile" and "User Data Profile"**

| NXN TECH'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A collection of information about a user. | A file containing information about a specific user's linguistic patterns and the frequencies with which these patterns recur in texts that are: (i) submitted by the user or (ii) associated with the user and automatically acquired by the system, without identifying any background or private information about the user. |

Defendants' proposed construction for "user profile" and "user data profile" piles on multiple limitations driven solely by Defendants' non-infringement positions which are improperly incorporated from the specification, including: 1) that they must be representative of

---

[2] Defendants' reliance on *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356 (Fed. Cir. 2007), to support this proposition is misplaced. First, the *CIAS* was construing "comprised of," not "consists of." *See CIAS*, 504 F.3d at 1359-61. Second, the discussion of "consisting of" in *CIAS* was in the context of its use in *claims*. *See, id.*, at 1361.

The ruling in *Prompt Medical Systems, L.P. v. McKesson Corp.*, No. 6:05-cv-485-LED, 2006 U.S. Dist. LEXIS 54808 (E.D. Tex July 21, 2006), was not that the use of the term "consists of" in the specification is definitional, but that it triggered a closed-ended interpretation of the language it precedes. *See, id.*, at *16–20. *Prompt Medical* is inapposite.

a user's linguistic patterns and the frequency with which those patterns recur in texts; 2) that the texts are submitted by the user or automatically acquired and associated with the user; and 3) that they do not identify any background or private information about the user. (Response at 19.) As Defendants concede, all of these limitations are plucked from embodiments described in the specification. (Response at 20-21.) Reading limitations from the specific embodiments described in the specification must be avoided. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) ("one of the cardinal sins of patent law [is] reading a limitation from the written description into the claims" (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001))).

Defendants' attempt to limit the texts from which the linguistic patterns and frequencies are derived runs afoul of the prohibition in *Phillips*. Although texts submitted by the user or adopted by the user are sources from which a user profile can be derived in one embodiment ('067 Patent at 10:27–41), nothing in the specification disclaims or otherwise excludes any other sources of data.

Defendants' also attempt to exclude certain types of information from a user profile, presumably based on language from an exemplary embodiment that "the User_Profile does not contain any private information about the user." '067 Patent at 11:14-15. The exemplary embodiment relied upon by the Defendants merely addresses a privacy concern, not a technical or essential requirement of the invention. *See* '067 Patent at 4:27–29 ("[T]he user's privacy is not impinged by the creation and retention of the user profile."). Thus, it is not describing a "fundamental feature of the invention" and does not require an associated limitation. *See Praxair*, 543 F.3d at 1324.

D.      **"Data Item Profile"**

| NXN TECH'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A collection of information about a data item. | A file containing information about a specific document, website, or other text that may be subjected to a search by a user, comprising the data item's address, the linguistic patterns of the data item, and the |

| | frequencies with which those patterns recur. |
|---|---|

Defendants emphasize that their "construction relies on the exact language of the specification." (Response at 23.) This highlights the very problem with their analysis – claim construction is not an exercise in cherry picking the narrowest description of a preferred embodiment in the specification and then adopting that "exact language" as the construction. Claim construction is to be *informed by* reference to the specification. *See Nazomi Communs., Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368 (Fed. Cir. 2005) ("[T]he intrinsic evidence—the claims, specification, and prosecution history— … must inform the court's claim construction."). Defendants' efforts to define the composition of Data Item Profiles narrowly such that they must include each of "the data item's address, the linguistic patterns of the data item, and the frequencies with which those patterns recur" should be rejected. Defendants have not established that the patentee limited the scope of the invention to the specific embodiments described in the specification. Such unjustified importation of limitations from the specification is improper as a matter of law. *See Phillips*, 415 F.3d at 1319-20.

The Claim itself specifies that the "data item profile" must be "representative of a second linguistic pattern of a corresponding plural data item." '067 Patent (Ex. A) at 25:40-42. Thus, Plaintiff's construction, consistent with the specification, would result in a the data item profile being "a collection of information about a data item that is representative of a second linguistic pattern … ."

E.     "Search Request Profile"

| **NXN TECH'S CONSTRUCTION** | **DEFENDANTS' CONSTRUCTION** |
|---|---|
| A collection of information about a search request. | A file that includes information about the linguistic patterns in search request data. |

The Claim itself requires that the "search request profile" is "representative of a third linguistic pattern of said search request data." '067 Patent at 25:52-54. Thus, Plaintiff's construction would result in "a collection of information about a search request that is representative of a third linguistic pattern of said search request." Defendants' construction

would be redundant: "a file that includes information about the linguistic patterns in search request data" that is "representative of a third linguistic pattern of said search request."

### F. "Psychological Profile"

| **NXN TECH'S CONSTRUCTION** | DEFENDANTS' CONSTRUCTION |
|---|---|
| Information regarding the behavioral and/or personality traits of a person. | Indefinite; or One or more profiles pertaining to mental processes. |

Defendants fail to demonstrate in their Response that the term "psychological profile" is "insolubly ambiguous." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). In fact, Defendants' wholly fail to provide any support or argument for their indefiniteness argument, save for a statement that "Defendants continue to believe defining the metes and bounds of psychological profile is problematic at best." (Response at 27.) Plaintiff has proposed a reasonable construction supported by the dictionary definitions of "profile." In response, Defendants now argue that the construction proposed by Plaintiff during the meet and confer period is "consistent with the use of the term in the patent and its plain and ordinary meaning." (Response at 27.) At a minimum, having agreed to Plaintiff's proposed construction, the term obviously has a discernable meaning, and the Court should reject Defendant's half-hearted argument that "psychological profile" is indefinite.

Plaintiff's currently proposed construction is preferable to Defendants' proposed compromise construction because "one or more profiles pertaining to mental processes" does not capture the full scope of psychological traits.

### G. "Data Item"

| **NXN TECH'S CONSTRUCTION** | DEFENDANTS' CONSTRUCTION |
|---|---|
| A document, web site or other piece of textual data that may be searched. | Documents, web sites, and other textual data that may be subjected to search by user. |

Defendants argue in the response that "data items" must be capable of being searched "by a user." (Response at 28.) The defect in Defendants' proposal is that it could lead to the

improper conclusion that the data items must be directly searchable by the user, *i.e.*, directly reviewed by the user as part of the process of identifying documents of interest. As stated in the specification, "[t]he system then applies the original search string to a standard match engine to obtain a list of data item addresses that potentially match the user's search requirements and then retrieves the data item profiles corresponding to the data item addresses on the list." '067 Patent at 5:59–63. Thus, even though the user provides the search string, the user is not necessarily directly searching the potentially matching documents. Rather, a standard match engine may be applied. Defendants' proposed construction is at best confusing regarding this aspect, and is potentially misleading.

### III. CONCLUSION.

Plaintiff's proposed constructions properly rely on intrinsic evidence, and are not contradicted by extrinsic evidence. More importantly, none of Plaintiff's proposed constructions seek to import unwarranted limitations into the claims, nor do they violate basic structure of the dependent claims while Defendants' constructions are geared at advancing their narrow non-infringement positions. For all of the foregoing reasons, Plaintiff respectfully submits that its proposed constructions and proffered meanings be adopted by this Court.

Dated: August 24, 2009                                  Respectfully submitted,

                                                        By: /s/ Marc A. Fenster
                                                        Marc A. Fenster, CA Bar No. 181067
                                                        E-mail:  mfenster@raklaw.com
                                                        Stanley H. Thompson, CA Bar No. 198825
                                                        Email: sthompson@raklaw.com
                                                        RUSS, AUGUST & KABAT
                                                        12424 Wilshire Boulevard, 12th Floor
                                                        Los Angeles, California 90025
                                                        Telephone: 310/826-7474
                                                        Facsimile: 310/826-6991

Andrew W. Spangler - Lead Counsel
TX Bar No. 24041960
E-mail: spangler@spanglerlawpc.com
SPANGLER LAW P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
Telephone: 903/753-9300
Facsimile: 903/553-0403

David M. Pridham, R.I. Bar # 6625
E-mail: david@pridhamiplaw.com
LAW OFFICE OF DAVID PRIDHAM
25 Linden Road
Barrington, Rhode Island 02806
Telephone: 401/633-7247
Facsimile: 401/633-7247

Patrick R. Anderson, MI SB #P68961
E-mail: patrick@prapllc.com
PATRICK R. ANDERSON PLLC
4225 Miller Road, Bldg. B-9, Suite 358
Flint, Michigan 48507
Telephone: 810/275-0751
Facsimile: 248/928-9239

Ari Rafilson. TX State Bar No. 24060456
Email: ari@rafilsonlawpllc.com
THE RAFILSON LAW FIRM, PLLC
1318 Royal Palm Lane
Carrollton, Texas 75007
Telephone: 214/789-4035
Facsimile: 972/236-5397

**Attorneys for Plaintiff**
**PA ADVISORS, LLC**

# CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on August 24, 2009 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: August 24, 2009  /s/ Marc A. Fenster
Marc A. Fenster