4   PA ADVISORS, L.L.C.          .  CIVIL ACTION NO. 2:07CV480

5   VS.                          .  TEXARKANA, TEXAS

6   GOOGLE, INC., ET AL.         .  SEPTEMBER 17, 2009

7                                .  9:00 A.M.

8                  CLAIM CONSTRUCTION

9       BEFORE THE HONORABLE CHIEF JUDGE DAVID FOLSOM,

10            UNITED STATES DISTRICT JUDGE.

11  APPEARANCES:

12  FOR PLAINTIFF
    PA ADVISORS, L.L.C.:              MR. ANDREW WESLEY SPANGLER
13                                     SPANGLER LAW, P.C.
                                       208 N. GREEN ST.
14                                     SUITE 300
                                       LONGVIEW, TX. 75601
15
                                       MR. ARI BENJAMIN RAFILSON
16                                     THE RAFILSON LAW FIRM,
                                       P.L.L.C.
17                                     1318 ROYAL PALM LANE
                                       CARROLLTON, TX. 75007
18
                                       MR. DAVID MICHAEL PRIDHAM
19                                     DAVID PRIDHAM
                                       LAW OFFICE OF DAVID PRIDHAM
20                                     25 LINDEN ROAD
                                       BARRINGTON, RI. 02806
21
                                       MR. JOHN MARCUS BUSTAMANTE
22                                     BUSTAMANTE, P.C.
                                       54 RAINEY STREET
23                                     NO. 721
                                       AUSTIN, TX. 78701
24
                                       MR. MARC A. FENSTER
25                                     RUSS AUGUST & KABAT

```
 1                                    12424 WILSHIRE BOULEVARD
                                      12TH FLOOR
 2                                    LOS ANGELES, CA. 90025

 3                                    MR. PATRICK ROLF ANDERSON
                                      PATRICK R. ANDERSON,
 4                                    P.L.L.C.
                                      4225 MILLER RD.
 5                                    BLDG. B-9
                                      SUITE 358
 6                                    FLINT, MI. 48507

 7   FOR DEFENDANT
     GOOGLE, INC.:                    MR. BRIAN C. CANNON
 8                                    QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES - REDWOOD
 9                                    555 TWIN DOLPHIN DR.
                                      SUITE 560
10                                    REDWOOD SHORES, CA. 94065

11                                    MR. CHARLES K. VERHOEVEN
                                      QUINN EMANUEL URQUHART
12                                    OLIVER & HEDGES, L.L.P. -
                                      SAN FRANCISCO
13                                    50 CALIFORNIA STREET
                                      22ND FLOOR
14                                    SAN FRANCISCO, CA. 94111

15                                    MR. BRAD COFFEY
                                      BECK REDDEN & SECREST
16                                    1221 MCKINNEY STREET
                                      SUITE 4500
17                                    ONE HOUSTON CENTER
                                      HOUSTON, TX.  77010
18
     YAHOO! INC.:                     MR. JASON C. WHITE
19                                    HOWREY, L.L.P. - CHICAGO
                                      321 NORTH CLARK STREET
20                                    SUITE 3400
                                      CHICAGO, IL. 60610
21
                                      MR. JOHN FREDERICK BUFE
22                                    POTTER MINTON
                                      P.O. BOX 359
23                                    TYLER, TX. 75710

24

25
```

```
 1   COURT REPORTER:                  MS. LIBBY CRAWFORD, CSR
                                      OFFICIAL COURT REPORTER
 2                                    500 STATE LINE AVENUE
                                      TEXARKANA, TEXAS 75501
 3                                    903/794-4067

 4
     PROCEEDINGS RECORDED BY STENOMASK VERBATIM REPORTING,
 5
     TRANSCRIPT PRODUCED BY CAT SYSTEM.
 6

 7

 8

 9

10                              INDEX
11
```

THE COURT – PRELIMINARY CLAIM CONSTRUCTIONS – SIX TERMS.... 6

PLAINTIFF'S AGREEMENT TO PROPOSED TERMS BY MR. FENSTER..... 7

DEFENDANTS' AGREEMENT TO PROPOSED TERMS BY MR. VERHOEVEN... 8

PLAINTIFF'S PATENT BACKGROUND BY MR. FENSTER.............. 10

COURT'S EXHIBIT 1 ADMITTED................................ 11

"LINGUISTIC PATTERN"

     BY MR. FENSTER....................................... 13

     BY MR. VERHOEVEN..................................... 19

     BY MR. FENSTER....................................... 36

"SEGMENT"

     BY MR. FENSTER....................................... 40

     BY MR. VERHOEVEN..................................... 40

     BY MR. FENSTER....................................... 43

     MR. VERHOEVEN........................................ 45

1      BY MR. FENSTER................................... 49

2  "SEARCH REQUEST PROFILE"

3      BY MR. FENSTER................................... 50

4      BY MR. VERHOEVEN................................. 50

5      BY MR. FENSTER................................... 51

6      BY MR. VERHOEVEN................................. 53

7  "USER PROFILE/USER DATA PROFILE"

8      BY MR. FENSTER................................... 54

9      BY MR. VERHOEVEN................................. 55

10     BY MR. FENSTER................................... 55

11     BY MR. VERHOEVEN................................. 61

12     BY MR. FENSTER................................... 69

13 "DATA ITEM PROFILE"

14     BY MR. FENSTER................................... 72

15     BY MR. VERHOEVEN................................. 74

16 "PSYCHOLOGICAL PROFILE"

17     BY MR. FENSTER................................... 75

18     BY MR. VERHOEVEN................................. 75

19     BY MR. FENSTER................................... 77

20     BY MR. VERHOEVEN................................. 78

21     BY MR. FENSTER................................... 79

22 "TEXT ITEM"

23     BY MR. FENSTER................................... 79

24     BY MR. CANNON................................... 80

25     BY MR. FENSTER................................... 81

1        BY MR. CANNON........................................ 82

2   THE COURT............................................... 83

3   REPORTER'S CERTIFICATION................................ 84

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

TEXARKANA, TEXAS

SEPTEMBER 17, 2009

1 (OPEN COURT)

2 THE COURT: PLEASE BE SEATED. GOOD MORNING. WE ARE

3 HERE FOR CLAIM CONSTRUCTION. ARE THE PARTIES READY TO GO

4 FORWARD?

5 MR. VERHOEVEN: YES, YOUR HONOR.

6 MR. FENSTER: YES, YOUR HONOR.

7 THE COURT: I SEE I WAS RATHER LIBERAL AND GAVE EACH

8 SIDE TWO HOURS. WITH TEN TERMS, I CAN'T IMAGINE WE WILL NEED

9 THAT MUCH TIME, BUT I GUESS WE WILL --

10 MR. VERHOEVEN: WE HAVE DISCUSSED THE MATTER, AND WE

11 WILL BE FINISHED IN 90 MINUTES EACH.

12 THE COURT: GOOD.

13 MR. FENSTER: YES, SIR, YOUR HONOR.

14 THE COURT: AND WE MAY EVEN IMPROVE UPON THAT. I

15 HAVE HAD SOME TIME TO LOOK AT A PRELIMINARY CLAIM

16 CONSTRUCTION, AS I CALL IT, ON SIX OF THE TEN TERMS, AND I AM

17 GOING TO LET MR. KEYZER VERY SHORTLY PASS OUT A COPY. IT'S

18 WITHOUT ANY EXPLANATION. I AM NOT SAYING ABSOLUTELY THIS IS

19 WHERE I AM GOING ON THE CONSTRUCTION OF THESE SIX TERMS, BUT

20 YOU ARE GOING TO HAVE TO CONVINCE ME WHY THEY ARE WRONG, IF

21 YOU FEEL THEY ARE, DURING YOUR PRESENTATION.

22 SO I AM GOING TO LET MR. KEYZER PASS THOSE OUT, THEN I AM

1  GOING TO TAKE A 10 OR 15 MINUTE RECESS, LET THE PARTIES LOOK

2  AT THEM AND SEE IF WE HAVE ANY ROOM FOR AGREEMENT.  I THOUGHT

3  THESE WERE SIX TERMS THAT PERHAPS THE PARTIES COULD AGREE UPON

4  THIS CONSTRUCTION.  IF NOT, LIKE I SAID, BE PREPARED TO SAY

5  WHY YOU FEEL THESE ARE WRONG, AND MAYBE THAT WILL EVEN SHORTEN

6  THE ANTICIPATED 90 MINUTES.  SO, I'LL TAKE A BRIEF RECESS. WE

7  WILL TAKE 10 OR 15 MINUTES, AND IF YOU NEED A LITTLE MORE TIME

8  LET ME KNOW AND WE WILL JUST SEE IF THERE IS ANY ROOM FOR

9  AGREEMENT ON THESE SIX TERMS.  WE WILL BE IN RECESS.

10      (RECESS AT 9:01 A.M., UNTIL 9:20 A.M., OPEN COURT)

11          THE COURT: PLEASE BE SEATED.  WELL, DO WE HAVE ANY

12  ROOM FOR AGREEMENT ON ANY OF THESE SIX TERMS?

13          MR. FENSTER: YOUR HONOR, THIS IS MARC FENSTER FOR

14  THE PLAINTIFF.  I AM PLEASED TO REPORT THAT WE DO.

15          THE COURT: WHICH ONES?  ALL SIX, I HOPE.

16          MR. FENSTER: WELL, PLAINTIFF IS PREPARED TO SUBMIT

17  ON ALL BUT ONE, YOUR HONOR.  WE HAVE AGREEMENT ON BOTH SIDES

18  WITH RESPECT TO TERMS 1, DATA ITEM, 3 --

19          THE COURT: OKAY.  EXCUSE ME?  THREE?

20          MR. FENSTER:  -- 3: SEARCH REQUEST DATA --

21          THE COURT: OKAY.

22          MR. FENSTER:  -- AND NUMBER 6, USER LINGUISTIC DATA.

23          THE COURT: THREE OUT OF SIX, THAT'S BETTER THAN

24  NORMAL.

25          MR. FENSTER: PRETTY GOOD.

1        THE COURT: AND CAN PLAINTIFF AGREE TO ANY OF THE

2 THREE REMAINING TERMS?

3        MR. FENSTER: PLAINTIFF DOES AGREE, YOUR HONOR, TO

4 NUMBERS 2 AND 4 AS WELL.

5        THE COURT: WAIT, WAIT. PLAINTIFF AGREES. OKAY.

6 WHAT ABOUT NUMBER 5? ANY ROOM FOR DEFENDANT -- DOES DEFENDANT

7 AGREE WITH 5?

8        MR. VERHOEVEN: YOUR HONOR, DEFENDANTS AGREE WITH ALL

9 OF THEM EXCEPT 2 AND 4, SO WE DO AGREE WITH 5.

10        THE COURT: WAIT. I GUESS I AM A LITTLE CONFUSED. I

11 THOUGHT WE WERE IN AGREEMENT ON 1, 3, AND 6, THAT BOTH PARTIES

12 AGREED ON --

13        MR. VERHOEVEN: THAT'S CORRECT, YOUR HONOR.

14        THE COURT: BUT I THOUGHT YOU THEN SAID DEFENDANT

15 AGREES WITH 2, DID YOU SAY?

16        MR. VERHOEVEN: THE DEFENDANT AGREES WITH 1, 3, 5,

17 AND 6.

18        THE COURT: OKAY. SO YOU AGREE -- I AM SORRY.

19 DEFENDANT AGREES WITH 5, PLAINTIFF DOESN'T?

20        MR. VERHOEVEN: THAT'S CORRECT. AND THE PLAINTIFF

21 AGREES WITH 2 AND 4, BUT NOT THE DEFENDANT.

22        THE COURT: I AM SORRY. I JUST MISUNDERSTOOD. WELL,

23 SO IN DUE TIME WE WILL HEAR ON THOSE THREE TERMS WHERE THERE

24 IS NOT AGREEMENT WHY YOU FEEL THE COURT IS MAKING A MISTAKE.

25 DON'T BE BASHFUL TO SAY WHY BECAUSE WE WILL CERTAINLY LISTEN.

1 SO THAT SHOULD SAVE US SOME ADDITIONAL TIME.  I HOPE THE

2 PARTIES DON'T PLAN ON JUST USING THE 90 MINUTES ON THE ONES

3 UNAGREED UPON.

4      SO WITH THAT, I DON'T KNOW IF I ADDRESSED THIS IN THE

5 ORDER OR AT THE SCHEDULING CONFERENCE, WHAT I PREFER IS A

6 CLAIM TERM OR RELATED TERM, RESPONSE, REPLY, AND THEN GO TO

7 THE -- IS THAT HOW THE PARTIES ANTICIPATE GOING FORWARD?

8           MR. FENSTER: YES, IT IS.

9           THE COURT: GOOD.  GOOD.

10           MR. VERHOEVEN: YES, YOUR HONOR.

11           THE COURT: SO LET'S -- LET'S START.

12           MR. FENSTER: YOUR HONOR, DO YOU HAVE A PREFERENCE IN

13 TERMS OF ORDER OF TERMS?

14           THE COURT: NO, I AM GOING TO LEAVE THAT UP TO THE

15 PARTIES AND, YOU KNOW, AFTER -- I HAVE LONG SINCE FORGOTTEN

16 HOW MANY OF THESE I HAVE CONDUCTED.  I WOULDN'T SPEND A LOT OF

17 TIME ON THE GENERAL PRINCIPLES OF LAW, UNLESS THERE IS A

18 PARTICULAR CASE THAT APPLIES TO A PARTICULAR ISSUE.  IF I

19 DON'T UNDERSTAND THEM BY NOW, I AM PROBABLY NEVER GOING TO.

20 SO LET'S -- LET'S TRY TO ADDRESS CERTAINLY CASES THAT REALLY

21 RELATE TO AN ISSUE INVOLVED IN THIS, BUT I DON'T NEED A LOT OF

22 TIME ON GENERAL CLAIM CONSTRUCTION PRINCIPLES.

23           MR. VERHOEVEN: JUST ONE SECOND, YOUR HONOR.  COUNSEL

24 WOULD LIKE TO CONFER.

25      (SIDE BAR DISCUSSION BETWEEN MR. VERHOEVEN AND MR.

1   FENSTER, OFF THE RECORD)

2       (OPEN COURT)

3           MR. FENSTER: GOOD MORNING, YOUR HONOR.

4           THE COURT: GOOD MORNING.

5           MR. FENSTER: YOUR HONOR, WHAT I THOUGHT I WOULD DO

6   IS I WOULD SPEND TWO MINUTES JUST TELLING YOU A LITTLE BIT

7   ABOUT THE BACKGROUND OF THE PATENT AND THE INVENTOR, AND THEN

8   I WILL MOVE ON TO LINGUISTIC PATTERN WHICH IS THE FIRST

9   DISPUTED TERM WHICH IS NOT ADDRESSED BY THE COURT'S

10  PRELIMINARY --

11          THE COURT: CERTAINLY YOU CAN TAKE MORE THAN TWO

12  MINUTES IF YOU LIKE, BUT --

13          MR. FENSTER: YOUR HONOR, THIS INVENTION THAT'S

14  CLAIMED IN THE '067 PATENT IS BY A MR. ILYA GELLER, WHO IS A

15  RUSSIAN IMMIGRANT WHO IS A SCIENTIST IN RUSSIA WHO STUDIED

16  WHAT HE CALLS THE PRECISE SCIENCES.  HE STUDIED COMPUTER

17  SCIENCE.  HE WAS A PROGRAMMER, ANOTHER PRECISE SCIENTIST.  HE

18  IMMIGRATED TO THE UNITED STATES TO FULFILL HIS DREAM OF

19  BECOMING A SCIENTIST.  AND WHAT HE STUDIED WHEN HE CAME HERE

20  IS HE BECAME A SCHOLAR IN THE PHILOSOPHY OF LANGUAGE, WHICH IS

21  VERY DIFFERENT THAN THE PRECISE SCIENCES, AND IT GAVE HIM A

22  UNIQUE COMBINATION OF SKILLS THAT ALLOWED HIM TO COME UP WITH

23  THE INVENTION THAT IS CLAIMED IN THE '067 PATENT.

24      THE PATENT RELATES TO AN INVENTION THAT OCCURRED IN 1998.

25  SO IN THE LATE 1990S, YOU MAY RECALL THAT THE INTERNET WAS

1　BOOMING AND THE AMOUNT OF INFORMATION THAT WAS AVAILABLE ON

2　THE INTERNET WAS EXPLODING AND THERE WAS NO EFFECTIVE WAY TO

3　GET THAT INFORMATION.  KEY WORD SEARCHES WOULD -- WOULD GIVE

4　HUNDREDS AND HUNDREDS OF RESULTS THAT WEREN'T NECESSARILY

5　TAILORED TO THE USER.  AND WHAT MR. GELLER RECOGNIZED IS WE

6　NEED A BETTER WAY TO SEARCH.  WE NEED A WAY TO SIFT THROUGH

7　THE RESULTS THAT COME BACK FROM A KEY WORD SEARCH AND GET TO

8　TAILORED RESULTS THAT ARE MORE SPECIFIC TO THE USER.

9　　　　AND THE WAY HE DID THAT WITH HIS PHILOSOPHY OF LANGUAGE

10　BACKGROUND IS HE RECOGNIZED THAT THE LANGUAGE THAT PEOPLE USE

11　REFLECTS THEIR BACKGROUND.  AND HE DESCRIBED THOSE AS

12　LINGUISTIC PATTERNS, AND HE CAME UP WITH A WAY, HE INVENTED A

13　METHOD TO USE THOSE LINGUISTIC PATTERNS TO TAILOR THE SEARCH.

14　AND THAT'S WHAT'S DESCRIBED IN THE `067 PATENT.

15　　　　OH, YOUR HONOR, I HAVE SLIDES FOR THE COURT, WHICH I

16　BELIEVE HAVE BEEN PASSED UP.  IF YOU WOULD LIKE TO FOLLOW

17　ALONG, I WILL BE REFERRING --

18　　　　　　THE COURT: BEFORE I OVERLOOK THAT, WHY DON'T WE MAKE

19　A CLEAN COPY OF THE COURT'S PRELIMINARY CLAIM CONSTRUCTION A

20　PART OF THE RECORD.  DO YOU HAVE A COPY?

21　　　　　　THE CLERK: YES, I DO.

22　　　　　　THE COURT: ALREADY HAS ONE.  MR. KEYZER IS IN

23　ADVANCE OF ME.  SO WE WILL MAKE THAT A PART OF THE RECORD AS

24　THE COURT'S EXHIBIT 1.

25　　　　　　MR. FENSTER: SO, YOUR HONOR, IF YOU HAVE THE

1   NOTEBOOK AND DO WANT TO FOLLOW ALONG IN PLAINTIFF'S NOTEBOOK,

2   I WILL BE REFERRING TO THE SLIDES BY THE NUMBER, WHICH IS VERY

3   SMALL IN THE LOWER RIGHT-HAND CORNER.  I AM CURRENTLY UNDER

4   THE INTRO TAB, TAB NUMBER 1, AND I WILL BE TURNING TO SLIDE

5   NUMBER 2, PATRICK.

6       YOUR HONOR, AS DESCRIBED IN THE SUMMARY OF THE INVENTION,

7   WHAT MR. GELLER WAS -- INVENTED WAS A METHOD TO PERSONALIZE

8   INTERNET SEARCHES.  IT RELATES TO THE USE OF LINGUISTIC

9   PATTERNS OF DOCUMENTS TO ASSIST A USER IN LOCATING REQUESTED

10  DATA THAT IN ADDITION TO MATCHING THE USER'S SPECIFIC REQUEST,

11  ALSO CORRESPONDS TO THE USER'S CULTURAL, EDUCATIONAL,

12  PROFESSIONAL, AND SOCIAL BACKGROUNDS.

13      NOW, I NEED TO CORRECT A MISPERCEPTION OF THE DEFENDANTS

14  IN TERMS OF THE SCOPE OF THIS PATENT.  SLIDE 3, PLEASE.  YOUR

15  HONOR, DEFENDANTS MISCHARACTERIZE MR. GELLER'S INVENTION.  IN

16  THEIR RESPONSE BRIEF AT PAGE 11, THEY STATE THAT THE PATENT

17  PURPORTS TO SOLVE THIS PROBLEM OF PERSONALIZING A SEARCH BY

18  SEARCHING NOT FOR WORDS OR CONTENT BUT RATHER BY PROFILES FROM

19  EXTRACTED LINGUISTIC PATTERNS.

20      YOUR HONOR, WHAT MR. GELLER INVENTED WAS NOT A METHOD OF

21  SEARCH THAT EXCLUDES KEY WORD SEARCHING BUT RATHER SOMETHING

22  THAT IMPROVES KEY WORD SEARCHING.  AND SO WHAT MR. GELLER

23  INVENTED AND IS SPECIFICALLY DESCRIBED IN THE PATENT IS A

24  METHOD OF SEARCHING THAT TAKES THE SEARCH RESULTS THAT YOU GET

25  FROM A NORMAL KEY WORD SEARCH AND REFINES THOSE -- THOSE

1    RESULTS.  AND SO GO TO SLIDE 4, PLEASE.

2         THE SPECIFICATION MAKES CLEAR THAT THE INVENTION RELATES

3    TO THE USE OF LINGUISTIC PATTERNS OF DOCUMENTS TO ASSIST A

4    USER IN LOCATING REQUESTED DATA THAT IN ADDITION TO MATCHING

5    THE USER'S SPECIFIC REQUEST, ALSO CORRESPONDS TO THE USER'S

6    CULTURAL BACKGROUND AND PSYCHOLOGICAL PROFILE.

7         HE GOES ON IN THE PATENT AT COLUMN 4, LINES 11-16,

8    DESCRIBING THE INVENTION AS FOLLOWS: THAT THE DOCUMENTS WITH

9    PROFILES HAVING THE HIGHEST MATCHING MAGNITUDES ARE PRESENTED

10   TO THE USER AS NOT ONLY MATCHING THE SUBJECT OF THE SEARCH

11   STRING, MEANING THE RESULT OF THE NORMAL KEY WORD SEARCH

12   ENGINE, BUT ALSO CORRESPONDING TO THE USER'S CULTURAL

13   BACKGROUND AND PROFILE.

14        I WILL ALSO REFER YOUR HONOR TO A PORTION OF THE

15   SPECIFICATION AT COLUMN 24 -- AT COLUMN 4, LINES 8-26, THE

16   PATENT DESCRIBES AN OPTIONAL STEP OF THE INVENTION APPLYING

17   THE INVENTION -- APPLYING THE METHOD TO THE RESULTS THAT YOU

18   GET FROM A NORMAL SEARCH ENGINE.  SO, FOR EXAMPLE, IF YOU LOOK

19   DOWN AT LINE 22 IT STATES: IT MAY BE PREFERABLE TO UTILIZE A

20   STANDARD SEARCH ENGINE SUCH AS, FOR EXAMPLE, ALTAVISTA TO

21   FIRST RETURN A SMALLER SET OF DATA ITEM ADDRESSES THAT

22   DIRECTLY MATCH THE SEARCH STRING BEFORE APPLYING THE METHOD OF

23   COMPARING USER LINGUISTIC DATA.  SO HIS METHOD DIDN'T SUPPLANT

24   THE KEY WORD SEARCH BUT RATHER IMPROVED UPON IT.

25        WITH THAT BACKGROUND, YOUR HONOR, I'D LIKE TO TURN TO

1   LINGUISTIC PATTERN AS THE FIRST TERM, AND GO TO SLIDE 5,

2   PLEASE.  YOUR HONOR, LINGUISTIC PATTERN APPEARS THROUGHOUT THE

3   ASSERTED CLAIMS AND APPEARS MOST NOTABLY IN CLAIM 1, THE FIRST

4   OF TWO INDEPENDENT CLAIMS THAT WE WILL DISCUSS TODAY.

5   PLAINTIFF'S PROPOSED CONSTRUCTION IS A COMBINATION OF VARIOUS

6   PARTS OF SPEECH, SUCH AS NOUNS, VERBS, ADJECTIVES, ETCETERA.

7   THAT PART OF THE DEFINITION IS COMMON TO BOTH PLAINTIFFS AND

8   DEFENDANTS.

9            THE COURT: WHAT ABOUT THE TERM REPEATING

10  COMBINATION?  DO YOU HAVE ANY PROBLEM WITH THAT?

11           MR. FENSTER: I CERTAINLY DO, YOUR HONOR.

12           THE COURT: VERY WELL.

13           MR. FENSTER: THE DEFENDANTS' PROPOSED CONSTRUCTION

14  ADDS TWO LIMITATIONS THAT PLAINTIFFS DO NOT AGREE WITH AND WE

15  BELIEVE IS NOT SUPPORTED BY THE INTRINSIC RECORD.  THE FIRST

16  IS THAT THE COMBINATION OF WORDS MUST BE REPEATING IN ORDER TO

17  BE A PATTERN.  AND THE SECOND IS THAT IN ORDER TO BE A

18  PATTERN, THE COMBINATION OF WORDS MUST REFLECT THE AUTHOR'S

19  CULTURAL BACKGROUND AND PSYCHOLOGICAL PROFILE.  NEITHER OF

20  THOSE ADDITIONAL LIMITATIONS ARE SUPPORTED BY THE CLAIM.  AND

21  IF YOU'LL PERMIT ME, I'LL TAKE THOSE OUT OF ORDER.  SO SLIDE

22  6, PLEASE.

23      YOUR HONOR, DEFENDANTS' DEFINITION AND PLAINTIFF'S BOTH

24  COME FROM THE SPECIFICATION.  THIS IS AT COLUMN 3, LINES 45-

25  51.  IN THE CONTEXT OF DESCRIBING TEXTS COMPOSED BY THE USER,

1   OR USER LINGUISTIC DATA AS IT'S REFERRED TO IN THE PATENT, THE

2   SPECIFICATION DOES DEFINE LINGUISTIC PATTERNS.  IT STATES: ALL

3   TEXTS COMPOSED BY THE USER, OR ADOPTED BY THE USER, CONTAIN

4   CERTAIN RECURRING LINGUISTIC PATTERNS, OR COMBINATIONS OF

5   VARIOUS PARTS OF SPEECH, NOUNS, VERBS, ADJECTIVES, IN

6   SENTENCES THAT REFLECT THE USER'S CULTURAL, EDUCATIONAL,

7   SOCIAL BACKGROUNDS AND PSYCHOLOGICAL PROFILE.  I AM GOING TO

8   SHORTEN THAT THROUGHOUT THE HEARING TODAY AS JUST BACKGROUND

9   AND PSYCHOLOGICAL PROFILE.

10      DEFENDANTS TAKE EVERYTHING AFTER LINGUISTIC PATTERNS AS

11   PART OF THEIR DEFINITION.  IT'S NOT SUPPORTED IN THE CLAIMS.

12   THE REASON IS THE CLAIMS REFER TO NOT ONE TYPE OF LINGUISTIC

13   PATTERN BUT THREE.  THE NEXT SLIDE, PLEASE.

14      YOUR HONOR, IN CLAIM 1 IT REFERS TO THREE LINGUISTIC

15   PATTERNS.  THERE IS A FIRST LINGUISTIC PATTERN OF THE USER

16   LINGUISTIC DATA.  THERE IS A SECOND LINGUISTIC PATTERN OF A

17   DATA ITEM.  THAT'S THE ITEMS TO BE SEARCHED.  THAT'S THE THIRD

18   PARTY GENERATED DATA ON THE INTERNET THAT THE USER IS

19   SEARCHING.  THE USER DIDN'T WRITE IT.  THIRD PARTIES DID.  THE

20   THIRD LINGUISTIC PATTERN IS OF A SEARCH REQUEST DATA.  SO THIS

21   IS A LINGUISTIC PATTERN THAT IS EXTRACTED FROM THE SEARCH

22   STRING THAT THE USER ENTERS.  OKAY.

23      SO, WE'VE GOT THREE -- THE LINGUISTIC PATTERN IS USED IN

24   THREE DIFFERENT CONTEXTS TO REFER TO THREE DIFFERENT THINGS.

25   THE COURT'S CONSTRUCTION HAS TO BE CONSISTENT WITH ALL THREE.

1  DEFENDANTS' CONSTRUCTION IS NOT.  DEFENDANTS' CONSTRUCTION

2  ORIGINALLY SAID THAT THE LINGUISTIC PATTERN HAS TO REFLECT THE

3  USER'S BACKGROUND.

4      IN OUR OPENING BRIEF WE POINTED OUT THAT THAT'S

5  INCONSISTENT WITH THE SECOND AND THIRD LINGUISTIC PATTERNS AND

6  WOULD THEREFORE EXCLUDE THOSE PATTERNS.  SO, THEY ADAPTED AND

7  CHANGED, MODIFIED THEIR PROPOSAL TO REFLECTING THE AUTHOR'S

8  BACKGROUND AND PROFILE.

9      WELL, THE PROBLEM WITH THAT, YOUR HONOR, IS THAT IT'S

10  INCONSISTENT WITH THE CLAIMS BECAUSE THE CLAIMS DO NOT REQUIRE

11  THAT THE SECOND PATTERN REFLECT THE DATA ITEM AUTHOR'S

12  BACKGROUND AND PROFILE.  NEXT SLIDE, 8.

13      DEFENDANTS' CONSTRUCTION IMPROPERLY REQUIRES ALL PATTERNS

14  TO REFLECT EACH AUTHOR'S BACKGROUND.  AND THERE IS NO SUCH

15  REQUIREMENT IN THE PATENT.  THE CLAIM DOES NOT REQUIRE THAT

16  THE SECOND LINGUISTIC PATTERN REFLECT THE DATA ITEM AUTHOR'S

17  BACKGROUND.  ALL IT REQUIRES IS THAT THE SECOND LINGUISTIC

18  PATTERN BE UNIQUE TO THE CORRESPONDING DATA ITEM.  THE CLAIM

19  DOESN'T SAY ANYTHING ABOUT IT REFLECTING THE AUTHOR'S

20  BACKGROUND, NOR DOES THE THIRD.  SLIDE 9.

21      THE THIRD -- THIS IS THE TEXT FROM PARAGRAPH D OF CLAIM 1

22  WHERE IT INTRODUCES THE TERM THIRD LINGUISTIC PATTERN.  AND AS

23  THE COURT CAN SEE, THERE IS NO REQUIREMENT IN THE CLAIM

24  LANGUAGE THAT THE THIRD LINGUISTIC PATTERN REPRESENT THE

25  USER'S BACKGROUND.

1      NOW, SO NOW IF WE GO BACK TO SLIDE 10, PLEASE, GO BACK TO

2   THE SPECIFICATION FROM WHICH THE TWO DEFINITIONS OCCUR, NOW

3   THAT WE'VE SEEN THE CONTEXT OF THE CLAIM IN WHICH THE

4   LINGUISTIC DATA IS USED IN THREE DIFFERENT CONTEXTS, ONE BEING

5   USER DATA, NOW WE CAN SEE THAT THIS SPECIFICATION IS DEFINING

6   LINGUISTIC PATTERN IN THE CONTEXT OF USER DATA, BUT IT'S NOT

7   ADDRESSING THE SECOND AND THIRD LINGUISTIC PATTERNS.  AND

8   THAT'S WHY, YOUR HONOR, THE PLAINTIFF'S CONSTRUCTION ONLY

9   TAKES LINGUISTIC PATTERNS, OR COMBINATIONS OF VARIOUS PARTS OF

10  SPEECH, BECAUSE THE REST OF THAT IS UNIQUE TO USER DATA AND IS

11  NOT COMMON TO THE OTHER TWO TERMS.  SLIDE 11.

12      YOUR HONOR, DEFENDANTS' DEFINITION THAT IN ORDER TO BE A

13  PATTERN THE COMBINATION MUST REFLECT THE BACKGROUND AND

14  PROFILE  DOESN'T PROVIDE MUCH GUIDANCE TO THE JURY.  THE

15  PURPOSE OF CLAIM CONSTRUCTION IS TO CONSTRUE THE TERMS TO GIVE

16  GUIDANCE TO THE JURY SO THEY CAN DETERMINE WHETHER OR NOT THE

17  DEFENDANTS' PRODUCT INFRINGES.  THEIR -- DEFENDANTS' PROPOSED

18  LIMITATION THAT THE COMBINATION REFLECT CULTURAL BACKGROUND

19  WON'T GIVE MUCH GUIDANCE TO -- TO THE JURY.  IT IS A STATEMENT

20  OF THE PURPOSE, THE EFFECT, THE RESULT OF USING THE METHOD.

21      NOW, DEFENDANTS' PRIMARY ARGUMENT AS TO WHY INCLUDING

22  THAT -- WHY THAT LIMITATION SHOULD BE INCLUDED IS BECAUSE THEY

23  SAY IT'S THE FUNDAMENTAL PURPOSE OF THE INVENTION, RIGHT?  THE

24  WHOLE PURPOSE OF THIS INVENTION, AND WE AGREE, IS THAT IF YOU

25  APPLY THE METHOD OF COMPARING LINGUISTIC PATTERNS, YOU WILL

1   GET RESULTS THAT REFLECT THE BACKGROUND AND PROFILE.  BUT,

2   YOUR HONOR, THE CLAIM ALREADY REQUIRES IT EXPLICITLY.  NEXT

3   SLIDE, PLEASE, 11 -- 12.

4       THE CLAIM SEPARATELY SPECIFIES THAT THE RESULT OF USING

5   THE THREE SEPARATE LINGUISTIC PATTERNS IS THAT WHEREBY THE

6   LINGUISTIC CHARACTERISTICS OF THE DATA ITEM, I.E. THE SEARCH

7   RESULT, CORRESPOND TO THE USER'S SOCIAL BACKGROUND AND

8   PSYCHOLOGICAL PROFILE.  IT DOESN'T HAVE TO BE EMBEDDED IN THIS

9   LINGUISTIC PATTERN TERM BECAUSE IT'S ALREADY SEPARATELY

10  REQUIRED IN THE CLAIM LANGUAGE ITSELF.  AND THE CLAIM LANGUAGE

11  ITSELF DOES REFLECT THE FUNDAMENTAL PURPOSE OF THE INVENTION.

12  SO IT'S AN EXTRA LIMITATION THAT'S INCONSISTENT WITH THE

13  INTRINSIC EVIDENCE.

14      NOW, YOUR HONOR, I WILL ADDRESS THE REPEATING LIMITATION.

15  SO THE FIRST LIMITATION THAT DEFENDANTS PURPORT TO ADD TO

16  LINGUISTIC PATTERN IS THAT THE COMBINATION MUST BE REPEATING

17  IN ORDER TO BE A PATTERN.  THE CLAIMS DON'T REQUIRE THAT

18  PATTERNS BE REPEATING.  THEY JUST REFER TO LINGUISTIC

19  PATTERNS.

20      THE SPECIFICATION DOESN'T REQUIRE THAT COMBINATIONS OF

21  WORDS BE REPEATING TO BE A PATTERN.  YOUR HONOR, YOU WILL --

22  AS YOU GO THROUGH THE PATENT, YOU WILL READ THAT THE PATENT

23  DESCRIBES THAT PATTERNS CAN BE RECURRING.  AND ONE OF THE

24  EMBODIMENTS DESCRIBES COUNTING THE FREQUENCY WITH WHICH THOSE

25  PATTERNS RECUR.  BUT IT NEVER SAYS THAT IN ORDER TO BE A

1   PATTERN A COMBINATION OF WORDS HAS TO RECUR.  IT DOESN'T HAVE

2   TO BE A REPEATING COMBINATION, AND IT'S INCONSISTENT WITH THE

3   SPECIFICATION.  THE SPECIFICATION DESCRIBES AN EMBODIMENT

4   WHERE YOU COUNT THE FREQUENCY WITH WHICH THE PATTERNS OCCUR,

5   RIGHT?  SO THAT FREQUENCY COULD BE ONE.  IF IT'S ONE, IT'S NOT

6   REPEATING.  AND UNDER DEFENDANTS' DEFINITION, IT WOULDN'T BE A

7   LINGUISTIC PATTERN.

8       AND THAT'S JUST INCONSISTENT WITH THE SPECIFICATION.  THE

9   TWO LIMITATIONS THAT DEFENDANTS PURPORT TO SHOEHORN INTO THE

10  LINGUISTIC PATTERN TERM ARE NOT SUPPORTED BY EITHER THE CLAIMS

11  OR THE SPECIFICATION.  THEREFORE, NXN REQUESTS THAT YOUR HONOR

12  ADOPT PLAINTIFF'S CONSTRUCTION WHICH IS CONSISTENT WITH THE

13  SPECIFICATION AND THE CLAIMS.

14          THE COURT: RESPONSE?

15          MR. VERHOEVEN: GOOD MORNING, YOUR HONOR.

16          THE COURT: GOOD MORNING.

17          MR. VERHOEVEN: CHARLES VERHOEVEN REPRESENTING

18  GOOGLE, AND I AM GOING TO PRESENT ARGUMENT ON BEHALF OF GOOGLE

19  AND YAHOO! THIS MORNING ON THIS ISSUE.

20      IF WE COULD GO TO SLIDE 9, PLEASE.  AND, YOUR HONOR, I

21  BELIEVE YOU ALSO HAVE --

22          THE COURT: YES.

23          MR. VERHOEVEN:  -- THIS BLUE AND WHITE SET OF

24  SLIDES.  SO BEGINNING WITH LINGUISTIC PATTERN, YOUR HONOR, I

25  AM GOING TO SKIP OVER THE BACKGROUND OF THE INVENTION AND THE

1  CLAIM CONSTRUCTION RULES, JUST GO RIGHT TO THE MEAT OF IT.  I

2  AGREE GENERALLY WITH THE FRAMING OF THE DISPUTE BETWEEN THE

3  PARTIES ON THIS, YOUR HONOR, AND I'D LIKE TO ADDRESS THE

4  ADDITIONAL LANGUAGE THAT THE DEFENDANTS HAVE THAT A LINGUISTIC

5  PATTERN MUST REFLECT THE AUTHOR'S CULTURAL, EDUCATIONAL,

6  SOCIAL BACKGROUNDS AND THE AUTHOR'S PSYCHOLOGICAL PROFILE.

7  AND I'D LIKE TO DO IT ACCORDING TO THE RULES OF CLAIM

8  CONSTRUCTION, SO I AM GOING TO START WITH THE CLAIMS AND

9  ANALYZE THE CLAIMS, YOUR HONOR.  SO LET'S GO TO THE CLAIMS

10 FIRST.

11      I DON'T KNOW IF YOUR HONOR NOTICED, BUT THERE'S TWO

12 INDEPENDENT CLAIMS IN THIS PATENT.  THE FIRST ONE IS

13 INDEPENDENT CLAIM 1 IS OVER 500 WORDS LONG.  SO, I THINK WE

14 DID A PRETTY GOOD JOB NARROWING IT DOWN TO TEN TERMS OR SO.

15            THE COURT: I AGREE.

16            MR. VERHOEVEN: IT'S VERY WORDY, SO WHAT I'VE TRIED

17 TO DO HERE IS JUST ASSOCIATE THE ACTUAL ELEMENTS ON THE LEFT

18 OF THIS SLIDE WITH SOME HIGHLIGHTING WITH SORT OF A SUMMARY OF

19 WHAT IT'S SAYING.  AND I'M NOT GOING TO READ ALL THIS LANGUAGE

20 ON THE LEFT, YOUR HONOR, IN THE INTEREST OF TIME, BUT I

21 INCLUDED IT SO THAT YOU AND YOUR CLERKS COULD REFERENCE IT.

22      BUT ESSENTIALLY, IT'S A METHOD CLAIM.  AND THE FIRST STEP

23 IS EXTRACTING WHAT THEY CALL A USER PROFILE REPRESENTATIVE OF

24 A FIRST LINGUISTIC PATTERN, STEP 1(A).  AND THEN STEP 1(B) IS

25 CONSTRUCTING WHAT THEY CALL A DATA ITEM PROFILE WHICH IS ALSO

1 REPRESENTATIVE OF A LINGUISTIC PATTERN, REPRESENTATIVE OF A

2 SECOND LINGUISTIC PATTERN 1(B).  AND THEN STEP D IS EXTRACTING

3 WHAT'S REFERRED TO AS A SEARCH REQUEST PROFILE REPRESENTATIVE

4 OF A THIRD LINGUISTIC PATTERN.

5      SO WHAT WE'VE GOT HERE IS THREE DIFFERENT PROFILES ARE

6 EXTRACTED OR CONSTRUCTED BY THE SYSTEM: USER PROFILE, DATA

7 ITEM PROFILE, AND SEARCH REQUEST PROFILE.  AND THEN THE CLAIM

8 LANGUAGE SAYS THAT EACH OF THOSE PROFILES IS REPRESENTATIVE OF

9 A LINGUISTIC PATTERN: FIRST LINGUISTIC PATTERN, SECOND

10 LINGUISTIC PATTERN, THIRD LINGUISTIC PATTERN.  NEXT SLIDE,

11 PLEASE.

12      AND THEN THE CLAIM CONTINUES.  AND AGAIN I AM SUMMARIZING

13 THE CLAIM, YOUR HONOR, BUT IN STEP 1(E) THE CLAIM DESCRIBES

14 THE NEXT STEP OF THE METHOD IS COMPARING THE SEARCH REQUEST

15 PROFILE TO THE USER PROFILE.  AND THEN STEP F IS COMPARING THE

16 SEARCH REQUEST PROFILE TO THE DATA ITEM PROFILES.  AND THEN

17 STEP G AND H DESCRIBE CALCULATING AND SELECTING A DATA ITEM

18 PROFILE THAT HAS THE HIGHEST -- HIGHEST FINAL MATCH FACTOR.

19 SO YOU ARE MATCHING THESE PROFILES, YOUR HONOR, TO SEE WHO HAS

20 THE BEST, HIGHEST CORRELATION.  AND THE -- AND THE DATA ITEM

21 THAT HAS THE HIGHEST CORRELATION, HIGHEST MATCH FACTOR IS WHAT

22 YOU CALCULATE WITH STEPS G AND H.  AND THE NEXT SLIDE, PLEASE.

23      AND THEN IN THE FINAL STEP OF THE CLAIM, THE SYSTEM THEN

24 PRESENTS TO THE USER IN RESPONSE TO THE SEARCH A DATA ITEM

25 HAVING LINGUISTIC CHARACTERISTICS THAT SUBSTANTIALLY

1  CORRESPOND TO THE LINGUISTIC CHARACTERISTICS OF THE LINGUISTIC

2  DATA GENERATED BY THE USER.  AND THIS IS THE KEY LANGUAGE I'D

3  LIKE TO FOCUS YOUR HONOR IN ON.  IT SAYS: WHEREBY THE

4  LINGUISTIC CHARACTERISTICS OF THE DATA ITEM CORRESPOND TO THE

5  USER'S SOCIAL, CULTURAL, EDUCATIONAL, ECONOMIC BACKGROUND AS

6  WELL AS TO THE USER'S PSYCHOLOGICAL PROFILE.

7      SO IN THE CLAIM LANGUAGE ITSELF, YOUR HONOR, IT EXPRESSLY

8  SAYS THE END RESULT OF THIS PROCESS OF EXTRACTING THESE

9  PROFILES THAT ARE LINGUISTIC PATTERNS OF MATCHING THESE

10 PROFILES IS YOU GET A DATA ITEM THAT HAS A HIGHEST MATCH

11 FACTOR WHEREBY THE LINGUISTIC CHARACTERISTICS OF THAT DATA

12 ITEM CORRESPOND TO THE USER'S SOCIAL, CULTURAL, EDUCATIONAL,

13 ECONOMIC BACKGROUND AS WELL AS THE USER'S PSYCHOLOGICAL

14 PROFILE.

15     SO BY LOOKING AT THE CLAIMS ITSELF, YOUR HONOR, IT'S VERY

16 CLEAR THAT THESE LINGUISTIC PATTERNS THAT ARE BEING MATCHED

17 ARE LINGUISTIC PATTERNS THAT REFLECT THE AUTHOR'S SOCIAL,

18 CULTURAL, EDUCATIONAL, ECONOMIC BACKGROUND AS WELL AS

19 PSYCHOLOGICAL PROFILE.  WHY?  BECAUSE THE WHOLE POINT OF THE

20 EXERCISE IS TO FIND THE DATA ITEM THAT MATCHES THE USER'S

21 SOCIAL, CULTURAL, EDUCATIONAL, ECONOMIC BACKGROUND AND

22 PSYCHOLOGICAL PROFILE THE BEST.

23     SO IF THE LINGUISTIC PATTERN THAT THE USER -- THAT'S

24 EXTRACTED FROM THE USER PROFILE DIDN'T HAVE ANYTHING TO DO

25 WITH THAT, OR IT WASN'T REQUIRED TO REFLECT THAT, THEN THE

1 WHOLE POINT -- THE WHOLE POINT OF THE INVENTION, THE MATCHING

2 PROCESS, WOULDN'T MAKE ANY SENSE.  GO TO THE NEXT SLIDE,

3 PLEASE.

4     SO THE CLAIM LANGUAGE ITSELF LOGICALLY MAKES -- IT WOULD

5 MAKE NO SENSE IF THE LINGUISTIC PATTERNS IN THE EARLIER STEPS

6 DIDN'T REFLECT THIS BACKGROUND BECAUSE THE WHOLE PROCESS IS

7 TAKING -- EXTRACTING THESE LINGUISTIC PATTERNS, MATCHING THEM

8 AGAINST THE USER'S LINGUISTIC PATTERN TO GET A DATA ITEM THAT

9 MOST DIRECTLY MATCHES THE USER'S BACKGROUND AND PSYCHOLOGICAL

10 CHARACTERISTICS.

11     SO JUST BY ANALYZING THE CLAIM BEFORE WE EVEN GET TO THE

12 SPEC, IT'S PRETTY CLEAR TO ME THAT THESE LINGUISTIC PATTERNS

13 HAVE TO BE REFLECTIVE OF THE AUTHOR'S BACKGROUND AND

14 PSYCHOLOGICAL PROFILE.

15     SO FIRST STEP, LOOKING AT THE CLAIM LANGUAGE, I WOULD

16 SUBMIT, YOUR HONOR, SUPPORTS THE NOTION THAT WE HAVE TO GIVE

17 SOME MEANING TO THIS COINED TERM LINGUISTIC PATTERN, THAT IT

18 HAS TO INCLUDE THE NOTION THAT IT REFLECTS THE USER'S

19 BACKGROUND, SOCIAL, AND PSYCHOLOGICAL PROFILE.

20     NOW, LET'S GO TO THE SPEC IS THE NEXT STEP OF THE

21 ANALYSIS, YOUR HONOR, SLIDE 14.  AND WHAT I'D LIKE TO DO ON

22 THE SPEC, YOUR HONOR, IS FIRST JUST WALK THROUGH WHAT IS THIS

23 INVENTION.  WHAT DOES THE SPEC SAY THE INVENTION IS?  SO WHAT

24 I'VE DONE HERE ON SLIDE 14 IS THIS IS FROM COLUMN 1, LINES 30-

25 33.  IN THE BACKGROUND OF THE INVENTION SECTION IT TALKS ABOUT

1   THE EXISTING ART.  IT'S SETTING THE STAGE FOR THE DESCRIPTION

2   OF THE INVENTION.  AND IT SAYS: DURING THE PAST FEW YEARS, THE

3   QUANTITY AND DIVERSITY OF INFORMATION AND SERVICES AVAILABLE

4   OVER THE PUBLIC, E.G. INTERNET, AND PRIVATE, E.G. INTRANET,

5   LOCAL AND WIDE AREA NETWORKS HAS GROWN SUBSTANTIALLY.  NEXT

6   SLIDE.

7       AND THIS IS AGAIN FROM THE BACKGROUND SECTION TALKING

8   ABOUT THE PRIOR ART.  THE SPEC CLEARLY STATES THAT KEY WORD

9   SEARCHES AND KEY WORD SEARCH ENGINES WERE WELL ESTABLISHED BY

10  THE TIME OF THIS -- THE APPLICATION FOR THIS PATENT.  AND IT

11  DESCRIBES WHAT THOSE WERE.

12      AND I AM JUST GOING TO READ THE HIGHLIGHTED PART HERE,

13  YOUR HONOR.  THIS IS, FOR THE RECORD, COLUMN 2, LINES 15-28.

14  IT TALKS ABOUT: TO FACILITATE SEARCH FOR INFORMATION A NUMBER

15  OF SEARCH ENGINES HAVE BEEN DEVELOPED AND IMPLEMENTED.  NOW

16  THIS IS THE PRIOR ART, YOUR HONOR.

17      AND THEN IT GOES ON TO SAY, QUOTE: THESE SEARCHES ARE

18  ACCOMPLISHED IN A VARIETY OF WAYS -- ALL WELL-KNOWN IN THE

19  ART.  TYPICALLY, A USER FIRST INPUTS A SEARCH STRING TO THE

20  HYPERTEXT BROWSER CONTAINING KEY WORDS REPRESENTATIVE OF THE

21  INFORMATION DESIRED BY THE USER.  THE SEARCH ENGINE THEN

22  APPLIES THE SEARCH STRING TO A PREVIOUSLY CONSTRUCTED INDEX OF

23  A MULTITUDE OF WEB SITES TO LOCATE A CERTAIN NUMBER OF WEB

24  SITES HAVING CONTENT THAT MATCHES THE USER'S SEARCH STRING.

25      SO THAT'S TYPICAL, THE TYPICAL SEARCH THAT WE ARE ALL

1   FAMILIAR WITH, YOUR HONOR.  YOU TYPE IN, YOU KNOW, WHATEVER

2   YOU ARE INTERESTED IN, HIT THE BUTTON, AND IN THE BACK END IT

3   MATCHES, IT DOES A WORD MATCH.  MATCHES YOUR WORDS AGAINST THE

4   DIRECTORY.  AND IT'S SAYING THAT'S IN THE PRIOR ART.  OKAY.

5       AND THEN, YOUR HONOR, IF YOU GO TO THE NEXT SLIDE, THE

6   SPECIFICATION CONTINUES ON AND IT TALKS ABOUT THE SHORTCOMING

7   IN THE PRIOR ART.  JUST LIKE ALL PATENTS, THEY TALK ABOUT THE

8   PRIOR ART.  THEY SAY WHAT DOES THE PRIOR NOT DO?  WELL, HERE

9   THIS IS COLUMN 2, LINE 65 THROUGH COLUMN 3, LINE 2, YOUR

10  HONOR.  THIS IS THE SPECIFICATION DESCRIBING THE SHORTCOMING.

11  QUOTE: MOST IMPORTANTLY, TYPICAL KEY WORD AND EVEN MORE

12  ADVANCED SEARCHES ONLY PROVIDE THE USER WITH SEARCH RESULTS

13  THAT DEPEND ENTIRELY ON THE SEARCH STRING ENTERED BY THE USER,

14  COMMA -- AND HERE I WANT TO EMPHASIZE, YOUR HONOR -- WITHOUT

15  ANY REGARD TO THE USER'S CULTURAL, EDUCATIONAL, SOCIAL

16  BACKGROUNDS OR THE USER'S PSYCHOLOGICAL PROFILES.

17      SO IT'S SAYING IN THE PRIOR ART IT WOULD MATCH SEARCH

18  STRINGS BUT IT WOULDN'T TAKE INTO ACCOUNT THE USER'S CULTURAL,

19  EDUCATIONAL, SOCIAL BACKGROUNDS OR THE USER'S PSYCHOLOGICAL

20  PROFILES.  NEXT SLIDE.

21      THEN IT GOES ON.  IN THE SUMMARY OF THE INVENTION

22  SECTION, IMPORTANT SECTION OF THE PATENT, TO SAY -- THIS IS

23  COLUMN 3, LINES 51-55, QUOTE: RESEARCH HAS SHOWN THAT MOST

24  PEOPLE HAVE READILY IDENTIFIABLE LINGUISTIC PATTERNS IN THEIR

25  EXPRESSION AND THAT PEOPLE WITH SIMILAR CULTURAL, EDUCATIONAL,

1    AND SOCIAL BACKGROUNDS WILL HAVE SIMILAR RECURRING LINGUISTIC

2    PATTERNS.  AND SO IT'S DESCRIBING, HEY, THIS IS -- THIS IS

3    HOW, THE GENESIS OF HOW THEY ARE COMING UP WITH THEIR

4    INVENTION.  NEXT SLIDE.

5         THEN IT CONTINUES ON.  THIS IS COLUMN 3, LINE 26-32,

6    AGAIN, SUMMARY OF THE INVENTION, YOUR HONOR, NOT A PREFERRED

7    EMBODIMENT.  IT SAYS: THIS INVENTION RELATES TO THE USE OF

8    LINGUISTIC PATTERNS OF DOCUMENTS TO ASSIST A USER IN LOCATING

9    REQUESTED DATA THAT -- AND THIS IS IMPORTANT, YOUR HONOR --

10   COMMA, IN ADDITION TO MATCHING THE USER'S SPECIFIC REQUEST,

11   COMMA, ALSO CORRESPONDS TO THE USER'S CULTURAL, EDUCATIONAL,

12   PROFESSIONAL, AND SOCIAL BACKGROUNDS AS WELL AS TO THE USER'S

13   PSYCHOLOGICAL PROFILE, AND THUS ADDRESSES THE USER'S

14   UNEXPECTED -- UNEXPRESSED REQUESTS.

15        SO IT'S SAYING THE PRIOR ART, YOU MATCH WORDS.  WHAT WE

16   ARE DOING IN OUR INVENTION IS IN ADDITION TO THAT, WE ARE

17   ADDING THAT -- THAT YOUR SEARCH RESULTS ARE GOING TO

18   CORRESPOND TO YOUR, THE SEARCHER'S, CULTURAL, EDUCATIONAL,

19   PROFESSIONAL, AND SOCIAL BACKGROUNDS AS WELL AS PSYCHOLOGICAL

20   PROFILE, AND REFERS TO THOSE AS UNEXPRESSED.  ALL RIGHT, SO IT

21   DOESN'T HAVE ANYTHING TO DO WITH SOMETHING YOU TYPE IN, IN

22   TERMS OF ACTUAL WORD MATCHING.  NEXT SLIDE.

23        THEN IT GOES ON TO GIVE AN EXAMPLE, YOUR HONOR.  THIS IS

24   FROM COLUMN 3, LINES 7-16.  FOR EXAMPLE, A TWELVE-YEAR-OLD

25   CHILD USING KEY WORD SEARCHES ON THE INTERNET FOR SOME

1  INFORMATION ON COMPUTERS MAY BE PRESENTED WITH A MULTITUDE OF

2  DOCUMENTS THAT ARE FAR ABOVE THE CHILD'S READING AND

3  EDUCATIONAL LEVEL.  IN ANOTHER EXAMPLE, A PHYSICIAN SEARCHING

4  THE INTERNET FOR INFORMATION ON A PARTICULAR DISEASE MAY BE

5  PRESENTED WITH DOZENS OF WEB SITES THAT CONTAIN VERY GENERIC

6  INFORMATION, WHILE THE PHYSICIAN'S UNEXPRESSED INTEREST WAS TO

7  FIND WEB SITES ABOUT THE DISEASE THAT ARE ON HIS EDUCATIONAL

8  AND PROFESSIONAL LEVEL.

9       SO WHAT THIS IS SAYING, AS I READ IT, YOUR HONOR, IS IF

10  YOU ARE A TWELVE-YEAR-OLD CHILD AND YOU TYPE IN A SEARCH

11  REQUEST, THE INVENTION WOULD RECOGNIZE THAT YOU ARE A CHILD OR

12  THAT YOU HAVE YOUNG VOCABULARY.  WHEREAS IF YOU ARE A

13  PHYSICIAN TYPING IN A SEARCH REQUEST, THE SYSTEM WOULD

14  RECOGNIZE BY YOUR LINGUISTIC PATTERNS THAT, HEY, YOU ARE USING

15  REALLY SOPHISTICATED TERMS OR REALLY SOPHISTICATED STRUCTURE

16  AND THEREFORE I AM GOING TO PRIORITIZE MY SEARCH RESULTS THAT

17  MATCH THAT LINGUISTIC PATTERN OF YOU BEING A PROFESSIONAL.

18       SO IF YOU LOOK AT THE SPEC, YOUR HONOR, WE THINK WHAT THE

19  DESCRIPTION OF THE INVENTION IS, YOUR HONOR, WE THINK IT'S

20  VERY CLEAR THAT IT'S TALKING ABOUT THESE LINGUISTIC PATTERNS

21  THAT GET MATCHED ARE PATTERNS THAT REFLECT THE AUTHOR'S

22  BACKGROUND AND PSYCHOLOGICAL PROFILE.  THAT'S WHAT'S BEING

23  MATCHED IN ADDITION TO MATCHING THE SEARCH RESULTS.  AND

24  THAT'S THE FUNDAMENTAL INNOVATION THAT THEY ARE SAYING THEY

25  CAME UP WITH IS THESE UNEXPRESSED LINGUISTIC PATTERNS ARE

1   BEING MATCHED SO THAT WE CAN REFINE THE SEARCH RESULT PROCESS

2   SO THAT IF YOU ARE A DOCTOR YOU GET SOMETHING THAT'S MORE

3   RELEVANT TO A DOCTOR THAN YOU WOULD TO A TWELVE-YEAR-OLD.  IF

4   YOU ARE A TWELVE-YEAR-OLD, YOU GET SOMETHING THAT'S MORE

5   REFINED TO A YOUNGSTER THAN TO A PROFESSIONAL.  NEXT SLIDE.

6       WE CITE HERE, AND THESE ARE IN OUR BRIEFS, YOUR HONOR,

7   THAT THE FUNDAMENTAL FEATURE OR OBJECT OF AN INVENTION SHOULD

8   BE REFLECTED IN THE CONSTRUCTION OF THE CLAIM TERMS.  AND I --

9   I'M NOT GOING TO READ ALL THESE.  THESE ARE IN OUR BRIEFS,

10  YOUR HONOR.  BUT THE CASE LAW SUPPORTS WHEN YOU HAVE THE --

11  WHEN THAT'S THE INNOVATION IS YOU ARE REFLECTING THE USER'S

12  BACKGROUND AND PSYCHOLOGICAL PROFILE, THAT THAT CONCEPT NEEDS

13  TO BE INCLUDED IN THIS COINED PHRASE LINGUISTIC PATTERN.

14      NOW, LET'S GO TO SLIDE 21.  HERE, WE'VE GOT MORE THAN

15  JUST THAT, YOUR HONOR.  HERE, WE BELIEVE THAT LINGUISTIC

16  PATTERN IS ACTUALLY DEFINED IN THE SPECIFICATION.  NOW, I

17  THOUGHT I HEARD COUNSEL FOR PLAINTIFF ADMIT THAT IN ORAL

18  ARGUMENT JUST NOW, YOUR HONOR.  I THOUGHT I HEARD HIM SAY, AND

19  WE'LL HAVE A TRANSCRIPT HERE OBVIOUSLY, BUT I AM ALMOST

20  POSITIVE HE SAID THAT THE SPEC DOES DEFINE LINGUISTIC PATTERN.

21  AND HE POINTED TO THE SAME PLACE THAT WE THINK THE DEFINITION

22  IS, YOUR HONOR, AND I'LL GET TO THAT IN A SECOND.  WE AGREE

23  THAT THIS IS A COINED TERM.  THIS IS -- AND YOU'VE GOT TO LOOK

24  TO THE SPEC.  AND HERE IT'S BEING USED IN A SPECIFIC WAY AND

25  SO THE CONSTRUCTION SHOULD REFLECT THAT.

1    AND WE'VE PUT UP ON HERE, YOUR HONOR, THE LAW THAT YOU

2   ARE AWARE OF ABOUT LEXICOGRAPHERS, AND THAT IF IT IS A

3   DEFINITION, YOU SHOULD FOLLOW IT.  ALSO, I HAVE UP HERE, YOUR

4   HONOR, THE PROPOSITION THAT WHEN A PATENTEE USES A CLAIM TERM

5   THROUGHOUT THE ENTIRE PATENT SPECIFICATION IN A MANNER

6   CONSISTENT WITH A SINGLE MEANING, THE TERM HAS BEEN DEFINED BY

7   IMPLICATION.  ALL OF THOSE AUTHORITIES SUPPORT OUR ARGUMENT

8   HERE.  NEXT SLIDE.

9    AND I WILL NOTE, YOUR HONOR, THAT IN THEIR OPENING BRIEF,

10   THIS IS A CUT-AND-PASTE IN THE BOX THERE FROM THEIR OPENING

11   BRIEF, PLAINTIFFS ADMITTED, QUOTE, THE TERM LINGUISTIC PATTERN

12   IS FULLY DEFINED IN THE SPECIFICATION OF THE '067 PATENT.  SO

13   HERE WE HAVE GOT A SITUATION WHERE THE PATENTEE HAS ACTED AS

14   ITS OWN LEXICOGRAPHER.  AND WHAT IS THE DEFINITION?  LET'S GO

15   TO THE NEXT SLIDE.

16    THIS IS THE SAME EXCERPT THAT THE PLAINTIFF, COUNSEL FOR

17   PLAINTIFF PUT UP ON THE SCREEN, YOUR HONOR, WHEN THEY ADMITTED

18   THAT THE SPEC DOES DEFINE LINGUISTIC PATTERN.  AND AS YOU CAN

19   SEE, THE SPEC CLEARLY SAYS THAT ALL TEXTS, NOT JUST SOME, BUT

20   ALL TEXTS THAT ARE COMPOSED BY A USER CONTAIN CERTAIN

21   RECURRING LINGUISTIC PATTERNS.  AND THEN IT GOES ON TO SAY

22   WHAT THAT MEANS.  AND IT SAYS: OR COMBINATIONS OF VARIOUS

23   PARTS OF SPEECH, NOUNS, VERBS, ADJECTIVES, ETCETERA, IN

24   SENTENCES THAT REFLECT THE USER'S CULTURAL, EDUCATIONAL,

25   SOCIAL BACKGROUNDS AND THE USER'S PSYCHOLOGICAL PROFILE.

1  THAT'S ALMOST VERBATIM WHAT WE PROPOSED IN OUR CONSTRUCTION.

2      OUR INITIAL -- COUNSEL FOR PLAINTIFF IS RIGHT.  IN OUR

3  INITIAL PROPOSED CONSTRUCTION, YOUR HONOR, WE USED IT

4  VERBATIM.  THEY CAME BACK AND SAID, WELL, THE OTHER TWO

5  LINGUISTIC PATTERNS AREN'T CREATED -- OR ONE OF THE OTHER TWO

6  LINGUISTIC PATTERNS, THE DATA ITEM THAT'S REFLECTIVE OF

7  LINGUISTIC PATTERN AREN'T CREATED BY THE USER.  AND WE HAVE

8  THE WORD USER IN HERE.  SO WE TOOK OUT USER AND PUT AUTHOR.

9  BUT OTHER THAN THAT, THIS IS THE -- OUR PROPOSED CONSTRUCTION,

10 YOUR HONOR.  AND IT SOUNDS TO ME FROM WHAT THE PLAINTIFF HAS

11 SAID, THAT AT LEAST AS REGARDS THE FIRST LINGUISTIC PATTERN.

12 WHICH IS THE PATTERN IN THE CLAIM IN THE FIRST ELEMENT THAT

13 GETS CREATED FROM THE USER, THAT THIS DEFINES WHAT THE FIRST

14 LINGUISTIC PATTERN SHOULD BE.  IT LOOKS LIKE WE DON'T HAVE A

15 DISPUTE THERE.  AND THE ONLY DISPUTE IS WHETHER IT APPLIES TO

16 THE SECOND OR THIRD LINGUISTIC PATTERNS.

17     WE WOULD SUBMIT, YOUR HONOR, THAT THE PHRASE LINGUISTIC

18 PATTERN APPEARS IN THE CLAIM MULTIPLE TIMES AND UNDER CLAIM

19 CONSTRUCTION DOCTRINE YOU WANT IT TO MEAN THE SAME THING EACH

20 TIME IT APPEARS.  AND WHAT THIS PATENT IS SAYING, YOUR HONOR,

21 IS THAT ALL TEXTS HAVE LINGUISTIC PATTERNS, WHETHER THE USER

22 WRITES IT, WHETHER SOMEBODY CREATING A WEB PAGE, A, QUOTE,

23 UNQUOTE, DATA ITEM CREATES IT.  ALL THESE DIFFERENT TEXTS HAVE

24 THESE LINGUISTIC PATTERNS.  AND THE WHOLE POINT OF THE

25 INVENTION IS YOU TAKE THE LINGUISTIC PATTERN CREATED BY THE

1 USER AND YOU MATCH IT AGAINST LINGUISTIC PATTERNS THAT ARE IN

2 THE WEB PAGES, THE, QUOTE, UNQUOTE, DATA ITEMS, AS WELL AS

3 MATCHING IT AGAINST THE SEARCH -- THE SEARCH REQUEST.  AND

4 THOSE LINGUISTIC -- THOSE DATA ITEMS THAT HAVE THE HIGHEST

5 CORRELATION TO LINGUISTIC PATTERNS IN THE USER'S LINGUISTIC

6 PATTERNS ARE THEN RETURNED SO THAT THEY MOST -- MOST -- MOST

7 EFFICIENTLY REFLECT THE USER'S CULTURAL BACKGROUND AND

8 PSYCHOLOGICAL BACKGROUND.

9      AND SO THE NOTION OF REFLECTING THE BACKGROUND OF THE

10 AUTHOR IS CONSISTENT THROUGHOUT EACH OF THE LINGUISTIC

11 PATTERNS, AND BECAUSE LINGUISTIC PATTERNS APPEARS MULTIPLE

12 TIMES WITH THE SAME PHRASE, IT SHOULD BE CONSTRUED TO MEAN THE

13 SAME THING AND NOT DIFFERENT THINGS THROUGHOUT.  BUT IN ALL

14 EVENTS, WE AGREE WITH THE COUNSEL FOR PLAINTIFFS THAT AS TO

15 THE USER'S LINGUISTIC PATTERN, THAT THAT -- THAT THIS IS A

16 DEFINITION.  IT'S PROVIDED IN THE SPEC AND IT SHOULD BE

17 ADOPTED BY THE COURT.

18      ONE FINAL NOTE I WOULD MAKE BEFORE I GO ON TO THE NEXT

19 SLIDE, YOUR HONOR, IS I THOUGHT I ALSO HEARD COUNSEL FOR

20 PLAINTIFF SAYING THAT THE NOTION THAT A LINGUISTIC PATTERN

21 MUST REFLECT THE USER'S OR THE AUTHOR'S CULTURAL, EDUCATIONAL,

22 SOCIAL BACKGROUNDS AND PSYCHOLOGICAL PROFILE, I THOUGHT I

23 HEARD COUNSEL FOR PLAINTIFF SAY THAT'S ALREADY REQUIRED BY THE

24 CLAIM.  SO IF THAT'S ALREADY REQUIRED BY THE CLAIM, THEN

25 WHAT'S THE PROBLEM?  WE AGREE IT'S ALREADY REQUIRED BY THE

1 CLAIM, AND IT SHOULD BE EXPRESSLY CONSTRUED THAT THESE

2 LINGUISTIC PATTERNS MUST REFLECT, EACH TIME THEY OCCUR, MUST

3 REFLECT THE AUTHOR'S BACKGROUND AND PSYCHOLOGICAL PROFILE.

4      LET'S GO TO THE PLAINTIFF'S PROPOSED CONSTRUCTION, SLIDE

5 24.  AND, YOUR HONOR, I KNOW I AM TAKING A LONG TIME ON THIS

6 FIRST TERM --

7           THE COURT: I THINK --

8           MR. VERHOEVEN:  -- BUT THIS IS THE MOST IMPORTANT

9 ONE.  I'LL BE SHORTER --

10           THE COURT:  -- I STARTED TO SAY, I THINK THIS IS

11 WHERE THE BATTLE IS FOUGHT ON THIS TERM.

12           MR. VERHOEVEN: YEAH.  I'LL BE SHORTER ON THE OTHER

13 ONES, PROMISE.

14           THE COURT: I WOULD HAVE THOUGHT THE PARTIES WOULD

15 SPEND A LITTLE MORE TIME ON THIS ONE.

16           MR. VERHOEVEN: SO IF YOU LOOK AT THE PLAINTIFF'S

17 CONSTRUCTION, BASICALLY IT REALLY DOESN'T MEAN ANYTHING.  ANY

18 COMBINATION OF VARIOUS PARTS OF SPEECH IS LINGUISTIC PATTERN.

19 WELL, WHAT COULD THAT BE?  WELL, THAT'S ANY SENTENCE IN THE

20 WORLD.  THAT'S -- THAT'S TWO WORDS PUT TOGETHER.  IT COULD BE

21 ANYTHING.  IT HAS NO REQUIREMENT THAT IT HAS TO MATCH

22 ANYTHING.  IT COULD BE RANDOMLY SELECTED WORDS THAT HAVE

23 NOTHING TO DO WITH THE AUTHOR'S SOCIAL, CULTURAL, EDUCATIONAL,

24 ECONOMIC BACKGROUND AND PSYCHOLOGICAL PROFILE.  NEXT SLIDE.

25      PLAINTIFF -- PLAINTIFF'S PROPOSED CONSTRUCTION DOESN'T

1   EVEN REQUIRE THAT -- WELL, LET ME BACK UP.  IF YOU LOOK AT

2   PLAINTIFF'S BRIEF, THIS IS THEIR BRIEF AT PAGE 8, YOUR HONOR.

3   WE HAVE ADDED THE HIGHLIGHTING IN YELLOW.  THEY STATE: CLAIM 1

4   SPECIFIES THAT THE METHOD TAUGHT BY CLAIM 1 MUST USE

5   LINGUISTIC CHARACTERISTICS THAT CORRESPOND TO THE USER'S

6   SOCIAL, CULTURAL, EDUCATIONAL, ECONOMIC BACKGROUND AS WELL AS

7   TO THE USER'S PSYCHOLOGICAL PROFILE.  WE AGREE.  THAT'S WHAT

8   -- THAT'S OUR WHOLE POINT, YOUR HONOR.  THAT'S NOT -- THIS --

9   THIS ADMISSION IN THEIR BRIEF, WE WOULD SUBMIT, IS NOT

10   REFLECTED IN THEIR CONSTRUCTION.  NEXT SLIDE.

11      AGAIN, AND I'VE COVERED THIS, THE SPECIFICATION

12   DISTINGUISHES THE INVENTION FROM THE EXISTING SEARCH ENGINES,

13   WHICH ADMITS WERE WELL KNOWN, AND THAT'S -- THAT'S WHERE YOU

14   JUST MATCHED SEARCH STRINGS TO THE CONTENT ON WEB SITES ON THE

15   INTERNET.  UNDER PLAINTIFF'S CONSTRUCTION, IF THE LINGUISTIC

16   PATTERN IS DESCRIBED DOES NOT REQUIRE THAT THE LINGUISTIC

17   PATTERN REFLECTS THE AUTHOR'S BACKGROUND AND PSYCHOLOGICAL

18   PROFILE, IT -- IT COULD FUNCTION EXACTLY THE SAME AS THE PRIOR

19   ART, SIMPLY MATCHING WORD STRINGS.  SO THE INNOVATION UNDER

20   THEIR CONSTRUCTION WOULD BE ELIMINATED FROM THE CLAIM

21   LANGUAGE.  NEXT SLIDE.

22      AND THIS IS A REPEAT.  I'LL JUST DO IT QUICKLY.  COLUMN

23   2, THEY HAVE -- THEY HAVE ADMITTED IN THE PATENT THE PRIOR ART

24   INCLUDED MATCHING WORDS, MATCHING THE SEARCH STRING WORDS

25   AGAINST ITEMS ON THE INTERNET.  NEXT SLIDE.

1    AND TO REPEAT AGAIN, YOUR HONOR, THAT THE PRIOR ART --

2  THE PROBLEM WITH THE PRIOR ART IS IT DID NOT HAVE ANY REGARD

3  TO THE USER'S CULTURAL, EDUCATIONAL, SOCIAL BACKGROUNDS OR THE

4  USER'S PSYCHOLOGICAL PROFILE.  NEXT SLIDE.

5    AND THAT THE INVENTION, IN THE SUMMARY OF THE INVENTION

6  OVER THAT ART IS DOING A SEARCH MATCH THAT CORRESPONDS TO THE

7  USER'S CULTURAL, EDUCATIONAL, PROFESSIONAL, SOCIAL BACKGROUNDS

8  AS WELL AS PSYCHOLOGICAL PROFILE.  SO THE VERY INNOVATION, THE

9  VERY THING THAT THEY INVENTED UNDER THEIR CONSTRUCTION IS

10  WIPED OUT.  THAT -- THAT CONSTRUCTION CANNOT STAND.  NEXT

11  SLIDE.

12    UNDER *PHILLIPS* A CONSTRUCTION DOES NOT ALIGN WITH THE

13  PATENT'S DESCRIPTION OF THE INVENTION SHOULD NOT BE ACCEPTED.

14  AND WE HAVE CITED SOME MORE CASE LAW THERE, YOUR HONOR, AND I

15  AM NOT GOING TO TAKE TOO MUCH TIME READING IT.

16    IN SUMMARY, THIS IS A VERY SPECIFIC PATENT.  CLAIM 1 HAS

17  OVER 500 WORDS, TALKS ABOUT A VERY SPECIFIC PROCESS WHERE YOU

18  ARE TAKING, YOU ARE MATCHING SPECIFIC LINGUISTIC PATTERNS AND

19  THEN YOU ARE CORRELATING THE HIGHEST LEVEL OF MATCHES, AND THE

20  END RESULT IS A DATA ITEM THAT MOST MATCHES THE USER'S

21  BACKGROUND AND PSYCHOLOGICAL PROFILE.  UNLESS LINGUISTIC

22  PATTERN IS CONSTRUED TO INCLUDE -- IT CAN HAVE OTHER STUFF BUT

23  IT MUST INCLUDE THIS CONCEPT THAT THE USER'S BACKGROUND AND

24  PSYCHOLOGICAL PROFILE, THE WHOLE POINT OF THE CLAIM MAKES NO

25  SENSE.  AND YOU WOULDN'T EVEN BE ABLE TO ACHIEVE WHAT CLAIM

1  1(E) IS TALKING ABOUT, YOUR HONOR.

2       SO UNLESS YOU HAVE ANY FURTHER QUESTIONS, THAT COMPLETES

3  MY ARGUMENT ON THIS CLAIM.

4            THE COURT: DID YOU TOUCH ON THE USE OF THE TERM

5  REPEATED -- REPEATING?

6            MR. VERHOEVEN: YES, YOUR HONOR.  THE TERM REPEATED

7  IS --

8            THE COURT: REPEATING I GUESS IS ACTUALLY --

9            MR. VERHOEVEN: RIGHT.  THE TERM REPEATING IS IN

10  THERE BECAUSE WE BELIEVE THAT IN ORDER TO BE A PATTERN,

11  ELEMENTS MUST OCCUR IN REPETITION.  OTHERWISE, IT'S NOT A

12  PATTERN.  AND WE HAVE SUBMITTED DICTIONARY DEFINITIONS IN THE

13  BRIEFS, YOUR HONOR.  AND WE BELIEVE THAT THAT'S INHERENT IN

14  THE NOTION OF WHAT A PATTERN IS, ESPECIALLY IN LIGHT OF THE

15  SPECIFICATION.

16       THE DEFENDANTS' ARGUMENT THAT WE SHOULD REJECT THAT A

17  PATTERN IS SOMETHING THAT REPEATS BECAUSE IT'S REDUNDANT

18  BECAUSE IN THE CLAIMS -- AND WE AGREE WITH THIS -- IN THE

19  CLAIMS, FOR EXAMPLE, IN BOTH INDEPENDENT CLAIMS THEY ARE

20  COUNTING HOW MANY TIMES A RECURRING -- A PATTERN RECURS.  THEY

21  SAY, WELL, THAT -- THAT IS REDUNDANT.  WE DON'T THINK IT'S

22  REDUNDANT.  WE THINK THAT A PATTERN INHERENTLY IS SOMETHING

23  THAT REPEATS.  AND THAT WHEN YOU LOOK AT THE SPEC AND IT TALKS

24  ABOUT RECURRING LINGUISTIC PATTERNS, WHAT IT'S TALKING ABOUT

25  IS COUNTING THE NUMBER OF TIMES THAT PATTERN APPEARS IN THE

1    VARIOUS USER PROFILE, DATA ITEM PROFILE, AND THE SEARCH

2    PROFILE.  SO, WE DON'T THINK THOSE TWO ARE INCONSISTENT, YOUR

3    HONOR.

4            THE COURT: REPLY.

5            MR. FENSTER: YOUR HONOR, FIRST WITH RESPECT TO

6    REPEATING, DEFENDANTS ARGUE INCONSISTENTLY THAT LINGUISTIC

7    PATTERN IS A COINED PHRASE THAT IS DEFINED IN THE

8    SPECIFICATION, AND YET THEY ARGUE ON THE OTHER HAND THAT THE

9    ONLY SUPPORT THAT THEY HAVE FOR REPEATING IS IN DICTIONARY

10   DEFINITIONS THAT A -- OF WHAT A PATTERN INHERENTLY IS.

11       AND IF YOU GO TO HOW THE SPECIFICATION ACTUALLY DEFINES

12   -- ACTUALLY -- IF YOU GO TO HOW THE DEFINITION -- THE

13   SPECIFICATION ACTUALLY DEFINES LINGUISTIC PATTERN IN THE

14   PORTION OF THE SPECIFICATION THAT BOTH PARTIES POINT TO, IT

15   DOESN'T SAY REPEATING AT ALL.  IT SAYS LINGUISTIC PATTERNS ARE

16   COMBINATIONS OF VARIOUS PARTS OF SPEECH.  COINED PHRASE

17   DEFINED IN THE SPECIFICATION, WE AGREE ON THAT.  THERE IS NO

18   SUPPORT ANYWHERE IN THE SPECIFICATION THAT DEFENDANTS HAVE

19   THAT THE COMBINATION IN ORDER TO BE A PATTERN MUST BE

20   REPEATED.  OKAY.  NEXT.

21       YOUR HONOR, DEFENDANTS' ARGUMENT IS A LITTLE BIT

22   CONFUSING, AND HERE IS WHY.  THEY CONFUSE, CONFLATE USER WITH

23   AUTHOR.  I SHOWED YOU HOW CLAIM 1 HAS THREE LINGUISTIC

24   PATTERNS, SOME OF WHICH REFER TO USER GENERATED DATA AND SOME

25   OF WHICH REFERS TO DATA GENERATED BY SOMEONE ELSE, A THIRD

1    PARTY AUTHOR LIKE THE DATA ITEM PROFILE IN THE SECOND

2    LINGUISTIC PATTERN.

3         NOW, WE AGREE THAT THE FUNDAMENTAL PURPOSE IS TO COME UP

4    WITH RESULTS THAT ARE TAILORED TO THE SPECIFIC USER'S

5    BACKGROUND.  BUT IN ORDER TO DO THAT, MR. GELLER'S INVENTION

6    WAS I AM GOING TO TAKE ALL OF THE DATA AVAILABLE TO THE USER

7    FROM THE USER AND EXTRACT ALL OF THOSE COMBINATIONS, ALL OF

8    THEM.  AND THE SPECIFICATION GIVES EXAMPLES OF HOW IT DOES

9    THAT.  IT DEFINES TYPES: NOUN, ADJECTIVE, VERB.  AND IT PULLS

10   EVERY SINGLE COMBINATION OF NOUN, ADJECTIVE, VERB IN THE DATA

11   AVAILABLE TO IT, EVERY SINGLE ONE.

12        THE PATENT GIVES AN EXAMPLE, FOR EXAMPLE, OF -- THIS IS

13   AT COLUMN 15, YOUR HONOR.  FOR EXAMPLE -- THIS IS AT LINE 18

14   -- IF THE SENTENCE IS JOE WALKED TO HIS BEAUTIFUL NEW HOUSE,

15   THEN THE FOLLOWING SEGMENTS OR LINGUISTIC PATTERNS ARE

16   EXTRACTED IN THE PREFERRED EMBODIMENT WHERE IT'S NOUN, VERB,

17   ADJECTIVE.  JOE-WALK-BEAUTIFUL, JOE-WALK-NEW, HOUSE-WALK-

18   BEAUTIFUL, HOUSE-WALK-NEW.  EVERY SINGLE POSSIBLE COMBINATION.

19        THE SPECIFICATION DOES NOT SAY THAT ONCE YOU EXTRACT

20   THESE COMBINATIONS YOU HAVE TO CONSTRUCT A TEST TO TEST

21   WHETHER DOES THIS PARTICULAR COMBINATION REFLECT THE USER'S

22   BACKGROUND AND PROFILE BEFORE I CALL IT A PATTERN?  THAT IS

23   NOT PART OF WHAT CONSTITUTES THE DEFINITION OF A LINGUISTIC

24   PATTERN.  THE LINGUISTIC PATTERN IS A COMBINATION OF WORDS.

25        MR. GELLER'S INVENTION WAS THE RECOGNITION THAT IN

1    AGGREGATE, WHILE ANY -- IF I SAY I STAND HERE, THAT IS A

2    LINGUISTIC PATTERN.  IT'S A COMBINATION OF VERB, NOUN, AND

3    UNDER THE DEFINITION AS IT'S DESCRIBED, THIS EMBODIMENT WOULD

4    EXTRACT THE SEGMENTS, THE LINGUISTIC PATTERNS, FROM THAT

5    STATEMENT: I STAND HERE.  I SUBMIT TO YOU THAT IT TELLS YOU

6    ABSOLUTELY NOTHING ABOUT MY CULTURAL BACKGROUND AND

7    PSYCHOLOGICAL PROFILE.  BUT MR. GELLER'S INVENTION WAS HIS

8    RECOGNITION THAT IN AGGREGATE, THE COMBINATION IN AGGREGATE,

9    THESE PATTERNS WILL TELL YOU SOMETHING ABOUT ME.  I LOVE MY

10   WIFE.  I LIVE IN LOS ANGELES.  ALL OF THESE THINGS -- I CAME

11   FROM TEXAS.  ALL OF THESE THINGS ARE PART OF MY PSYCHOLOGICAL

12   PROFILE THAT IN AGGREGATE TELL YOU SOMETHING ABOUT MY CULTURAL

13   BACKGROUND, AND IF YOU USE THOSE PATTERNS TO MATCH IT AGAINST

14   THE SEARCH RESULTS THAT COME, I'LL GET MORE, I'LL GET BETTER

15   SEARCH RESULTS.

16        IT IS NOT A REQUIREMENT ANYWHERE IN THE SPECIFICATION

17   THAT TO BE A LINGUISTIC PATTERN THAT COMBINATION OF WORDS,

18   EVERY COMBINATION OF WORDS, MUST REFLECT IT.  OTHERWISE, THE

19   METHOD WOULD BE EVEN LONGER BECAUSE IT WOULD REQUIRE

20   EXTRACTING SEGMENTS, TESTING DOES THIS SEGMENT REFLECT THE

21   CULTURAL BACKGROUND AND PROFILE, AND THEN MOVING ON TO USE

22   ONLY THOSE THAT DO.  THAT'S WHAT DEFENDANTS' PROPOSAL WOULD

23   REQUIRE, AND THAT IS NOT IN THE CLAIMS.

24        THE CLAIMED METHOD IS SIMPLE.  IT'S BASED ON THIS PREMISE

25   IF YOU USE PATTERNS IN AGGREGATE, IT WILL TELL YOU, IT WILL

1    GIVE YOU BETTER RESULTS.  AND SO IT TELLS YOU TAKE ALL THE

2    PATTERNS FROM THE USER DATA, TAKE ALL THE PATTERNS FROM THE

3    SEARCH RESULTS, AND TAKE ALL THE PATTERNS FROM THE SEARCH

4    STRING, PULL THOSE TOGETHER AND REFINE YOUR RESULTS THAT WAY.

5    AND IF YOU DO, IT WILL FULFILL THE FUNDAMENTAL PURPOSE OF THE

6    INVENTION AS CITED IN THE CLAIM WHEREBY THE RESULTS DO REFLECT

7    THE USER'S BACKGROUND AND PSYCHOLOGICAL PROFILE.

8         NOW, DEFENDANTS' COUNSEL TOLD YOU THAT IF YOU DON'T

9    INJECT THIS DEFINITION INTO THE TERM LINGUISTIC PATTERN, YOU

10   WILL BE DOING -- YOU WILL BE RUNNING AFOUL OF CLAIM

11   CONSTRUCTION IN TWO WAYS.  ONE, YOU WON'T REFLECT THE

12   FUNDAMENTAL PURPOSE OF THE INVENTION.  WELL, I SHOWED YOU THAT

13   THAT'S WRONG.  CLAIMS SPECIFICALLY REQUIRES.  *PRAXAIR* AND THE

14   OTHER CASE THAT'S CITED BY PLAINTIFF DO NOT SAY THAT WHERE

15   THERE'S A FUNDAMENTAL PURPOSE OF AN INVENTION, THAT

16   FUNDAMENTAL PURPOSE HAS TO BE CONSTRUED INTO EVERY SINGLE TERM

17   IN THE CLAIM.  IT'S JUST THAT THE CLAIM HAS TO AS A WHOLE GET

18   THERE.  AND THIS CLAIM DOES WITHOUT PUTTING IT IN LINGUISTIC

19   PATTERN.

20        THE SECOND THING THAT COUNSEL SAID IS THAT IF YOU DON'T

21   PUT IT IN THERE, THEN YOU'LL BE JUST A KEY WORD SEARCH.  AND

22   THAT'S WHY I WENT THROUGH AT THE BEGINNING TO TAKE THE TIME TO

23   SHOW YOU HOW DEFENDANTS MISCHARACTERIZE MR. GELLER'S

24   INVENTION.  IT IS NOT IN LIEU OF A SEARCH STRING, BUT RATHER

25   IN ADDITION TO.  SO, IF YOU EXTRACT PATTERNS, A PARTICULAR

1    PATTERN MAY NOT REFLECT THE USER'S CULTURAL AND PSYCHOLOGICAL

2    PROFILE.  BUT YOU ARE SEARCHING AGAINST A PATTERN, NOT THE

3    SEARCH STRING.  THE SEARCH STRING IS WHATEVER THE SEARCH

4    STRING IS, AND WHAT THIS DOES IS IN ADDITION TO SEARCHING THE

5    SEARCH STRING, WHICH IS THE KEY WORD SEARCH, IT ALSO SEARCHES

6    PATTERNS.  THAT IS THE METHOD.  IT DOESN'T -- IT'S NOT A

7    REQUIREMENT THAT THE PATTERNS THAT ARE ALSO SEARCHED EACH

8    REFLECT THE CULTURAL, JUST IN AGGREGATE THAT THEY DO SO THAT

9    THE RESULTS GET YOU TO THE TAILORED RESULTS THAT MR. GELLER

10   INVENTED.  THAT'S ALL I HAVE ON LINGUISTIC PATTERN.

11            THE COURT: READY TO GO TO THE NEXT TERM.

12            MR. FENSTER: YOUR HONOR, THE NEXT TERM IN THE

13   PARTIES' ORDER IS SEGMENT.  SEGMENT IS ONE OF THE TERMS THAT

14   WAS IN -- ON YOUR HONOR'S PRELIMINARY --

15            THE COURT: THAT YOU AGREE TO.

16            MR. FENSTER:  -- CONSTRUCTION LIST THAT WE AGREE TO.

17   SO I WOULD SUGGEST, YOUR HONOR, THAT DEFENDANTS TELL YOU WHY

18   YOU ARE WRONG, AND THEN I'LL -- AND THEN I'LL RESPOND.

19            THE COURT: VERY WELL.

20            MR. VERHOEVEN: YOUR HONOR, WE HAVE NO INTENTION OF

21   SAYING THAT YOU ARE WRONG.

22            THE COURT: OH, WELL, DON'T BE BASHFUL.  THE FEDERAL

23   CIRCUIT DOESN'T MIND TELLING ME I AM WRONG OCCASIONALLY.

24            MR. VERHOEVEN: IF I MIGHT TAKE JUST ONE MINUTE

25   BEFORE I MOVE ON, I JUST WANT TO HIGHLIGHT AND UNDERLINE THAT

1   WHEN COUNSEL GOT UP AFTER I FINISHED, COUNSEL -- AND THESE ARE

2   MY NOTES, YOUR HONOR, BUT COUNSEL SAID LINGUISTIC PATTERN IS A

3   COINED PHRASE AND HE SAID IT'S DEFINED IN THE SPECIFICATION.

4   AND COUNSEL WAS USING THEIR SLIDES, YOUR HONOR, NOT -- NOT

5   OURS. BUT WE HAVE UP HERE THE EXACT TEXT THAT WAS ON THE

6   SCREEN WHEN COUNSEL SAID THAT.

7        COLUMN 3, THEIR SLIDE WAS COLUMN 3, LINES 45-51.  OURS IS

8   COLUMN 3, LINES 45-50.  PRETTY CLOSE.  THIS IS THE DEFINITION.

9   BOTH PARTIES AGREE IT'S A COINED TERM, IT'S DEFINED IN THE

10  SPECIFICATION.  IF WE CAN HAVE THAT, YOUR HONOR, WE'LL

11  COMPROMISE ON REPEATING BECAUSE WE BELIEVE IT IS A COINED

12  TERM.  AND TO THE EXTENT THAT --

13            THE COURT: WHAT SAYS PLAINTIFF ON THAT?

14            MR. FENSTER: RESPECTFULLY DECLINE, YOUR HONOR.  AS

15  WE SAID, THIS IS -- WE AGREE IT'S DEFINED HERE BUT IT'S

16  DEFINED IN THE CONTEXT OF THE FIRST LINGUISTIC --

17            THE COURT: I THINK I'M WELL AWARE OF EACH PARTY'S

18  POSITION, SO LET'S GO ON TO SEGMENT.

19            MR. VERHOEVEN: YES, YOUR HONOR.  THIS IS SLIDE 31,

20  PLEASE.

21            THE COURT: HOW DO YOU THINK THE COURT'S PRELIMINARY

22  CONSTRUCTION NEEDS TO BE MODIFIED TO BE ON THE PATH TO A

23  PROPER CONSTRUCTION?

24            MR. VERHOEVEN: WELL, YOUR HONOR, WE ARE ACTUALLY

25  PRETTY HAPPY WITH THE COURT'S CONSTRUCTION.  THE ONLY --

1          THE COURT: BUT NOT TOTALLY HAPPY.

2          MR. VERHOEVEN: OUR ONLY SUGGESTION, YOUR HONOR, IS

3   WE BELIEVE THAT THE, BEAR WITH ME AS I LOOK THROUGH MY -- YOUR

4   -- YOUR LIST, NUMBER 4, RIGHT?

5          THE COURT: YES.

6          MR. VERHOEVEN: WE BELIEVE THAT THE ONE OR MORE PARTS

7   OF SPEECH ARE ARRANGED IN A PREDETERMINED ORDER. THAT'S THE

8   ONLY DIFFERENCE IS THE WORD PREDETERMINED.

9          THE COURT: WHY DO YOU THINK PREDETERMINED SHOULD BE

10  INCLUDED?

11         MR. VERHOEVEN: WELL, LET ME EXPLAIN, YOUR HONOR.  SO

12  IF YOU GO TO THE -- THIS IS ANOTHER ONE WHERE WE BELIEVE THAT

13  THE TERM IS DEFINED IN THE SPECIFICATION, YOUR HONOR.  AND IT

14  IS NOT ONLY DEFINED ONCE, IT'S REPEATED THREE TIMES.  AND WE

15  PUT ALL THREE UP HERE ON THE SCREEN, YOUR HONOR.  A SEGMENT

16  CONSISTS OF ONE OR MORE PREDETERMINED TYPES OF PARTS OF SPEECH

17  ARRANGED IN A PREDETERMINED ORDER.  THAT'S AT COLUMN 14, 59-

18  61.  AGAIN AT COLUMN 19, LINES 2-3:  A SEGMENT CONSISTS OF ONE

19  OR MORE PREDETERMINED TYPES OF PARTS OF SPEECH ARRANGED IN A

20  PREDETERMINED ORDER.  AND THEN AGAIN AT COLUMN 22, LINES 38-

21  39: A SEGMENT CONSISTS OF ONE OR MORE PREDETERMINED PARTS OF

22  SPEECH ARRANGED IN A PREDETERMINED ORDER.

23     THIS IS DEFINITIONAL LANGUAGE, YOUR HONOR.  AND LEST

24  THERE BE ANY DOUBT, THE PATENTEE REPEATED IT THREE TIMES

25  VERBATIM AS TO WHAT SEGMENT IS.  SO WE BELIEVE THIS IS THE --

1    THIS IS THE MOST COMPLETE DEFINITION, YOUR HONOR.  AND I

2    BELIEVE YOUR TENTATIVE HAS EVERYTHING THERE EXCEPT THE

3    CONCEPT --

4              THE COURT: SO WITH THE ADDITION OF THE WORD

5    PREDETERMINED, YOU COULD -- YOU WOULD BE SATISFIED WITH THE

6    COURT'S --

7              MR. VERHOEVEN: THAT'S CORRECT, YOUR HONOR.

8              THE COURT: LET'S HEAR FROM THE PLAINTIFF WHY THEY

9    FEEL PREDETERMINED IS --

10             MR. VERHOEVEN: YES, YOUR HONOR.

11             THE COURT:  -- INCORRECT OR SHOULD NOT BE ADDED.  I

12   ASSUME YOU AGREE WITH THAT; IS THAT CORRECT?

13             MR. FENSTER: I'M SORRY?

14             THE COURT: I ASSUME YOU FEEL PREDETERMINED SHOULD

15   NOT BE ADDED?

16             MR. FENSTER: YES, YOUR HONOR.  WE THINK THE COURT

17   GOT IT JUST RIGHT AND I'LL TELL YOU WHY.  SLIDE 16, PLEASE.

18   YOUR HONOR, THE SPECIFICATION -- SO DEFENDANTS RELY ON THIS

19   STATEMENT IN THE SPECIFICATION THAT DOES OCCUR THREE TIMES

20   THAT A SEGMENT CONSISTS OF A PREDETERMINED PARTS OF SPEECH IN

21   A PREDETERMINED ORDER.  EVERY ONE OF THOSE STATEMENTS OCCUR IN

22   THE DESCRIPTION OF THE PREFERRED EMBODIMENT, EVERY SINGLE ONE.

23   THE SPECIFICATION GOES ON TO MAKE CLEAR THAT SEGMENT CAN

24   CONSIST OF ANY NUMBER OF PARTS OF SPEECH IN ANY ORDER.

25             AT COLUMN 14, LINES 61-64, THE SPECIFICATION STATES,

1    QUOTE, THE NUMBER, THE TYPE, AND THE ORDER OF POS, WHICH IS

2    PARTS OF SPEECH, IN A SEGMENT MAY BE SELECTED AS A MATTER OF

3    DESIGN CHOICE.  AT COLUMN 14, LINES 65-67, PREFERABLY EACH

4    SEGMENT IS A TRIAD OF THREE PARTS OF SPEECH ARRANGED AS

5    FOLLOWS.  AT COLUMN 15, ALTERNATIVELY, THE FOLLOWING OTHER

6    ARRANGEMENTS MAY BE USED FOR THE SEGMENT IF DESIRED.  AND AT

7    COLUMN 15, IN AN ALTERNATIVE EMBODIMENT OF THE PRESENT

8    INVENTION, THE SEGMENTS MAY CONSIST OF ONE OR MORE PARTS OF

9    SPEECH.

10       THE SEGMENT EXPLAINS, AS YOU WOULD EXPECT IT TO, IN

11   CONNECTION WITH PREFERRED EMBODIMENTS, THAT THE SEGMENT CAN BE

12   IN ANY ORDER IN ANY NUMBER OF PARTS OF SPEECH.  NEXT -- NEXT

13   SLIDE, 17.

14       SO, YOUR HONOR, THIS IS THE SAMPLE THAT I SHOWED YOU JUST

15   A MOMENT AGO FROM COLUMN 15 WITH THE SAMPLE SENTENCE: JOE

16   WALKED TO HIS BEAUTIFUL NEW HOUSE.  AND IF YOU LOOK AT THE

17   ORDER IN WHICH THE EXTRACTED SEGMENTS OCCUR, THEY BEAR NO

18   RELATION TO HOW THEY APPEAR IN THE SENTENCE.  JOE-WALK-

19   BEAUTIFUL, THAT'S IN THE SAME ORDER.  JOE-WALK-NEW, SAME

20   ORDER.  HOUSE-WALK-BEAUTIFUL, REVERSED.  HOUSE-WALK-NEW,

21   REVERSED.  IT DOESN'T HAVE TO BE IN A PREDETERMINED ORDER.

22       NOW, THE ONLY PORTION THAT DEFENDANTS TALK ABOUT IS THE

23   SPECIFICATION.  IT IS UNDISPUTED, YOUR HONOR, THAT CLAIM 1

24   DOES NOT, PARDON ME, THAT CLAIM 1 DOES NOT REQUIRE THE

25   SEGMENTS OR LINGUISTIC -- THE SEGMENTS TO BE IN ANY PARTICULAR

1    ORDER.  YOUR HONOR, SEGMENT APPEARS IN COLUMN -- IN CLAIM 45.

2    INDEPENDENT CLAIM 45 IS WHERE SEGMENT APPEARS, AND CLAIM 45

3    DOESN'T REQUIRE THAT THE SEGMENT BE IN ANY PREDETERMINED

4    ORDER.  BUT IF YOU LOOK AT CLAIM 51, DEPENDENT ON CLAIM 45, IT

5    DOES.

6         SO CLAIM 51 IS A DEPENDENT CLAIM DEPENDENT ON CLAIM 45

7    WHEREIN STEP C COMPRISES THE STEPS OF ARRANGING A

8    PREDETERMINED NUMBER OF SAID TAGGED WORDS IN A PREDETERMINED

9    ORDER.  NOW THE DOCTRINE OF CLAIM DIFFERENTIATION TELLS YOU

10   THAT WHEN YOU'VE GOT A LIMITATION IN A DEPENDENT CLAIM THAT

11   DOESN'T APPEAR IN THE INDEPENDENT CLAIM IS NOT SO LIMITED.

12   AND THAT'S WHY, YOUR HONOR, WE THINK THE COURT HAS IT RIGHT.

13              THE COURT: REPLY COMMENTS?

14              MR. VERHOEVEN: YES, YOUR HONOR.  THE ARGUMENTS

15   SUBMITTED BY THE PLAINTIFF I THINK CONFUSES TWO SEPARATE

16   ISSUES THAT I'D LIKE TO TRY TO DE-CONFUSE, IF I COULD.  AND

17   HOLD ON JUST ONE SECOND, YOUR HONOR.  LET'S GO TO SLIDE 40.

18   SO THIS IS FROM DEFENDANTS' REPLY BRIEF.  IT'S SIMILAR TO WHAT

19   THE -- EXCUSE ME, FROM PLAINTIFF'S REPLY BRIEF.  SIMILAR TO

20   WHAT THE COUNSEL FOR PLAINTIFF HAD UP ON SOME OF HIS SLIDES.

21   IT'S THE JOE-WALK-BEAUTIFUL, JOE-WALK-NEW, HOUSE-WALK-

22   BEAUTIFUL.  AND THE EXAMPLE PRESENTED BY COUNSEL FOR THE

23   PLAINTIFF, YOUR HONOR, WE THINK CONFUSES TWO THINGS.  FIRST,

24   YOUR HONOR, IT CONFUSES THE ORDER OF WORDS VERSUS THE ORDER OF

25   PARTS OF SPEECH.  AND HERE THE DIFFERENT WORDS APPEAR, BUT IF

1    YOU LOOK, IT'S THE SAME PARTS OF SPEECH.  IT'S NOUN, VERB,

2    ADJECTIVE EACH TIME.  AND IF I COULD GO TO THE NEXT SLIDE,

3    YOUR HONOR, I'D LIKE TO PUT THIS IN CONTEXT.

4        SO THIS IS AN EXCERPT OF THE PATENT.  I APOLOGIZE FOR THE

5    MULTIPLE BOXES, YOUR HONOR, BUT THERE IS A PAGE BREAK THERE

6    AND THAT'S THE BEST WE COULD DO.  BUT THIS IS A CONTINUING

7    DISCUSSION FROM COLUMN 14, LINE 56 THROUGH COLUMN 15, LINE 25

8    WHERE THE SPEC ACTUALLY TALKS ABOUT JOE-WALK-BEAUTIFUL, JOE-

9    WALK-NEW, ETCETERA, YOUR HONOR.  AND THIS -- THIS IS AN

10   EXAMPLE IN WHICH IF YOU LOOK AT THE SPECIFICATION, AND THIS IS

11   GOING ON THE LEFT HAND COLUMN AT THE BOTTOM, IT SAYS: THUS, IN

12   ACCORDANCE WITH THIS EMBODIMENT, AND GOES ON TO SAY: THE

13   CONTROL UNIT IDENTIFIES AND TAGS NOUNS, VERBS, AND ADJECTIVES,

14   AND EXTRACTS NOUN, VERB, ADJECTIVE SEGMENTS FROM EACH SECTION.

15   AND IF YOU LOOK DOWN AT JOE-WALK-BEAUTIFUL, JOE-WALK-NEW,

16   ETCETERA, THOSE ARE ALL THE SAME ORDER OF PARTS OF SPEECH.

17   THEY ARE NOUN, VERB, ADJECTIVE.

18       SO, THERE IS SOME CONFUSION BECAUSE I THINK COUNSEL IS

19   SAYING THESE ARE DIFFERENT ORDERS.  THEY ARE DIFFERENT ORDERS

20   OF WORDS BUT IT'S THE SAME ORDER OF PARTS OF SPEECH.  OKAY.

21   WE ARE NOT SAYING, NOR HAVE WE EVER SAID, THAT THERE IS ONLY

22   ONE ORDER OF PARTS OF SPEECH PER SEGMENT THAT HAS TO BE NOUN,

23   VERB, ADJECTIVE ALL THE TIME.  IT CAN BE DIFFERENT THINGS.  IT

24   COULD BE ADJECTIVE, VERB, NOUN, OR SOME OTHER ORGANIZATION.

25   ALL WE ARE SAYING IS WHATEVER IT IS, WHETHER --

1      THE COURT: IT'S GOING TO BE PREDETERMINED.

2      MR. VERHOEVEN:  -- IT HAS TO BE PREDETERMINED.  SO,

3  YOUR HONOR, THAT'S THE SECOND CLARIFICATION I'D LIKE TO MAKE.

4  AND IF WE CAN GO TO THE NEXT SLIDE, THIS IS THE SAME EXCERPT,

5  SAME CITE, YOUR HONOR.  BUT WHAT I'VE DONE IS I HAVE

6  HIGHLIGHTED FROM THE SAME DISCUSSION, ALTHOUGH IT'S

7  CONTEXTUAL, IT'S NOT THE EXACT SAME WORDS, IT'S THE SAME

8  DISCUSSION THAT PLAINTIFF WAS JUST POINTING YOU TO, YOUR

9  HONOR.  AND WHAT DO WE FIND?  WELL, THERE'S A DEFINITION UP

10  THERE ON COLUMN 14.  A SEGMENT CONSISTS OF ONE OR MORE

11  PREDETERMINED TYPES OF PARTS OF SPEECH ARRANGED IN A

12  PREDETERMINED ORDER.  AND THEN THEY GIVE AN EXAMPLE.  WHAT IS

13  THE PREDETERMINED ORDER OF THE PARTS OF SPEECH IN THE EXAMPLE?

14  NOUN, VERB, ADJECTIVE.

15      THEN THE SPECIFICATION GOES ON IN COLUMN 15, AND I'VE

16  HIGHLIGHTED IT, TO SAY: ACCORDINGLY -- THIS IS AFTER THEY HAVE

17  CHOSEN THE PARTS OF SPEECH ORDER, NOUN, VERB, ADJECTIVE, THE

18  SPECIFICATION GOES ON TO SAY: ACCORDINGLY, THE APPROPRIATE

19  PARTS OF SPEECH USED IN THE SEGMENT WOULD NEED TO HAVE BEEN

20  PREVIOUSLY TAGGED BY THE CONTROL UNIT 14 AT STEP 210.  AND

21  THEN IT GOES ON AND SHOWS YOU HOW TO GET RESULTS.  JOE-WALK-

22  BEAUTIFUL, JOE-WALK-NEW, HOUSE-WALK-BEAUTIFUL, HOUSE-WALK-NEW.

23  ALL OF THOSE RESULTS ARE NOUN, VERB, ADJECTIVE.  AND THEY'RE

24  ALL -- AND THAT PART OF SPEECH IN THE EXAMPLE THAT THEY ARE

25  USING TO CITE TO YOUR HONOR TO DISAGREE WITH US, CLEARLY IN

1   THE SPEC IS PREDETERMINED AND CLEARLY CORRESPONDS TO THE

2   DEFINITION.

3        LET ME SEE IF THERE IS ANYTHING ELSE WHILE I'M UP HERE,

4   YOUR HONOR, IF THAT'S OKAY.

5            THE COURT: YES.

6            MR. VERHOEVEN: ONE OTHER THING I JUST WANT TO REALLY

7   BRIEFLY HIGHLIGHT, IF WE GO BACK TO SLIDE 33, IS I SHOWED YOU

8   THE DEFINITIONS, YOUR HONOR.  AND I JUST WANT TO -- WE CITED

9   SOME CASE LAW.  WHEN YOU SAY CONSISTING OF, CONSISTS OF, THOSE

10  ARE MAGIC WORDS IN CLAIM CONSTRUCTION.  AND THAT IS

11  DEFINITIONAL LANGUAGE.  AND WE CITED A COUPLE OF CASES IN OUR

12  BRIEF.  I HAVE THEM UP HERE.  NEXT SLIDE.

13       I ALSO NOTE IN THE PREFERRED EMBODIMENT, YOUR HONOR,

14  THERE'S SENTENCES WHICH I CAN CONTRAST WITH THE DEFINITIONAL

15  LANGUAGE I THINK SUPPORTS THAT THE DEFINITIONAL LANGUAGE IS

16  INDEED DEFINITIONAL.  HERE AT COLUMN 5, LINES 12-14, SAYS,

17  QUOTE: IN A PREFERRED EMBODIMENT OF THE PRESENT INVENTION,

18  EACH SEGMENT COMPRISES A TRIAD OF THREE PARTS OF SPEECH: NOUN-

19  VERB-ADJECTIVE.  THAT'S AN EXAMPLE OF AN EXAMPLE IN A

20  PREFERRED EMBODIMENT AS OPPOSED TO A DEFINITION.  IT SAYS IT

21  COMPRISES.  NEXT SLIDE.

22       SO AGAIN, THE EXAMPLE THAT I JUST CITED SAYS COMPRISES,

23  WHEREAS THE THREE DEFINITIONS THAT I SHOWED YOU REPEATED SAYS

24  CONSISTS OF.  AND WE THINK THAT SUPPORTS THAT IT IS

25  DEFINITIONAL.  I'LL MOVE ON, YOUR HONOR.

1      THEN FINALLY IF WE GO TO SLIDE 38, YOUR HONOR, LET'S TAKE

2  ONE SECOND AND TALK ABOUT THE PLAINTIFF'S PROPOSED

3  CONSTRUCTION, THE ALTERNATIVE, YOUR HONOR, WHICH IS SIMPLY

4  THAT A SEGMENT IS A PART OF A SENTENCE.  WE BELIEVE YOUR

5  TENTATIVE, YOUR HONOR, AND I'LL BE VERY BRIEF, IS CORRECT AND

6  THAT THIS CONSTRUCTION IS INCORRECT BECAUSE UNDER THIS

7  CONSTRUCTION A PUNCTUATION MARK WOULD BE A SEGMENT.  THAT'S

8  ALL I HAVE, YOUR HONOR.  THANK YOU.

9          THE COURT: ANY REPLY COMMENTS TO THESE PARTS OF

10  SPEECH BEING THE PREDETERMINED --

11          MR. FENSTER: YES, YOUR HONOR.

12          THE COURT:  -- ORDER?

13          MR. FENSTER: COUNSEL FOR DEFENSE MAKES A PRETTY

14  NUANCED ARGUMENT ABOUT THE SPECIFICATION AND A STATEMENT THAT

15  APPEARS IN THE SPECIFICATION IN CONNECTION WITH DESCRIBING A

16  PREFERRED EMBODIMENT.  HE DID NOT SAY ANYTHING ABOUT THE

17  CLAIMS.  THE CLAIMS TRUMP.  CLAIM 45 DID NOT REQUIRE IT BEING

18  PREDETERMINED, AND CLAIM DIFFERENTIATION WITH CLAIM 51

19  REQUIRES THAT IT DOES.  I THINK THAT ANSWERS THE QUESTION.

20      THE CASE LAW, YOUR HONOR, DOESN'T SAY THAT CONSISTING OF

21  IS DEFINITIONAL.  IT SAYS IT'S LIMITING IN A -- IN THE CONTEXT

22  OF CLAIMS, BUT THERE ARE CASE LAW IF YOU READ *CIAS* AND *PROMPT*

23  *MEDICAL* DO NOT SAY THAT CONSISTING OF AS IT APPEARS IN A

24  DEFINITION IN A SPECIFICATION MAKES IT DEFINITIONAL FOR

25  LEXICOGRAPHY.

1                    THE COURT: WHAT TERM DO WE GO TO NOW?

2                    MR. FENSTER: YOUR HONOR, WITH THE COURT'S

3  PERMISSION, I WILL TURN NOW TO THE FIRST OF THREE PROFILE

4  DEFINITIONS.  AFTER THE COURT'S PRELIMINARY CONSTRUCTIONS,

5  WE'VE GOT FOUR THAT WERE NOT PRELIMINARILY CONSTRUED.

6  LINGUISTIC PATTERN WAS THE FIRST, AND WE'VE GOT THREE PROFILE

7  TERMS.  I AM GOING TO DEAL WITH SEARCH REQUEST PROFILE FIRST.

8       I AM GOING TO DEAL WITH THIS ONE FIRST, YOUR HONOR --

9  LET'S GO TO SLIDE 20 BECAUSE IT'S THE EASIEST.  ACTUALLY,

10 LET'S GO TO 21.  YOUR HONOR, I VIEW CLAIM CONSTRUCTION AND THE

11 MEET-AND-CONFER PROCESS AS AN ONGOING ONE WHERE WE ALWAYS TRY

12 TO LOOK FOR WAYS TO REDUCE THE BURDEN ON THE COURT, AND I DID

13 SO HERE.

14      PLAINTIFFS ORIGINALLY PROPOSED A COLLECTION OF

15 INFORMATION ABOUT A SEARCH REQUEST.  DEFENDANTS' CONSTRUCTION

16 WAS A FILE THAT INCLUDES INFORMATION ABOUT THE LINGUISTIC

17 PATTERNS IN A SEARCH REQUEST DATA.  PLAINTIFF HAS A PROPOSED

18 COMPROMISE WHICH IS TO ACCEPT ALL OF DEFENDANTS' PROPOSED

19 CONSTRUCTION EXCEPT FOR FILE.  OKAY.

20            THE COURT: WHAT SAYS THE DEFENDANT ON THAT?

21            MR. VERHOEVEN: WE GOT THIS LAST NIGHT, YOUR HONOR.

22 IT'S MOVING VERY CLOSE TO WHAT WE PROPOSED.  BUT WE BELIEVE

23 THAT IT'S A COMPUTER SYSTEM AND IT'S A -- THE PROFILE ON A

24 COMPUTER SYSTEM.  AND IT'S APPROPRIATE IN THAT CONTEXT TO

25 INCLUDE THE CONCEPT OF THE FILE.  WE APPRECIATE THE PLAINTIFFS

1  COMING CLOSER TO US ON THE PROPOSED CONSTRUCTION, BUT WE STILL

2  THINK IT'S APPROPRIATE TO HAVE --

3      THE COURT: SO WE STILL HAVE A DISAGREEMENT WHETHER

4  WE USE --

5      MR. VERHOEVEN: THE ONLY THING IS THAT THE -- WELL,

6  IF YOU LOOK AT THE BOTTOM, THAT'S THEIR NEW ONE.  THEY'VE COME

7  TO US, TO OUR CONSTRUCTION ON EVERYTHING EXCEPT THEY WANT TO

8  SAY COLLECTION OF INFORMATION INSTEAD OF A FILE.  AND I DON'T

9  KNOW WHAT COLLECTION OF INFORMATION ON A COMPUTER SYSTEM, WHAT

10  DOES THAT MEAN?  DOES THAT MEAN LITTLE BITS AND PIECES

11  ANYWHERE IN CYBERSPACE?  SO, WE THINK THAT IT'S APPROPRIATE TO

12  CALL IT FILE BECAUSE IT'S CALLED A PROFILE.

13      THE COURT: SO WE ARE DOWN TO WHETHER WE USE

14  COLLECTION OR FILE.

15      MR. FENSTER: THAT'S RIGHT.

16      MR. VERHOEVEN: THAT'S WHAT IT'S DOWN TO.  I HATE TO

17  BE PICKY ABOUT IT, BUT, YOU KNOW.

18      THE COURT: I FIND THAT OFTEN THE CASE IN THESE

19  CASES.

20      MR. FENSTER: SLIDE 22.

21      THE COURT: SO I GUESS --

22      MR. FENSTER: YOUR HONOR, COUNSEL FOR DEFENSE SAYS

23  THAT IT SHOULD BE A FILE BECAUSE WE'VE GOT A COMPUTER SYSTEM.

24  WELL, IT IS NOT THE CASE.  SO THEY DON'T POINT TO ANYTHING IN

25  THE SPECIFICATION --

1          THE COURT: WHAT'S YOUR VIEW OF THE DIFFERENCE

2   BETWEEN A COLLECTION AND A FILE?  WHY --

3          MR. FENSTER: LET ME TELL YOU.  YOUR HONOR, WHILE

4   MOST INFORMATION THAT IS STORED IN -- IS STORED ON A COMPUTER

5   CAN BE STORED IN A FILE, FOR EXAMPLE, IF YOU HAVE A SERVER OR

6   HARD DRIVE, IT -- THE INFORMATION STORED THERE WILL BE IN A

7   FILE, BUT WHAT IF THE INFORMATION IS STORED IN RANDOM ACCESS

8   MEMORY, OR A MEMORY CACHE, OR BUFFERS?  THERE IS NOTHING IN

9   THE PATENT THAT DISCLAIMS HAVING THE INFORMATION IN THOSE

10  PLACES, AND YET I -- I'M NOT A COMPUTER SCIENTIST, BUT I'M NOT

11  SURE THAT IT'S APPROPRIATE TO DESCRIBE INFORMATION STORED IN

12  RAM OR MEMORY CACHE AS BEING STORED IN A FILE.  MY

13  UNDERSTANDING IS THAT IT HAS A --

14         THE COURT: I DON'T GUESS -- I GUESS IT'S TOO EASY TO

15  SEE IF WE COULD AGREE UPON A COLLECTION OR A FILE?

16         MR. FENSTER: I'M GOOD THERE.

17         THE COURT: WHAT SAYS THE DEFENDANT?

18         MR. VERHOEVEN: WELL, YOUR HONOR, AGAIN THAT JUST

19  MEANS IT COULD BE A COLLECTION AND --

20         THE COURT: SO WE ARE NOT GOOD THERE.

21         MR. VERHOEVEN: YOU KNOW, THE SPEC, FOR EXAMPLE,

22  TALKS ABOUT STORING THIS STUFF.

23         THE COURT: I THOUGHT THAT WOULD BE TOO SIMPLE.

24         MR. FENSTER: SO, YOUR HONOR, THE OTHER PROBLEM WITH

25  THE FILE IS THAT IT SUGGESTS THAT ALL OF THE INFORMATION HAS

1    TO BE IN ONE PLACE, AND THERE IS NO SUCH REQUIREMENT IN THE

2    CLAIM.  THE PATENT DOES NOT DISCLAIM ANY -- AS LONG AS THE

3    FILE IS -- AS LONG AS THE INFORMATION IS COLLECTED AND IT'S

4    AVAILABLE TO THE SYSTEM AND IT'S USED AS DESCRIBED IN THE

5    METHOD, IT PRACTICES THE PATENT.

6         THE COURT: MORE COMMENTS ON THIS ISSUE FROM

7    DEFENDANTS?

8         MR. VERHOEVEN: THE ONLY THING I'D NOTE IS THAT I

9    CITE YOUR HONOR TO IS THE FOCUS OF OUR --

10        THE COURT: WHY DON'T YOU DO THIS FROM THE PODIUM?

11   IT MAKES MRS. CRAWFORD'S TAKING DOWN OF THE TRANSCRIPT MUCH

12   EASIER.

13        MR. VERHOEVEN: I APOLOGIZE, YOUR HONOR.

14        THE COURT: NO PROBLEM.

15        MR. VERHOEVEN: THE FOCUS OF OUR DISPUTE IS SHIFTED

16   OVERNIGHT HERE BECAUSE WE WERE FOCUSED ON SOMETHING ELSE.  BUT

17   I WILL CITE THE COURT TO, FOR EXAMPLE, COLUMN 3, LINE 61-64

18   WHERE IT TALKS ABOUT A USER PROFILE DATA FILE.  AND ALSO, YOUR

19   HONOR, JUST VERY GENERALLY, IF YOU LOOK AT THE CLAIM LANGUAGE

20   IT'S TALKING ABOUT EXTRACTING INFORMATION TO CREATE THESE

21   DIFFERENT PROFILES, AND THEN MATCHING THESE PROFILES AGAINST

22   EACH OTHER.  AND A PERSON OF ORDINARY SKILL IN THE ART WOULD

23   KNOW THAT THOSE NEED TO BE IN A FILE AND YOU NEED TO MATCH

24   THEM AGAINST EACH OTHER.  IT'S JUST A BASIC COMPUTING CONCEPT,

25   AND THAT'S WHY WE BELIEVE IT'S APPROPRIATE.

1          THE COURT: WHICH ONE DO WE GO TO NOW?  WHICH?

2          MR. FENSTER: YOUR HONOR, THE NEXT TERM IS USER

3  PROFILE AND USER DATA PROFILE.  THESE TERMS ARE CONSTRUED

4  TOGETHER BECAUSE THEY -- THE PARTIES BOTH AGREE THAT THEY MEAN

5  THE SAME THING AND SHOULD BE CONSTRUED THE SAME.  WE JUST

6  DISAGREE ON HOW THAT CONSTRUCTION SHOULD GO.

7      SO NUMBER -- LET'S GO TO 26.  SO, YOUR HONOR, WE'VE GOT

8  THREE PROFILE TERMS THAT I TOLD YOU ABOUT.  SEARCH REQUEST

9  PROFILE WE JUST TALKED ABOUT.  USER PROFILE AND DATA ITEM

10  PROFILE, WE BELIEVE THAT THESE THREE TERMS SHOULD BE

11  CONSTRUED --

12          THE COURT: SO WE ARE BACK IN PART TO THIS ISSUE OF

13  WHETHER IT'S A COLLECTION OR A FILE?

14          MR. FENSTER: YES.  SO THAT ISSUE, YOUR HONOR, I

15  WON'T REITERATE.  THAT ISSUE IS COMMON TO EACH OF THE THREE

16  TERMS.  I HAVE GOT THE EXACT SAME POINTS I MADE LAST TIME, SO

17  I WON'T DO IT AGAIN.

18          THE COURT: SO WHATEVER CONSTRUCTION I USE, IT SHOULD

19  BE CONSISTENT, OR AT LEAST ON THAT ISSUE, IN ALL THREE TERMS?

20          MR. FENSTER: THAT'S CORRECT, YOUR HONOR.

21          THE COURT: AT LEAST THAT'S THE PLAINTIFF'S POSITION.

22  OKAY.

23          MR. FENSTER: NOW, ALSO TO BE CONSISTENT WITH

24  PARALLEL CONSTRUCTION, WE DID COME CLOSER TO THE DEFENDANTS

25  WHERE WE COULD, AND WE HAVE THE PROPOSED LANGUAGE ON THE LEFT

1  WHICH IS:  A COLLECTION OF INFORMATION ABOUT THE LINGUISTIC

2  PATTERNS IN USER LINGUISTIC DATA.

3        THE COURT: COULD THE DEFENDANT LIVE WITH THAT,

4  ASSUMING, AGAIN REALIZING COLLECTION OR FILE IS DISPUTED,

5  BUT --

6        MR. VERHOEVEN: YOUR HONOR, AGAIN WE APPRECIATE THEIR

7  COMING CLOSE TO WHAT WE PROPOSED.  THIS LEAVES OUT A VERY

8  IMPORTANT ASPECT OF OUR PROPOSED CONSTRUCTION.  IF YOU LOOK AT

9  THE HIGHLIGHTING, NOT AT FILE BUT WHERE IT BEGINS AGAIN, YOUR

10 HONOR, ON THE RIGHT-HAND SIDE, IT SAYS: AND THE FREQUENCIES

11 WITH WHICH THESE PATTERNS RECUR IN TEXTS.

12        THE COURT: YES.  YES.

13        MR. VERHOEVEN: THAT'S LEFT OUT.  AND THE OTHER --

14 THE OTHER STUFF IS NOT AS IMPORTANT.  WE BELIEVE THAT THE

15 SUBMITTED BY THE USER OR ASSOCIATED WITH THE USER IS

16 APPROPRIATE BECAUSE THAT'S WHAT'S HAPPENING AND IT'S

17 CLARIFYING FOR THE JURY --

18        THE COURT: WOULD YOU THINK WE NEED SOME LANGUAGE

19 ABOUT THE FREQUENCY OF --

20        MR. VERHOEVEN: SO THE BIG THING IS THE -- WHAT THIS

21 IS TALKING ABOUT IS NOT JUST REPRESENTATIVE OF THE LINGUISTIC

22 PATTERNS BUT ALSO THE FREQUENCIES IN WHICH THEY OCCUR.

23        THE COURT: WHY -- OBVIOUSLY I ASSUME YOU FEEL THAT

24 SHOULDN'T BE INCLUDED.  WHY NOT?

25        MR. FENSTER: I'VE GOT A GOOD REASON, YOUR HONOR.

1    YOUR HONOR, THE CLAIMS DON'T REQUIRE IT.  I'LL SHOW YOU FROM

2    THE SPECIFICATION THAT IT IS ABSOLUTELY TRUE IN THE

3    SPECIFICATION -- IT IS ABSOLUTELY TRUE THAT IN THE

4    SPECIFICATION THE EMBODIMENTS DESCRIBED DO COLLECT IN THE USER

5    PROFILE BOTH LINGUISTIC PATTERNS AND THEY COUNT THEM.  THE

6    QUESTION IS, DOES THE CLAIM REQUIRE IT?

7        I'LL SHOW YOU FIRST, THIS IS IN THE ABSTRACT OF THE

8    SPECIFICATION, THAT THE INVENTOR KNEW HOW TO DESCRIBE A USER

9    PROFILE THAT CONTAINS BOTH PATTERNS AND FREQUENCIES.

10   PARTICULARLY -- IN ACCORDANCE WITH THE PRESENT INVENTION,

11   PARTICULAR LINGUISTIC PATTERNS AND THEIR FREQUENCY OF

12   RECURRENCE ARE EXTRACTED FROM PERSONAL TEXTS PROVIDED BY THE

13   USERS AND STORED IN A USER PROFILE DATA FILE.

14       OKAY, SO HERE'S -- WE ARE TALKING ABOUT USER PROFILE AND

15   THE INVENTOR IS DESCRIBING THE USER PROFILE CONTAINING BOTH

16   PATTERNS AND FREQUENCIES.  LET'S SEE WHAT THEY SAY ABOUT IT.

17       WHEN THAT IS TRUE, SUCH -- IT WILL BE SUCH THAT THE USER

18   PROFILE DATA FILE IS REPRESENTATIVE OF THE USER'S OVERALL

19   LINGUISTIC PATTERNS AND THE FREQUENCIES OF RECURRENCE THEREOF.

20   THE INVENTOR SAYS THAT WHEN THE USER PROFILE CONTAINS A

21   PATTERN AND A FREQUENCY, THAT USER PROFILE IS REPRESENTATIVE

22   OF A PATTERN AND A FREQUENCY.

23       NOW, LET'S SEE WHAT CLAIM 1 REQUIRES.  THIS IS IN

24   SUBPARAGRAPH A, YOUR HONOR.  EXTRACTING A USER PROFILE FROM

25   USER LINGUISTIC DATA PREVIOUSLY PROVIDED BY THE USER, SAID

1  USER DATA PROFILE BEING REPRESENTATIVE OF A FIRST LINGUISTIC

2  PATTERN.  THAT'S IT.  IT DOESN'T SAY ANYTHING ABOUT FREQUENCY

3  WHATSOEVER.  THE PATENT INVENTOR, THE INVENTOR, KNEW HOW TO

4  DESCRIBE WHEN THE USER PROFILE IS REPRESENTATIVE OF BOTH

5  PATTERNS AND FREQUENCIES, AND THEY DIDN'T REQUIRE IT IN THE

6  CLAIMS.

7       NOW, I'VE GOT ANOTHER CLAIM DIFFERENTIATION ARGUMENT FOR

8  YOU.  CLAIM 7 DOES REQUIRE A SEGMENT COUNT.  SO CLAIM 7, YOUR

9  HONOR, IS DEPENDENT ON 4, WHICH IS DEPENDENT ON 1.  CLAIM 4 ON

10 1, AND 7 IS DEPENDENT ON 4.  AND CLAIM 7 DEPENDENT ON 1 GOES

11 ON TO REQUIRE COUNTING THE FREQUENCY.  STEP T IS DETERMINING

12 THE USER COUNT.  SO THIS IS WHERE IT GOES ON AND DESCRIBES

13 COUNTING UP EACH OF THE SEGMENTS AND STORING THEM AS A

14 FREQUENCY IN THE USER PROFILE.

15      SO CLAIM 1 DOESN'T REQUIRE IT.  YES, THE EMBODIMENTS IN

16 THE SPECIFICATION DESCRIBE IT, BUT IT MAKES ABSOLUTELY CLEAR

17 THAT WHEN THEY DO SO, THEY KNOW HOW TO DESCRIBE IT.  AND THE

18 PATENT DOESN'T REQUIRE THAT THE USER -- DOESN'T REQUIRE USING

19 -- GENERATING A USER PROFILE THAT'S REPRESENTATIVE OF PATTERNS

20 AND FREQUENCY.  IT ONLY REQUIRES A USER PROFILE THAT'S

21 REPRESENTATIVE OF A FIRST LINGUISTIC PATTERN.

22      NOW, THAT'S SIGNIFICANT BECAUSE AS THE PATENT DESCRIBES

23 THE EMBODIMENT, MOST PREFERABLY THE PATENT -- THE PATENTED

24 METHOD WILL EXTRACT ALL LINGUISTIC PATTERNS FROM ALL USER

25 LINGUISTIC DATA.  BUT THAT'S NOT WHAT THE CLAIM REQUIRES.  THE

1  CLAIM DOESN'T REQUIRE COLLECTING ALL USER LINGUISTIC DATA.

2  THE CLAIM ONLY REQUIRES A USER PROFILE THAT IS REPRESENTATIVE

3  OF A FIRST LINGUISTIC PATTERN.  SO THE PLAIN LANGUAGE OF THE

4  CLAIM, CLAIM DIFFERENTIATION CLAIM DOESN'T REQUIRE THAT THE

5  LINGUISTIC -- OR THAT THE USER PROFILE CONTAIN FREQUENCIES AS

6  WELL.

7       NOW, THE OTHER LANGUAGE -- LET'S GO TO 28, PLEASE --

8  OKAY.  SO THE LANGUAGE WHICH DEFENDANTS' COUNSEL SAYS IS NOT

9  THAT IMPORTANT ABOUT WHERE THE INFORMATION COMES FROM, THEY

10  SAY IT'S NOT THAT -- SO THEY IMPOSE THE LIMITATION ON THE USER

11  PROFILE THAT IT BE PATTERNS AND FREQUENCIES THAT RECUR AGAIN,

12  SO THAT WE HAVE THE REPEATING LIMITATION HERE IN TEXTS THAT

13  ARE SUBMITTED BY THE USER OR ASSOCIATED WITH THE USER AND

14  AUTOMATICALLY ACQUIRED.  I SUBMIT THAT THE COURT SHOULD NOT

15  INCLUDE THAT LANGUAGE IN THE PATENT, NOT BECAUSE SO MUCH THAT

16  IT'S WRONG BUT BECAUSE IT'S INCONSISTENT WITH THE CLAIM AND

17  CONFUSING TO A JURY.

18       THE CLAIM IN PARAGRAPH A SAYS THAT THE USER PROFILE IS

19  EXTRACTED FROM USER LINGUISTIC DATA PREVIOUSLY PROVIDED BY THE

20  USER.  THEIR DEFINITION IS NOW IMPOSING SOME OTHER PLACE WHERE

21  YOU GET IT WHICH DOESN'T MATCH ON ALL FOURS WITH USER

22  LINGUISTIC DATA PREVIOUSLY PROVIDED, SO IT SHOULD BE EXCLUDED.

23       NOW, THE NEXT LIMITATION -- GO BACK TO 26, PLEASE.

24            THE COURT: BY THE WAY, IS THIS SLIDE UPDATED?  DO WE

25  HAVE THAT IN OUR NOTEBOOK, YOUR SUGGESTED COMPROMISE AS WELL

1   AS THE ONE ON THE LAST TERM?

2         MR. FENSTER: IT'S -- IT'S SLIDE 26 IN YOUR HONOR'S

3 NOTEBOOK. AND IT'S DIFFICULT TO READ ON THE LOWER RIGHT. YOU

4 HAVE DEFENDANTS THERE. OURS IS THE THREE RING BOUND.

5     OKAY, THE LAST LIMITATION THAT I WANT TO TALK ABOUT, YOUR

6 HONOR, IS AT THE VERY END OF DEFENDANTS' PROPOSED

7 CONSTRUCTION, THE NEGATIVE LIMITATION: WITHOUT IDENTIFYING

8 ANY BACKGROUND OR PRIVATE INFORMATION ABOUT THE USER. SO,

9 DEFENDANTS ARE TRYING TO PUT IN A LIMITATION THAT GIVES THEM

10 AN EASY DESIGN AROUND AND GUTS THE VALUE OF THE PATENT BECAUSE

11 IF THEY INCLUDE ANY PRIVATE OR BACKGROUND INFORMATION, EVEN A

12 SINGLE PIECE IN THEIR USER PROFILE, UNDER THEIR CONSTRUCTION

13 THEY WOULDN'T INFRINGE EVEN IF THEY DID THE METHOD EXACTLY AS

14 DESCRIBED. IT'S NOT SUPPORTED BY THE INTRINSIC RECORD.

15     FIRST -- SLIDE 29, PLEASE -- THE CLAIMS DON'T REQUIRE

16 THAT THE USER PROFILE EXCLUDE PRIVATE INFORMATION. ALL IT

17 REQUIRES IS THAT IT BE EXTRACTED FROM USER LINGUISTIC DATA AND

18 THAT IT BE REPRESENTATIVE OF A FIRST LINGUISTIC PATTERN.

19 THERE ISN'T ANY LANGUAGE IN THE CLAIMS THAT DEFENDANTS CAN

20 POINT YOU TO THAT SAYS YOU HAVE TO EXCLUDE THAT THE USER

21 PROFILE MUST EXCLUDE PRIVATE DATA. MOREOVER, THE

22 SPECIFICATION EXPLICITLY -- EXPLICITLY CONTEMPLATES THAT IT'S

23 THERE. SLIDE 30, PLEASE.

24     THIS IS FROM COLUMN 4, LINES 23-29 OF THE PATENT. THIS

25 IS THE LANGUAGE IN PART THAT DEFENDANTS RELY ON, AND I

1    BELIEVED THEM THE FIRST TIME I READ IT AND MAYBE EVEN THE

2    SECOND TIME I READ IT, BUT FINALLY I REALIZED THAT THEY WERE

3    READING IT WRONG.  THE SPECIFICATION STATES: ACCORDINGLY, THE

4    SYSTEM OF THE PRESENT INVENTION MATCHES THE USER'S LINGUISTIC

5    PATTERNS TO THE LINGUISTIC PATTERNS OF DATA REQUESTED BY THE

6    USER WITHOUT EXTRACTING ANY ACTUAL INFORMATION ABOUT THE

7    USER'S BACKGROUND AND PSYCHOLOGICAL CHARACTERISTICS FROM THE

8    USER PROFILE.

9        SO, IT IS EXPLICITLY CONTEMPLATING THAT ACTUAL

10   INFORMATION ABOUT THE USER'S BACKGROUND AND PSYCHOLOGICAL

11   PROFILE MAY BE IN THE USER PROFILE, BUT THE SYSTEM OF THE

12   PRESENT INVENTION MATCHES THE PATTERNS AND THEREFORE DOESN'T

13   EXTRACT IT.

14       NOW, THE TERM THAT WE ARE TALKING ABOUT, YOUR HONOR, IS

15   THE DEFINITION OF WHAT IS A USER PROFILE.  SO WHAT GOES IN A

16   USER PROFILE?  THE SPECIFICATION SAYS IT CAN INCLUDE PRIVATE

17   DATA.  THE WAY THE INVENTION PROTECTS PRIVACY IS IN HOW THAT

18   PROFILE IS USED, NOT BY WHAT'S ALLOWED TO GO IN IT.  THE WAY

19   IT PROTECTS PRIVATE INFORMATION, IF I SAY MY NAME IS MARC

20   FENSTER, I LIVE AT SUCH AND SUCH ADDRESS AND SO FORTH, AND

21   THAT'S IN MY TEXT, THE SEGMENT COUNT -- THE SEGMENTS, THE

22   LINGUISTIC PATTERNS, AS I EXPLAINED BEFORE, WILL PULL THAT

23   INFORMATION AND IT WILL GO IN MY USER PROFILE.  BUT THE WAY IT

24   PROTECTS, THE WAY THE INVENTION PROTECTS THE PRIVACY IS NOT

25   WHAT'S IN -- NOT BY KEEPING THAT INFORMATION OUT OF MY USER

1  PROFILE, BUT RATHER IN JUST SEEING WHETHER THE PATTERNS MATCH

2  AND NOT ACTUALLY EXTRACTING THAT INFORMATION.

3      THE PRIVATE INFORMATION CAN BE EXPLICITLY AS STATED --

4  STATED EXPLICITLY IN THE SPECIFICATION.  IT CAN BE IN THE USER

5  PROFILE.  IT'S JUST NOT USED.  IT'S JUST NOT EXTRACTED.  AND

6  THEREFORE THEIR -- DEFENDANTS' PROPOSAL TO DEFINE USER PROFILE

7  AS EXCLUDING PRIVATE INFORMATION IS NOT WHAT THE SPECIFICATION

8  CONTEMPLATES, AND IT'S NOT WHAT THE CLAIM CONTEMPLATES.

9      IS THAT -- THOSE ARE THE COMMENTS THAT I HAVE, YOUR

10  HONOR.  SO 31, THEN, IS A COLLECTION OF INFORMATION ABOUT THE

11  LINGUISTIC PATTERNS IN THE USER LINGUISTIC DATA IS OUR

12  PROPOSED COMPROMISE LANGUAGE WHICH ADOPTS THE LIMITATIONS FROM

13  DEFENDANTS' PROPOSAL THAT WE THINK IS SUPPORTED BY THE

14  INTRINSIC EVIDENCE AND WE CAN LIVE WITH, AND DEFENDANTS' OTHER

15  LIMITATIONS ARE NOT SUPPORTED.

16          THE COURT: RESPONSE.

17          MR. VERHOEVEN: THANK YOU, YOUR HONOR.  THANK YOU,

18  YOUR HONOR.  I'D LIKE TO START -- IF I CAN FIGURE OUT HOW TO

19  WORK IT.  THIS IS THE -- COUNSEL FOR PLAINTIFF CITED TO THIS

20  HIGHLIGHTED LANGUAGE HERE, YOUR HONOR, IN SUPPORT OF THEIR

21  ARGUMENT THAT THE NOTION OF THE USER PROFILE WOULD NOT INCLUDE

22  INFORMATION ABOUT THE FREQUENCY WITHIN WHICH LINGUISTIC

23  PATTERNS OCCUR.  WELL, I SUBMIT TO YOUR HONOR THE TEXT SHOWS

24  JUST THE OPPOSITE.  THIS IS THE ABSTRACT OF THE INVENTION,

25  YOUR HONOR, AND IT SAYS: IN ACCORDANCE WITH THE PRESENT

1   INVENTION, IT'S NOT TALKING ABOUT PREFERRED EMBODIMENT,

2   PARTICULAR LINGUISTIC PATTERNS AND THEIR FREQUENCY OF

3   RECURRENCE ARE EXTRACTED FROM PERSONAL TEXT PROVIDED BY THE

4   USERS OF THE SYSTEM OF THE PRESENT INVENTION.  AND THIS GOES

5   -- THE REST OF THIS SENTENCE I THINK ALSO, YOUR HONOR, GOES TO

6   THIS FILE ISSUE THAT WE HAVE BEEN TALKING ABOUT.  IT SAYS: AND

7   STORED IN A USER PROFILE DATA FILE.  UNFORTUNATELY, I PUT A

8   CIRCLE AROUND THE WORD FILE.  IT'S HARD TO READ.  BUT IT SAYS:

9   AND STORED IN A USER PROFILE DATA FILE, SUCH THAT THE USER

10  PROFILE DATA FILE IS REPRESENTATIVE OF THE USER'S OVERALL

11  LINGUISTIC PATTERNS AND FREQUENCY OF OCCURRENCE THEREOF.

12      SO HERE IN THE CITE THAT COUNSEL FOR PLAINTIFF HAD YOU

13  LOOK AT, YOUR HONOR, TALKING ABOUT THE INVENTION AS A WHOLE

14  AND IT'S SAYING THAT IT'S NOT JUST THE EXISTENCE OF A PATTERN

15  BUT IT'S ALSO THE FREQUENCY, AND THAT IS STORED IN A FILE, A

16  USER PROFILE DATA FILE.  SO THIS -- THIS SUPPORTS THE NOTION

17  THAT IT'S A FILE, AND IT SUPPORTS A NOTION THAT THE USER

18  PROFILE CONTAINS INFORMATION ABOUT LINGUISTIC PATTERNS, AND IT

19  SUPPORTS THE NOTION THAT THE USER PROFILE CONTAINS INFORMATION

20  ABOUT THE FREQUENCY OF THOSE LINGUISTIC PATTERNS.  SO WE WOULD

21  SUBMIT THAT THIS LANGUAGE ACTUALLY SUPPORTS OUR ARGUMENT. IF I

22  CAN GET BACK TO THE -- DO I HAVE TO HIT IT AGAIN?

23      OKAY.  SO, YOUR HONOR, WE'VE GOT A RELATIVELY LONG

24  CONSTRUCTION, AND I JUST WANT TO WALK YOU THROUGH IT BECAUSE

25  IT'S REALLY NOT THAT COMPLICATED.  CAN WE HIT THE NEXT?  SO

1    THERE'S THREE PARTS HERE.  THE FIRST PART I JUST HIGHLIGHTED

2    IN GREEN, AND THIS IS THE PART THAT'S MOST IMPORTANT.

3           THE COURT: WHAT ABOUT THEIR SUGGESTED COMPROMISE?  I

4    THOUGHT YOU BASICALLY SAID I COULD -- YOU COULD LIVE WITH THAT

5    IF YOU HAD FILE AND SOMETHING ABOUT FREQUENCY.  IS THAT --

6           MR. VERHOEVEN: THAT'S RIGHT, YOUR HONOR.  SO HERE IF

7    YOU LOOK AT THIS FIRST PART, THIS IS THE MEAT OF THE -- OF THE

8    CONSTRUCTION HERE.  AND THEY HAVE -- AND THIS IS THEIR

9    CONSTRUCTION BEFORE 5 O'CLOCK YESTERDAY, OR WHENEVER THEY MADE

10   THEIR COMPROMISE.  SO THEY HAVE NOW ESSENTIALLY, IF YOU LOOK

11   AT THE GREEN, THEY HAVE AGREED THAT THE USER PROFILE IS

12   REPRESENTATIVE OF SPECIFIC USER LINGUISTIC PATTERNS, THAT PART

13   OF IT, BUT NOT THAT IT'S REPRESENTATIVE OF THE FREQUENCIES

14   WITH WHICH THOSE PATTERNS RECUR IN TEXTS.  AND I'LL ADDRESS

15   THAT DISPUTE.

16      BUT JUST SO YOU SEE THE REST OF THIS REAL QUICKLY, YOUR

17   HONOR, GO TO THE NEXT.  THE SECOND ELEMENT HERE, I HAVEN'T

18   HEARD ANY DISPUTE ABOUT THIS.  THIS IS JUST INFORMATIONAL.

19   BUT WE ARE SIMPLY SAYING THAT THE INFORMATION IS SUBMITTED BY

20   THE USER OR ASSOCIATED WITH THE USER AND AUTOMATICALLY

21   ACQUIRED BY THE SYSTEM.  THAT'S WHAT THE SPEC SAYS.  I HAVEN'T

22   HEARD THAT THEY HAVE ANY PROBLEM WITH THAT, YOUR HONOR.  IT'S

23   NOT A -- IT'S NOT A MAJOR DEAL, BUT THAT'S WHAT THAT LANGUAGE

24   IS THERE FOR.

25      AND THEN THE LAST ELEMENT, THIS IS THE PART ABOUT WITHOUT

1    IDENTIFYING -- THE USER PROFILE ITSELF DOES NOT INCLUDE

2    PRIVATE INFORMATION ABOUT THE USER.  SO IF I COULD GO QUICKLY

3    THROUGH THESE, YOUR HONOR.  I STARTED TO BEGIN WITH THE CLAIM

4    LANGUAGE, YOUR HONOR, AND I AM GOING TO SKIP OVER THESE

5    BECAUSE THEY'VE COMPROMISED ON THIS, BUT THE CLAIM LANGUAGE

6    SPECIFICALLY SHOWS THAT THE USER PROFILE IS REPRESENTATIVE OF

7    LINGUISTIC PATTERNS.  LET'S GO ON TO THE NEXT ONE.

8        THIS IS CLAIM 45, SAME THING.  THEY HAVE COMPROMISED ON

9    THAT, SO WE DON'T NEED TO DWELL ON IT.  NEXT THING.

10        WHAT THEY HAVE SAID, YOUR HONOR, IS COUNSEL POINTED TO

11   DEPENDENT CLAIM 7, WHICH DOES ESSENTIALLY THE SAME THING I

12   THINK, LOOKING AT IT QUICKLY, AS CLAIM 45, COUNTING --

13   COUNTING THE -- THE SEGMENTS AND HOW MANY SEGMENTS OCCUR.  AND

14   COUNSEL HAS SAID -- AND I'LL WALK THROUGH 45 IN A SECOND, YOUR

15   HONOR -- BUT COUNSEL HAS SAID ON 7 YOU SHOULD APPLY CLAIM

16   DIFFERENTIATION BECAUSE 7 ADDS THE NOTION THAT YOU'RE

17   COUNTING.  YOU'RE COUNTING.  WHAT ARE YOU COUNTING?  YOU'RE

18   COUNTING INFORMATION, YOUR HONOR, THAT'S IN THE USER PROFILE.

19   THE INFORMATION ABOUT FREQUENCY IS ALREADY IN THE USER

20   PROFILE.  ALL CLAIM 7 IS DOING IS COUNTING WHAT THAT FREQUENCY

21   IS.  AND -- AND CLAIM 45 IS SIMILAR.

22        AND I PUT THIS UP, YOUR HONOR, AND THIS IS NOT A

23   DEPENDENT CLAIM.  IT'S AN INDEPENDENT CLAIM.  AND AGAIN,

24   THERE'S LOTS OF WORDS IN THE CLAIM, SO I'M NOT GOING TO READ

25   ALL THE WORDS, BUT I'VE TRIED TO SIMPLIFY IT. ON THE

1  RIGHT-HAND SIDE YOU'VE GOT STEP E.  IT TALKS ABOUT EXTRACTING

2  SEGMENTS FROM THE TEXT AND THEN ADDING THE SEGMENTS TO THE

3  USER PROFILE.  AND THEN YOU REPEAT THAT FOR EACH OF THE TEXT

4  ITEMS THAT THE USER SUBMITTED.  AND THEN STEP H, YOU GENERATE

5  A USER SEGMENT GROUP BY GROUPING TOGETHER IDENTICAL SEGMENTS.

6  YOU DETERMINE A USER SEGMENT COUNT REPRESENTATIVE TO THE

7  NUMBER OF IDENTICAL SEGMENTS IN THE USER SEGMENT GROUP.  AND

8  THEN ON J, YOU SORT THE USER SEGMENT GROUPS IN DESCENDING

9  ORDER OF SEGMENT COUNT.

10      SO THEY ARE CALCULATING, THEY'RE ADDING IT UP, THEY'RE

11 SORTING. BY WHAT?  BY THE FREQUENCY WITH WHICH INFORMATION

12 APPEARS. WHERE?  APPEARS IN THE USER PROFILE.  SO THIS -- THE

13 CLAIM LANGUAGE HERE SHOWS THAT THE CLAIM NEEDS THAT

14 INFORMATION IN THE USER PROFILE OR ELSE IT COULDN'T DO THESE

15 THINGS, YOUR HONOR.  SO THE CLAIM LANGUAGE ITSELF SUPPORTS --

16 IN ADDITION TO THE ABSTRACT WE JUST LOOKED AT, THE CLAIM

17 LANGUAGE ITSELF SUPPORTS THE NOTION THAT THIS USER PROFILE HAS

18 TO HAVE THIS IN IT, OTHERWISE YOU COULDN'T DO THESE THINGS.

19 NEXT SLIDE.

20      REAL BRIEFLY, YOUR HONOR, I'LL MOVE AS FAST AS I CAN.

21 THE SUMMARY OF THE INVENTION ALSO MAKES IT VERY CLEAR.  WE

22 LOOKED AT THE ABSTRACT.  THIS IS COLUMN 3, LINE 64-65, SAYS:

23 THE USER PROFILE DATA FILE, YOUR HONOR, FILE IS THUS

24 REPRESENTATIVE OF THE USER'S OVERALL LINGUISTIC PATTERNS AND

25 THEIR RESPECTIVE FREQUENCIES.

1    SUMMARY OF THE INVENTION.  NEXT SLIDE, AGAIN, IN THE

2  SUMMARY OF THE INVENTION, COLUMN 5, LINE 17-20, SAYS: THUS,

3  THE RESULTING USER PROFILE CONTAINS LINGUISTIC PATTERNS FROM

4  ALL TEXTS SUBMITTED BY THE USER, OR AUTOMATICALLY GATHERED BY

5  THE SYSTEM, AND THE FREQUENCIES WITH WHICH THOSE PATTERNS

6  RECUR IN THE TEXTS.  AGAIN, SUMMARY OF THE INVENTION TWO TIMES

7  SAYS WHAT THE USER PROFILE CONTAINS AND THAT IS LINGUISTIC

8  PATTERNS OF THE FREQUENCIES WITH WHICH THEY OCCUR.  AND WHERE

9  IS IT CONTAINED?  IT'S CONTAINED IN A FILE.  NEXT SLIDE.

10    AS YOUR HONOR IS WELL AWARE, STATEMENTS THAT DESCRIBE THE

11  INVENTION AS A WHOLE ARE MORE LIKELY TO BE FOUND IN CERTAIN

12  SECTIONS OF THE SPECIFICATION, SUCH AS THE SUMMARY OF THE

13  INVENTION.  STATEMENTS IN THE SUMMARY OF THE INVENTION ARE NOT

14  LIMITED TO DESCRIBING A PREFERRED EMBODIMENT, BUT MORE BROADLY

15  DESCRIBE THE OVERALL INVENTIONS.

16    AND THEN WE HAVE GOT ANOTHER CITE, BUT THIS IS WELL

17  ESTABLISHED WHEN YOU ARE TALKING ABOUT THE INVENTION AS A

18  WHOLE AND THE SUMMARY OF THE INVENTION THAT HAS MORE WEIGHT.

19  AND HERE WE ARE.  NEXT SLIDE.

20    AND I WILL DO THIS BRIEFLY.  THE PROVISIONAL APPLICATION

21  AND THE PROSECUTION HISTORY ALSO SUPPORTS THE NOTION THAT THE

22  PERSON'S PROFILE IS GOING TO HAVE THE INFORMATION THAT

23  REFLECTS THE -- ESSENTIALLY WHAT THEY HAVE ALREADY AGREED TO,

24  THE LINGUISTIC PATTERNS.  THEY DON'T AGREE THAT IT REFLECTS

25  THE INTELLECTUAL, CULTURAL, AND PSYCHOLOGICAL PECULIARITIES,

1  BUT THAT'S ANOTHER CLAIM TERM.  NEXT SLIDE, PLEASE.  NEXT

2  SLIDE.

3      THIS SLIDE, YOUR HONOR, IS SIMPLE.  I HAVE GOT A COUPLE

4  OF SLIDES ON THE SECOND HIGHLIGHTED PORTION OF OUR

5  CONSTRUCTION ABOUT IT, IT'S SUBMITTED BY THE USER OR

6  ASSOCIATED WITH THE USER, YOUR HONOR.  AGAIN, THEY DON'T SEEM

7  TO DISPUTE THAT.  AND THIS IS JUST SOME OF THE INTRINSIC

8  EVIDENCE THAT WE THINK SUPPORTS INCLUDING THAT NOTION.  AGAIN,

9  THE SUMMARY OF THE INVENTION TALKS ABOUT IT'S FROM TEXTS

10  SUBMITTED BY THE USER, OR AUTOMATICALLY GATHERED BY THE

11  SYSTEM.  NEXT SLIDE.

12      AND THEN THIS IS COLUMN 4, LINES 53-61, TALKS ABOUT THESE

13  PATTERNS BEING SUBMITTED BY THE USER AND/OR AUTOMATICALLY

14  ACQUIRED BY THE INVENTIVE SYSTEM.  AGAIN, WE DON'T THINK

15  THAT'S A HUGE ISSUE HERE.  NEXT SLIDE.

16      AND THEN ON THE THIRD ELEMENT, YOUR HONOR -- LET'S GO ONE

17  MORE SLIDE -- THE NOTION THAT THE USER PROFILE DOES NOT

18  CONTAIN PRIVATE INFORMATION OF THE USER, WHICH IS THE LAST

19  ELEMENT WE HAVE IN OUR PROPOSED CONSTRUCTION, I BELIEVE THAT

20  COUNSEL FOR PLAINTIFF SAID THAT THE SPECIFICATION DESCRIBES

21  THAT PRIVATE INFORMATION IS ACTUALLY IN THE USER PROFILE.

22      WE WOULD DISPUTE THAT, YOUR HONOR.  WE BELIEVE THE

23  SPECIFICATION CLEARLY SHOWS THAT IT'S NOT.  AND HERE, THIS IS

24  IN THE BRIEF, YOUR HONOR, BUT IT'S COLUMN 11, LINES 14-19: IT

25  SHOULD BE NOTED THAT ALTHOUGH THE USER MAY SUBMIT VERY

1   PERSONAL TEXTS AS PERSONAL TEXTUAL DATA TO THE CONTROL UNIT

2   14, AS WILL BE EXPLAINED BELOW IN CONNECTION WITH FIGURE 3,

3   THE USER PROFILE DOES NOT CONTAIN ANY PRIVATE INFORMATION

4   ABOUT THE USER NOR DOES IT CONTAIN ANY TEXTUAL EXCERPTS FROM

5   THE USER'S PRIVATE TEXTS.  SO THE SPECIFICATION PRETTY CLEARLY

6   SAYS THE PROFILE HAS LINGUISTIC PATTERNS AND FREQUENCIES, BUT

7   IT DOESN'T HAVE PRIVATE INFORMATION ABOUT THE USER.  IF WE CAN

8   GO BACK ONE, PLEASE.

9       AND HERE IN THE SUMMARY OF THE INVENTION IT SAYS THE SAME

10  THING.  IT SAYS: THE SYSTEM OF THE PRESENT INVENTION MATCHES

11  THE USER'S LINGUISTIC PATTERNS TO THE LINGUISTIC PATTERNS OF

12  DATA REQUESTED BY THE USER WITHOUT EXTRACTING ANY ACTUAL

13  INFORMATION ABOUT THE USER'S BACKGROUND AND PSYCHOLOGICAL

14  CHARACTERISTICS FROM THE USER PROFILE.  AND THEN IT SAYS:

15  THUS, THE USER'S PRIVACY IS NOT IMPINGED BY THE CREATION OF

16  THE USER PROFILE, BY THE CREATION AND RETENTION.

17      SO, YOU CREATE THE USER PROFILE, YOU RETAIN IT, AND THERE

18  IS NO PRIVATE INFORMATION IN THERE.  YOU HAVEN'T IMPINGED IT

19  BY CREATING IT AND RETAINING IT.  CONTRARY TO WHAT THEY HAVE

20  SAID IN ANALYZING THIS LANGUAGE, WE BELIEVE THAT THIS -- THIS

21  CITE AS WELL SUPPORTS THE NOTION THAT THE USER PROFILE ITSELF

22  IS A FILE, CONTAINS LINGUISTIC PATTERNS AND FREQUENCIES

23  THEREOF, BUT IT DOES NOT CONTAIN EXPRESSLY, AS STATED BY THE

24  SPEC IN CLEAR LANGUAGE, DOES NOT CONTAIN PRIVATE INFORMATION.

25      AND I DON'T KNOW -- DID YOU CONCLUDE DATA ITEM PROFILE,

1    COUNSEL?  I'M SORRY, CAN I ASK COUNSEL A QUESTION?

2              THE COURT: SURE.  SURE.

3              MR. VERHOEVEN: DID YOU INCLUDE DATA ITEM PROFILE?

4    ARE YOU GOING TO READ THAT SEPARATELY?

5              MR. FENSTER: SEPARATELY.

6              MR. VERHOEVEN: YOU ARE, OKAY.  THAT CONCLUDES MY

7    ARGUMENT, YOUR HONOR --

8              THE COURT: VERY WELL.

9              MR. VERHOEVEN:  -- UNLESS YOU HAVE ANY OTHER

10   QUESTIONS.

11             THE COURT: NO.  ANY BRIEF REPLY COMMENTS?

12             MR. FENSTER: BRIEFLY.  COUNSEL -- I'M SORRY, YOUR

13   HONOR, EXCUSE ME.  FIRST WITH RESPECT TO FILE, I JUST WANT TO

14   POINT OUT TWO PLACES FROM THE SPECIFICATION THAT TALK ABOUT

15   OTHER TYPES OF STORAGE LIKE WE DESCRIBED RANDOM ACCESS AND SO

16   FORTH.  SO FIRST IN CONNECTION WITH DESCRIBING THE SYSTEM, IT

17   DESCRIBES THAT THE MEMORY MAY BE RANDOM ACCESS MEMORY FOR

18   TEMPORARILY STORING CONTROL PROGRAM INSTRUCTIONS AND VARIABLES

19   DURING THE EXECUTION OF APPLICATION PROGRAMS, ETCETERA, AND

20   OTHER TYPES OF MEMORY AS WELL.

21       AND THEN MORE SPECIFICALLY ON COLUMN -- THIS IS COLUMN 9

22   CARRYING OVER TO 10, IT DESCRIBES WHERE THE USER PROFILE MAY

23   BE STORED.  AND WHAT IT DESCRIBES IS THAT THE USER PROFILE MAY

24   BE STORED IN A REMOTE CENTRAL PROFILE DATABASE LOCATED IN A

25   PROFILE STORAGE DEVICE SUCH AS A STORAGE MEMORY DEVICE.  THAT

1 COULD BE ANY KIND OF STORAGE MEMORY DEVICE AND IS NOT

2 NECESSARILY IN A FILE.

3      YOUR HONOR, WITH RESPECT TO FREQUENCY, I AGREE THAT THE

4 PORTIONS OF THE SPECIFICATION, THE SPECIFICATION THAT COUNSEL

5 FOR DEFENDANTS RELIED ON DO SUPPORT THE CONSTRUCTION THAT THE

6 USER PROFILE HAVE TO INCLUDE FREQUENCIES, BUT IT'S TRUMPED BY

7 THE CLAIMS.  THE CLAIMS DON'T REQUIRE IT.  AND IT'S CLEAR THAT

8 THEY DON'T REQUIRE IT BECAUSE THEY USE THE LANGUAGE THAT THE

9 USER PROFILE MUST ONLY BE REPRESENTATIVE OF THE FIRST

10 LINGUISTIC PATTERN AND NOT THE FREQUENCIES.  AND SO IT'S

11 ABSOLUTELY CLEAR THAT CLAIM 1 BY ITSELF DOESN'T REQUIRE IT.

12      AND WITH RESPECT TO THE CLAIM DIFFERENTIATION ARGUMENT, I

13 AM NOT SURE I UNDERSTOOD COUNSEL'S ARGUMENT ENTIRELY.  HE

14 SEEMED TO BE SAYING THAT CLAIM 7 SOMEHOW REQUIRES THAT THE

15 FREQUENCIES ALREADY BE THERE.  BUT AS I SHOWED YOUR HONOR,

16 THIS IS CONTINUING IN CLAIM 7 DEPENDENT ON 1, IN STEP T IT

17 REQUIRES THE STEP OF DETERMINING THE SEGMENT COUNT.  IF THE

18 FREQUENCY WERE ALREADY IN THERE, YOU WOULDN'T HAVE TO

19 DETERMINE THE SEQUENCE COUNT.  THIS IS THE METHOD.  THIS IS A

20 METHOD ADDING AN ADDITIONAL STEP OF COUNTING AND DETERMINING

21 THE SEGMENT COUNT, SO THEREFORE THE CLAIM DIFFERENTIATION

22 ARGUMENT HOLDS IT'S THE REQUIREMENT OF THE FREQUENCY IS NOT IN

23 CLAIM 1, BUT IS IN CLAIM 7.

24      AND FINALLY, YOUR HONOR, WITH RESPECT TO PRIVATE

25 INFORMATION, THIS IS THE PORTION OF THE SPECIFICATION AT

1   COLUMN 4.  IT IS TRUE THAT THE CREATION AND RETENTION OF THE

2   USER PROFILE DOESN'T COMPROMISE PRIVATE DATA BECAUSE THE

3   INFORMATION IS NOT EXTRACTED FROM IT.  AND THIS SPECIFICALLY

4   DOES CONTEMPLATE -- THANK YOU -- THAT PRIVATE INFORMATION IS

5   WITHIN THE USER PROFILE. OTHERWISE, YOU COULDN'T EXTRACT THAT

6   PRIVATE INFORMATION FROM IT.

7        THE OTHER PORTION THAT MR. -- THAT COUNSEL FOR DEFENDANTS

8   RELIED ON AT COLUMN 11 IS IN A DESCRIPTION OF THE PREFERRED

9   EMBODIMENT, AND IN THAT PREFERRED EMBODIMENT, IT'S TRUE THE

10  USER UNDERSCORE PROFILE FILE IN CONNECTION WITH THAT PREFERRED

11  EMBODIMENT DIDN'T CONTAIN PRIVATE INFORMATION, BUT THAT

12  DOESN'T SAY ANYTHING AS TO THE CONSTRUCTION.  THAT'S ALL I

13  HAVE ON USER PROFILE.

14        THE COURT: WHY DON'T WE TAKE A BRIEF TEN MINUTE

15  BREAK.  WE SEEM TO BE MOVING ALONG NICELY.  HOW MANY CLAIM

16  TERMS REMAIN?

17        MR. VERHOEVEN: I HAVE TWO THAT I'D LIKE TO PRESENT

18  ON.  THAT'S IT.

19        MR. FENSTER: YOUR HONOR, I BELIEVE WE HAVE DATA ITEM

20  PROFILE, WHICH WILL MIRROR MUCH OF THE LAST TWO, AND THEN THE

21  TWO ITEMS, TWO OTHER ITEMS.

22        THE COURT: SO WE'LL TAKE A TEN MINUTE RECESS.

23      (RECESS AT 11:06 A.M., UNTIL 11:19 A.M., OPEN COURT)

24        THE COURT: PLEASE BE SEATED.  WHAT WOULD THE PARTIES

25  LIKE TO GO TO NEXT?

1          MR. FENSTER: EXCUSE ME, YOUR HONOR.  THE NEXT TERM

2     FOR CONSTRUCTION IS DATA ITEM PROFILE, THE THIRD IN THE

3     PROFILE TERMS.  AND LET'S GO TO SLIDE 34, PLEASE.  YOUR HONOR,

4     CONSISTENT WITH OUR PROPOSED COMPROMISE WITH THE OTHER PROFILE

5     TERMS, WE HAVE MOVED CLOSER TO DEFENDANTS' POSITION.

6          THE COURT: WE ARE BACK TO FREQUENCY, AND COLLECTION,

7     I GUESS, IS THE STICKING POINT.  IS THERE ANY NEED TO REHASH

8     ALL THESE ARGUMENTS?

9          MR. FENSTER: I DON'T BELIEVE SO, YOUR HONOR.  THE

10    NEW -- THE NEW STICKING POINT, THE ADDITIONAL THING THAT

11    DEFENDANTS WANT TO ADD IS DATA ITEM'S ADDRESS.  AND ONCE

12    AGAIN, THE SPECIFICATION DOES TALK ABOUT THE DATA ITEM ADDRESS

13    BEING THERE, BUT THE CLAIM DOESN'T REQUIRE IT.  SLIDE 36,

14    PLEASE.

15         THE CLAIM ONLY REQUIRES THAT THE DATA ITEM PROFILE BE

16    REPRESENTATIVE OF A SECOND LINGUISTIC PATTERN.  YOUR HONOR,

17    JUST AS I SHOWED YOU BEFORE WITH USER PROFILE, THE

18    SPECIFICATION TALKS ABOUT THE DATA ITEM PROFILE THAT CONTAINS

19    -- WHERE IT CONTAINS A PATTERN AND A FREQUENCY THAT IT'S

20    REPRESENTATIVE OF A PATTERN AND A FREQUENCY.  BUT THE CLAIM

21    ACTUALLY ONLY REQUIRES THAT THE SECOND LINGUISTIC PATTERN --

22    OR THAT THE DATA ITEM PROFILE, I'M SORRY, BE REPRESENTATIVE OF

23    THE SECOND LINGUISTIC PATTERN.  IT DOES NOT REQUIRE THAT THE

24    DATA ITEM PROFILE CONTAIN DATA ITEM ADDRESSES OR THAT IT BE

25    REPRESENTATIVE OF FREQUENCIES.  WE THINK THIS IS JUST ANOTHER

1    EXAMPLE WHERE DEFENDANTS ARE TRYING TO --

2              THE COURT: WHERE IS YOUR COMPROMISE?  WHICH NUMBER?

3              MR. FENSTER: THIS --

4              THE COURT: SUGGESTED COMPROMISE, WHICH?

5              MR. FENSTER: OH, SLIDE 34, YOUR HONOR.

6              THE COURT: THIRTY-FOUR.  I SEE.

7              MR. FENSTER: SO OUR PROPOSED COMPROMISE WOULD NOT

8    INCLUDE THE FILE, AND IT WOULD NOT INCLUDE THE DATA ITEM'S

9    ADDRESS OR THE FREQUENCIES.  BUT OTHERWISE IT WOULD INCLUDE

10   INFORMATION ABOUT THE LINGUISTIC PATTERNS IN A DATA ITEM.  WE

11   THINK THAT'S WHAT'S SUPPORTED BY THE -- BY THE INTRINSIC

12   EVIDENCE.

13       THE OTHER THING THAT I WANT TO POINT OUT, YOUR HONOR, AT

14   SLIDE 37, THE DEFENDANTS ARE TRYING TO DEFINE SPECIFICALLY

15   WHAT GOES INTO THE DATA ITEM PROFILE.  IT IS BOTH OVER

16   INCLUSIVE AND UNDER INCLUSIVE.  FOR EXAMPLE, THE SPECIFICATION

17   TALKS AT VARIOUS PLACES ABOUT THE DATA ITEM PROFILE INCLUDING

18   SEGMENTS, SEGMENT GROUPS, SEGMENT SETS.  THOSE ARE NOT

19   INCLUDED IN DEFENDANTS' DEFINITION, SO THE DEFENDANTS'

20   DEFINITION BOTH SAYS TOO MUCH AND TOO LITTLE, AND WE THINK A

21   COLLECTION OF INFORMATION ACCURATELY REFLECTS -- A COLLECTION

22   OF INFORMATION ABOUT THE LINGUISTIC PATTERNS ACCURATELY

23   REFLECTS WHAT THE CLAIM REQUIRES.  THAT'S ALL I HAVE ON DATA

24   ITEM PROFILE.

25              THE COURT: RESPONSE.

1    MR. VERHOEVEN: YOUR HONOR IS CORRECT THAT THE ISSUES

2 HERE ARE REPETITIVE OF THE ISSUES IN THE OTHERS.  I AM NOT

3 GOING TO REPEAT MY ARGUMENTS, YOUR HONOR.  IF I HAVEN'T MADE

4 THEM WELL ENOUGH YET, I AM PROBABLY NOT GOING TO DO ANY

5 BETTER.

6    THE COURT: I BELIEVE I AM FULLY AWARE OF BOTH

7 PARTY'S POSITION ON THOSE ISSUES.

8    MR. VERHOEVEN: RIGHT.  THE ONLY THING I'D DO, YOUR

9 HONOR, IS ONE PIECE OF INTRINSIC EVIDENCE I HAVEN'T MENTIONED.

10 THIS IS SLIDE -- CAN WE GO TO 62?  AND THIS IS TALKING ABOUT

11 THE SECOND -- THIS IS COLUMN 3, LINES 21-35, YOUR HONOR.  AND

12 THIS IS -- THIS RELATES TO THE DATA ITEM PROFILE IN THE SPEC

13 TALKING ABOUT THE SECOND STAGE OF THE PRESENT INVENTION.  AND

14 I HAVE HIGHLIGHTED THE PHRASE, QUOTE: THUS, THE RESULTING DATA

15 ITEM PROFILE AND EACH DATA ITEM CONTAIN THE DATA ITEM ADDRESS,

16 THE LINGUISTIC PATTERNS OF THE DATA ITEM AND THE FREQUENCY

17 WITH WHICH THOSE PATTERNS RECUR THEREIN.  AND THIS IS FURTHER

18 SUPPORT I THINK IN ADDITION TO ALL THE OTHER STUFF I'VE ARGUED

19 AND CITED FOR THE PROPOSED CONSTRUCTION ON.

20    THE ONLY THING THAT'S NEW HERE IS THIS DATA ITEM ADDRESS

21 DEAL, AND THAT'S IN THERE.  I MEAN, IT'S RIGHT IN THE SPEC.

22 IT SAYS EACH, USES THE WORD EACH.  IT SAYS EACH DATA ITEM,

23 RESULTING DATA ITEM PROFILE OF EACH DATA ITEM INCLUDES THESE

24 THINGS.  SO WE WOULD SUBMIT THAT SUPPORTS THE NOTION AS WE

25 PROPOSE IT.  IS THE DATA ITEM ADDRESS CRITICAL TO OUR

1  CONSTRUCTION, YOUR HONOR?  NO, IT'S NOT CRITICAL.  IF THAT'S

2  WHAT WE ARE DOWN TO BRASS TACKS AND WE AGREE TO EVERYTHING

3  ELSE, IT'S NOT CRITICAL.  WE BELIEVE IT'S APPROPRIATE.  WE

4  BELIEVE THAT IT INHERENTLY IS GOING TO HAVE AN ADDRESS

5  ASSOCIATED WITH IT.  AND WE ARE NOT WALKING AWAY FROM IT, BUT

6  IT'S NOT A CRITICAL PART OF OUR CONSTRUCTION.  THANK YOU, YOUR

7  HONOR.

8           THE COURT: THANK YOU.  ANY REPLY COMMENTS?

9           MR. FENSTER: NO, YOUR HONOR.  JUST THAT THE --

10           THE COURT: WHAT -- WHAT TERM DO WE NOW GO TO?

11           MR. FENSTER: THE NEXT TERM, YOUR HONOR, IS

12  PSYCHOLOGICAL PROFILE, AND THAT'S ONE ON THE COURT'S

13  PRELIMINARY CONSTRUCTION LIST WITH WHICH PLAINTIFFS AGREE.  SO

14  I'LL TURN IT --

15           THE COURT: SO LET'S HEAR FROM DEFENDANTS ON WHY YOU

16  FEEL THIS NEEDS SOME ADDITIONAL MODIFICATION.

17           MR. VERHOEVEN: AS YOU COULD TELL FROM THE BRIEFING

18  ON THIS, YOUR HONOR, WE HAD A LITTLE DIFFICULTY WITH THIS

19  PHRASE PSYCHOLOGICAL PROFILE AND WHAT IT'S METES AND BOUNDS

20  WOULD BE.  YOU KNOW, IF YOU WANT TO DESIGN A SYSTEM AND DON'T

21  WANT TO INFRINGE, HOW DO YOU KNOW YOU ARE NOT?  YOU DON'T HAVE

22  INFORMATION CONCERNING PSYCHOLOGICAL PROFILE.

23     AND IN AN EFFORT TO COMPROMISE, YOUR HONOR, WHAT WE DID

24  IS WE WENT BACK TO THE FIRST PROPOSED DEFINITION THAT COUNSEL

25  FOR PLAINTIFF PROPOSED AND THAT'S WHAT'S LISTED UP ON THE TOP

1    LEFT.  ONE OR MORE PROFILES PERTAINING TO MENTAL PROCESSES,

2    THAT ACTUALLY WAS PLAINTIFF'S PROPOSED CONSTRUCTION IN THEIR

3    INITIAL JOINT CLAIM CONSTRUCTION STATEMENT.  AND THEY PROPOSED

4    THREE DIFFERENT CONSTRUCTIONS OVER THE COURSE OF TIME, YOUR

5    HONOR.

6         AND IN AN EFFORT TO COMPROMISE, WE -- OUR ARGUMENT IS

7    THAT THE FIRST OF THEIR PROPOSED CONSTRUCTIONS IS THE MOST

8    APPROPRIATE.  YOUR HONOR HAS INCLUDED OUR CONSTRUCTION

9    BASICALLY EQUATES A PSYCHOLOGICAL PROFILE WITH SOMETHING

10   PERTAINING TO MENTAL PROCESSES.  THE CONSTRUCTION THAT'S IN

11   YOUR HONOR'S TENTATIVE, AND I BELIEVE ALSO IN PLAINTIFF'S,

12   ADDS THE NOTION OF PERSONALITY OR BEHAVIOR.  AND WE WOULD

13   SUGGEST, YOUR HONOR, THAT WE SHOULD LIMIT IT TO MENTAL

14   PROCESSES TO MAKE IT CLEAR THAT IT'S A PSYCHOLOGICAL PROFILE.

15        NOW, YOUR HONOR WILL REMEMBER THAT IN THE DEFINITION,

16   WHICH PLAINTIFF ADMITS IS THE DEFINITION HERE, THERE IS THE

17   REFERENCE TO EDUCATIONAL BACKGROUND, SOCIAL BACKGROUND, A

18   NUMBER OF THINGS, AND THEN IT SAYS, AND PSYCHOLOGICAL PROFILE.

19   AND UNDER THE CONSTRUCTION THAT INCLUDES INFORMATION RELATING

20   TO BEHAVIOR OR PERSONALITY WITHIN THE PHRASE PSYCHOLOGICAL

21   PROFILE, I MEAN, WHAT'S THE DIFFERENCE BETWEEN THAT AND

22   EDUCATIONAL BACKGROUND?  WHAT'S THE DIFFERENCE IN THAT AND

23   SOCIAL BACKGROUND?

24        SO WHAT WE ARE PROPOSING, WHICH IS SOMETHING THE

25   PLAINTIFF PROPOSED INITIALLY, IS A CONSTRUCTION THAT WOULD

1    MAKE IT CLEAR THAT YOU ARE TALKING ABOUT MENTAL PROCESSES AND

2    NOT ABOUT INFORMATION ABOUT, YOU KNOW, HARRY LIKES TO ORDER

3    PIZZA ON FRIDAYS, WHICH I WOULDN'T THINK IS PART OF A

4    PSYCHOLOGICAL PROFILE, BUT MAYBE I'M WRONG.  THANK YOU, YOUR

5    HONOR.

6              THE COURT: THANK YOU.  WELL, COULD PLAINTIFF LIVE

7    WITH ITS ORIGINAL CONSTRUCTION?  MAYBE WE CAN SIMPLY AGREE

8    UPON THAT ONE.

9              MR. FENSTER: YOUR HONOR, THE ORIGINAL CONSTRUCTION

10   HONESTLY WAS DONE BEFORE I JOINED THE TEAM.

11             THE COURT: SO YOU ARE GOING TO BLAME WHOEVER

12   INITIALLY --

13             MR. FENSTER: FORGIVE ME, YOUR HONOR.  THE --

14             THE COURT: SO I GUESS WHY, WHY IS THE PLAINTIFF'S

15   INITIAL SUGGESTED CONSTRUCTION LESS APPROPRIATE THAN THE

16   COURT'S OFFERED CONSTRUCTION?

17             MR. FENSTER: THE COURT DID A BETTER JOB.  HONESTLY,

18   YOUR HONOR, THE PLAINTIFF'S ORIGINAL CONSTRUCTION AND

19   DEFENDANT'S CONSTRUCTION NOW DEFINE PSYCHOLOGICAL PROFILE AS

20   PROFILES PERTAINING TO, AND SO IT DOESN'T -- IT USES THE TERM

21   TO SELF DEFINE, AND THAT'S PROBLEMATIC.

22        THE OTHER THING IS, YOUR HONOR, PSYCHOLOGICAL PROFILE IS

23   NOT A COINED TERM.  IT IS SOMETHING THAT SHOULD BE GIVEN ITS

24   PLAIN ORDINARY MEANING.  IT IS NOT DEFINED IN THE

25   SPECIFICATION, IT'S NOT DEFINED IN THE CLAIMS, AND THEREFORE

1    SHOULD BE GIVEN ITS PLAIN ORDINARY MEANING.  THE PLAIN

2    ORDINARY MEANING IS FOR PROFILE IN THE PSYCHOLOGICAL CONTEXT

3    -- ACTUALLY, YOU KNOW WHAT, SLIDE 42, PLEASE -- IS DEFINED IN

4    THE PSYCHOLOGICAL CONTEXT AS A DESCRIPTION OF BEHAVIORAL AND

5    PERSONALITY TRAITS.  THE REASON IS PSYCHOLOGY MANIFESTS ITSELF

6    THROUGH BEHAVIOR AND PERSONALITY, AND THEREFORE YOUR HONOR'S

7    CONSTRUCTION IS CORRECT.  IT SHOULD BE IN ACCORDANCE WITH THE

8    PLAIN MEANING.

9              THE COURT: REPLY COMMENTS?

10             MR. VERHOEVEN: YOUR HONOR, WE DON'T HAVE A PROBLEM

11   -- WELL, FIRST I WILL NOTICE IT'S INTERESTING TO SEE THE

12   PLAINTIFF ATTACKING ITS OWN PROPOSED CONSTRUCTION.  BUT WE

13   DON'T HAVE A PROBLEM WITH TAKING OUT PROFILE PERTAINING TO AND

14   JUST SAY INFORMATION REGARDING, IF THAT'S -- I THINK THAT WAS

15   THE FIRST PROBLEM ARTICULATED BY COUNSEL FOR PLAINTIFF WITH

16   THEIR OWN INITIAL CONSTRUCTION.  SO IF IT'S JUST INFORMATION

17   REGARDING -- NOW I'VE FORGOTTEN TO BRING UP THE COURT'S -- AND

18   THE COURT'S CONSTRUCTION DOES SAY INFORMATION REGARDING.  WE

19   DON'T HAVE A PROBLEM WITH THAT INSTEAD OF A PROFILE PERTAINING

20   TO AND SUBSTITUTING OUT INFORMATION REGARDING.  BUT WE DO

21   THINK THAT GOING BEYOND MENTAL PROCESSES TO ANYTHING THAT

22   COULD BE CONSIDERED TO RELATE TO PERSONALITY OR BEHAVIOR GETS

23   TOO BROAD, YOUR HONOR, AND --

24             THE COURT: SO REPEAT YOUR NEW SUGGESTED COMPROMISE.

25             MR. VERHOEVEN: YES, YOUR HONOR.  INFORMATION

1  REGARDING MENTAL PROCESSES.

2            THE COURT: WHAT ABOUT THAT SUGGESTION?

3            MR. FENSTER: YOUR HONOR, I LIKE THE INFORMATION, BUT

4  MENTAL PROCESSES IS A SUBSET OF PSYCHOLOGY.

5            THE COURT: SO YOU LIKE PERSONALITY AND BEHAVIOR?

6            MR. FENSTER: IN ADDITION TO MENTAL.  WHAT'S GOING ON

7  IN MY HEAD, IN ADDITION TO WHAT I DO, ALL GOES TO MY

8  PSYCHOLOGICAL PROFILE.

9            MR. VERHOEVEN: UNLESS YOUR HONOR HAS ANY

10 QUESTIONS --

11            THE COURT: NO, I THINK --

12            MR. VERHOEVEN:  -- I AM NOT GOING TO REARGUE.

13            MR. FENSTER: THE FINAL AND LAST TERM.

14            THE COURT: FROM THE PLAINTIFF'S STANDPOINT, OR ALL?

15            MR. FENSTER: YOUR HONOR, I THINK THE LAST TERM THAT

16 WE HAVE TODAY IS TEXT ITEM.

17            THE COURT: THIS IS ONE THAT DEFENDANT AGREES WITH

18 THE COURT'S CONSTRUCTIONS, SO NOW IT'S YOUR TURN TO TELL US

19 WHY YOU FEEL THE COURT'S PRELIMINARY CONSTRUCTION NEEDS SOME

20 TWEAKING OR MODIFICATION.

21            MR. FENSTER: YES, YOUR HONOR.  YOUR HONOR, THE COURT

22 HAS CONSTRUED PRELIMINARILY --

23            THE COURT: WHERE IS YOUR SLIDE ON YOUR SUGGESTED

24 CONSTRUCTION?  IT MIGHT HELP ME.

25            MR. FENSTER: SURE.

1          THE COURT: WHICH NUMBER?

2          MR. FENSTER: NUMBER 50, FIVE ZERO.

3          THE COURT: I HAVE IT.

4          MR. FENSTER: OKAY.

5          THE COURT: DO YOU STILL LIKE YOUR INITIAL

6   CONSTRUCTION, OR SOME MODIFICATION BETWEEN THE TWO?

7          MR. FENSTER: I WANT TO -- I'D LIKE TO MODIFY YOUR

8   HONOR'S, ACTUALLY.  SO, AND PARDON MY HANDWRITING.  THE

9   COURT'S CONSTRUCTION FOR TEXT ITEM IS A SERIES OF WORDS THAT

10  CAN BE SPLIT INTO AT LEAST ONE SENTENCE.  PLAINTIFF'S PROPOSED

11  MODIFICATION OF THAT IS TEXT THAT COMPRISES AT LEAST ONE

12  SENTENCE.  AND THIS ARGUMENT IS BASED SOLELY ON CLAIM 45, THE

13  ACTUAL LANGUAGE.  DO YOU WANT TO SEE IF WE HAVE AGREEMENT

14  FIRST?

15         THE COURT: LET'S GIVE THE DEFENDANTS A MINUTE TO

16  CONFER AND SEE IF THEY CAN -- WHAT SAYS THE DEFENDANTS ON

17  THAT?

18         MR. VERHOEVEN: YOUR HONOR, I AM GOING TO DEFER TO MY

19  PARTNER, BRIAN CANNON.

20         THE COURT: THAT'S FINE.

21         MR. CANNON: GOOD MORNING, YOUR HONOR.

22         THE COURT: GOOD MORNING.

23         MR. CANNON: BRIAN CANNON.  YOUR HONOR, WE -- WE

24  BELIEVE TEXT ITEM, THE WAY THAT YOUR HONOR HAS CONSTRUED IT IS

25  THE CORRECT -- IS THE CORRECT WAY.

1          THE COURT: WHAT DO YOU DISAGREE WITH THEIR SUGGESTED

2   COMPROMISE?

3          MR. CANNON: WELL, AS A STARTER, COMPRISES IS OPEN

4   ENDED.  THAT COULD BE -- THAT COULD BE ANYTHING.  I THINK IT

5   NEEDS TO BE A SERIES OF WORDS BECAUSE IT NEEDS TO BE SPLIT

6   INTO AT LEAST ONE SENTENCE.  AND I THINK IF WE LOOK AT THE

7   LANGUAGE OF CLAIM 45 -- I WONDER IF WE COULD PUT THE SLIDES ON

8   MY SCREEN.

9          SO THIS IS CLAIM 45.  AND SO IF WE LOOK AT SECTION A,

10  STEP A, THE COMPUTER SYSTEM RETRIEVES USER LINGUISTIC DATA AND

11  THE USER LINGUISTIC DATA COMPRISES AT LEAST ONE TEXT ITEM.

12  THEN WE LOOK AT STEP C, THE COMPUTER SYSTEM RETRIEVES A TEXT

13  ITEM FROM SAID USER LINGUISTIC DATA.  AND THEN HERE IS THE

14  REALLY IMPORTANT STEP, STEP D, THE COMPUTER SYSTEM SEPARATES

15  THE TEXT ITEM INTO AT LEAST ONE SENTENCE.  SO I THINK THAT IS

16  -- THAT IS THE LANGUAGE, YOUR HONOR, THAT I THINK IS

17  SUPPORTIVE AND CONSISTENT WITH YOUR HONOR'S PROPOSAL WHICH IS

18  A SERIES OF WORDS THAT CAN BE SPLIT INTO AT LEAST ONE

19  SENTENCE.  IT NEEDS TO BE A SERIES OF WORDS AND IT NEEDS TO BE

20  ABLE TO BE SPLIT INTO AT LEAST ONE SENTENCE IN ORDER FOR THE

21  TEXT ITEM TO MAKE SENSE IN CLAIM 45 HERE.

22          THE COURT: PLAINTIFF'S REPLY?

23          MR. FENSTER: SURE.  AND WE CAN DO IT FROM

24  DEFENDANTS' SLIDE.  IT'S AN ARGUMENT BASED ON THE LANGUAGE

25  ITSELF.  YOUR HONOR, IN STEP A WE HAVE AT LEAST ONE TEXT ITEM

1   COMPRISING AT LEAST ONE SENTENCE.  IT TELLS YOU -- IT'S SELF

2   DEFINING IN THE CLAIM.  WE DON'T THINK IT SHOULD BE CONSTRUED

3   AT ALL.  BUT IF IT IS, IT SHOULD BE DEFINED AS IT'S DEFINED IN

4   THE CLAIM, WHICH IS A TEXT ITEM COMPRISING INCLUDING AT LEAST

5   ONE SENTENCE.

6       NOW, WHY DOES -- WHY DO WE DISPUTE WITH A SERIES OF

7   WORDS?

8           THE COURT: I STARTED TO SAY, WHAT'S THE DIFFERENCE?

9           MR. FENSTER: IT IS POSSIBLE TO HAVE A ONE SENTENCE

10  -- A ONE WORD SENTENCE.  THE SPECIFICATION DOES NOT EXCLUDE

11  IT.  SO YOU CAN HAVE A ONE WORD SENTENCE AND YOU ONLY NEED ONE

12  SENTENCE, AND THEREFORE TEXT ITEM -- NOW, THIS IS NOT A

13  KILLER.  IF WE DID -- IF WE DID A SERIES OF WORDS THAT

14  COMPRISES AT LEAST ONE SENTENCE, THAT MIGHT BE A COMPROMISE.

15          MR. CANNON: YOUR HONOR, I THINK THE WORD COMPRISES

16  IS -- AGAIN IS OPEN ENDED.  AND I WOULD REFER YOUR HONOR TO --

17  TO CLAIM 45.

18          THE COURT: OH, YOU SAID COMPRISING, NOT COMPROMISE.

19          MR. CANNON: YEAH, I GOT THEM MIXED UP.

20          THE COURT: I THOUGHT YOU SAID COMPROMISE IS OPEN

21  ENDED.  SO --

22          MR. CANNON: I THINK A ONE WORD --

23          THE COURT:  -- THAT'S WHY I WAS LAUGHING.

24          MR. CANNON: I'M SORRY, YOUR HONOR.  I THINK A ONE

25  WORD SENTENCE JUST DOESN'T WORK WITH CLAIM 45.  YOU CAN'T --

1  YOU CAN'T SEPARATE A ONE WORD SENTENCE.  YOU CAN'T SPLIT UP A

2  ONE WORD SENTENCE INTO SEGMENTS, SO I THINK IT NEEDS TO BE A

3  SERIES OF WORDS LIKE YOUR HONOR PROPOSED.

4          MR. FENSTER: AND FOR THE REASONS I SAID, WE WOULD

5  SUGGEST MAYBE A WORD OR SERIES OF WORDS AS THE COMPROMISE

6  LANGUAGE.

7          THE COURT: WHAT NEXT?

8          MR. FENSTER: WE THANK YOUR HONOR.

9          MR. VERHOEVEN: THAT'S IT, YOUR HONOR.

10         THE COURT: GREAT.  I APPRECIATE EVERYONE'S EFFORTS,

11  TRULY. YOU WENT A LONG WAY IN LIMITING THIS TO TEN TERMS, AND

12  THEN AGREED UPON THREE OF THE SIX.  SO, WELL DONE.  AND I AM

13  OFF TO MARSHALL IN EARLY OCTOBER FOR MOST OF THE MONTH.  AND I

14  AM GOING TO TRY TO HAVE AN ORDER OUT IN ADVANCE OF ME LEAVING

15  SO THE PARTIES CAN BE EAGERLY MOVING FORWARD WITH BENEFIT OF

16  THE CLAIM CONSTRUCTION ORDER.  I AM TRYING TO REMEMBER, IS

17  THIS CASE SET FOR MARCH OF 2010?

18         MR. FENSTER: YES, IT IS, YOUR HONOR.

19         THE COURT: VERY WELL.  I SHOULD HAVE SOMETHING OUT,

20  LIKE I SAID, BEFORE -- BEFORE OCTOBER 1.  SO HAVE A PLEASANT

21  RETURN TRIP HOME.  WE WILL BE IN RECESS.

22

23         (ADJOURNED AT 11:38 A.M.

24

25

1          REPORTER'S CERTIFICATION

2          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

3    THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4          DATED THIS 24TH DAY OF SEPTEMBER, 2009

5

6                              /S/LIBBY CRAWFORD

7                              LIBBY CRAWFORD, CSR

8                              OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25