**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PA ADVISORS, LLC**, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 2:07-CV-480 DF** |
| | § | |
| **GOOGLE, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**CLAIM CONSTRUCTION ORDER**

Before the Court is Plaintiff's Opening Brief Regarding Claim Construction. Dkt.

No. 248. Also before the Court are Defendants' response, Plaintiff's reply, and Defendants' sur-

reply. Dkt. Nos. 255, 258, and 266, respectively. The Court held a claim construction hearing on

September 17, 2009. Having considered the briefing, oral arguments of counsel, and all relevant

papers and pleadings, the Court construes the disputed claim terms as set forth herein.

1

Dockets.Justia.com

# TABLE OF CONTENTS

**I. BACKGROUND** . . . . . . . . . . **3**

**II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION** . . . **7**

**III. DISCUSSION** . . . . . . . . . . **8**

    **1.** "Data Item" . . . . . . . . 8

    **2.** "Data Item Profile" . . . . . . . 8

    **3.** "Linguistic Pattern" . . . . . . 12

    **4.** "Psychological Profile" . . . . . . 16

    **5.** "Search Request Data" . . . . . . 19

    **6.** "Search Request Profile" . . . . . 19

    **7.** "Segment" . . . . . . . . 22

    **8.** "Text Item" . . . . . . . 26

    **9.** "User Linguistic Data" . . . . . . 28

    **10.** "User Profile"/"User Data Profile" . . . . 28

**IV. CONCLUSION** . . . . . . . . . **32**

# I. BACKGROUND

Plaintiff alleges infringement of United States Patent No. 6,199,067 (the "'067 Patent"), titled "System and Method for Generating Personalized User Profiles and for Utilizing the Generated User Profiles to Perform Adaptive Internet Searches." The Abstract of the '067 Patent states:

> A system and method for automatically generating personalized user profiles and for utilizing the generated profiles to perform adaptive Internet or computer data searches is provided. In accordance with the present invention, particular linguistic patterns and their frequency of recurrence are extracted from personal texts provided by the users of the system of the present invention and stored in a user profile data file such that the user profile data file is representative of the user's overall linguistic patterns and the frequencies of recurrence thereof. All documents in a remote computer system, such as the Internet, are likewise analyzed and their linguistic patterns and pattern frequencies are also extracted and stored in corresponding document profiles. When a search for particular data is initiated by the user, linguistic patterns are also extracted from a search string provided by the user into a search profile. The user profile is then cross matched with the search profile and the document profiles to determine whether any linguistic patterns match in all three profiles and to determine the magnitude of the match based on summation of respective frequencies of recurrence of the matching patterns. The documents with document profiles having the highest matching magnitudes are presented to the user as not only matching the subject of the search string, but also as corresponding to the user's cultural, educational, and social backgrounds as well as the user's psychological profile.

Plaintiff asserts claims 1, 3, 4, 6, 43, 45, 47, 56, and 61. *See* Patent Rule 4-3 Statement, Dkt. No. 232 at 1. Claim 1 recites:

> 1. A data processing method for enabling a user utilizing a local computer system having a local data storage system to locate desired data from a plurality of data items stored in a remote data storage system in a remote computer system, the remote computer system being linked to the local computer system by a telecommunication link, the method comprising the steps of:
>
> (a) extracting, by one of the local computer system and the remote computer system, a user profile from user linguistic data previously provided by the user, said user data profile being representative of a first linguistic pattern of the said user linguistic data;

(b) constructing, by the remote computer system, a plurality of data item profiles, each plural data item profile corresponding to a different one of each plural data item stored in the remote data storage system, each of said plural data item profiles being representative of a second linguistic pattern of a corresponding plural data item, each said plural second linguistic pattern being substantially unique to each corresponding plural data item;

(c) providing, by the user to the local computer system, search request data representative of the user's expressed desire to locate data substantially pertaining to said search request data;

(d) extracting, by one of the local computer system and the remote computer system, a search request profile from said search request data, said search request profile being representative of a third linguistic pattern of said search request data;

(e) determining, by one of the local computer system and the remote computer system, a first similarity factor representative of a first correlation between said search request profile and said user profile by comparing said search request profile to said user profile;

(f) determining, by one of the local computer system and the remote computer system, a plurality of second similarity factors, each said plural second similarity factor being representative of a second correlation between said search request profile and a different one of said plural data item profiles, by comparing said search request profile to each of said plural data item profiles;

(g) calculating, by one of the local computer system and the remote computer system, a final match factor for each of said plural data item profiles, by adding said first similarity factor to at least one of said plural second similarity factors in accordance with at least one intersection between said first correlation and said second correlation;

(h) selecting, by one of the local computer system and the remote computer system, one of said plural data items corresponding to a plural data item profile having a highest final match factor; and

(i) retrieving, by one of the local computer system and the remote computer system from the remote data storage system, said selected data item for display to the user, such that the user is presented with a data item having linguistic characteristics that substantially correspond to linguistic characteristics of the linguistic data generated by the user, whereby the linguistic characteristics of the data item correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile.

Claim 3 recites:

3. The method of claim 1, wherein said user linguistic data comprises at least one of: personal textual data generated by the user and favorite textual data generated by a source other than the user and that the user has adopted as being favorite.

Claim 4 recites:

    4.  The method of claim 1, wherein said user linguistic data comprises at least one text item, each said at least one text item comprising at least one sentence.

Claim 6 recites

    6.  The method of claim 1, further comprising the step of: (l) prior to said step (a), determining, by one of the local computer system and the remote computer system, whether an existing user data profile is stored in one of the local data storage system and the remote data storage system, and: 1) when an existing user data profile is stored in one of the local data storage system and the remote data storage system, retrieving said existing user data profile and proceeding to said step (b); and 2) when an existing user data profile is not stored in one of the local data storage system and the remote data storage system, proceeding to said step (a).

Claim 43 recites:

    43.  The method of claim 1, wherein said step (h) comprises the steps of: (vvv) selecting, by one of the local computer system and the remote computer system, a portion of said plural data items corresponding to a predetermined number of plural data item profiles having highest final match factors; and wherein said step (i) comprises the step of: (www) retrieving, by one of the local computer system and the remote computer system from the remote data storage system, said selected data items for display to the user, such that the user is presented with a group of data items having linguistic characteristics that substantially correspond to linguistic characteristics of the linguistic data generated by the user, whereby the linguistic characteristics of the data items correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile.

Claim 45 recites:

    45.  A data processing method for generating a user data profile representative of a user's social, cultural, educational, economic background and of the user's psychological profile, the method being implemented in a computer system having a storage system, comprising the steps of:
    (a) retrieving, by the computer system, user linguistic data previously provided by the user, said user linguistic data comprising at least one text item, each said at least one text item comprising at least one sentence;
    (b) generating, by the computer system, an empty user data profile;
    (c) retrieving, by the computer system, a text item from said user linguistic

data;

(d) separating, by the computer system, said text item into at least one sentence;

(e) extracting, from each of said at least one sentence, by the computer system, at least one segment representative of a linguistic pattern of each sentence of said at least one sentence;

(f) adding, by the computer system, at least one segment extracted at said step (e) to said user data profile;

(g) repeating, by the computer system, said steps (c) to (f) for each text item of said at least one text item in said user linguistic data;

(h) generating at least one user segment group, by the computer system, by grouping together identical segments of said at least one segment;

(i) determining a user segment count, by the computer system, for each user segment group of said at least one user segment group, each said user segment count being representative of a number of identical segments in the corresponding user segment group of said at least one user segment group, and linking each said user segment count to the corresponding user segment group of said at least one user segment group;

(j) sorting the user segment groups of said at least one user segment group, by the computer system, in an descending order of user segment counts starting from a user segment group having a highest user segment count, and recording said user segment groups and corresponding user segment counts in said user data profile; and

(k) storing, by the computer system, said user data profile, representative of an overall linguistic pattern of the user, in the data storage system, said overall linguistic pattern substantially corresponding to the user's social, cultural, educational, economic background and to the user's psychological profile.

Claim 47 recites:

47. The method of claim 45, wherein said user linguistic data comprises at least one of: personal textual data generated by the user and favorite textual data generated by a source other than the user and that the user has adopted as being favorite.

Claim 56 recites:

56. The method of claim 45, wherein said step (k) further comprises the step of: (u) encrypting said user data profile such that said encrypted user data profile may only be utilized when an authorization is received from the user.

Claim 61 recites:

61. The method of claim 1, wherein the remote computer system comprises a plurality of computer systems connected to the Internet and the World Wide Web.

The parties reached agreement on several of the originally disputed terms. *See* Dkt. Nos. 248; Dkt. No. 255 at 2. The parties continued to dispute through their briefing the following terms, which the Court has herein arranged in alphabetical order for convenience: (1) "data item"; (2) "data item profile"; (3) "linguistic pattern"; (4) "psychological profile"; (5) "search request data"; (6) "search request profile"; (7) "segment"; (8) "text item"; (9) "user linguistic data"; and (10) "user profile"/"user data profile." *See* Dkt. No. 255 at 12.

At the September 17, 2009 claim construction hearing, the Court provided the parties with preliminary constructions for the following terms: (1) "data item"; (4) "psychological profile"; (5) "search request data"; (7) "segment"; (8) "text item"; and (9) "user linguistic data." *See* Dkt. No. 275 at Exhibit. The Court provided the parties with an opportunity at the hearing to meet and confer regarding the Court's preliminary constructions, and the parties agreed to the Court's preliminary constructions for (1) "data item," (5) "search request data," and (9) "user linguistic data," as discussed below.

## II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

A determination of patent infringement involves two steps: first, the patent claims are construed, and, second, the claims are compared to the allegedly infringing device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (en banc). Claim construction is a legal question for the courts. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). The legal principles of claim construction were reexamined by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). The Federal Circuit in *Phillips* expressly

reaffirmed the principles of claim construction as set forth in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), and *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004).

The Court construes the disputed terms in accordance with the doctrines of claim construction which it has outlined here along with those it has enunciated in the past. *See Pioneer Corp. v. Samsung SDI Co.*, No. 2:07-CV-170 (Dkt. No. 94), 2008 WL 4831319, at *1-5 (E.D. Tex. Mar. 10, 2008).

## III.  DISCUSSION

**1.**    "Data Item"

This term appears in Claims 1 and 43.  Plaintiff proposes this term means "[a] document, web site or other piece of textual data that may be searched."  Dkt. No. 248 at 8.  Defendants propose this term means "[d]ocuments, websites, and other textual data that may be subjected to a search by a user."  Dkt. No. 255 at 28.

At the September 17, 2009 claim construction hearing, the Court proposed the following construction: **"a document, website, or other textual data that may be subjected to a search by a user or on behalf of a user."** *See* Dkt. No. 275 at Exhibit.  The parties agreed to this proposal, and the Court construes the term "data item" accordingly.

**2.**    "Data Item Profile"

This term appears in Claims 1 and 43.  Plaintiff proposes this term means "[a] collection of information about a data item."  Dkt. No. 238 at 5.  Defendants propose this term means "[a] file containing a data item's address, the linguistic patterns of the data item, and the frequencies

with which those patterns recur."  Dkt. No. 255 at 23.

a.  The Parties' Positions

Plaintiff argues that Defendants improperly "incorporate[] certain cherry picked examples from the specification into the term's construction," and Plaintiff cites the specification for support.  Dkt. No. 248 at 5-6 (citing '067 Patent at 5:21-24 and 19:48-50).  Plaintiff also argues that Defendants' proposal "would wholly exclude one of the preferred embodiments" in which "a Data Item Profile includes segments extracted from the Data Items."  *Id.* at 7 (citing '067 Patent at 19:48-50, 19:66-20:6, and 20:31-40).  Plaintiff further argues that Defendants' proposal "*contradicts* the Defendants' proposed construction for [']Data Item['] alone."  *Id.*

Defendants respond that their proposal "tracks exactly the specification's requirements for what must be included in the profile."  Dkt. No. 255 at 23 (discussing '067 Patent at 5:32-35).  Defendants submit that their proposal "does not *exclude* other information that may also be included in a data item profile."  *Id.*  Defendants also argue that Plaintiff's proposal "would encompass *any* information about an item on the Internet" and "would sweep within it the prior art search engines . . . from which the '067 patent explicitly distinguished itself."  *Id.* at 24 (citing '067 Patent at 8:59-62).

Plaintiff replies that "Defendants have not established that the patentee limited the scope of the invention to the specific embodiments described in the specification."  Dkt. No. 258 at 8.  In sur-reply, Defendants note that their proposal in their responsive brief differs from earlier proposals.  Dkt. No. 266 at 2.

b.  Discussion

The specification discloses: "In a second stage of the *present invention*, a data profiling control program is executed to generate *data item profile* computer files, representative of linguistic patterns and their respective frequencies, of all data items." '067 Patent at 5:21-24 (emphasis added).  Further, "the resulting data item profile of each data item contain[s] the *data item address*, the *linguistic patterns* of the data item and the *frequencies* with which those patterns recur therein." *Id.* at 5:32-35 (emphasis added).  These characterizations of "the present invention" are consistent with the remainder of the specification, which discloses that a "data item profile" includes linguistic patterns and their respective frequencies:

> The system then compares, for each *data item profile*, the segments stored in the *data item profile* with the segments stored in the search profile to determine a number of matches between various segments in each of the profiles and then, for each matching segment records the frequency with which the matching segment recurs within the *data item profile*.  A match value is then determined by the system for each segment in the *data item profile* that also appears in the search profile and in the user profile, by adding the frequency of the segment's occurrence in the *data item profile* to the frequency of the segment's occurrence in the user profile.  ('067 Patent at 6:1-12) (emphasis added).
> ***
> The purpose of the data profiling control program is to generate Data_Item_Profile computer files representative of linguistic patterns of all Data_Items that may be subjected to a search by the user.  ('067 Patent at 17:1-4).
> ***
> At a step 310, the RCS control unit 34 separates the retrieved Text_Item into at least one separate "sentence"—a collection of words from which linguistic patterns will be extracted to form the *Data_Item_Profile*.  ('067 Patent at 17:50-54) (emphasis added).
> ***
> Thus, in summary, during steps 302 to 326, the RCS control unit 34 sequentially retrieves Data_Items from a previously composed Data_Item_Address list, and for each Data_Item, the RCS control unit 34 retrieves all Text_Items from Data_Item_Record, splits each Text_Item into sentences, analyzes each sentence to extract segments representative of the sentence's linguistic patterns, and stores the extracted segments in *Data_Item_Profile*.

> At the step 328, the RCS control unit 34 groups identical segments together into sets, counts the occurrence of identical segments in each set, and then records the number of identical segments in each set in *Data_Item_Profile* as Data_Item_Profile segment count (hereinafter "DIP_SC") next to each set of identical segments. For example, if the segment "science-advance-medical" appears twenty five times in *Data_Item_Profile*, the DIP_SC for that segment would be recorded next to that segment as "25". ('067 Patent at 19:66-20:14) (emphasis added).
>
> ***
>
> At a step 330, the RCS control unit 34 sorts the identical segment groups in the Data_Item_Profile from the identical segment group with the highest DIP_SC to the segment group with the lowest DIP_SC. ('067 Patent at 20:28-31).

*See Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1143-46 (Fed. Cir. 2005) (affirming construction of "board" that included only "material made from wood cut from a log" in light of "context . . . maintained throughout the written description"); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (claim term "fuel injection system component" was limited to a fuel filter where, among other things, the written description referred to the fuel filter as "this invention" or "the present invention" on at least four occasions).[1]  The data item address is necessary to identify the data item to the user. *See id.* at 5:32-35.

---

[1]  *See also Genzyme Corp. v. Transkaryotic Therapies, Inc.*, 346 F.3d 1094, 1097-1102 (Fed. Cir. 2003) (interpreting term "chromosomally integrated" narrowly where the specification disclosed only one embodiment and referred to that embodiment expressly as the invention in the Summary of the Invention); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("[T]he characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure."); *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398 (Fed. Cir. 2008) ("We agree with Netcraft that use of the phrase 'the present invention' does not 'automatically' limit the meaning of claim terms in all circumstances, and that such language must be read in the context of the entire specification and prosecution history. For the reasons below, however, we agree with the district court that the common specification's repeated use of the phrase 'the present invention' describes the invention as a whole."); *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1300 (Fed. Cir. 2008) ("[W]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.") (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)); *but see Colorquick, LLC v. Eastman Kodak Co.*, No. 6:06-cv-390, 2008 WL 5771324, at *7 n.9 (E.D. Tex. June 25, 2008) ("The *Honeywell Int'l* opinion does not stand for the proposition that the claims must be limited to what is being described whenever language such as 'the present invention' or 'an important feature of the present invention' is used in the specification. . . . The patent must be examined in context, and the Court must be careful not to limit the invention to a particular embodiment.") (citation omitted).

At the September 17, 2009 claim construction hearing, the parties disputed whether the construction of "data item profile" should refer to a "file" or to a "collection of information." Defendants asserted that the term "file" should be used to properly tie the term to a computer system, while Plaintiff argued that the term "file" might not be read to include data that is not stored on a disk but rather is cached, buffered, or stored in random access memory. Defendants have expressed concerns that "collection of information" is overbroad. The patent contemplates that a profile can be maintained electronically but can be stored in random access memory rather than on a more permanent medium (such as a flash memory device, a hard drive, or an optical disk), so the Court adopts "electronic information" as a phrase of suitable scope.

The Court construes the term **"data item profile"** to mean **"electronic information containing a data item address, at least one linguistic pattern of a data item, and the frequency with which that linguistic pattern recurs."**

**3.** <u>"Linguistic Pattern"</u>

This term appears in Claims 1 and 45. Plaintiff proposes this term means "[a] combination of various parts of speech (nouns, verbs, adjectives, etc.)." Dkt. No. 248 at 11. Defendants propose this term means "[a] repeating combination of various parts of speech (nouns, verbs, adjectives, etc.) that reflect the author's cultural, education, social backgrounds and the author's psychological profile that occurs in texts composed by the author." Dkt. No. 255 at 9.

<u>a. The Parties' Positions</u>

Plaintiff argues that "[t]he term 'Linguistic Pattern' is fully defined in the specification of the '067 Patent." Dkt. No. 248 at 11-12 (citing '067 Patent at 3:48-49 and 9:10-11). Plaintiff

proposes that Defendants "artificially import the limitation that a ['[']Linguistic Pattern['] must be a *repeating* combination." *Id.* at 12. Plaintiff argues that the specification describes "recurring linguistic patterns," so Defendants' proposed inclusion of "repeating" would be redundant. *Id.* Plaintiff further argues that "data items are not necessarily composed by, nor adopted by, the user," and Plaintiff notes that Claim 1 refers to a "first linguistic pattern" as well as a "second linguistic pattern." *Id.* at 12-13.

Defendants respond that the specification defines "Linguistic Pattern" and that "[t]he entire purpose of the invention is to search the Internet using linguistic patterns reflecting the user's cultural, educational, and social backgrounds and psychological profile, rather than merely words." Dkt. No. 255 at 9. Defendants argue that "[a]s a fundamental feature and the purpose of the invention, it must be included in the construction." *Id.* at 10-11 (citing *Praxair Inc. v. Atmi, Inc.*, 543 F.3d 1306, 1324 (Fed. Cir. 2008)). Defendants also argue that its proposal is appropriate for all uses of "linguistic pattern," including linguistic patterns "of the user as extracted from linguistic data provided by the user," "of the author of the data item to be searched," and "of the search author." *Id.* at 12. "In particular," Defendants argue, "in order for the search result 'data item' presented to the user to 'correspond to the user's social, cultural, education, economic background as well as to the user's psychological profile,' as claimed, it is *necessary* that the linguistic patterns of the user profile, data item profile, and search request profile also reflect the backgrounds and psychological profiles of their authors." *Id.* at 12-13.

As to whether a "linguistic pattern" must include a "*repeating* combination," Defendants submit a dictionary definition of "pattern" and argue that including "repeating" in the construction would not contradict usage of "recur" in the specification because that recurrence

refers to "'frequency of occurrence' of the linguistic pattern" (citing '067 Patent at 3:61-62), rather than to "what the pattern is — a repeating combination of various parts of speech." *Id.* at 13-14.

Defendants further argue that Plaintiff's proposal is "so broad as to be meaningless" because "virtually anything — a sentence, a paragraph, a poem, or even randomly picked words — could constitute 'a combination of various parts of speech (nouns, verbs, adjectives, etc.).'" *Id.* at 14. Defendants submit that "Plaintiff's construction contradicts how the patent distinguishes itself from the prior art" because "[i]f the linguistic pattern described in the patent is not required to reflect the authors' backgrounds and psychological profiles, then it would function no differently than the existing search engines the patent distinguishes . . . ." *Id.* at 15.

Plaintiff replies that Defendants' proposed construction should be rejected because "[t]here is no 'user's cultural, educational, social background' or a 'user's psychological profile'[2] associated with the data item." Dkt. No. 258 at 2. Plaintiff also notes that the specification discusses extracting linguistic patterns of data items and search strings separate from the user's linguistic data. *Id.* at 3. As to the purported purpose of the invention submitted by Defendants, Plaintiff replies that *Praxair* is distinguishable because "the '067 Patent's references to the cultural, educational, and social backgrounds of a user and the user's psychological profile is aspirational, not an expression of a fundamental feature." *Id.* at 4. Plaintiff also reiterates that including the word "repeating" in a construction of "linguistic pattern" would render use of "recurring" in the specification redundant. *Id.* at 4-5 (citing '067 Patent at 3:45-51).

---

[2] Plaintiff evidently substitutes "user" for "author" in stating Defendants' proposed construction. *Compare* Dkt. No. 258 at 2 *and* Dkt. No. 248 at 11 *with* Dkt. No. 255 at 9.

In sur-reply, Defendants note that their proposed construction refers to an "author" rather than a "user." Dkt. No. 266 at 2.

b. Discussion

The specification discloses:

> All texts composed by the user, or adopted by the user as favorite or inimical (such as a favorite book or short story), contain certain recurring *linguistic patterns*, or combinations of various parts of speech (nouns, verbs, adjectives, etc.) in sentences that reflect the user's cultural, educational, social backgrounds and the user's psychological profile.

'067 Patent at 3:46-51 and 9:8-13 (emphasis added). This disclosure refers to texts composed by the user. Defendants propose expanding the disclosure regarding "the user's cultural, educational, social backgrounds and the user's psychological profile" to all instances of "linguistic pattern," albeit substituting the word "author's" for "user's." On one hand, Defendants' reliance on the "entire purpose of the invention" (Dkt. No. 255 at 9) is not without some merit because the specification discloses, for example, that "[t]he user profile is . . . cross matched with the search profile and the document profiles to determine whether any linguistic patterns *match in all three profiles*." '067 Patent at 4:6-8 (emphasis added).

On the other hand, the term "linguistic profile" is used relatively broadly in the specification, and the passages relied upon by Defendants refer specifically to the background and profile of the "user," not of a data item or a search string. *See id.* at 3:46-51 and 9:8-13; *see also id.* at 4:20-22 ("It should be noted that the user's background and psychological characteristics are not evident directly from the linguistic patterns themselves or f[ro]m their frequencies."). The phrase "that reflect the user's cultural, educational, social backgrounds and the user's psychological profile" evidently modifies the word "sentences," but even if this phrase

15

modifies "linguistic patterns," this is done in the context of user data and does not require that all "linguistic patterns" are so limited. *See* '067 Patent at 3:46-51 and 9:8-13. A fair reading of the specification is that a search matches *content* of a data item to a user's background. Defendants have not shown that the background of the *author* of a data item is necessarily relevant. On balance, the specification does not support including Defendants' proposed "backgrounds and . . . profile" language in the construction of "linguistic pattern."

Also, the specification does not require that a "linguistic pattern" must be "repeating," as Defendants propose. Instead, for example, a "lingusitic pattern" could be identified as having only one occurrence. *See* '067 Patent at 19:66-20:14.

The Court adopts Plaintiff's proposal to construe the term **"linguistic pattern"** to mean **"a combination of various parts of speech (nouns, verbs, adjectives, etc.)."**

**4.** "Psychological Profile"

This term appears in Claims 1, 43, and 45. Plaintiff proposes this term means "[i]nformation regarding the behavioral and/or personality traits of a person." Dkt. No. 248 at 16. Defendants propose this term is indefinite but, "[i]n the interest of compromise, however, Defendants assert Plaintiff's first of three proposed constructions of this term, 'one or more profiles pertaining to mental processes," is most consistent with the use of the term in the patent and its plain and ordinary meaning. Dkt. No. 255 at 27; *see also* Joint Chart, Dkt. No. 272 at 7.

At the September 17, 2009 claim construction hearing, the Court provided the parties with the following preliminary construction: "information regarding characteristic traits of one or more of personality, behavior, and mental processes."

a.  The Parties' Positions

Plaintiff cites a dictionary definition of "profile" and advocates construction according to the "plain and ordinary meaning" of "psychological profile."  Dkt. No. 248 at 16.  Plaintiff argues that the term is not indefinite because, for example, Defendants have used the term in their proposed constructions for several claim terms.  *Id.* at 17.  In their response, Defendants do not advocate finding the term indefinite but respond that "the patent demonstrates that the psychological profile must be something *different* than the user's 'social, cultural, educational, economic background."  Dkt. No. 255 at 27 (citing '067 Patent at Claim 1).  Plaintiff replies that Defendants' apparently concede that the term is not indefinite, and Plaintiff urges that "Plaintiff's currently proposed construction is preferable to Defendants' proposed compromise construction because 'one or more profiles pertaining to mental processes' does not capture the full scope of psychological traits."  Dkt. No. 258 at 9.

b.  Discussion

The specification discloses:

> All texts composed by the user, or adopted by the user as favorite or inimical (such as a favorite book or short story), contain certain recurring linguistic patterns, or combinations of various parts of speech (nouns, verbs, adjectives, etc.) in sentences that reflect the user's cultural, educational, social backgrounds and the user's *psychological profile*.

'067 Patent at 3:46-51 (emphasis added).  The specification does not elaborate on the meaning of "psychological profile," but the parties dispute the meaning of this term, so the Court must resolve the dispute.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  The parties have not shown that the patentee used the words "psychological" or "profile" to convey any special meaning or that the intrinsic evidence

provides any guidance. The Court therefore turns to extrinsic evidence. *Phillips*, 415 F.3d at 1319. Plaintiff submits that "'profile' is defined in the psychological context as 'a description of behavioral traits of a person compared with accepted norms or standards.'" Dkt. No. 248 at 16 (quoting Dictionary.com Unabridged (v 1.1)[3], Dkt. No. 248 at Ex. D). "Profile" has been defined as, for example, "[a] biographical sketch or character study . . .; a summary description or report," and as "[a] characteristic personal manner; an attitude, a policy (of a country, government, etc.)." Oxford English Dictionary (Second Edition 1989).[4]

At the September 17, 2009 claim construction hearing, the parties addressed the Court's preliminary construction. Defendants argued that including "personality" and "behavior" in the construction would be overbroad because, in essence, a user's real-world personality and actions do not bear on a user's mental characteristics, at least for purposes of provided search results to a user. Plaintiff urged that the term "mental processes" alone is too narrow because psychology manifests itself in behavior and personality. On balance, the Court finds that the word "personality" is suitable and relevant but that the term "behavior" is overbroad because it could be read to encompass activities totally unrelated, for example, to a user's desire to locate particular information.

The Court construes the term **"psychological profile"** to mean **"information regarding characteristic traits of personality, mental processes, or both."**

---

[3] "Based on the Random House Dictionary, © Random House, Inc. 2009." Dkt. No. 248, Ex. D at 1 of 5.

[4] The term "psychological profile" has also been defined in a draft revision to the Oxford English Dictionary as follows: "(originally) a pattern of results produced by a person in various psychological tests, used for classification or comparison; (later) a description of the psychological characteristics of a person, freq. a hypothetical or unidentified criminal . . . ." Oxford English Dictionary (Draft Revision Dec. 2008).

**5.** "Search Request Data"

This term appears in Claim 1. Plaintiff proposes this term means "[a] search string entered by a user to the system." Dkt. No. 248 at 17. Defendants propose this term means "[a] search string entered by a user to the system that includes at least one linguistic pattern and that is representative of the data or information that the user wishes to locate." *Id.*; *see also* Dkt. No. 255 at 25 n.12.

At the September 17, 2009 claim construction hearing, the Court proposed the following construction: **"a search string entered by a user to the system that is representative of the data or information that the user desires to locate."** *See* Dkt. No. 275 at Exhibit. The parties agreed to this proposal at the hearing, and the Court construes the term "search request data" accordingly.

**6.** "Search Request Profile"

This term appears in Claim 1. Plaintiff proposes this term means "[a] collection of information about a search request." Dkt. No. 248 at 22. Defendants propose this term means "[a] file that includes information about the linguistic patterns in search request data." Dkt. No. 255 at 25.

a. The Parties' Positions

Plaintiff argues that "[t]he construction of [']Search Request Profile['] is not limited by the intrinsic evidence," so "the proper construction is its plain and ordinary meaning . . . ." Dkt. No. 248 at 18 (citing '067 Patent at 5:44-51). Plaintiff also argues that Defendants' proposal "is expressly contradicted by the specification, which expressly teaches that a [']Search Request Profile['] can include synonyms of the existing data already in the profile." *Id.* at 19 (citing '067

19

Patent at 5:48-51).

Defendants respond that "[l]ike the 'user profile' and 'data item profile,' the search profile must contain linguistic patterns so that these patterns can be matched with the patterns contained in the other profiles." Dkt. No. 255 at 25. Defendants cite the specification and urge that their proposal "reflects the specification's plain language in describing what the search request profile must include." *Id.* at 25-26. Defendants also cite a statement in Plaintiff's opening brief that "a Search Request Profile is 'representative of a third linguistic pattern.'" *Id.* at 26 (quoting Dkt. No. 248 at 18). Defendants further argue that Plaintiff's proposed construction is "a generic broad statement" that is "meaningless: not all collections of information are 'profiles.'" *Id.* For example, Defendants argue that "Plaintiff's proposed construction also erases the distinction the specification draws between the claimed invention and search engines that 'depend entirely on the search string entered by the user, without any regard to the user's cultural, educational, social backgrounds, or the user's psychological profiles.'" *Id.* (quoting '067 Patent at 2:67-3:2).

Plaintiff replies that "Defendants' construction would be redundant: 'a file that includes information about the linguistic patterns in search request data' that is 'representative of a third linguistic pattern of said search request.'" Dkt. No. 258 at 9.

b. Discussion

The Court has found above that "search request data" need not necessarily include linguistic patterns. *See* '067 Patent at 5:44-45. The term "search request profile" should therefore not be construed to refer to "linguistic patterns in search request data."

The claims recite, in part, "extracting, by one of the local computer system and the remote

20

computer system, a *search request profile from said search request data*, said search request profile being representative of a third linguistic pattern *of said search request data*." '067 Patent at Claim 1(d) (emphasis added); *see also* '067 Patent at Claim 44(d), Claim 59, and Claim 60. Also, although the term "search request profile" does not appear in the specification outside of the claims, the specification indicates that in the "present invention," a search request profile is "representative of linguistic patterns" in search request data:

> In a third stage of the *present invention*, the system executes a data searching program that enables a user to utilize the system to perform advanced searches for desired data files . . . . The system then creates a *search profile representative of linguistic patterns in the search string* in a similar manner to the user-profiling procedure, except that frequencies of recurring segments are not recorded in the search profile.

'067 Patent at 5:36-48; *see Honeywell*, 452 F.3d at 1318 (construing claim term consistent with characterization of the "invention" in the specification); *see also* n.1, *supra*.

At the September 17, 2009 claim construction hearing, the parties disputed whether the construction of "search request profile" should refer to a "file" or to a "collection of information." Defendants asserted that the term "file" should be used to properly tie the term to a computer system, while Plaintiff argued that the term "file" might not be read to include data that is not stored on a disk but rather is cached, buffered, or stored in random access memory. Defendants have expressed concerns that "collection of information" is overbroad. The patent contemplates that a profile can be maintained electronically but can be stored in random access memory rather than on a more permanent medium (such as a flash memory device, a hard drive, or an optical disk), so the Court adopts "electronic information" as a phrase of suitable scope.

The Court construes **"search request profile"** to mean **"electronic information**

**representative of linguistic patterns in search request data."**

7.       "Segment"

This term appears in Claim 45.  Plaintiff proposes this term means "[a] part of a sentence."  Dkt. No. 248 at 19.  Defendants propose this term means "[o]ne or more predetermined types of parts of speech arranged in a predetermined order."  Dkt. No. 255 at 15.

At the September 17, 2009 claim construction hearing, the Court provided the parties with the following preliminary construction: "one or more parts of speech arranged in an order."

a.  The Parties' Positions

Plaintiff submits that Claim 45 itself shows that "text items are retrieved from user linguistic data, at least one sentence is separated from the text items, and at least one segment is extracted from the sentence."  Dkt. No. 248 at 19.  Plaintiff also cites the specification, in which "a segment is described as 'one or more predetermined types of [part of speech] arranged in a predetermined order," but Plaintiff argues that "the inventor does not disclaim the use of other ways of breaking down parts of a sentence . . . ."  *Id.* at 19-20 (quoting '067 Patent at 14:60-61).  Plaintiff argues that Defendants improperly limit the term "segment" to an "exemplary embodiment" that is "captured in dependent Claim 51" and that includes "tagging . . . different parts of speech" and "arranging a predetermined number of said tagged words . . . to compose at least one segment."  *Id.* at 20.

Defendants respond that "the patentee was acting as his own lexicographer by using the phrase 'a segment consists of,'" and Defendants propose that their "construction is identical to how the patentee defined [']segment['] in the specification."  Dkt. No. 255 at 16 (citing '067 Patent at 14:59-61, 19:2-3, and 22:38-39).  Defendants also rely in part on the "Summary of the

Invention," which discloses that "a segment is extracted by: (1) 'identifying words in the sentence as being particular parts of speech (i.e. nouns, verbs, adjectives, etc.)'; and (2) 'selecting a predetermined combination of the identified parts of speech and storing this combination as a segment.'" *Id.* at 17 (quoting '067 Patent at 5:4-11). Also, the specification discloses a preferred embodiment "for a particular *type* of segment," according to Defendants, in which "each segment comprises a triad of three parts of speech: noun-verb-adjective." *Id.* (quoting '067 Patent at 5:12-14). Defendants also contrast this use of "comprises" with the above use of "consists" where the specification discloses that "[a] segment *consists of* one or more predetermined types of [parts of speech] arranged in a predetermined order." *Id.*; '067 Patent at 14:59-61 (emphasis added). Finally, Defendants emphasize that the purported definition of "segment" "appears multiple times in the specification." Dkt. No. 255 at 17.

Plaintiff replies that the passage relied upon by Defendants "is merely a description of the preferred embodiment" and that "the specification makes clear that 'segments' can be in any order." Dkt. No. 258 at 5. As to order, Plaintiff cites a passage of the specification that discloses several segments that could be extracted from a particular sentence. *Id.* at 5-6 ('067 Patent at 15:18-26).

b. Discussion

The specification includes a purported definition of "segment":

A segment consists of one or more predetermined types of [parts of speech] arranged in a predetermined order. The number, the type, and the order of [parts of speech] in a segment may be selected as a matter of design choice, depending on the purpose for which the User_Profile will be utilized.'

'067 Patent at 14:59-64; *see also* '067 Patent at 19:2-3 and 22:38-39. The specification also

discloses that a single sentence can give rise to multiple segments, as follows:

> Because a sentence may contain multiple [parts of speech] of the same type, i.e. two nouns, several segments may potentially be composed by the control unit 14 from a single sentence. Thus, *in accordance with the present invention*, the control unit 14 extracts every possible noun-verb-adjective segment from the sentence.

'067 Patent at 15:13-18 (emphasis added); *see Honeywell*, 452 F.3d at 1318 (construing claim term consistent with characterization of the "invention" in the specification); *see also* n.1, *supra*.

As a preliminary matter, Defendants argue that use of the phrase "consists of" justifies finding a lexicography in which the construction of "segment" must be limited to a certain disclosure in the specification. But the principles and case law relied upon by Defendants apply to usage of "consisting" as a transitional phrase between a claim preamble and a claim body. *See CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360-61 (Fed. Cir. 2007). Defendants have not shown that such principles, even as articulated in the *Prompt Medical* case cited by Defendants, should extend to the circumstances of this case. *Prompt Medical Sys., L.P. v. McKesson Corp.*, No. 6:05-CV-485, 2006 WL 2076784, at *5-7 (E.D. Tex. July 21, 2006) (noting that "[t]he specification clearly uses the terms 'consists of' and 'and' when describing" a certain feature; discussing that specification preceded "consists of" with "usually"; and finding, based on additional analysis, that certain feature identified by "consists of" was necessary but that other features identified by "consists of" were only "optionally" present). Thus, use of "consists of" in the specification does not demonstrate that the patentee has acted as lexicographer. This comports with the general principle that a patentee is free, without necessarily limiting claim scope, to describe features as being required for a particular embodiment.

24

As to construction, although the term "segment," considered abstractly, may carry a broad range of meanings, the specification consistently explains and employs this term to refer to arrangement of parts of speech in an order. *See Nystrom*, 424 F.3d at 1143-46 (affirming construction of "board" that included only "material made from wood cut from a log" in light of "context . . . maintained throughout the written description"). The specification as a whole, however, does not necessarily require that the order must always be a particular "predetermined" order. "For example, if the sentence is 'Joe walked to his beautiful new house', then the control unit 14 would extract the following segments therefrom: Joe-walk-beautiful / Joe-walk-new / house-walk-beautiful / house-walk-new." '067 Patent at 15:18-26, 19:27-34. Although this particular disclosure includes several arrangements of noun-verb-adjective, this disclosure is identified as an example, so various parts of speech could be arranged in various orders.

As to whether the parts of speech themselves must be predetermined, the specification discloses that "since for the purpose of performing data searches only a few [parts of speech] are necessary, the control unit 14 preferably only identifies and tags certain predetermined [parts of speech] such as nouns, verbs and adjectives." '067 Patent at 14:27-30. A person of ordinary skill in the art would thus understand that different parts of speech might be relevant for different types of searches and for searches of different data. The parts of speech are thus not necessarily predetermined but rather may be determined, for example, during the course of a search.

Plaintiff's proposal, on the other hand, could include any "part of a sentence," perhaps a single word or even a punctuation mark, without regard to part of speech or order. The Court thus rejects Plaintiff's proposal, as well. The Court concludes that the construction of "segment" must include some ordering of some parts of speech but that neither the order nor the parts of

speech must be predetermined.

The Court construes the term **"segment"** to mean **"one or more parts of speech arranged in an order."**

**8.**    "Text Item"

This term appears in Claims 4 and 45.  Plaintiff proposes this term means "[a] piece of text."  Dkt. No. 248 at 22.  Defendants propose this term means "[a] series of words that is long enough to be broken into sentences such that linguistic patterns can be extracted."  *Id.*; *see also* Dkt. No. 255 at 19 n.8.

At the September 17, 2009 claim construction hearing, the Court provided the parties with the following preliminary construction: "a series of words that can be split into at least one sentence."

a.  The Parties' Positions

Plaintiff argues that the specification describes "text items" as "either 'individual text documents' or 'data files'" and that "the specification provides a variety of examples for [']Text Items['], including web sites (['067 Patent at] 11:45), and data files (['067 Patent at] 11:52)."  Dkt. No. 248 at 22-23.  Plaintiff also responds to Defendants' proposal of requiring "sentences" in the construction, arguing that Claims 4 and 45 teach that a text item can include "at least one sentence," which could include just one sentence.  *Id.* at 23.

Defendants respond:

[C]laim 45 recites that "user linguistic data comprises at least one text item, each said at least one text item comprising at least one sentence."  Claim 45 also recites that a "segment representative of a linguistic pattern of each sentence" is extracted from the sentence.  Accordingly, the actual words of the claim require that the "text item" be long enough to be broken into at least one sentence and that it also

include at least one linguistic pattern.

Dkt. No. 255 at 19 n.8.  Defendants thus apparently agree that a "text item" can be broken into "at least one sentence" and not necessarily multiple "sentences."

b.  Discussion

As the parties apparently agree, and as disclosed in the specification, a "text item" can be split into at least one sentence.[5]  *See* Dkt. Nos. 248 at 23 and 255 at 19 n.8; *see also* '067 Patent at 13:36-41, 15:50-54 ("the control unit 14 retrieves all Text_Items from User_Data [and] *splits* each Text_Item into sentences . . . .") (emphasis added), 19:66-20:6, and Claims 4 and 45.  Defendants have not shown, however, that a linguistic pattern must necessarily be extractable from every "text item."  At the September 17, 2009 claim construction hearing, Plaintiff proposed modifying the Court's preliminary construction as follows: "text that comprises at least one sentence."  Defendants responded that the word "comprises" is too open-ended, and the Court agrees.  Defendants also emphasized the recitation of "separating" in Claim 45.  Plaintiff replied that a "text item" could be a one-word sentence, *i.e.*, that a "text item" could consist of only one word.  On balance, the Court agrees with Defendants that the context of the claims and the specification indicates that a "text item" must consist of more than one word.  Otherwise, for example, the "separating" step of Claim 45 would be superfluous because a single word could not be separated.  *See Merck & Co. v. Tera Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so") (citations omitted).  The Court therefore construes the term **"text item"** to mean **"a series of words that can be split into at least one sentence."**

---

[5]  For discussion of "sentences" in the specification, *see, e.g.,* '067 Patent at 13:37-14:2.

**9.** <u>"User Linguistic Data"</u>

This term appears in Claims 1, 3, 4, 45, and 47. Plaintiff proposes this term means "[t]ext, including text either generated or adopted by the user." Dkt. No. 248 at 26. Defendants propose this term means "[t]extual data supplied by the user or adopted by that user as favorite that contain certain recurring linguistic patterns. The user linguistic data is not part of the user profile, but is the text from which the patterns are extracted to create the user profile." *Id.*; *see also* Dkt. No. 255 at 19 n.8.

At the September 17, 2009 claim construction hearing, the Court proposed the following construction: **"textual data supplied by the user, or adopted by the user, that contains at least one linguistic pattern, wherein the supplying or adopting can be done manually or automatically."** *See* Dkt. No. 275 at Exhibit. The parties agreed to this proposal at the hearing, and the Court construes the term "user linguistic data" accordingly.

**10.** <u>"User Profile"/"User Data Profile"</u>

These terms appears in Claim 1. Plaintiff proposes these terms mean "[a] collection of information about a user." Dkt. No. 248 at 25. Defendants propose these terms mean "[a] file containing information representative of a specific user's linguistic patterns and the frequencies with which these patterns recur in texts that are: (i) submitted by the user or (ii) associated with the user and automatically acquired by the system, without identifying any background or private information about the user." Dkt. No. 255 at 19.

<u>a. The Parties' Positions</u>

Plaintiff cites the specification to argue that a "user profile can be a computer file 'representative of the user's linguistic patterns.'" Dkt. No. 248 at 25 (quoting '067 Patent at

28

9:52-53).  Plaintiff also cites Claim 1, which states that the "user data profile" is "representative of a first linguistic pattern," and Claim 45, which states that the "user data profile" "includes specific information about linguistic patterns and their frequencies of use." *Id.*  Plaintiff argues that "[a]lthough these examples all relate to one particular type of information about a user, linguistic patterns, the inventor never disclaimed the use of a user profile for other types of information about a user . . . ." *Id.* at 25-26.  Plaintiff also argues that Defendants' proposal should be rejected because: (1) "the user profile only has to contain information 'representative of' the linguistic pattern; (2) limiting a user profile to "storing only information about linguistic patterns and frequencies" is unsupported; and (3) "exclud[ing] certain types of information from a user profile" would improperly limit the construction to an "exemplary embodiment." *Id.*

Defendants respond that "Plaintiff has proposed a construction that is so broad as to be meaningless." Dkt. No. 255 at 19.  Defendants emphasize statements in Plaintiff's opening brief that "Mr. Geller 'conceived of a way to profile a particular user based on linguistic patterns in the texts the user reads or creates, and to use that user profile to tailor the search results to the person seeking the information.'" *Id.* (quoting Dkt. No. 248 at 2-3); *see also id.* at 20 (quoting Dkt. No. 248 at 25).  Defendants also cite portions of the specification disclosing that a "user profile" contains "linguistic patterns" rather than "any actual information about the user's background," "any private information about the user," or "any textual excerpts from the user's private texts." *Id.* at 21 (quoting '067 Patent at 4:23-29 and 11:14-19) (emphasis omitted).  Defendants also submit that "Defendants' listing of types of information that must be stored in the profile does not mean that other types of information could not also be included." *Id.*

Defendants further argue that Plaintiff's proposed construction "is so vague that it would

be useless to the Court or jury" because, for example, "Plaintiff's generic construction of a 'user profile' does not reflect the purpose of the user profile" but rather "contradicts the clear description in the specification that '[t]he user profile is *thus* representative of the user's overall linguistic patterns and their respective frequencies.'" *Id.* at 21-22 (quoting '067 Patent at 3:64-65). Defendants submit that "the specification requires the profile to include 'the linguistic patterns from all texts submitted by the user (or automatically gathered by the system) and the frequencies with which those patterns recur within the texts.'" *Id.* at 22 (quoting '067 Patent at 5:18-21). Finally, Defendants urge that Plaintiff's proposed construction "would potentially include any and all of the user profiles that appear in the prior art," while "[t]he '067 patent by its very terms is directed to a specific type of user profile: one based on linguistic patterns and their frequencies." *Id.*

Plaintiff replies that "[a]lthough texts submitted by the user or adopted by the user are sources from which a user profile can be derived in one embodiment ('067 Patent at 10:27-41), nothing in the specification disclaims or otherwise excludes any other sources of data." Dkt. No. 258 at 7. As to Defendants' proposed negative limitation, Plaintiff argues that "[t]he exemplary embodiment relied upon by the Defendants merely addresses a privacy concern, not a technical or essential requirement of the invention." *Id.* In sur-reply, Defendants note that their proposal in their responsive brief differs from earlier proposals. Dkt. No. 266 at 2.

b. Discussion

The specification discloses, in the Summary of the Invention and elsewhere, that a "user profile data file" according to the "present invention" contains linguistic patterns and their frequencies:

> *In accordance with the present invention*, particular linguistic patterns and their frequencies of occurrence are extracted from the texts provided by a user of the system of *the present invention* and stored in a *user profile* data file. The *user profile* data file is thus representative of the user's overall linguistic patterns and their respective frequencies.

'067 Patent at 3:61-62; *see also* '067 Patent at 9:17-21. Thus, the "present invention" includes a "user profile" or "user data profile" that is representative of at least one linguistic pattern associated with a user, as well as the frequency with which that pattern recurs (although the frequency may be equal to one, in which case there is no actual recurrence). *See Honeywell*, 452 F.3d at 1318 (construing claim term consistent with characterization of the "invention" in the specification); *see also* n.1, *supra*. Defendants' proposal that the linguistic pattern must be in a text "(i) submitted by the user or (ii) associated with the user and automatically acquired by the system" is not adequately supported. For example, the patent does not rule out that linguistic patterns could be manually entered into a profile. Also, Defendants' proposed negative limitation ("without identifying any background or private information about the user") is directed to particular embodiments, is excessively absolute, and should not be imported into the terms "user profile" or "user data profile."[6]

At the September 17, 2009 claim construction hearing, the parties disputed whether the construction of "user profile" and "user data profile" should refer to a "file" or to a "collection of information." Defendants asserted that the term "file" should be used to properly tie the term to

_____

[6] Defendants have also emphasized the following statement in the provisional patent application to which the '067 Patent claims priority: "the stock of unique combinations of nouns-verbs-adjectives will reflect the intellectual, cultural and psychological peculiarities of each person." *See* U.S. Provisional Patent App. No. 60/116,582, Dkt. No. 255, Ex. D at 3. This statement does not amount to a clear waiver, disclaimer, or disavowal and does not justify limiting construction of the claim terms at issue.

a computer system, while Plaintiff argued that the term "file" might not be read to include data that is not stored on a disk but rather is cached, buffered, or stored in random access memory. Defendants have expressed concerns that "collection of information" is overbroad. The patent contemplates that a profile can be maintained electronically but can be stored in random access memory rather than on a more permanent medium (such as a flash memory device, a hard drive, or an optical disk), so the Court adopts "electronic information" as a phrase of suitable scope.

The Court construes the terms **"user profile"** and **"user data profile"** to mean **"electronic information representative of one or more linguistic patterns associated with a user and the frequencies with which the linguistic patterns recur."**

## V. CONCLUSION

The Court hereby **ORDERS** the disputed claim terms construed as set forth above.

**IT IS SO ORDERED.**

**SIGNED this 30th day of September, 2009.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE