# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PA ADVISORS, LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>GOOGLE INC., et al. )<br>)<br>Defendants. )<br>) | Civil Action No. 2-07-CV-480-DF |

## DEFENDANTS' AGREED MOTION FOR LEAVE
## TO AMEND THEIR INVALIDITY CONTENTIONS

Pursuant to P.R. 3-6(b), Defendants Yahoo! Inc. ("Yahoo") and Google Inc. ("Google") (collectively "Defendants") respectfully submit this Agreed Motion for Leave to Amend Their Invalidity Contentions. Good cause for this Motion exists because documents produced by Plaintiff after the deadline for serving invalidity contentions have led to the discovery of new prior art references and corresponding invalidity arguments.

## I. INTRODUCTION

Defendants served their invalidity contentions on November 14, 2008. One year later, November 13, 2009, PA Advisors, LLC (now known as nXn Tech, LLC) ("nXn") produced documents leading to discovery of new prior art. This new prior art necessitated the amendment of the preliminary contentions sought in this Motion.

Defendants were diligent in their search for relevant prior art prior to serving their preliminary invalidity contentions and identified seventeen highly relevant prior art references in their preliminary contentions. Nevertheless, Plaintiff's recent production on November 13, 2009 led Defendants to discover new and highly relevant prior art. As Plaintiff's recent production was a year after the deadline to serve invalidity contentions, good cause exists for Defendants to

amend their Invalidity Contentions. The following chart contains a summary of how Defendants became aware of new prior art in November 2009 as a direct result of Plaintiff's document production November 13, 2009.

| New Prior Art Reference | How Defendants Became Aware of the New Prior Art Reference based on nXn's November 13, 2009 Document Production | Date Defendants Became Aware of the Substance of the New Prior Art Reference |
|---|---|---|
| Salton, Automatic Information Organization and Retrieval (Richard Hamming and Edward Feigenbaum eds., McGraw-Hill, Inc. 1968) ("Salton 1968") | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication referenced Salton's 1968 book. | November, 13-19 2009 |
| Nicholas J. Belkin, *et al.*, *Distributed Expert Based Information Systems: An Interdisciplinary Approach*, 23 INFO. PROCESSING & MGMT. 5 (1987) | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication referenced Belkin's publication. | November, 13-19 2009 |
| Eui-Hong (Sam) Han, *et al.*, *WebACE: A Web Agent for Document Categorization and Exploration*, PROC. OF THE SECOND INT'L CONF. ON AUTONOMOUS AGENTS, May 10-13, 1998 | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication was the WebACE publication. | November, 13-19 2009 |
| Filippo Menczer, *et al.*, *Adaptive Information Agents in Distributed Textual Environments*, PROC. OF THE SECOND INT'L CONF. ON AUTONOMOUS AGENTS, May 10-13, 1998 | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication referenced the Menczer publication. | November, 13-19 2009 |

| New Prior Art Reference | How Defendants Became Aware of the New Prior Art Reference based on nXn's November 13, 2009 Document Production | Date Defendants Became Aware of the Substance of the New Prior Art Reference |
|---|---|---|
| Robert Armstrong, *et al.*, *Web Watcher: A Learning Apprentice for the World Wide Web*, AAAI SPRING SYMPOSIUM ON INFO. GATHERING FROM HETEROGENOUS, DISTRIBUTED ENVIRONMENTS (March 1995) | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication referenced the Armstrong publication. | November, 13-19 2009 |
| McKeown, *Generating Concise Natural Language Summaries*, Information Processing & Management, Vol. 31, No. 5. pp. 703-733 (1995) | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication referenced the McKeown publication. | November, 13-19 2009 |
| Jones, *Reflections on TREC*, Information Processing & Management, Vol. 31, No. 3, pp. 291-314 (1995) | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication referenced the Jones publication. | November, 13-19 2009 |
| Filippo Menczer, *ARACHNID: Adaptive Retrieval Agents Choosing Heuristic Neighborhoods for Information Discovery*. | nXn produced documents on November 13, 2009 mentioning Dr. Han. (*e.g.*, PA0008162-203 at 8202-3.) This led Defendants to review the publications of Dr. Han and his colleagues. One such publication referenced the Menczer publication. | November, 13-19 2009 |

## II. BACKGROUND OF NEWLY DISCOVERED PRIOR ART

A review of nXn's November 13, 2009 document production led Defendants to a 1968 book by Dr. Gerard Salton. Specifically, these nXn documents (*e.g.*, PA0008162-203 at 8202-03) revealed that Dr. Eui-Hong (Sam) Han had published a paper in which he had relied upon Salton's work. This prompted a thorough review of Salton's work, which led Defendants to Salton's 1968 book. This early Salton book, published thirty years prior to Geller's patent application, disclosed producing search results by comparing the results of semantic analysis of a user profile, a search query, and documents in a data base. Such a method of producing search results is claimed in the patent-in-suit.

Plaintiff's November 13, 2009 document production also revealed that Dr. Han had published other articles in the field. Defendants' ensuing investigation revealed that one such article was *WebACE: A Web Agent for Document Categorization and Exploration*, another of the newly-located prior art references upon which this Motion is based. This article discloses the concept of a user profile that gathers information about a user's preferences, which can then be used to aid in the document search and retrieval process, just as is claimed in the patent-in-suit.

The November 13, 2009 document production also revealed the specifics of several conferences in the field that Dr. Han had attended. Defendants' ensuing review of the papers presented at these conferences led Defendants to Nicholas J. Belkin's publication *Distributed Expert Based Information Systems: An Interdisciplinary Approach*, which discloses a user profile that gathers information about a user's preferences, which can then be used to aid in the document search and retrieval process. Defendants' review of these papers also led to Filippo Menczer's publication *Adaptive Information Agents in Distributed Textual Environments*, which discloses a user profile that contains information about a user's preferences from a bookmark file of the user's favorites sites. This personalized agent genotype is used to aid in the document

search and retrieval process.  Finally, Defendants' review of the conference papers also led to Robert Armstrong's publication *WebWatcher: A Learning Apprentice for the World Wide Web*, which discloses a WebWatcher that acts as a learning apprentice (*i.e.*, a user profile), which can then be used to aid in the document search and retrieval process.

In addition, on December 27, 2008, Ilya Geller (the named inventor of the patent-in-suit) produced documents leading to the discovery of new prior art.  As reflected in GELLER 33280 (a document produced after the deadline for preliminary invalidity contentions), Geller had applied for a National Science Foundation ("NSF") grant based on his patent.  After reviewing the Geller documents and learning of Geller's NSF application, Defendants were able to locate documents showing that his application had been considered and rejected by four independent NSF reviewers and then by a larger panel.  The basis for this rejection was, at least in part, that Geller's work added nothing to the art beyond what had already been disclosed in Dr. Salton's 1989 book, titled Automatic Text Processing: The Transformation, Analysis, and Retrieval of Information by Computer.

The National Science Foundation was correct in its assessment that Geller's work had already been disclosed by Dr. Salton.  For example, Dr. Salton's 1989 book discloses in detail the creation of profiles that contain syntactic and semantic information, which are then used in the document search and retrieval process.  Such usage of profiles is precisely what is claimed in the patent-in-suit.  Thus, this reference is also one of the newly-located prior art references upon which this Motion is based.  Dr. Han's citation to Salton's work, as discovered by the Defendants on November 13, 2009, indicated that Dr. Salton's work, including this book, was highly relevant prior art.

## III. APPLICABLE LAW FAVORS AMENDMENT

Defendants move this Court to amend their Invalidity Contentions pursuant to P.R. 3-6(b), which provides: "Amendment or supplementation of any Infringement Contentions or Invalidity Contentions, other than as expressly permitted in P.R. 3-6(a), may be made only by order of the Court, which shall be entered only upon a showing of good cause." To determine good cause, courts consider the following non-exclusive factors:

> i. The length of the delay and its potential impact on judicial proceedings;
>
> ii. The reason for the delay, including whether it was within the reasonable control of the movant;
>
> iii. Whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent;
>
> iv. The importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of civil procedure; and
>
> v. The danger of unfair prejudice to the non-movant.

*Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 625 (E.D. Tex. 2007).

The Court should grant Defendants' Motion for Leave to Amend Their Invalidity Contentions as good cause exists.

### A. Delay Will Not Occur if Leave to Amend is Granted

Granting this Motion will not delay or impact the Court's schedule. Permitting the Defendants to amend will not adversely impact the scheduled proceedings or dates in the Court's Docket Control Order. The close of discovery is several weeks away, and the close of expert discovery is still two months away. In fact, Plaintiff's Final Infringement Contentions, although discussed by the parties, have yet to be served. Furthermore, trial is not scheduled until next

year. Because Plaintiff will have adequate time to address Defendants' additional arguments, within the timeframe allowed for discovery and well before trial, Defendants' amendment will not disrupt the Court's schedule.

> **B.     The Time Lapse is Due to nXn's Document Production Occurring After the Deadline for Preliminary Invalidity Contentions**

The vast majority of the new prior art was only discovered days ago after a review of nXn's production on November 13, 2009. When nXn produced these documents on November 13, 2009, the Defendants quickly reviewed these documents and immediately realized that these documents may lead to additional prior art. Specifically, these documents were from a company called iXmatch. This company appeared to offer a product very similar to the patent-in-suit. Further, one of the principal scientists of iXmatch, Dr. Eui-Hong (Sam) Han, stated that he published several papers on a subject matter closely related to the patent-in-suit.[1] Thus, the Defendants searched for Dr. Han's publications and the publications of his colleagues. The result of this search lead to the discovery of the new prior art references relied on by the Defendants in these Invalidity Contentions. Further, the Defendants only appreciated the relevance of Dr. Salton's 1989 book in November 2009 after learning that Dr. Han, and his colleagues, often cited to Dr. Salton.

---

[1] Further, there is some evidence that Dr. Eui-Hong (Sam) Han is now an employee of nXn after nXn purchased iXmatch.

### C. Defendants Were Diligent in Seeking Amendment and Granting Leave to Amend

Defendants have been diligent in seeking leave to amend their Invalidity Contentions. Specifically, Defendants contacted nXn on November 19, 2009, just six days after receiving nXn's document production, to meet-and-confer pursuant to Local Rule CV-7(h). At that time, nXn asked for further clarification of the Defendants' basis to update their Invalidity Contentions. Thus, Defendant's have provided a draft of this motion to nXn and have produced all prior art references and charts to nXn. Subsequent to the filing of this motion, nXn will be served with Defendants' Amended Invalidity Contentions.

### D. Amendment is Vital to Defendants' Invalidity Defense

The arguments and prior art that Defendants seek to add to their Invalidity Contentions are important to establishing the invalidity of the asserted patent. Specifically, Salton's 1968 and 1989 books individually anticipate the patent-in-suit. Further, the two Salton books, in combination, render the patent-in-suit obvious. Finally, the additional prior art articles, including the article by Dr. Han, renders the patent-in-suit obvious in light of either Salton book.

### E. There Is No Danger of Prejudice to nXn If the Court Grants the Requested Leave To Amend

Finally, nXn will not suffer unfair prejudice as a result of the Defendants' amendment because discovery is still ongoing, expert discovery has not closed, expert reports have not been severed, and nXn has not served its Final Infringement Contentions on Yahoo. Further, given nXn's recent production (one year after the Defendants' served their initial invalidity contentions and just days ago on November 13, 2009) and the size of the production (nearly quadrupling the size of nXn's production), it is not unreasonable that the Defendants seek amendment of their

Invalidity Contentions at this time. *See Coopervision, Inc. v. Ciba Vision Corp.,* 480 F. Supp. 2d 884, 888 (E.D. Tex. 2007) ("Given the delayed production and the size of the production, it is not unreasonable that CooperVision seeks to amend its infringement contentions at this time."). Moreover, "in complex litigation, each party relies heavily on the production of the opposing party to help guide future search. A party that fails to disclose information in a timely manner has little room to complain that the opposing party is tardy." *Id.* at 889. Thus, given nXn's production on November 13, 2009, nXn has no credible argument to oppose the timing of this Motion just days later.

## IV. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Agreed Motion for Leave to Amend Their Invalidity Contentions pursuant to P.R. 3-6(b) be granted and that Defendants' Amended Invalidity Contentions be deemed served.

Dated:   December 18, 2009                                    Respectfully submitted,

/s/ Jennifer H. Doan                                          /s/ Harry Lee Gillam (with permission)
Jason C. White                                                Brian C. Cannon
HOWREY LLP                                                    California Bar No. 193071
321 N. Clark, Suite 3400                                      briancannon@quinnemanuel.com
Chicago, IL 60654                                             Andrea Pallios Roberts
Tel:  312.595.1239                                            andreaproberts@quinnemanuel.com
Fax:  312.595.2250                                            Quinn Emanuel Urquhart Oliver & Hedges, LLP
Email:  whitej@howrey.com                                     555 Twin Dolphin Drive, Suite 560
                                                              Redwood Shores, CA 94065
Jennifer Doan                                                 Tel.: (650) 801-5000
Joshua Reed Thane                                             Fax: (650) 801-5100
John Scott Andrews
HALTOM & DOAN                                                 Charles K. Verhoeven
Crown Executive Center, Suite 100                             California Bar No. 170151
6500 Summerhill Road                                          charlesverhoeven@quinnemanuel.com
Texarkana, Texas  75503                                       David A. Perlson
Tel: 903.255.1002                                             davidperlson@quinnemanuel.com
Fax: 903.255.0800                                             Alison E. Monahan
Email: jdoan@haltomdoan.com                                   alisonmonahan@quinnemanuel.com
Email: sandrews@haltomdoan.com                                Quinn Emanuel Urquhart Oliver & Hedges, LLP
Email: jthane@haltomdoan.com                                  50 California Street, 22nd Floor
                                                              San Francisco, CA 94111
*Attorneys for Defendant Yahoo! Inc.*                         Tel.: (415) 875-6600
                                                              Fax: (415) 875-6700

                                                              Harry Lee Gillam, Jr.
                                                              Melissa Richards Smith
                                                              Gillam & Smith, LLP
                                                              303 South Washington Avenue
                                                              Marshall, TX 75670
                                                              Tel.:  (903) 934-8450
                                                              Fax:  (903) 934-9257

                                                              *Attorneys for Defendant Google Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 18th day of December, 2009.

/s/ Jennifer H. Doan
Jennifer H. Doan