## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| PA ADVISORS, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07-cv-480 RRR |
| | ) | |
| GOOGLE INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT YAHOO!  INC.'S SECOND MOTION FOR
## SUMMARY JUDGMENT OF NON-INFRINGEMENT

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ....................................2

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................3

      A.    The '067 Patent .................................................................................3

      B.    Plaintiff's Infringement Contentions ......................................................4

      C.    Plaintiff's Infringement Expert Reports...................................................5

      D.    Yahoo!'s Accused Products.....................................................................5

IV.   BACKGROUND ..................................................................................................6

V.    ARGUMENT ......................................................................................................8

      A.    Yahoo!'s Sponsored Search Does Not Extract A User Profile From User
            Linguistic Data Previously Provided By The User................................................9

      B.    Yahoo!'s Sponsored Search Does Meet the Limitation (i) of Claim 1 of the
            '067 Patent ...........................................................................................11

      C.    Neither Yahoo!'s Content Match Nor Behavioral Targeting Infringe Claim
            45 and 47 of the '067 Patent ..................................................................12

            1.    Yahoo!'s Content Match Does Not Retrieve User Linguistic Data
                  Previously Provided By the User................................................................12

            2.    Yahoo!'s Behavioral Targeting Does Not Retrieve User Linguistic
                  Data Previously Provided By The User....................................................15

            3.    Yahoo!'s Content Match Does Not Store Any User Data Profile ............16

            4.    Yahoo!'s Behavioral Targeting Does Not Store Any User Data
                  Profile.........................................................................................17

VI.   CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

## CASES

Page

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
    216 F.3d 1042 (Fed. Cir. 2000)..................................................................17

*Avia Group International, Inc. v. L.A. Gear California, Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988)....................................................................8

*Carroll Touch, Inc. v. Electro Mechanical System Inc.*,
    15 F.3d 1573 (Fed. Cir. 1993).......................................................................8

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*,
    149 F.3d 1309 (Fed. Cir. 1998).....................................................................8

*Gentex Corp. v. Donnelly Corp.*,
    69 F.3d 527 (Fed. Cir. 1995).........................................................................8

*Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.*,
    589 F.3d 1179 (Fed. Cir. 2009)...................................................................17

*O2 Micro International Ltd. v. Monolithic Power System*,
    467 F.3d 1355 (Fed. Cir. 2006)...............................................13, 14, 15, 16, 17

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
    54 F.3d 1470 (Fed. Cir. 1995)...............................6, 7, 8, 9, 10, 11, 12, 13

## STATUES

FED. R. CIV. 56 .............................................................................................9

DM_US:23055854_1

## I.       INTRODUCTION

This is a case never should have been filed.  Plaintiff nXn Tech, Inc. ("Plaintiff") knew or should have known that defendant Yahoo! Inc. ("Yahoo!") does not infringe United States Patent No. 6,199,067 ("the '067 patent").  Now, after months of litigation and plaintiff's numerous and ever-changing list of Yahoo!'s accused products and infringement theories, plaintiff's latest "supplemental" expert report makes clear that summary judgment for Yahoo! of non-infringement of all of the asserted claims – 1, 3, 4, 6, 43, 45, 47, and 61 – of the '067 patent is appropriate at this time.  Plaintiff alleges that Yahoo!'s Sponsored Search product infringes independent claim 1 and dependent claims 3, 4, 6, 43 and 61.  Plaintiff alleges that Yahoo! Content Match and Yahoo! Behavioral Targeting products infringe independent claim 45 and dependent claim 47.  Yahoo!'s technology and all three of Yahoo!'s accused products operate based on typical and advanced key word searching – technology that is acknowledged as prior art in the '067 patent and technology that the patentee admitted is fundamentally different from the claimed invention of the '067 patent.  As a result, the accused products do not infringe and Yahoo! is entitled to summary judgment.

Yahoo!'s Sponsored Search does not infringe independent claim 1 or its dependent claims  3, 4, 6, 43 or 61 because Sponsored Search does not extract a user profile from user linguistic data previously provided by the user as required by all of the claims.  Sponsored Search is a product in which advertisers provide ads to Yahoo! and the advertisers choose key words related to the products or services they sell.  When a user types one of the advertiser's key words into a Yahoo! search box, the advertisement appears.  In Sponsored Search no "user profile" is ever created or "extracted." Plaintiff's expert's sole support for plaintiff's infringement claim is completely unrelated to Sponsored Search.

Yahoo! is also entitled to summary judgment that Yahoo!'s Sponsored Search does not infringe claims 1, 3, 4, 6, 43 or 61 because Sponsored Search does not retrieve selected data

1

items having linguistic characteristics that correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile as required by the claims.

Neither Yahoo!'s Content Match nor Behavioral Targeting products infringe independent claim 45 or its dependent claim 47 because they do not retrieve user linguistic data previously provided by the user as required by the claims. Plaintiff's expert's attempt to salvage plaintiff's infringement claim by redefining "user" is inconsistent and unsupportable.

Finally, neither Yahoo!'s Content Match nor Behavioral Targeting products infringe claims 45 or 47 because they do not store any user data profile, representative of an overall linguistic pattern of the user that substantially corresponds to the user's social, cultural, educational, economic background and to the user's psychological profile as required by the claims. Plaintiff's expert report is conclusory and unsupported and does not create a genuine issue of material fact precluding summary judgment under well-established Federal Circuit law.

For all of these reasons, summary judgment of noninfringement of all of the asserted claims is appropriate.

## II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.      Whether summary judgment of non-infringement by Yahoo! is appropriate for claim 1 and its dependent claims 3, 4, 6, 43 and 61 when it is undisputed that Yahoo!'s Sponsored Search does not extract a user profile from user linguistic data previously provided by the user.

2.      Whether summary judgment of non-infringement by Yahoo! is appropriate for claim 1 and its dependent claims 3, 4, 6, 43 and 61 when it is undisputed that Yahoo!'s Sponsored Search does not retrieve selected data items having linguistic characteristics that correspond to the user's social, cultural, educational, economic background as well as the user's psychological profile.

DM_US:23055854_1

3.        Whether summary judgment of non-infringement by Yahoo! is appropriate for claim 45 and its dependent claim 47 when it is undisputed that neither Yahoo!'s Content Match nor Yahoo!'s Behavioral Targeting retrieve user linguistic data previously provided by the user.

4.        Whether summary judgment of non-infringement by Yahoo! is appropriate for claim 45 and its dependent claim 47 when it is undisputed that neither Yahoo!'s Content Match nor Yahoo!'s Behavioral Targeting store any user data profile, representative of an overall linguistic pattern of the user that substantially correspond to the user's social, cultural, educational, economic background as well as the user's psychological profile.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The '067 Patent

1.        United States Patent No. 6,199,067, entitled "System and Method for Utilizing the Generated User Profiles to Perform Adaptive Internet Searches," was filed on October 21, 1999 and issued on March 6, 2001.  (White Decl., Ex. A).

2.        Plaintiff, PA Advisors, LLC (now known as nXn Tech, LLC), is the owner, by assignment, of the '067 patent.  (Dkt. 187, ¶ 11).

3.        Independent claims 1 and 45 of the '067 patent are method claims for generating personalized user profiles and claim 1 also recites using these user profiles for adaptive Internet searches.  (White Decl., Ex. A, claim 1).

4.        Claim 1(a) of the '067 patent requires "extracting, by one of the local computer systems and the remote computer system, a user profile from user linguistic data previously provided by the user, said user data profile being representative of a first linguistic pattern of the said user linguistic data."  (White Decl., Ex. A, claim 1(a)).

5.        Claim 1(i) of the '067 patent requires "retrieving, by one of the local computer system and the remote computer system from the remote data storage system, said selected data item for display to the user, such that the user is presented with a data item having linguistic characteristics that substantially correspond to linguistic characteristics of the linguistic data

3

generated by the user, whereby the linguistic characteristics of the data item correspond to the user's social, cultural, educational, economic background as well as the user's psychological profile." (White Decl., Ex. A, claim 1(i)).

6.      Claim 45(a) of the '067 patent requires "retrieving, by the computer system, user linguistic data previously provided by the user, said user linguistic data comprising at least one text item, each said at least one text item comprising at least one sentence." (White Decl., Ex. A, claim 45(a)).

7.      Claim 45(k) requires "storing, by the computer system, said user data profile, representative of an overall linguistic pattern of the user, in the data storage system, said overall linguistic pattern substantially corresponding to the user's social, cultural, educational, economic background and to the user's psychological profile." (White Decl., Ex. A, claim 45(k)).

### B.      Plaintiff's Infringement Contentions

8.      Plaintiff filed its original complaint for patent infringement on November 2, 2007, in the Eastern District of Texas. (Dkt. 1).

9.      Plaintiff filed its first amended complaint for patent infringement on January 7, 2008. (Dkt. 58).

10.      Plaintiff filed its second amended complaint for patent infringement on August 27, 2008. (Dkt. 187).

11.      In each of its complaints for patent infringement, plaintiff has accused Yahoo! of infringement of claims 1, 3, 4, 6, 43, 45, 47, 56, and 61 of the '067 patent.[1] (Dkt. 1, ¶ 21; Dkt. 58, ¶ 21; Dkt. 187, ¶ 14).

---

[1] Dr. Rhyne does not opine about claim 56. Thus, Yahoo not address claim 56 in this motion. However, even if claim 56 were asserted, Yahoo does not infringe this claim.

### C. Plaintiff's Infringement Expert Reports

12.     Plaintiff served its expert report on infringement on January 4, 2010.  (White Decl., Ex. B).

13.     Plaintiff served its supplemental expert report on infringement on January 22, 2010.  (White Decl., Ex. C).

### D. Yahoo!'s Accused Products

14.     Plaintiff's expert report opines that only a single Yahoo! product – Yahoo!'s Sponsored Search product – infringes claims 1, 3, 4, 6, 43, and 61 of the '067 patent.  (White Decl., Ex. C, ¶ 43, 73, 75, 78, 83, 86, 1[2]).

15.     Plaintiff's expert report opines that Yahoo!'s Content Match and Behavioral Targeting products infringe claims 45 and 47 of the '067 patent.  (White Decl., Ex. C, ¶ 87, 123, 165).

16.     Yahoo!'s Sponsored Search does not create or retrieve any user profile.  (Kolm Decl., ¶ 3).

17.     Behavioral Targeting is not used in Sponsored Search.  (Riise Decl., ¶5).

18.     Information from query logs is not user specific but is instead aggregate data over hundreds of millions of users.  (Kolm Decl., ¶ 3).

19.     Content Match is not query based and no user information is stored in Content Match that substantially corresponds to the user's social, cultural, educational, economic background and to the user's psychological profile.  (Zhang Decl., ¶ 2).

20.     Yahoo! does not determine, retrieve or store linguistic patterns from users in Behavioral Targeting that substantially correspond to the user's social, cultural, educational, economic background and to the user's psychological profile.  (Riise Decl., ¶ 6).

---

[2] Paragraph 1 likely should be paragraph 167.  (*See* White Decl., Ex. C, at 53).

## IV.    BACKGROUND

The '067 patent was filed on October 21, 1999 and was issued on March 6, 2001.  (White Decl., Ex. A).  As the '067 patent makes clear, the purpose of the '067 patent's system and method is to analyze text provided by the user – the user being the person who is searching the Internet and typing queries – to construct a profile that is representative of the user's characteristics and to then use that profile to provide improved search quality and search results that correspond to the user's "unexpressed" interests.  The specification for the '067 patent concedes that at the time the patent was filed there were many search engines in the prior art.  (White Decl., Ex. A at 2:21-22).  The specification explains that many of these existing search engines used "key word searches," which relied upon comparing "key words" in the user's search string with words in documents on the Internet.  (*Id*. at 2:29-45).  Instead of indexing and matching "words" or "content," the '067 patent proposes extracting and matching recurring specific types of linguistic patterns made up of grammatical parts of speech.  The premise of the invention is that "research has shown" that people with similar educational or psychological backgrounds have "similar linguistic patterns."  (*Id*. at 3:51-55).  Determining a linguistic pattern as claimed in the patent is the process of classifying every word into its grammatical part of speech—every word is examined and classified as a noun, a verb, an adjective etc.  Thus, the specification focuses not on matching words in a search query, but on "linguistic patterns, or combinations of various parts of speech (nouns, verbs, adjectives, etc.) in sentences."  (*Id*. at 3:47-51).

The independent claims at issue, claims 1 and 45, are long with many limitations.  Claim 1 requires the creation of three profiles.  (Dkt. 280 at 3-6).  The invention requires extracting linguistic patterns from three sources to create the three profiles: (1) a "user profile" that is representative of a "first linguistic pattern" of the documents belonging to the user; (2) a data item profile that is representative of the linguistic pattern of the items being searched; and (3) a "search request profile" that is representative of the linguistic pattern of the search request data that is provided by a user.  (White Decl., Ex. A, claim l(a)-(d)).  The profiling process

6

specifically requires identification of parts of speech because it is those combinations of parts of speech, rather than particular words, that are the patterns to be extracted.[3]  (*Id*. at 5:4-11).  The three profiles are then cross-matched to generate "similarity factors" and, ultimately, a "final match factor."  (White Decl., Ex. A, claim 1(e)-(h)).  The data item with the highest final match factor is displayed "such that the user is presented with a data item having linguistic characteristics that substantially correspond to linguistic characteristics of the linguistic data generated by the user."  (White Decl., Ex. A, claim l(i)).

Claim 45 describes generating a personalized user profile representative of a linguistic pattern that substantially corresponds to the user's social, cultural, educational, economic background and the user's psychological profile.  (Dkt. 280 at 5-6).  The steps of claim 45 include retrieving user linguistic data that includes at least one "text item"; separating the text item into at least one "sentence"; extracting a "segment" from the sentence that is representative of a "linguistic pattern" in the sentence; generating at least one "user segment group" by grouping identical segments; sorting the user segment groups in a descending order of user segment counts; and recording such segment counts and segment groups in a "user data profile" (White Decl., Ex. A, claims 45(a)-(k)).

There are three accused products – Sponsored Search, Content Match, and Behavioral Targeting.  Sponsored Search is a product in which advertisers choose keywords related to the products or services they sell.  (Kolm Decl., ¶ 2)  The advertiser provides a text advertisement to Yahoo! and the advertiser also decides the maximum amount it wants to pay each time its advertisement is clicked by a Yahoo! user.  (*Id*. ¶ 2).  When a user types one of the advertiser's keywords into a Yahoo! search box, the advertisement is displayed if it meets the auction criteria.  (*Id*. ¶ 2).  The advertiser's maximum cost-per-click (bid) and advertisement quality determines where the advertisement is displayed in the search results.  (*Id*. ¶ 2).  The advertiser

---

[3]  Because it is grammatical parts of speech that are identified, profiles do not contain actual personal information about the user.  (White Decl., Ex. A, 4:22-29).

pays Yahoo! only when its advertisement is clicked by a Yahoo! user in the search results. (*Id.* ¶ 2).

Yahoo!'s Content Match places advertisements on web pages. (Zhang Decl., ¶ 2). Unlike Sponsored Search, Content Match is not a user query based product but rather displays advertisements based on the content of the web page that is viewed by the user. (*Id.* at 2).

Behavioral Targeting is a system that examines a user's query, information on a web page that a user visits, or the type of ad that a user clicks on, and attempts to classify the user's interests into a set of fixed categories. (Riise Decl., ¶ 2). The interest categories used by Behavioral Targeting are a large number of manually identified categories. (*Id.* ¶ 2). The advertisements are manually placed in a category by the advertiser. (*Id.* ¶ 2). Also, Yahoo! manually categories all of the web pages on its properties into one of the interest categories. (*Id.* ¶ 3). When a user clicks on an advertisement or a web page that has a category assigned to it, the interest in that category is updated the user's cookie. (*Id.* ¶ 3). Interest in a category is based on a combination of how frequently and how recently each category was discovered. (*Id.* ¶ 3). A Behavioral Targeting profile is a set of 500-5000 numbers reflecting in which categories the cookies associated with a user has had activity. (*Id.* ¶ 4).

## V.    ARGUMENT

Patent cases are amenable to summary judgment on the same grounds as other cases. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988). Summary judgment should be granted where, as here, no genuine dispute exists as to any facts material to non-infringement. *See, e.g., Gentex Corp. v. Donnelly Corp.,* 69 F.3d 527 530 (Fed. Cir. 1995).

The determination of whether a patent claim is infringed requires a two-step analysis. First, the claim must be construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused product. *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted).

DM_US:23055854_1

Plaintiff bears the burden of proving by a preponderance of the evidence that defendant's accused products embody every limitation of the claims, either literally or by an equivalent. [4] *Carroll Touch, Inc. v. Electro Mechanical Sys. Inc.,* 15 F.3d 1573 1476 (Fed. Cir. 1993). An accused infringer is entitled to summary judgment of non-infringement by establishing that the patentee failed to put forth evidence to support a finding that every limitation of the asserted claim was met by the structure in the accused device. *Ethicon Endo-Surgery,* 149 F.3d at 1315-16. The absence of a single limitation requires a finding of non-infringement. *Southwall Techs., Inc. v. Cardinal IG Co.* 54 F.3d 1470, 1575 (Fed. Cir. 1995). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. 56(c).

A.    **Yahoo!'s Sponsored Search Does Not Extract A User Profile From User Linguistic Data Previously Provided By The User**

Plaintiff's supplemental expert report opines that only a single Yahoo! product—Yahoo!'s Sponsored Search product—infringes claims 1, 3, 4, 6, 43 and 61 of the '067 patent. (White Decl., Ex. C). Claim 1(a) of the '067 patent requires

> "extracting, by one of the local computer system and the remote computer system, a user profile from user linguistic data previously provided by the user, said user data profile being representative of a first linguistic pattern of the said user linguistic data"

(White Decl., Ex. A, claim 1(a)). The Court has construed the term "user profile" as "electronic information representative of one or more linguistic patterns associated with a user and the frequencies with which the linguistic pattern recur." (Dkt. No. 280). The Court has also construed the term "linguistic pattern" as "a combination of various parts of speech (nouns, verbs, adjectives, etc)." and the term "user linguistic data" as "textual data supplied by the user,

---

[4] The Court has stricken Dr. Rhyne's arguments with respect to the doctrine of equivalents. Thus, Yahoo not address those arguments in this motion. However, even if those arguments were asserted, Yahoo does not infringe any claim under the doctrine of equivalents.

or adopted by the user, that contains at least one linguistic pattern, wherein the supplying or adopting can be done manually or automatically." (*Id.*)

Yahoo! Sponsored Search product does not meet this limitation of the claim. Specifically, there is no "user profile" that is created or "extracted" in Yahoo! Sponsored Search at all. (Kolm Decl., ¶ 3). There is no factual dispute over the way Yahoo!'s Sponsored Search operates. Indeed, there is no evidence that Yahoo!'s Sponsored Search creates or extracts a user profile. Plaintiff's expert Dr. V. Thomas Rhyne argues that Yahoo!'s Sponsored Search uses "information about many of the pages you have visited, ads you have seen and clicked, and some of your searches on Yahoo! to create interest categories that help [Yahoo!] choose the kinds of ads you'll see." (White Decl., Ex. C at 20). However, Rhyne's *sole* support for his argument is a document describing Yahoo!'s Behavioral Targeting system – not Yahoo!'s Sponsored Search. (*Id.*) However, it is undisputed that Behavioral Targeting is not used in Yahoo!'s Sponsored Search product. (Riise Decl., ¶ 5). Even plaintiff concedes that Yahoo!'s Behavioral Targeting product does not meet the specific limitations of claim 1 because plaintiff has not accused Behavioral Targeting of infringing claim 1 of the '067 patent.

Rhyne also claims that "the user's prior selection of ads and viewed webpages is an example of the user adopting a linguistic pattern. One example of how this occurs is in Yahoo!'s query re-writer, *Qbert*, which uses query logs and click data." (White Decl., Ex. C at 20-21). However, *Qbert* does *not* use query logs to find a specific user's linguistic patterns or any information about a specific user. (Kolm Decl., ¶ 3). In fact, information from query logs is not user specific but is instead aggregate data over hundreds of millions of users. (*Id.*) Because the query logs are not user specific, there is no "user profile" created in Sponsored Search and no "user profile" is ever "extracted" from "user linguistic data" previously provided by the user.

Consequently, Yahoo!'s Sponsored Search fails to meet the limitations of claim 1(a) and Yahoo! is entitled to summary judgment. *Southwall Techs*, 54 F.3d at 1575 (Fed. Cir. 1995).

DM_US:23055854_1

**B.      Yahoo!'s Sponsored Search Does Meet the Limitation (i) of Claim 1 of the '067 Patent**

Yahoo!'s Sponsored Search also does not meet limitation (i) of claim 1 of the '067 patent.  Claim 1(i) requires:

> retrieving, by one of the local computer system and the remote computer system from the remote data storage system, said selected data item for display to the user, such that the user is presented with a data item having linguistic characteristics that substantially correspond to linguistic characteristics of the linguistic data generated by the user, whereby the linguistic characteristics of the data item correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile.

(White Decl., Ex. A, claim 1(i)).  The Court's construction of "psychological profile" is "information regarding characteristic traits of one or more of personality, behavior, and mental processes."  (Dkt. No. 280).  Rhyne's supplemental expert report is devoid of any factual support that Yahoo!'s Sponsored Search meets this limitation.  Rather, Rhyne argues that "Yahoo! uses the personalization techniques described in the previous elements to determine the ordering of the returned ads based on the relevance they would have for the user, and retrieves the ad or ads selected in the previous step for presentation to the user."  (White Decl., Ex. C at 28-29).  Rhyne argues that "[t]hus, on the *Yahoo.com* results webpage the user is presented with at least one data item having linguistic characteristics that substantially correspond to the linguistic characteristics of the user linguistic data, including the user's prior search queries.  The processing described above meets the limitations of Step 1i."  (*Id*. at 29).

The problem is that Rhyne's references to "the personalization techniques" and the "user's prior search queries" are references to Behavioral Targeting and it is undisputed that Behavioral Targeting is *not* used in Yahoo!'s Sponsored Search.  (Riise Decl., ¶ 5).  There are no "personalization techniques" in Sponsored Search because Sponsored Search finds ads based on key words submitted by advertisers and typed by Sponsored Search users.  (Kolm Decl., ¶ 2).  Consequently, Sponsored Search does not "retrieve" any

> "data item having linguistic characteristics that substantially correspond to linguistic characteristics of the linguistic data generated by the user, whereby the

linguistic characteristics of the data item correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile."

(White Decl., Ex. A, claim 1(i)).  Indeed, Sponsored Search does not "retrieve" or even have any information about the user's "social, cultural, educational, economic" or "psychological profile." (Kolm Decl., ¶ 3).  Rhyne's report is completely lacking in any support that Sponsored Search meets this clear limitation of the patent.  Thus, Sponsored Search fails to meet this limitation of claim 1 and therefore, Yahoo! is entitled to summary judgment on this basis as well.

### C.      Neither Yahoo!'s Content Match Nor Behavioral Targeting Infringe Claim 45 and 47 of the '067 Patent

#### 1.      Yahoo!'s Content Match Does Not Retrieve User Linguistic Data Previously Provided By the User

Plaintiff alleges that Yahoo!'s Content Match infringes claims 45 and 47 of the '067 patent.  Content Match does not meet the limitations of these claims.  Unlike Sponsored Search, Content Match is not a user query based product but rather displays ad results based on the content of the web page that is viewed by the user.  (Zhang Decl., ¶ 2).  Independent Claim 45 requires "retrieving, by the computer system, user linguistic data previously provided by the user, said user linguistic data comprising at least one text item, each said at least one text item comprising at least one sentence."  (White Decl., Ex. A, claim 45).

Apparently recognizing that Content Match does not retrieve user linguistic data previously provided by the user, Rhyne uses a new definition of "user" that is nonsensical, inconsistent with the '067 patent and is even inconsistent with Rhyne's own definition of "user" in his supplemental expert report.  Rhyne's novel definition of a "user," only in the context of Content Match and these claims is new and has never been disclosed in discovery prior to plaintiff serving the expert report.  Instead of the "user" being the person viewing web pages and typing queries, now Rhyne claims that the "user", for purposes of his infringement analysis for these specific products and claims, is the author of an Associated Press article that appears on Yahoo!'s website.  Specifically, Rhyne argues that the 'user' is "the publisher of a page on the Internet."  (White Decl., Ex. C at 33).  The example Rhyne gives is an AP article on a Yahoo!

webpage that was written by Schuyler Dixon, an Associated Press writer. (*Id.* at 33-38). Rhyne asserts that "[a]s I noted above, Mr. Dixon, as the author of the above-copied text, is the 'user' of claim 45." (*Id.* at 36.) Using this new definition of "user", Rhyne concludes that "[t]he process of retrieving the textual information found at each website that is retrieved and analyzed by Yahoo! meets the limitations of Step 45a." (*Id.* at 38.)

Plaintiff's new "user" theory is untimely and improper. First, plaintiff's theory is not found in any of plaintiff's infringement contentions. It should also be rejected as untimely for this reason alone. *See O2 Micro Int'l. Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1368-69 (Fed. Cir. 2006). The patent local rules require that infringement theories be disclosed to the defendant to put the defendant on fair notice of the charges against it. Nowhere in plaintiff's infringement theories is the "user" defined or referred to as anything other than the person who submits search queries to find information on the Internet.

Indeed, throughout this case the plaintiff has referred to the user as the person who searches for information on the Internet. In particular, in advocating for its claim construction positions, Plaintiff's Opening Brief Regarding Claim Construction refers to improving search engines "to tailor the search results to the person seeking information." (Dkt. 248 at 2-3). These arguments demonstrate that the plaintiff (until very recently) considered the user to be a person searching for information on the Internet. Plaintiff should not be permitted to advance a meaning of "user" after the close of discovery that contradicts the positions it took throughout the case. Because the new theory for user was not in any of the plaintiff's discovery disclosures, Yahoo! is entitled to judgment as a matter of law on this theory. *O2 Micro*, 467 F.3d at 1368-69.

Second, even if timely, plaintiff's theory is wrong as a matter of law. The title of the patent refers to a method "for generating personalized user profiles" and for "using the generated user profiles to perform adaptive internet searches." (White Decl., Ex. A). The entire disclosure of the '067 patent is directed to improving search engines by creating user profiles so that users can better search for information that they seek on the Internet. (*Id.*)

13

For example, the patent explains the problem to be solved that: "Because of the vastness of the Internet and the WWW, locating specific information desired by the user can be very difficult." (*Id*. at 2:15-17). The '067 patent continues to explain that users enter "search strings" but that the results "returned by the search engines are tailored only to the search string provided by the user and not to the user's background" and that "[n]one of the previously known search engines tailor results of user's searches based on his or her background and unexpressed interest." (*Id*. at 2:65-3:7). The solution, according to the '067 patent, is to generate "user profiles" based on linguistic patterns that can be cross-matched with the profiles of data items on the Internet. (*Id*. at 3:37-4:19). As further evidence that the user is a person searching for information (as opposed to a webpage operator), the '067 patent touts the advantage of the user profile being based on patterns is that the "user's privacy" is not impinged. (*Id*. at 4:20-29). The use of "user" and "user profile" in the '067 patent is therefore directed to a person seeking information on the Internet. Indeed, that is how the parties referred to users throughout this case. (*See* Dkt. 248 at 2-3).

Third, plaintiff's new definition is inconsistent with Rhyne's own definition of "user" in his expert report. Rhyne refers to two "classes" of "users"—"persistent users" and "simple users"—in his report. (White Decl., Ex. C at 16-17). "Persistent users" are "users who have established a log-in relationship with Yahoo!" and Rhyne explains that "[i]n this expert report I refer to those individuals in general as 'persistent users'." (*Id.* at 16). Rhyne explains that "[t]he other class of Yahoo! users is made up of individuals who use Yahoo! Search but who do not have a log-in account with Yahoo." (*Id.* at 17). He states that "[i]n this expert report I refer to those individuals as 'simple users'." (*Id.*) He also explains that "[e]ach of these individual users is identified using a 'cookie'." (*Id.*) Clearly, the author of the AP article, Mr. Dixon is not a "persistent user" or a "simple user" as Rhyne has defined the term. Furthermore, Dixon is not even "using" the Content Match product at all. In Content Match, there is no "retrieving" of "user linguistic data previously provided by the user" in which the "user" is the person viewing the AP article written by Mr. Dixon. (Zhang Decl., ¶ 2-3).

The "user" and "user profile" claimed in claim 45 should not be treated differently than the "user" and "user profile" of claim 1. Claim 45 is directed to "generating a user data profile representative of a user's social, cultural, educational, economic background and of the user's psychological profile." The user profile at issue is directed to a *person* not the owner of a webpage. Only a person can have a psychological profile, as plaintiff admitted when it argued during claim construction that the term psychological profile should be construed as "information regarding the behavioral and/or personality traits of a *person*." (Dkt. 248 at 16) (emphasis added). A webpage operator may be a business (like www.cnn.com) or it may be a collection of people. Plaintiff's theory that a "user" can mean a webpage operator as opposed to a person searching for information on the Internet is wrong as a matter of law.

Accordingly, Content Match clearly fails to meet the limitation of claim 45(a) and therefore, Yahoo! is entitled to summary judgment.

## 2. Yahoo!'s Behavioral Targeting Does Not Retrieve User Linguistic Data Previously Provided By The User

Yahoo!'s Behavioral Targeting also fails to meet limitation (a) of claim 45 of the '067 patent. Again, as with Content Match, Rhyne applies different and alternating opinions regarding who the "user" is under his infringement analysis. Rhyne claims that "[i]n this instance the sentence used by the Yahoo Behavioral Targeting system is the collection of words extracted from the page viewed, the ad clicked or the search query entered." (White Decl., Ex. C at 49.) Rhyne further explains that "[i]n the Yahoo Behavioral Targeting system, the end-user is adopting the text items presented by the page viewed or the ads clicked." (*Id.* at 50.) Rhyne concludes "[t]hat process meets the limitations of Step 45a." (*Id.*) However, no linguistic data "previously provided by the user" is ever retrieved in Behavioral Targeting. (Riise Decl., ¶ 6). The content of the web page viewed or the ad viewed is not linguistic data "previously provided by the user" meaning the person viewing the web page or the ad. In fact, the content of a page is never analyzed.

Moreover, in Behavioral Targeting no user linguistic data from a search query is ever retrieved as required by claim 45(a). (*Id*. ¶ 6). A Behavioral Targeting profile is a set of 500-5000 numbers reflecting in which categories the cookies associated with a user has had activity. (*Id*. ¶ 4). Indeed, no linguistic patterns are extracted, stored or compared in Behavioral Targeting. (*Id*.) Thus, Behavioral Targeting fails to meet the limitations of claim 45(a) and, therefore, Yahoo! is entitled to summary judgment.

### 3. Yahoo!'s Content Match Does Not Store Any User Data Profile

Yahoo!'s Content Match does not meet the limitation (k) of claim 45. Claim 45 requires "storing, by the computer system, said user data profile, representative of an overall linguistic pattern of the user, in the data storage system, said overall linguistic pattern substantially corresponding to the user's social, cultural, educational, economic background and to the user's psychological profile." (White Decl., Ex. A, claim 45(k)). No "user data profile" is "stored" in Content Match of any of the users viewing the web pages. (Zhang Decl., ¶ 5). Content Match selects advertisements to display based on the web page that is viewed. (*Id*.) As with limitation (a) of claim 45, Rhyne simply changes the definition of who the "user" is to a definition that is inconsistent and unsupportable. Rhyne states

> "[t]hat data class is representative of an overall linguistic patter [sic] for the publisher/author that substantially corresponds to that psychological profile or 'information regarding characteristic traits of one or more of personality, behavior, and mental processes.' Specifically, using the exemplary Dallas Cowboys article, this user data profile would result in a psychological profile that identifies an interest in sports on the part of Mr. Dixon. . . . This storing meets the limitations of Step 45k"

(White Decl., Ex. B at 44). The author, Mr. Dixon, is not the "user" of Content Match. Content Match does not store any "user data profile" that relates to a user's social, cultural, educational or economic background or to the user's psychological profile. (Zhang Decl., ¶ 5). Therefore, Content Match fails to meet this limitation of claim 45 and Yahoo! is entitled to summary judgment.

### 4. Yahoo!'s Behavioral Targeting Does Not Store Any User Data Profile

Yahoo!'s Behavioral Targeting also does not meet limitation (k) of claim 45. Rhyne's opinion is brief, conclusory and unsupported regarding this claim limitation related to Behavioral Targeting. Rhyne's supplemental report states:

> The information relating to a cookie is stored in the Universal Data Store and is representative of an overall linguistic pattern of the end-user, for either a short-term or long-term. … In both cases, the information stored in the UDS is representative of an overall linguistic pattern of the user and this data corresponds to the user's social, cultural, education, and economic background as well as to the user's psychological profile, which has been construed to be 'information regarding characteristic traits of one or more of personality, behavior, and mental processes.' That storing meets the limitations of Step 45k.

(White Decl., Ex. C at 58-59.) This is Rhyne's entire analysis. In fact, Behavioral Targeting does not store any "user data profile, representative of an overall linguistic pattern of the user" that substantially corresponds "to the user's social, cultural, educational, economic background and to the user's psychological profile" (Riise Decl., ¶ 6). Indeed, no linguistic patterns of users are stored in Behavioral Targeting. (*Id.*)

To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant. *Arthur A. Collins, Inc. v. N. Telecom Ltd.,* 216 F.3d 1042, 1047-48 (Fed. Cir. 2000). An expert's unsupported conclusion on the ultimate issue of infringement will not alone create a genuine issue of material fact. *Id.* at 1046. Moreover, a party may not avoid that rule "by simply framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device." *Id.* Plaintiff's expert report discloses no more than an unsupported conclusion of infringement that is not sufficient to raise a genuine issue of material fact. *See Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179 (Fed. Cir. 2009) (affirming summary judgment because expert's conclusory declaration failed to identify the

17

allegedly infringing structure in the accused device). Therefore, Yahoo! is entitled to summary judgment because Behavioral Targeting does not meet the limitations of claim 45(k) of the '067 patent and plaintiff's unsupported expert report does not create a genuine issue of material fact precluding summary judgment.

## VI.   CONCLUSION

For the foregoing reasons, Yahoo! requests that the Court grant its motion and issue summary judgment that Yahoo! is not liable for infringement of claims 1, 3 , 4, 6, 43, 45, 47, and 61 of the '067 patent.

Dated:  January 29, 2010

/s/ Jennifer H. Doan
Jennifer Doan
Joshua Reed Thane
John Scott Andrews
HALTOM & DOAN
Crown Executive Center, Suite 100
6500 Summerhill Road
Texarkana, TX 75503
Tel:  (903) 255-1002
Fax: (903) 255-0800
joane@haltom.com
sandrews@haltomdoan.com
jthane@haltomdoan.com

Jason C. White
HOWREY LLP
321 N. Clark Street, Suite 3400
Chicago, IL 60654
Tel:  (312) 595-1239
Fax:  (312) 595-2250
whitej@howrey.com

*Attorneys for Defendant Yahoo! Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 29th day of January, 2010.

/s/ Jennifer H. Doan
Jennifer H. Doan