# EXHIBIT A

ROUGH DRAFT - UNCERTIFIED - UNEDITED - UNPROOFED

1
2      Please be aware when using, saving onto a hard
computer disk, or receiving a realtime ASCII that:

3      1.    Because of the nature of stenographic
outlines, differences WILL exist between the realtime
4  copy and the certified transcript prepared by the
reporter.  Those differences will include the following,
5  among others:
          a.  Words may change;
6         b.  Page and line numbers may change;
          c.  Punctuation may change; and/or
7         d.  Quotes may change.

8      2.    The realtime draft is an uncertified,
rough-draft copy of the proceedings.
9
       3.    A realtime ASCII or saving realtime onto a
10 computer hard drive will only be provided when a
certified copy is purchased and that there will be a
11 charge for the realtime in addition to the charge for
the certified copy.
12

13 ----------------------------------------------------

14         THE VIDEOGRAPHER:  Good morning.  We are now on

15 the record.  This is the digital video deposition of

16 Stanley Peters, testifying in the matter of PA advisors

17 versus Google, et al., in the United States District

18 Court, Eastern District of Texas, marshal division, case

19 number 2: 07-CV-480-DVF.  This deposition is being held

20 at Quinn Emanuel, et al., 555 Twin Dolphin Drive, Fifth

21 Floor, Redwood Shores, California.  Today's date is

22 Tuesday, February 9th, 2010 and the time on the video

23 screen is 10:04 a.m.  My name is Carey Mook, and I'm a

24 certified legal video specialist with Hundt Reporting.

25 The certified shorthand reporter today is Holly Moose,

1   Q.   Did you consider enablement?
2   A.   Yes, I see.  Isn't written description an
3  aspect of enablement.
4   Q.   Tell me your understanding.
5   A.   Well, that was my understanding.  If you want
6  to be able it practice a patent, it has to be described,
7  you know, the invention has to be described clearly
8  enough to allow you to do that.
9   Q.   Okay.
10  A.   I'm not a lawyer, you understand, and so ...
11 but that's my understanding.
12  Q.   And did you render any opinions -- strike that.
13       Did you reach any conclusions regarding the
14 anticipation, the validity based on anticipation, of the
15 asserted claims?
16       MS. PALLIOS ROBERTS:  Objection.  Form.
17       THE WITNESS:  I -- did I reach any conclusions.
18 I certainly didn't report that I think it was
19 anticipated.
20       MR. FENSTER:  Q.  Is it fair to say that you
21 concluded that the patent was not invalid for
22 anticipation?
23  A.   No, that wouldn't be fair to say.  I mean, I
24 did not find another patent that encompassed all of the
25 claim -- the limitations on any -- the claims.

1     Q.   Okay. You did not find any prior art reference
2 that would render any of the asserted claims invalid for
3 anticipation; is that correct?
4     A.   I think that's right.
5     Q.   Did you state that in your report?
6     A.   No.
7     Q.   Why not?
8     A.   It wasn't relevant to my report.
9     Q.   In your report you include a list of materials
10 that you reviewed; is that correct?
11     A.   Yes.
12     Q.   And in that list of materials, you -- actually,
13 let me back up.
14     I'll place before you what's been marked as
15 Peters Exhibit 1. Do you recognize that document?
16     A.   It looks like my report -- or part of
17 thereof -- part of it.
18     (Plaintiff's Exhibit 1
19     marked for identification.)
20     MR. FENSTER: And I'll hand up Exhibit 2, which
21 was Exhibit B to your report.
22     (Plaintiff's Exhibit 2
23     marked for identification.)
24     MR. FENSTER: Q. Do you recognize that?
25     A.   Yes, that's a list of materials that I did

1   THE WITNESS: Again, I don't know how to answer
2   the question. It's -- I stand by my report and am
3   prepared to back it up based on the materials in Exhibit
4   B.
5   MR. FENSTER: Q. On page 1 of Exhibit B, the
6   third item listed is invalidity contentions, dated
7   November 14, 2008. Do you see that?
8   A. Yes, I do.
9   Q. Okay. And did you review invalidity
10  contentions dated November 14, 2008?
11  A. So I think when I was -- you know, last fall,
12  2009 when I started this, I believe that was given to
13  me. I skimmed through that and found it most difficult
14  to understand. So if I reviewed it, it certainly didn't
15  have much of an impact on my subsequent thinking.
16  Q. Did you have an understanding that the
17  invalidity contentions dated November 14, 2008 were
18  drafted by attorneys for the defendants?
19  A. I didn't know who drafted them. But they sure
20  read like attorneys' documents.
21  Q. Did you understand, based on your review of
22  that document, that the attorneys for the defendants
23  were asserting that several references, prior art
24  references, rendered the asserted claims of the Geller
25  patent invalid for anticipation?

1     A.    Oh, for anticipation.  Well, I don't recall
2  whether that -- it didn't make a big impression on me if
3  I did actually realize that some of the references were
4  being cited as anticipatory.
5     Q.    To the extent the attorneys for the defendants
6  asserted that any prior art references did anticipate
7  the asserted claims of the Geller patent, is it fair to
8  say that you did not reach the same conclusion?
9           MS. PALLIOS ROBERTS:  Objection.  Form.
10          THE WITNESS:  I don't know which ones they
11 thought anticipated off the top of my head.  But as I --
12 as I answered earlier, I didn't find references that in
13 my view anticipated.  And that's why I didn't put in my
14 report that I thought the patent -- that claims were
15 anticipated.
16          MR. FENSTER:  Q.  Were you given any other
17 invalidity contentions other than those dated
18 November 14 in this case?
19    A.    Not as far as I remember.  I only faintly
20 remember those, to be honest.
21    Q.    Okay.  You don't recall seeing any amended
22 invalidity contentions in or around November of 2009?
23    A.    I don't remember seeing them.  If I was given
24 those -- well, I don't think I was given them.  I
25 certainly don't remember seeing them.  I have to admit,

1  reference.
2  Q. Okay. So it's fair to say that in your report
3  you didn't state any conclusion that claim 1 was invalid
4  based on any single reference either for anticipation or
5  obviousness, correct?
6  A. That's true.
7  MS. PALLIOS ROBERTS: Objection. Form.
8  MR. FENSTER: Q. And the same is true with
9  respect to every other claim, correct?
10  MS. PALLIOS ROBERTS: Objection. Form.
11  THE WITNESS: The ones at issue, yes.
12  MR. FENSTER: Q. Okay. The only way were you
13  able to find obviousness was by combining -- by
14  combining references?
15  A. That's correct.
16  Q. So is it -- let me -- let me hand you back
17  ACC1?
18  A. All right.
19  Q. So is it fair to say that Salton 89 by itself
20  fails to disclose one or more elements of claim 1?
21  A. My feeling was that -- and my -- my analysis, I
22  wanted -- I believe that the combination of elements in
23  claim 1 is obvious. But I did not feel I could get a
24  clear enough statement for every single one of those
25  limitations from Salton 89 alone to make me comfortable