UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

PA ADVISORS, L.L.C.,

    Plaintiff,

v.

GOOGLE INC., et al.,

    Defendants.

Civil Action No. 2:07-CV-480 RRR

**DEFENDANTS' MOTION TO SEAL DOCUMENTS AND CLOSE THE COURTROOM
DURING PRESENTATION OF CONFIDENTIAL MATERIAL AT TRIAL**

**Introduction**

By the very nature of this patent infringement suit, Plaintiff nXn Tech, LLC (f/k/a PA Advisors, LLC) has access to some of Google Inc. ("Google") and Yahoo! Inc.'s ("Yahoo") (collectively "defendants") most sensitive confidential information. Due to the protective order entered by this Court, defendants have produced millions of pages of materials that include some of the companies' most highly sensitive engineering and finance records without troubling the Court with the concerns the companies would otherwise have. While the defendants respect the right of public access to judicial proceedings, public dissemination of this information would cause considerable harm to their competitive standing; allowing companies to compete against Google and Yahoo without the years of refinement and significant financial outlay the defendants have invested in these trade secrets and other sensitive information. The strong public interest in protecting this kind of sensitive commercial information from disclosure outweighs the common law presumption of public access to judicial proceedings. Thus, testimony related to the confidential operations of the defendants' products, and any testimony regarding the defendants' nonpublic financial data, should be shielded from public disclosure.

Accordingly, the defendants ask the Court to close the courtroom whenever testimony regarding either defendant's sensitive commercial information is offered at trial, and to seal all documents and portions of transcripts discussing their sensitive commercial information. After having the opportunity to review Plaintiff's exhibit lists and deposition designations, the defendants will supplement this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request.

**Argument**

I. **COURTS DENY PUBLIC ACCESS TO JUDICIAL PROCEEDINGS WHEN DISCLOSURE OF CONFIDENTIAL COMMERCIAL INFORMATION COULD HARM A PARTY'S COMPETITIVE STANDING.**

While there is a common law right of public access to judicial proceedings, that right is not a constitutional right and it is "not absolute." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 432 (5th Cir. 1981)("The common law right of access certainly antedates the Constitution's free press guarantee, but it does not rise to that level of importance or merit the same degree of protection"). The decision to close the courtroom is vested in the discretion of the trial court, with the Firth Circuit directing that the "court must balance the public's common law right of access against the interests favoring non-disclosure." *SEC v. Van Waeyenberghe*, 900 F.2d 845, 848 (5th Cir. 1993). *See also Motorola, Inc. v. Analog Devices, Inc.*, 2003 WL 25778434 (E.D. Tex. 2003).[1]

The common law provides only a presumption of public access, which is just *one* of the interests to be weighed in favor of disclosure. *See Belo*, 654 F. 2d at 434; *Van Waeyeberghe*, 900 F.2d at 848 n4 ("we have refused to assign a particular weight to the right."). Where, as here, only private commercial interests—as opposed to questions of public policy—are involved, the interest in public access is diminished. *See In re Iowa Freedom of Information Council*, 724 F.2d 658, 664 (8th Cir. 1984) ("Where only private commercial interests or damage are involved, we think the law justifies the steps taken by the District Court to [prevent public disclosure]"). The

---

[1] Though *Motorola* and other cases cited in this brief discuss the common law right to inspect and copy judicial records, courts have concluded that "identical interests" support both the public's right to inspect and copy and the public's right of access to trials, and look to both lines of cases as authority for each. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 895 (E.D. Pa. 1981)

Fifth Circuit has also explicitly rejected other circuits' holdings that "only the most compelling circumstances" can rebut that presumption. *See Belo*, 654 F.2d at 434 ("With all due respect, we find such standards to be misreadings of the Supreme Court's directives, and we decline to apply them here"); *Van Waeyenberghe*, 900 F.2d at 848 n4 ("While other circuits have held that there is a strong presumption in favor of the public's common law right of access to judicial records, we have refused to assign a particular weight to the right.").

In stark contrast to the diminished interests in public access to these proceedings, there are strong interests in favor of protecting the defendants' confidential commercial information from disclosure. "[T]here can be no doubt that society in general is interested in the protection of trade secrets and other valuable commercial information. That interest is recognized, for example, in Rule 26(c)(7), in our copyright, trademark, and patent statues, and in the common law of business torts." *Zenith Radio*, 529 F. Supp. at 905. Protecting confidential information such as trade secrets is important since "[t]heir only value consists in their being kept private. If they are disclosed or revealed, they are destroyed." *In re Iowa Freedom of Information Council*, 724 F.2d at 662.

Accordingly, courts frequently deny public access when disclosure of confidential commercial information could "harm a litigant's competitive standing." *See Nixon*, 435 U.S. at 598. *See also New York v. Microsoft Corp.*, 2002 WL 1315804 (D.D.C. 2002); *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982)("the right to attend judicial proceedings should, in appropriate circumstances, give way to the right to protect one's trade secrets"); *Zenith Radio Corp.*, 529 F. Supp. at 901 (E.D. Pa. 1981) ("Judicial proceedings and records may be closed in part or in full to the public in order to protect private interests, including proprietary interest in trade secrets and other commercial information"). In

the recent *Function Media v. Google* trial in the Eastern District of Texas, the Court granted Google's motion to seal the courtroom, in part, by allowing Google to bring to the Court's attention when it was necessary to close the courtroom and then giving Google some time to identify the portions of the record that should remain under seal. (Novikov Declaration, Ex. A, 3:12-4:2, 6:16-24.) The Court should do the same here.

## II. THE DISCLOSURE OF THE DEFENDANTS' CONFIDENTIAL COMMERCIAL INFORMATION AT ISSUE IN THIS CASE COULD HARM THEIR COMPETITIVE STANDING.

Since this motion was due a mere two days after the parties exchanged exhibit lists and the day Plaintiff served deposition designations,[2] the defendants do not yet know what the full scope of evidence will be at trial, and what Plaintiff intends to introduce. Given that, the defendants cannot specify at this time the specific evidence that should be shielded from disclosure in open court, or the evidence or testimony that would fall within those categories. Once the defendants have had sufficient time to analyze Plaintiff's exhibit lists and deposition designations, the defendants will supplement this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request. In light of the above legal principles, the defendants do not intend to cast a wide net across everything that they have produced.

Based on the discovery to date, however, the defendants believe Plaintiff will introduce evidence regarding the design and technology underlying the defendants' products, as well as nonpublic highly sensitive financial information. The Court should close the courtroom when

---

[2] Plaintiff served its exhibit lists in multiple parts on Wednesday, February 17 at 11:28 p.m. and 11:38 pm, and served its deposition designations on February 19.

this evidence is heard because its dissemination to the public and the other defendant, could harm the defendants' competitive standing.[3]

    A.    <u>The Defendants' Technology and Product Design and Operations Are Highly Confidential.</u>

There can be no dispute that evidence related to the design and technology underlying the defendants' search and advertising products are trade secrets that must be protected. In *Viacom Int'l, Inc. v. Youtube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008), the court found that the source code underlying Google's search technology is "the product of over a thousand person-years of work" and that "[t]here is no dispute that its secrecy is of enormous commercial value. Someone with access to it could readily perceive its basic design principles, and cause catastrophic competitive harm to Google by sharing them with others who might create their programs without making the same investment." *Id.* at 259. With respect to Google's AdWords program—one of the accused products in this case—the court found that the schema for the AdWords database "constitutes commercially sensitive information regarding Google's advertising business, the disclosure of which would permit others to profit without equivalent investment from the years of refinement and thousands of person hours of work Google spent." *Id.* at 263.

Of particular concern in this litigation is disclosure of Google's technology and methods for delivering search results and advertisements to end users. Google's superior ability to deliver relevant search results and ads faster and more accurately than its competitors derives, in large part, from its highly confidential process of identifying and delivering search results and ads. Google has invested significant resources in building, maintaining, and improving this

---

[3] The Court is surely aware that the defendants are competitors. Accordingly, when the courtroom is closed to the public, it should also be closed to defendants' representatives. Thus, for example, Yahoo representatives should not be allowed in the courtroom when Google trade secret information is introduced into evidence and *vice versa*. The defendants agree to this arrangement.

technology, and its public disclosure would allow competitors to adopt Google's trade secrets without making the same investment Google did.  Yahoo shares these same concerns.  Yahoo has, similarly, invested significant resources in its advertising technology, and any public disclosure would allow competitors to adopt Yahoo's trade secrets without making any investment.

In *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273 (S.D.N.Y. 1982), the court closed the courtroom to hear testimony about S&P's confidential business procedures relating to the development and composition of the S&P 500 Index.  A news service sought access to the transcripts from the hearing but the court denied the request, reasoning that the sealed testimony "constitute[d] trade secret information not available to the general public and that this information if released would reveal how S&P maintains its position as the most reliable and accurate of the stock market indexers to the irreparable detriment of S&P." *Id.* at 1277.  Similarly, releasing the defendants' technology to the general public would reveal how the defendants' contextual targeting operates and how they route search requests to the appropriate data centers and process those requests—the very key to the defendants' competitive advantage in being the quickest and most accurate of the search engines in the industry.  Indeed, many of the key engineering documents the defendants produced in response to Plaintiff's requests are potentially more valuable to competitors than the source code, as they explain in plain English the various steps involved in the delivery of search results and the defendants' accused products. Assuming Plaintiff intends to use those documents—which are presumably more accessible to a jury—and elicit testimony regarding their content, the defendants will face considerable harm if the record and courtroom remains completely open to the public.

Accordingly, the Court should close the courtroom when information about this process is offered at trial, and seal all documents and portions of transcripts related to this testimony.

B. The Disclosure of the Defendants' Nonpublic Financial Data Could Harm Their Competitive Standing.

The defendants also asks the Court to seal the courtroom for any testimony related to its nonpublic financial data. Courts typically find that a party's interest in maintaining the confidentiality of nonpublic financial information outweighs the common law right to public access. *See e.g. Flexible Benefits Council v. Feldman*, 2008 WL 4924711 (E.D. Va. 2008) (holding that Plaintiff's interest in preserving the confidentiality of financial data normally unavailable to the public outweighs public's interest to access).

Here, the defendants have produced substantial financial information data to Plaintiff that is not disclosed to the public. Such information would be a gold mine to their competitors, enabling them to evaluate which of the defendants' products and strategies are the most profitable, which features attract the most users and customers, and how much the defendants have paid for certain confidential strategic acquisitions. The defendants produced all of this information in good faith pursuant to the Court's protective order; they should not now face damaging public access to such materials in order to exercise its right to a trial. Due to the obviously sensitive nature of this information, the Court should close the courtroom when any evidence of the defendants' nonpublic financial information is offered at trial, and seal all documents and portions of transcripts related to this evidence.

III. **PLAINTIFF AGREED TO MEET AND CONFER WITH DEFENDANTS ON THESE ISSUES.**

Because the parties just served pretrial disclosures and the defendants do not know the full scope of evidence that will be presented at trial, the defendants reached out to Plaintiff and asked whether Plaintiff would agree to meet and confer about these issues once the defendants

have had the opportunity to review Plaintiff's pretrial disclosures. Plaintiff agreed to do so. The defendants anticipate supplementing this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request after such meet and confer takes place.

## CONCLUSION

For the foregoing reasons, the Court should close the courtroom during the presentation of confidential commercial information at trial.

February 19, 2010     Respectfully submitted by:

    */s/ David A Perlson*
Charles K. Verhoeven
Email: charlesverhoeven@quinnemanuel.com
State Bar No. 170151
David A. Perlson
Email: davidperlson@quinnemanuel.com
State Bar No. 209502
Quinn Emanuel Urquhart Oliver & Hedges LLP
50 California St.
San Francisco, CA 94111
Telephone: (415) 875-6600

Brian C. Cannon
Email: briancannon@quinnemanuel.com
State Bar No. 193071
Quinn Emanuel Urquhart Oliver & Hedges LLP
555 Twin Dolphin Dr. Ste. 560
Redwood Shores, CA 94065
Telephone: (650) 801-5000

Harry L. Gillam, Jr.
State Bar No. 07921800
Email: gil@gillamsmithlaw.com
Melissa R. Smith
State Bar No. 24001351
Email: melissa@gillamsmithlaw.com
Gillam & Smith, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450

*Counsel for Google Inc.*

**APPROVED AS TO FORM AND SUBSTANCE:**

*Counsel for Yahoo! Inc.*

William C. Rooklidge
Email: rooklidgew@howrey.com
State Bar No. 134483
Howrey, LLP
4 Park Plaza, Suite 1700
Irvine CA 92614-2559
Telephone: (949) 721-6900

Jason C. White
Email: whitej@howrey.com
State Bar No. 6238352
Howrey, LLP
321 N. Clark Street, Suite 3400
Chicago IL 60654
Telephone: (312) 595-1239

Brian A.E. Smith
Email: smithbrian@howrey.com
State Bar No. 188147
Howrey LLP
525 Market Street, Suite 3600
San Francisco CA 94105-2708
Telephone: (415) 848-4900

Jennifer Doan
Email: jdoan@haltondoan.com
State Bar No. 08809050
Joshua Reed Thane
Email: jthane@haltondoan.com
State Bar No. 24060713
John Scott Andrews
Email: sandrews@haltondoan.com
State Bar No. 24064823
Halton & Doan
Crown Executive Center, Suite 100
6500 Summerhill Road
Texarkana TX 75503
Telephone: (903) 255-10002

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served via electronic mail, facsimile transmission and/or first class mail on today's date.

          By */s/ David A. Perlson*
             David A. Perlson