# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| | § | |
| PA ADVISORS, LLC, | § | |
| | § | Civil Action No. 2:07-cv-480-RRR |
| Plaintiff, | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| GOOGLE, INC., et al., | § | |
| | § | |
| Defendants. | | |

**PA ADVISORS, LLC'S MOTION IN LIMINE AND
*DAUBERT* MOTION TO EXCLUDE
<u>THE TESTIMONY OF MR. STANLEY PETERS</u>**

# Table of Contents

I.   Mr. Peters Should Be Precluded From Testifying
     As to Obviousness Because His Report Is So
     Deficient that It Fails to Meet Defendants'
     Burden of Proof ............................................................... 2

     a.  Mr. Peters' report fails to sufficiently
         identify the obviousness combinations Mr. Peters expects
         to testify about—disclosing a self-described
         "exponential" number of unspecified combinations ....................... 2

     b.  Mr. Peters' report does not
         include any analysis  as to how each reference
         supposedly meets each element ....................................... 4

     c.  Mr. Peters' report does not
         identify the differences between the prior art
         and the Asserted Claims .............................................. 2

     d.  Mr. Peters' report does not
         identify any specific motivation to combine
         any of the references to create the claimed inventions ................... 7

II.  Mr. Peters Fails to Provide Proper Analysis of the
     Written Descreiption and Enable Requirement
     of 35 U.S.C. § 112 ........................................................ 8

     a.  Mr. Peters should be preclude from testifying to lack of enablement
         because he misapplies the claim language and admits that the
         actual claim language is fully enabled ................................. 9

     b.  Mr. Peters fails to apply
         the appropriate standards relating to the
         written description requirement ...................................... 11

III. Mr. Peters Fails to Apply  the
     Appropriate Requirements of  35 U.S.C. § 101
     regarding Utility of the '067 Patent ................................... 12

IV.  Mr. Peters Fails to Provide the Appropriate
     Standard of Materiality in support of Defendants'
     Claim of Unenforceability ................................................ 8

V.   Conclusion ............................................................... 15

# Table of Authorities

**Cases**

*CMFT, INc. v. YieldUpInt'l Corp.,,*
  349 F.3d 1333 (Fed. Cir. 2003)................................................................. 12, 13

*Cummins-Allison Corp. v. SGM Co.*,
  No. 9:07-CV-196, 2009 WL 763926 (Mar. 19, 2009)................................. 3, 4

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993),........................................................................... 2, 7, 13

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966)..................................................................................... 5, 6

*Impax Labs, Inc. v. Aventis Pharms., Inc.*,
  486 F.3d 1366 (Fed. Cir. 2006)..................................................................... 13

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*
  589 F.3d 1179 (Fed. Cir. 2009)................................................................. 10-11

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007).......................................................................................... 5

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
  579 F.3d 1363, 1378 (Fed. Cir. 2009)............................................................... 9

*Purdue Pharma, L.P. v. Endo Pharms., Inc.,*
  9438 F.3d 1123 (Fed. Cir. 2006)...................................................................... 13

*RealTime Data, LLC v. Packeteer, Inc.*,
  No. 6:08-cv-144-LED-JDL, 2009 WL 4782062 (E.D. Tex. Dec. 8, 2009).................... 3

*In re Segerstrom*,
  247 F.3d 218 (5th Cir. 2001) ........................................................................ 9

*Vas-Cath, Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991)............................................................... 8, 9, 11

*In re Wands*,
  858 F.2d 731, 736-37 (Fed. Cir. 1988). ........................................................ 10

**Statutes, Regulations, and Rules**

35 U.S.C. §101 ............................................................................................ 1, 13

35 U.S.C. §103 ............................................................................................. 1, 8

35 U.S.C. §112 ........................................................................................... 1, 15

37 C.F.R. § 1.56 (b) (2006) ............................................................................ 14

Fed. R. Evid. 403. .......................................................................................... 11

Fed. R. Evid. 702 ........................................................................................... 11

In support of their claim of the invalidity and unenforceability of United States Patent No. 6,199,067 ("the '067 Patent"), Google, Inc. and Yahoo!, Inc. (collectively, the "Defendants") have relied on the expert testimony of Mr. Stanley Peters. Mr. Peters' testimony, however, is deficient in at least the following four ways:

- Insufficient analysis to support his obviousness opinion under 35 U.S.C. §103—including his admission that he (i) is relying on just an undefined and "exponential" number of combinations and (ii) provided no analysis of the differences between the prior art and the claimed inventions;

- Improper analysis of the written description and enablement requirements and incorrect application of them under 35 U.S.C. §112 because he misapplies the claim language;

- Misapplication of the requirements under 35 U.S.C. §101—including stating the wrong standard and providing no opinion at all regarding whether the operation of the claimed invention would be successful; and

- Incorrect standard of materiality and failure to establish a prima facie case of unpatentability in opinions relating to claims of unenforceability.

nXn Tech, LLC (formerly known as PA Advisors, LLC, hereinafter "nXn") therefore respectfully requests that the Court exclude the testimony of Mr. Peters regarding invalidity and inequitable conduct as follows.

**I.      Mr. Peters Should Be Precluded From Testifying As to Obviousness Because His Report Is so Deficient That It Fails to Meet Defendants' Burden of Proof.**

In Mr. Peters' report, he provides an opinion that the '067 Patent is invalid as obvious in light of 17 prior art references.[1]  Wiley Decl. Ex. A (Report) ¶¶ 67-83 (listing as "primary pieces of prior art").   Mr. Peters' report fails, however, to provide *any* analysis of 1) the differences between the prior art and the claimed inventions; 2) the motivation to combine any particular references; and 3) how each reference meets the various limitations of the claims.   This is all the more problematic because Mr. Peters testified at deposition that his opinion of obviousness is based on an "exponential" number of obviousness combinations, none of which are specifically identified.   As a result, the Court should exclude the testimony of Mr. Peters regarding obviousness due to his failure to meet the requirements of Federal Rule of Evidence 702, his failure to meet the principles outlined in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and because the risk of his testimony confusing or misleading the jury vastly outweighs any probative value of his testimony.  Fed. R. Evid. 403.

**a.  Mr. Peters' report fails to sufficiently identify the obviousness combinations Mr. Peters expects to testify about–disclosing a self-described "exponential" number of unspecified combinations.**

As part of Mr. Peters' report, he included 13 appendices that he claimed demonstrated that the '067 Patent was invalid as obvious.  *See generally* Wiley Decl. Ex. B (Peters Report ACC-1 through ACC-13).   These appendices included citations to seventeen separate references, in total.  *See* Wiley Decl. Ex. A (Peters Report) at ¶¶ 67-83; *see also generally* Wiley Decl. Ex. B (ACC-1 through ACC-13.)   Each Appendix recites "[Reference A] in view of [Reference B] *and additional prior art references*."

---

[1] Mr. Peters admitted in deposition that he did not provide an opinion regarding anticipation of the '067 Patent.  *See* Wiley Decl. Ex. C at 23:11-13, 15-17 & 23:24-26.

Mr. Peters testified that his opinion is that any combination of the first two references with any one or more of the "additional prior art references" renders the asserted claims obvious.  Ex. C at 42 (stating that each chart discloses the two references in combination with "zero or one or more of the additional references").  Mr. Peters admitted that his report does not specify any specific combination that he contends renders the Asserted Claims obvious.  *E.g.,* Ex. C at 42, 43 (reflecting that Peters could not identify anywhere in his report where he states that the combination of the two primary references by themselves renders the claims invalid).  When asked to identify the combinations each chart was intended to convey, Mr. Peters was able to identify at least 33 different combinations before giving up, saying:

> "We could spend most of the day doing this because this is an ***exponential number*** of combinations.  I'm happy to keep going as long as you like but…"

Ex. C at 46 (emphasis added).

Mr. Peters' report does not identify any particular combinations out of the exponential number of possible combinations.  Defendants apparently would have nXn anticipate and prepare for all such possible combinations.  Having vaguely indicated an exponential number of combinations without specifically disclosing any, the Court should exclude any testimony regarding any of the possible combinations that were not disclosed—just as the district court did in *RealTime Data, LLC v. Packeteer, Inc*., No. 6:08-cv-144-LED-JDL, 2009 WL 4782062, at *3 (E.D. Tex. Dec. 8, 2009) (striking invalidity contentions because mere disclosure of prior art references without expressly identifying combinations was improper because it resulted ***"in an impossibly high number of combinations*** to reasonably serve the notice function contemplated by the Patent Rules") (emphasis added); *see also Cummins-Allison Corp. v. SGM Co.*, No. 9:07-

CV-196, 2009 WL 763926, at *4 (Mar. 19, 2009) ("The purpose of the Patent Local Rule 3-3 is to place the Plaintiff on notice of potentially invalidating art that Defendants will assert in their case and at trial. *Mere "suggestion" does not suffice"*).

### b. Mr. Peters' report does not include any analysis as to how each reference supposedly meets each element.

Mr. Peters' report includes 13 separate prior art charts, which include only quotes from each reference for each element, but there is *not a single sentence of analysis by Mr. Peters explaining how or why the quoted portion meets the claim element, let alone how it meets the Court's claim construction*. Mr. Peters admitted this:

> Q: Is there any analysis by you in the charts ACC1 through ACC 13, showing how any portion of the prior art corresponds and discloses the actual claim elements?
>
> A: Well, I don't have all the charts in front of me. But to the best of my recollection, *that's not in the charts*. [Ex. C at 87]
> . . .
>
> Q: The charts themselves don't include any analysis by you showing how the prior art references disclose the claims as construed by the court, correct?
>
> A: Well, it's the claims as construed by the court that I was looking for prior art for. So that's – the citations are there because they relate to the claim as construed by the court, the claim language as construed by the court. That language is not recited in the chart. If you're asking me is it recited in the chart, it's not. [Ex. C at 88-89]
> . . .
> Q: And in the chart, do you provide any explanation as to how the quoted portion matches up with or discloses the claim language in the left column?
>
> A: No. The chart does not say, you know, these words in column 2 map to those words in column 1.

Ex. C at 88-90 (emphasis added).

Mr. Peters was asked repeatedly to identify any analysis by him in his report as to how each reference purportedly discloses each element. While Mr. Peters refused to

admit that his report contained no such analysis, he did not point to any analysis as to how each element was met by each reference. Defendants cannot point the Court to any such analysis in his report. Because Mr. Peters' testimony will be limited to the four corners of his report, Mr. Peters cannot offer any testimony at trial as to how the asserted prior art meets the limitations of the Asserted Claims, and Defendants therefore cannot meet their burden of proving obviousness. Accordingly, Mr. Peters' testimony regarding obviousness should be excluded.

### c. Mr. Peters' report does not identify the differences between the prior art and the Asserted Claims.

Despite the fact that Mr. Peters acknowledged that the differences between the prior art and the Asserted Claims are critical to the analysis of obviousness under *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), Mr. Peters admitted that his report fails to provide any analysis of the differences between the prior art and the Asserted Claims of the '067 Patent:

> Q: Where do you identify the differences between the claimed inventions and the prior art?
>
> A: Oh, you mean is – again, you're asking me is there a sentence that says for each of these claims, these are the differences?
>
> Q: Yes.
>
> A: ***I don't – I don't call out the differences explicitly except in the case of this one affirmative difference*** that – where I do talk about it being obvious to use that particular form of natural language processing and personalization.
>
> Q: ***So you didn't endeavor to explicitly list the differences between the prior art in each of these asserted claims in your report, is that correct***?
>
> A: In the report – So I – I examined them all carefully. I was looking to see what they were.

Q: Can you answer my question?

A: ***But did I list them in the report?  I did not***.
. . .
Q: I'm asking, yes, did you compare the individual reference – did you compare the prior art references to the asserted claims and say these are the differences?

A: I did compare them.  I did not write in the report exactly what the differences were for every – every piece of prior art.

Ex. C at 58-60.  *See also generally* Ex. B (Peters Report, ACC-1 through ACC-13); Ex. A (Peters Report) at ¶169 (reciting the standard of *Graham v. John Deere*).)

The sum total of analysis of the differences between the prior art and the claimed invention is contained in Paragraph 180, which reveals that Mr. Peters did not properly analyze the differences between the prior art and the claimed invention:

> 180.  The second *Graham* factor is the differences between the prior art and the claims at issue.  As detailed above, all of the elements of the claims are contained in the prior art.  Accordingly, the relevant question is whether it would have been obvious to add any missing elements to a given prior art reference.  As stated in Sections III and V.A., the fields of information retrieval and natural language processing were significantly interrelated, and all of the concepts described in the '067 Patent were well-known to a person of ordinary skill in the art at the time the '067 Patent was filed.  The numerous pieces of prior art that teach the elements of the '067 Patent are described fully in the attached claim charts."

Ex. A ¶ 180.

Particularly given that there are an "exponential" number of combinations of the prior art references, this failure to analyze the differences between the prior art and the claimed invention fails to meet the requirements of *Daubert* and Rule 702.  Further, should the Court allow Mr. Peters to testify despite these omissions in Mr. Peters' Report, his testimony would cause undue confusion and mislead the jury, requiring the Court to exclude this testimony under Federal Rule of Evidence 403.  *See Daubert*, 509 U.S. 579,

595 (1993) (noting that judges must "exercise more control over experts than over lay witnesses."). Because Mr. Peters' testimony will be limited to the four corners of his report, and because his report fails to identify the differences between the prior art and the claimed inventions, Mr. Peters should be precluded from offering such testimony.

### d. Mr. Peters' report does not identify any specific motivation to combine any of the references to create the claimed inventions.

Mr. Peters' report fails to provide any specific motivation to combine any particular references. Mr. Peters admitted that the thirteen charts do not contain any reference whatsoever to motivation to combine. Ex. C at 50-51. Mr. Peters further admitted that he did not identify any motivation to combine any specific references. *Id*. at 51 ("it's not particular to Salton 89 and Cullis); *id*. at 55 (admitting report does not contain a statement of motivation to combine Braden and Herz); *id*. at 56 ("I don't recall there being a specific sentence for each of these combinations, no. What there is in here is a discussion of the fact that there were numerous combinations that would suffice and that if anything, this simply adds to the obviousness."). Mr. Peters admitted that he did not identify any express motivation to combine. *Id*. at 57 (Q: And you didn't disclose in your report any express teaching in any of the references that would suggest combination with any of the others, correct? A: No, I didn't.").

The sum total of Mr. Peters' analysis on motivation to combine is set forth at paragraph 160 of his report, which states:

> 160. As the '067 Patent itself concedes, "[b]ecause of the vastness of the Internet and the WWW, locating specific information desired by the user can be very difficult. To facilitate search for information a number of 'search engines' have been developed and implemented." There was accordingly a design need or market pressure to "improve the performance and accuracy of typical key word searches." Numerous pieces of prior art can be combined in order to demonstrate the obviousness of the invention. For example, Claim 1 is obvious in light of Salton (1989) in combination

with Cullis. Claim 1 is also obvious in light of Herz in combination with Braden-Harder. Further, Claim 45 is obvious in light of Salton (1968) in combination with Herz, and also in light of Braden-Harden in combination with Kurtzman. The '067 Patent involves nothing more than taking the already widely-known use of natural language processing and user profiles, and using them to obtain personalized results that may be specific to a user's social, cultural, educational, economic characteristics and psychological profiles, which was already being done in information retrieval. Taking these related and widely-known concepts and combining them in the manner set forth in the claims of the '067 Patent would have been obvious to a person of ordinary skill in the art at the time of the invention."

Ex. A (Report) ¶ 160.

This paragraph is devoid of any analysis of motivation to combine sufficient to meet Defendants' high burden of proof. Accordingly, Mr. Peters' testimony on obviousness should be stricken.

## II. Mr. Peters fails to provide proper analysis of the written description and enablement requirement of 35 U.S.C. §112.

Section 112 of Title 35 of the U.S. Code, in paragraph 1, provides:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

This first paragraph of Section 112 provides two separate requirements,[2] a requirement to provide a "written description" and a requirement to "enable" one of ordinary skill in the art to produce the claimed invention without "undue experimentation." *See Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) ("35 U.S.C. §112 first paragraph, requires a 'written description of the invention' which

---

[2] In his deposition, Mr. Peters appears to conflate the two requirements of paragraph 1 of Section 112. Ex. C at 22-23. As the Federal Circuit has made clear, however, these two requirements are distinct. *Vas-Cath*, 935 F.2d at 1563.

is separate and distinct from the enablement requirement."); *see also Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1378 (Fed. Cir. 2009) (noting that "[t]o meet the enablement requirement, 'the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed inventions without undue experimentation."). Although Mr. Peters opines that the '067 Patent fails to meet both requirements of the first paragraph of Section 112, he fails to properly apply the standards and admits that the specification of the '067 patent meets the enablement requirements with respect to "linguistic patterns."

> **a.    Mr. Peters should be precluded from testifying to lack of enablement because he misapplies the claim language and admits that the actual claim language is fully enabled.**

Mr. Peters opines that the '067 Patent is invalid for lack of enablement because he does not believe that the method would work. However, in reaching his opinion, Mr. Peters misapplies the claim language. The claim language requires extracting linguistic patterns to find documents that have linguistic patterns that match the linguistic patterns from the user profile. Mr. Peters admits that the patent fully enables the claimed method:

> I thinks it's clear enough that you could – a person of ordinary skill could make it succeed in matching patterns that were the same patterns that were extracted for example from the user's linguistic data."  [Ex. C at 163]

> Q: So you think that there is enough of a blueprint for the – for one of skill in the art to make a system that retrieved documents that matched the linguistic patterns of the user profile but that wouldn't necessarily correspond – that wouldn't necessarily result in results correlating to the user's background and profile, is that right?

> A: Yes, I'm prepared to stipulate to the first part and I and I believe it would not necessarily correlate.  In fact, I know it wouldn't.  It would depend heavily on what the patterns were that you chose to look for."

Ex. C at 164-65.

Based on Mr. Peters' own testimony, the claims are enabled by the patent, and it is only by misapplying the claim language – applying extra limitations not found in the claims – that Mr. Peters reaches his opinion regarding lack of enablement. Accordingly, Mr. Peters should be precluded from testifying as to lack of enablement at trial.

Additionally, the law requires that "[e]nablement is not precluded by the necessity for some experimentation…However, experimentation needed to practice the invention must not be undue experimentation. The key word is 'undue,' not 'experimentation.'" *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988). While Mr. Peters opines that undue experimentation is required, his statement is conclusory and entirely unsupported. Ex. C at 156. The remainder of Mr. Peters testimony regarding enablement seems to be a recitation of the legal factors to determine whether a disclosure would require undue experimentation without further analysis[3] and statements that one of ordinary skill in the art would realize that the invention described would not provide "good results." *Id.* at 156-57. These statements are not only an additional misapplication of the claim language, "good results" are not a limitation of the claims, but they also refute Mr. Peters arguments regarding the lack of enablement – it is hard to imagine how one of ordinary skill in the art would realize the invention described would not provide "good results" if that person was not enabled to make and use the invention. Simply reciting the legal standards without factual basis or explanation is insufficient. *Cf. Intellectual Sci. and Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183-84 (Fed. Cir. 2009) (summary judgment: requiring some factual foundation to support conclusion); *In re Segerstrom*, 247 F.3d 218, 227 (5th Cir. 2001) (conclusory statements in expert's affidavit

_____

[3] In addition, Mr. Peters once again misstates the purpose of the invention, requiring that the results of a search "will match the user's background." Ex. C at 156-57.

unsupported by evidence and present no fact issue).  Further, when discussing the ability

of one of ordinary skill in the art to make the claimed invention based on the prior art,

Mr. Peters admitted that it would have been speculation on his part as to whether this

would be possible.  Ex. C at 161.  Given these failures, Mr. Peters should be excluded

from testifying pursuant to the principles in *Daubert*, as well as Federal Rules of

Evidence 702 and 403.

> **b.    Mr. Peters fails to apply the appropriate standards relating to the written description requirement.**

Although Mr. Peters opines that the '067 Patent is invalid for a failure to meet the

written description requirement, he fails to apply the written description to the actual

claimed subject matter of the patent.  *See Vas-Cath v. Mahurkar*, 935 F.2d at 1563 ("The

test for sufficiency of support in a parent application is whether the disclosure of the

application relied upon 'reasonably conveys to the artisan that the inventor had

possession at that time of the later claimed subject matter.'" (emphasis added).)  Mr.

Peters instead applies the written description requirement to some unknown invention.

The language of claim 1 requires, in part:

> retrieving, by one of the local computer system and the remote computer system from the remote data storage system, said selected data item for display to the user, such that the user is presented with a data item having linguistics characteristics that substantially correspond to linguistics characteristics of the linguistic data generated by the user, whereby the linguistics characteristics of the data item correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile.  ('067 Patent, cl. 1.)

Mr. Peters apparently interprets this language to require that the '067 Patent

"teach how to use the parts of speech that comprise the linguistic patterns in order to

return search results that correspond to a user's social background."  Ex. A (Report) ¶

207).  This is not what the claimed language requires, however.  The claim actually

requires retrieving documents with linguistic patterns that match the linguistic patterns from the user profile.  As noted above, Mr. Peters admitted that the patent did provide sufficient disclosure to enable one of ordinary skill in the art "to make a system that matched linguistic patterns of the user profile . . . ."  Ex C at 165.  Given this admitted failure to apply the written description to the claimed subject matter of the invention, Mr. Peters' testimony should be excluded under the principles of *Daubert*, as well as Federal Rules of Evidence 702 and 403.

### III.    Mr. Peters fails to apply the appropriate requirements of 35 U.S.C. §101 regarding utility of the '067 Patent.

With respect to Mr. Peters' analysis of utility pursuant to 35 U.S.C. § 101, it first fails because it is well established that the utility aspect of Section 101 is subsumed by the enablement requirement of Section 112.  *CMFT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1349 (Fed. Cir. 2003).  But Mr. Peters' failure does not end there.  Mr. Peters admitted that the invention would work to return results that have linguistic patterns that match the linguistic patterns from the user profile.  *E.g.*, Ex. C at 164-65**.**  Therefore, by his own admission, the invention meets the utility requirement.

Mr. Peters testified that his opinion was that the invention was invalid for lack of utility because even though the invention would admittedly work to return documents with matching linguistic patterns, he did not believe the results would necessarily correlate to the user's background and psychological profile.  Yet, Mr. Peters admitted that he did not have any understanding as to what degree an invention should work for its stated purpose in order to meet the requirements of 35 U.S.C. § 101.[4]  Ex C at 168-69.

---

[4] In fact, a patent may be found to be invalid for lack of utility where it is inoperable.  But, the "[i]noperability standard for utility applies primarily to claims **with impossible**

Mr. Peters then went on to say that he had no opinion regarding whether the claimed invention worked for its stated purpose. Ex. C at 168:21-169:9. Given his failure to apply the proper standard for determining utility and his complete lack of opinion regarding whether the operation of the claimed invention would be successful, Mr. Peters' testimony must be excluded from trial. To allow Mr. Peters to testify would violate Federal Rule of Evidence 702 and well-established *Daubert* principles.

## IV. Mr. Peters fails to use the appropriate standard of materiality in support of Defendants' claim of unenforceability.

Mr. Peters also failed to apply the appropriate standard of materiality in support of his opinion that the patentee committed inequitable conduct. The Federal Circuit has adopted the standard of United States Patent and Trademark Office Rule 56 to determine whether information is material to patentability. *See Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1129 (Fed. Cir. 2006) ("In evaluating materiality, this court has consistently referred to the standard set forth in PTO Rule 56."); *see also Impax Labs., Inc. v. Aventis Pharms., Inc.*, 486 F.3d 1366, 1374 (Fed. Cir. 2006). Rule 56 provides, in relevant part, that "[i]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."[5] 37 C.F.R. §1.56(b) (2006). Mr. Peters

---

*limitations*," such as a failure to comply with basic laws of the physical universe. *CMFT*, 349 F.3d at 1349 (emphasis added).

[5] Although nXn asserts and believes that the three references relied upon by Mr. Peters are cumulative of cited references before the examiner during prosecution of the '067 Patent, the issue of cumulativeness is not part of this Motion.

misstated the rule for materiality as including only the cumulativeness analysis: "A reference is not material if it is merely cumulative to, or less relevant than, information already considered by the examiner." Ex. A (Report) ¶ 193. Applying this incorrect rule, Mr. Peters concludes in the following paragraph that "[i]n my opinion, the Dasan and Siefert patents each disclose elements of the '067 patent that were not disclosed by the prior art that was submitted to the United States Patent and Trademark Office for the '067 Patent, and are therefore material." *Id.* ¶ 194.

Given his misunderstanding of the rule to determine materiality, Mr. Peters not surprisingly fails to establish the second part of the rule entirely. Mr. Peters states no opinion of whether the undisclosed references refute or are inconsistent with a position taken by the applicant during prosecution. In addition, although Mr. Peters opines that U.S. Patent 5,778,380 issued to Siefert (the "Siefert patent") and U.S. Patent 5,761,662 issued to Dasan (the "Dasan patent") were material to the claimed subject matter, he fails to establish a "prima facie case of unpatentability" either by each reference "by itself or in combination with other information." 37 C.F.R. §1.56(b) (2006). Mr. Peters admits that neither the Siefert patent nor the Dasan patent can support a prima facie case of unpatentability by themselves. Ex. C at 137:27-30 (testifying Dasan patent did not anticipate any of the asserted claims) & 137:21-24 (testifying Siefert patent did not anticipate any of the asserted claims). As a result, the only way that the Siefert and Dasan patents could be material is if these patents would support a prima facie case of unpatentability in combination with "other information." Mr. Peters, however, fails to identify this other information. In fact, Mr. Peters admitted in deposition that he did not provide an opinion that the either the Siefert or Dasan patent, in combination with any of

the prior art cited in the prosecution of the '067 Patent, would be obvious. Ex. C at 142:8-11, 23-24; 143:5-8, 10-13. Further, despite the numerous charts associated with his expert report, nowhere did Mr. Peters identify the Dasan or Siefert patents as a primary reference in his obviousness analysis. *Id*. at 139:8-9, 23. Mr. Peters misapplied the standard to determine materiality under Rule 56 and fails to identify how the Dasan patent or the Siefert patent, in combination with other information, would have been material to the claimed subject matter of the '067 Patent. Given this failure, Mr. Peters should be excluded from testifying at trial based on Federal Rule of Evidence 702 and the principles of *Daubert*.

## V.     Conclusion.

For the foregoing reasons, the Court should exclude the testimony of Mr. Peters regarding invalidity under §§ 101, 103 & 112, ¶ 1, as well as inequitable conduct. In the alternative, the Court should exclude all testimony of Mr. Peters regarding §§ 101 & 112, ¶ 1 as well as inequitable conduct, and limit Mr. Peters' testimony to the information included in the body of his expert report, excluding any testimony regarding the numerous claim charts attached to his report as appendices.

Dated: February 19, 2010        Respectfully submitted,

By: /s/ Elizabeth A. Wiley_
Elizabeth A. Wiley

Marc A. Fenster, CA Bar No. 181067
CA Bar No. 181067
mfenster@raklaw.com
Andrew Weiss
CA Bar No. 232974
aweiss@raklaw.com
Adam Hoffman
CA Bar No. 218740
ahoffman@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025
(310) 826-7474
(310) 826-6991 (fax)

Patrick R. Anderson
PATRICK R. ANDERSON PLLC
4225 Miller Rd, Bldg. B-9, Suite 358
Flint, MI 48507
(810) 275-0751
(248) 928-9239 (fax)
patrick@prapllc.com

Debera W. Hepburn,
Texas Bar No. 24049568
HEPBURN LAW FIRM PLLC
P.O. Box 118218
Carrollton, TX 75011
Telephone: 214/403-4882
Facsimile: 888/205-8791
Email: dhepburn@heplaw.com

Elizabeth A. Wiley
Texas State Bar No. 00788666
THE WILEY FIRM PC
P.O. Box. 303280
Austin, Texas 78703-3280
Telephone: (512) 420.2387
Facsimile: (512) 551.0028
Email: lizwiley@wileyfirmpc.com

Andrew W. Spangler
LEAD COUNSEL
SPANGLER LAW P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 (fax)
spangler@spanglerlawpc.com

David M. Pridham
LAW OFFICE OF DAVID PRIDHAM
25 Linden Road
Barrington, Rhode Island 02806
(401) 633-7247
(401) 633-7247 (fax)
david@pridhamiplaw.com

John M. Bustamante
Texas Bar No. 24040618
BUSTAMANTE, P.C.
54 Rainey Street, No. 721
Austin, Texas 78701
Tel. 512.940.3753
Fax. 512.551.3773
Email: jmb@BustamanteLegal.com

Kip Glasscock
Texas State Bar No. 08011000
KIP GLASSCOCK P.C.
550 Fannin, Suite 1350
Beaumont, TX 77701
Tel: (409) 833-8822
Fax: (409) 838-4666
Email: kipglasscock@hotmail.com

## CERTIFICATE OF SERVICE

I certify that counsel of record who are deemed to have consented to electronic service are being served this 19th day of February, 2010, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3).  Any other counsel will be served electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

\s\ Elizabeth A. Wiley
Elizabeth A. Wiley