UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

PA ADVISORS, L.L.C.,

        Plaintiff,

v.

GOOGLE INC., et al.,

        Defendants.

Civil Action No. 2:07-CV-480 RRR

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF MR. STANLEY PETERS

## Introduction

Plaintiff nXn Tech LLC's Motion to exclude the testimony of Defendants' expert on invalidity, Mr. Stanley Peters, does not present a single argument that Mr. Peters' opinion testimony is not based upon sufficient facts or data, is not the product of reliable principles and methods, or that the principles and methods are not reliably applied to the facts of the case. Instead, Plaintiff makes legal arguments about the ultimate issue to which Mr. Peters' report and testimony are directed: the invalidity of the patent-in-suit. Whether or not Defendants will be able to meet their burden of proof on obviousness, enablement or utility is not the proper subject of a *Daubert* motion or a motion *in limine*, and Plaintiff's Motion should therefore be denied.

Plaintiff's Motion should further be denied because it is based almost entirely on misleading characterizations of Mr. Peters' report and out-of-context quotations from Mr. Peters' deposition. Plaintiff's assertions that Mr. Peters has not identified invalidating combinations of prior art, has not analyzed the differences between the prior art and the claimed invention, and has not identified any motivation to combine the invalidating prior art references are demonstrably false. In fact, Mr. Peters' report amply identifies all of these things, and clearly explains how they lead to his obviousness conclusion. Plaintiff's assertions that Mr. Peters did not adequately address enablement and misstated the standard for materiality are similarly untrue.

Additionally, Plaintiff continues to press the unsupportable argument that one of the patent-in-suit's key claim limitations should be read out of the asserted independent claims. This argument is as baseless now as it was when Plaintiff presented it in its opposition to Google and Yahoo!'s motions for summary judgment. (Dkt. Nos. 399 and 400.) This Court has already stated that it will strictly enforce the claim language of the patent-in-suit, including the language that Plaintiff now wishes to obviate. Mr. Peters' testimony should not be excluded because he attempts to do the same.

For these reasons, Plaintiff's Motion to Exclude should be denied. Mr. Peters should be permitted to testify to the opinions contained in his expert report.

## Legal Standard

Expert testimony is admissible so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Rule 702 requires the trial judge to ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). However, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 589 F.3d 1246, 1268 (Fed. Cir. 2009). "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *Id.* at 1269.

## Background

Professor Peters was a professor of linguistics at Stanford University from 1983 to 2008. Currently, he is professor emeritus and director of the Center for the Study of Language and Information. From 1996 to 2002, he was the Chair of the Department of Linguistics at Stanford University. One of his principal areas of interest is computational linguistics, within which he has done research on information retrieval and personalization of information retrieval. (Ex. A to Plaintiff's Motion to Exclude the Testimony of Stanley Peters ("Motion") at ¶ 3.)

Mr. Peters is a leading expert in the fields of information retrieval and computational linguistics – a fact that Plaintiff does not and cannot question. In his report, Mr. Peters explains – lucidly and thoroughly – how the prior art at the time of the purported invention rendered each element of the asserted claims obvious to a person of ordinary skill. Starting with a history and overview of the field, Mr. Peters goes on to describe how the asserted claims do little more than take various teachings that have long been features of the prior art – sometimes since the middle of the 20th Century or even earlier – and combine them to reach a fully predictable result. Mr. Peters identifies the concepts embodied by each of the asserted claims and explains – with specific references to prior art – how each concept was well-established in the field at the time of

the invention. Mr. Peters further explains why it would have been obvious to one of ordinary skill in the art to combine these teachings in the patent-in-suit's rudimentary way in an effort to achieve the result sought by the inventor of the patent-in-suit, Ilya Geller. Understandably, Plaintiff disagrees with Mr. Peters' conclusions – but that is no reason to exclude Mr. Peters' testimony, which implicates none of the concerns addressed by *Daubert* and Rule 702.

Mr. Peters' report also explains how the patent-in-suit fails to meet the written description and enablement requirements of 35 U.S.C. § 112 and the utility requirement of § 101. Plaintiff's argument that this testimony should be excluded primarily has to do with the fact that Mr. Peters applies the patent's requirement that the results returned to the user comprise data items whose linguistic characteristics "correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile." This argument is without merit.

Finally, the report explains why two references that the applicant failed to disclose to the PTO were material prior art. Plaintiff argues that Mr. Peters misstates and misapplies the standard for materiality. Plaintiff is wrong, and has apparently misread this part of Mr. Peters' report.

## Argument

### I. MR. PETERS' OPINIONS WITH RESPECT TO OBVIOUSNESS ARE PROPER.

Plaintiff first argues that Mr. Peters' opinion testimony that the patent-in-suit is obvious should be excluded. The crux of Plaintiff's argument is that "Mr. Peters should be precluded from testifying as to obviousness because his report is so deficient that it fails to meet Defendants' burden of proof." (Motion at 2.) Crucially, however, the extent to which Mr. Peters' testimony carries Defendants' burden of proof – alone or in combination with other aspects of Defendants' case – is an issue for the jury and not the proper subject of a motion to exclude under *Daubert* or Rule 702. *See Heller v. Shaw*, 167 F.3d 146, 152 (3d Cir. 1999) ("[A]n expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue – but it need not be so persuasive as to meet a party's burden

3

of proof or even necessarily its burden of production."). This alone is reason enough to deny Plaintiff's Motion with respect to Mr. Peters' testimony on obviousness. While the Motion occasionally references *Daubert* and Rule 702's admissibility standard, it makes no coherent allegations that Mr. Peters' opinions are unreliable or that they would not assist the jury in its determination of the action.

However, even if the Motion <u>were</u> proper, it should be denied because it mischaracterizes Mr. Peters' report and his deposition testimony. The majority of Plaintiff's assertions regarding what Mr. Peters' report does or does not contain are flatly untrue. Even if Plaintiff's complaints were a legitimate ground for excluding Mr. Peters' testimony, they fail on their own terms.

### A. Mr. Peers' Report Identifies the Prior Art Combinations That Invalidate the '067 Patent.

Plaintiff complains that "Mr. Peters' report does not identify any particular combinations [of invalidating prior art] out of [an] exponential number of possible combinations," and claims that "Mr. Peters admitted [at his deposition] that his report does not specify any specific combination that he contends renders the Asserted Claims obvious." (Motion at 3.) This is untrue.

First, Mr. Peters spends dozens of paragraphs of his report specifically identifying the prior art that disclosed each of the elements of the asserted claims. (*See, e.g.,* Ex. A to Motion, ¶ 94-96 (explaining how the Kurtzman, Braden-Harder and Kupiec references specifically disclose claims 1(a), 1(b), 1(d), 1(i) and 61); ¶¶ 99-110 (explaining how the Chislenko, Herz, Eichstaedt, Brookes, Dasan, Siefert, Sheena, Dedrick, Eichstaedt and Krishnan references specifically disclose claims 1(a), 3 and 4).) Then, Mr. Peters identifies several specific ways in which these references could be combined to render the asserted claims of the '067 patent obvious. (*Id.* at ¶ 160 ("For example, Claim 1 is obvious in light of Salton (1989) in combination with Culliss. . . . Claim 1 is also obvious in light of Herz in combination with Braden-Harder. . . . Further, claim 45 is obvious in light of Salton (1968) in combination with Herz, and also in light of Braden-Harder in combination with Kurtzman.").) Finally, Mr. Peters

provides claim charts listing <u>thirteen specific invalidating prior combinations</u>. (Exs. B1 through B13 to Motion.)

Plaintiff claims that, at his deposition, Mr. Peters admitted his report does not identify any specific combinations of prior art that render obvious the asserted claims. (Motion at 3.) Mr. Peters admitted no such thing, and Plaintiff's citations contain no support for this assertion. Indeed, they prove the opposite. Mr. Peters testified that in his opinion each combination of primary references disclosed in the claim charts are an invalidating combination, and that the combination of the two primary references <u>plus</u> one or more of the "additional prior art references" disclosed in the right-hand column would <u>also</u> be an invalidating combination. (*See* Ex. C to Motion at 42.)

The case of *RealTime Data LLC v. Packeteer, Inc.*, 2009 WL 4782062 (E.D. Tex. Dec. 8, 2009), which Plaintiff cites for the proposition that Mr. Peters' testimony is somehow deficient for having identified too many possible combinations of invalidating prior art, is thus entirely inapposite. *RealTime Data* involved a motion to exclude expert testimony where the Defendant's Local Patent Rule 3-3 invalidity contentions were deficient, disclosing over 500 prior art references without providing invalidity charts, thus failing to "reasonably serve the notice function contemplated by the Patent Rules.". *Id.* at *3. Here, there is no allegation that Defendants' P.R. 3-3 invalidity contentions were deficient. And, as already discussed, Mr. Peters <u>does</u> identify specific combinations of prior art references that render the asserted claims obvious.

Plaintiff makes much of Mr. Peters' deposition testimony that the asserted claims are invalidated by an "exponential number" of combinations of the prior art references. (Ex. C to Motion at 46.) Plaintiff's problem here seems to lie not with Mr. Peters' report or testimony, but with the state of the art at the time of the invention. Neither Mr. Peters nor Defendants can be faulted for the volume and breadth of the prior art that would have rendered the asserted claims obvious. The fact remains that Mr. Peters disclosed the invalidating prior art

5

combinations with ample specificity, and that Plaintiff's complaint – aside from not being a valid ground for a motion to exclude to begin with – is meritless.

Given the advanced state of the art related to searching the Internet in 1999, all of the potential combinations may be exponential – but Professor Peters specifies precise combinations of art that render the claims obvious.

### B. Mr. Peters' Report Includes Analysis of How Each Reference Meets Each Element of the Asserted Claims.

Plaintiff complains that Mr. Peters' report lacks analysis of how the various prior art references meet the language of the asserted claims and the Court's claim constructions. Again, this is not the proper subject of a motion to exclude under *Daubert* and Rule 702. To the extent that Plaintiff believes Mr. Peters' analysis to be flawed or insufficiently tied to the claim language or the Court's claim constructions, Plaintiff can point out these deficiencies on cross-examination, and presumably take advantage of what it sees as weaknesses in Defendants' invalidity case. It is not, however, a reason to exclude Mr. Peters' testimony. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

In any event, Mr. Peters <u>does</u> analyze how the invalidating references meet each limitation of the asserted claims in his report. In fact, he spends an entire section – twenty pages – doing precisely that. (See Ex. A to Motion at 24-43 (Section VI entitled "The Claims of the '067 Patent Existed in the Prior Art").) Mr. Peters describes in detail how each concept employed in the '067 patent was well-known in the prior art, and supports his analysis with citations to the particular references. Further, Mr. Peters' claim charts refer to specific text from the prior art that discloses each of the elements of the asserted claims. (Ex. B-1 through B-13 to Motion.) Whether this analysis is sufficient to invalidate the asserted claims is a question for the jury.

### C. Mr. Peters Identifies Differences Between the Prior Art and the Asserted Claims to the Extent that They Exist.

Plaintiff complains that Mr. Peters does not analyze the differences between the prior art and the asserted claims of the patent-in-suit.

Initially, Plaintiff misconstrues the relevance of these "differences" to the analysis of obviousness under *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007). The "differences" step in the obviousness analysis is derived from 35 U.S.C. § 103, which prescribes that a patent shall not issue when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art." 35 U.S.C. § 103(a); *KSR*, 550 U.S. at 405. Thus, the obviousness analysis is concerned not with differences between the prior art and the claims in the abstract (of which there could be countless), but differences that are <u>relevant to validity</u>. *See Graham*, 383 U.S. at 22 (pointing out two differences between the asserted patent and the prior art, and concluding that "[o]ther differences are of no consequence to our examination").

Here, Mr. Peters specifically testified at his deposition that he identified the one major, relevant difference that he perceived between the prior art and the asserted claims:

> **Q.** […] Does your report set forth the differences between any of the asserted claims and the prior art?
>
> **A.** Well, <u>there are very few differences to be honest</u>. The only one that I found that – was the use of part-of-speech tagging in linguistically profiling users and stored data files and queries for these purposes, for the purposes of personalized information retrieval. And <u>the report does actually specifically address that difference</u>.

(Ex. C to Motion at 58:8-17 (emphasis added).) This portion of Mr. Peters' deposition immediately preceded the portion cited by Plaintiff, but Plaintiff did not include it.

Mr. Peters' report does in fact address the difference he mentioned, noting that "[i]t would have been obvious to a person of ordinary skill in the art to use part of speech tagging as part of a method for personalized information retrieval, especially because part of speech tagging

7

was already in wide use for related purposes." (Ex. A to Motion at ¶ 96.) Mr. Peters also addresses other differences between the prior art and the asserted claims, noting, for example, that "[t]he use of parts of speech in the '067 patent is far less sophisticated, and correspondingly more obvious, than the methods disclosed by Braden-Harder" (*id.*). Mr. Peters also explicitly points out areas where there were no differences between the '067 patent and the prior art. (*See, e.g.*, *id.* at ¶ 113 ("The applicant's Patent adds nothing to this widespread practice in the art, which was taught in several earlier patents and publications.").)

Plaintiff contends that Mr. Peters' testimony on this point would "cause undue confusion and mislead the jury," thus requiring exclusion under Federal Rule of Evidence 403. However, Plaintiff provides no justification for this claim. (Motion at 7.) To the contrary, Mr. Peters' opinion – including his analysis of the differences and similarities between the asserted claims and the prior art – is perfectly clear from his report. Thus, there is no basis here to exclude his testimony. To the extent Plaintiff believes that Mr. Peters' analysis is not persuasive, that is, again, an issue for the jury.

### D. Mr. Peters Identifies the Motivation to Combine the Invalidating References

Plaintiff does not dispute that Mr. Peters provides analysis on motivation to combine. (Motion at 8). However, Plaintiff argues that Mr. Peters' testimony should be excluded because Mr. Peters' analysis is not "sufficient to meet Defendants' high burden of proof." (*Id.* at 9.) But again, whether Mr. Peters' opinion testimony is sufficient to carry Defendants' burden of proof on invalidity is an issue for the jury. Mr. Peters' report need not meet Defendants' burden of proof on its face in order for his testimony to be admissible. *Heller v. Shaw*, 167 F.3d 146, 152 (3d Cir. 1999). Therefore, Plaintiff's argument is off-point, and Mr. Peters' testimony should not be excluded on this basis.

The same is true for Plaintiff's entire argument that Mr. Peters' testimony regarding obviousness is deficient and should be excluded. Aside from a few non sequitur citations to *Daubert*, Plaintiff never actually references the standard for a motion to exclude under *Daubert* and Rule 702: whether the testimony is relevant, and whether the expert has employed reliable

methodologies, reliably applied to the facts of the case. Instead, Plaintiff makes arguments about Defendants' alleged failure to meet their burden of proof on invalidity – arguments it should have saved for the trial. Even if Plaintiff's arguments were appropriate for this motion, its characterizations of Mr. Peters' report and deposition testimony are misleading and often false. In short, Plaintiff has put forth <u>no</u> basis to exclude any of Mr. Peters' testimony regarding the obviousness of the asserted claims.

II. **MR. PETERS' OPINIONS WITH RESPECT TO WRITTEN DESCRIPTION, ENABLEMENT AND UTILITY ARE PROPER.**

Plaintiff argues that Mr. Peters' opinions that the asserted claims do not meet the enablement and written description requirements of 35 U.S.C. § 112 should be excluded because, according to Plaintiff, Mr. Peters "fails to properly apply the standards and admits that the specification of the '067 patent meets the enablement requirements with respect to 'linguistic patterns.'" Plaintiff also argues that Mr. Peters' opinion that the asserted claims do not meet the utility requirement of 35 U.S.C. § 101 should be excluded because Mr. Peters "admitted that the invention would work to return results that have linguistic patterns that match the linguistic patterns from the user profile."

Though Plaintiff attempts to cast these arguments in terms of Mr. Peters' "fail[ure] to apply the appropriate requirements" of the respective statutes (Motion at 11, 12), they have little or nothing to do with the actual standards for enablement, written description or utility. Instead, Plaintiff's Motion relies on the argument, first introduced in Plaintiff's Oppositions to Defendants' Motions for Summary Judgment (Dkt Nos. 399 and 400), that one of the asserted claims' key limitations should simply be read out of the patent. As explained in detail in Google's Reply in support of its Motion for Summary Judgment (Dkt. No. 410 at 3-4), this argument is without merit.

A. **Mr. Peters Correctly Analyzed Enablement and Written Description.**

In his report, Mr. Peters concludes that the asserted claims do not satisfy the enablement and written description requirements of 35 U.S.C. § 112 because the '067 patent "does not teach

9

how to use the parts of speech that comprise the [extracted] linguistic patterns in order to return search results that correspond to a user's social background," and – relatedly – because "[a] person of ordinary skill in the art at the time the '067 Patent was filed would not be able to determine how to use combinations of parts of speech to return results relating to a person's cultural and economic background without undue experimentation." (Ex. A to Motion at ¶ 207, 208.) Both of the asserted independent claims expressly require that the patented invention store linguistic patterns and return results whose linguistic characteristics "correspond to the user's social, cultural, educational, economic background as well as to the user's psychological profile." At the teleconference held on December 28, 2009, the Court indicated that it would strictly enforce the language of the claims, including the language in question:

> MR. CANNON: So Claim 45 is -- is a multi-[step] claim for generating a user data profile which is a user profile and Step K after -- after the completion of this, you know, complex series of steps, Step K requires that the computer system store the user profile and it -- it be representative of an overall linguistic pattern of the user, that overall linguistic pattern substantially corresponding to the user's social, cultural, educational, economic background and to the user's psychological profile. So that not only is it defined in the specification, Your Honor, but in the actual claim, it confirms that the pattern –
>
> JUDGE RADER: Well, you're not going to have trouble then if it's in the claim, are you?
>
> MR. CANNON: I'm in Claim 45, Subsection K.
>
> JUDGE RADER: Yes, I see that, but, I mean, you're not going to have any trouble because <u>you've got the language you need in the claim anyway</u>, right, and know that <u>this Court is going to enforce the language the claim very specifically</u>?

(Ex. 1 at 26:12-27:11 (emphasis added).)

Despite this clear language from the Court, Plaintiff argued in its Opposition to Defendants' Motions for Summary Judgment that the requirement that the linguistic patterns "correspond[] to the user's social, cultural, educational, economic background and to the user's psychological profile" was not actually a claim limitation, but rather the intended result, and thus superfluous. (Dkt Nos. 399 and 400.) This argument is meritless for the reasons given in Google's Reply in support of its Motion for Summary Judgment (Dkt. No. 410 at 3-4), including the fact that Plaintiff has treated the language as a limitation throughout this case.

Plaintiff's argument here that Dr. Peters has "improperly applied" the written description and enablement requirements simply rehashes Plaintiff's attempt to read the "psychological profile" language out of the patent. Regarding enablement, Plaintiff states that "[b]ased on Mr. Peters' own testimony, the claims are enabled by the patent, and it is only by misapplying the claim language – applying extra limitations not found in the claims – that Mr. Peters reaches his opinion regarding lack of enablement." (Motion at 10.) Regarding written description, Plaintiff states that "Mr. Peters apparently interprets the language of [claim 1] to require that the '067 Patent 'teach how to use the parts of speech that comprise the linguistic patterns in order to return search results that correspond to a user's social background.' This is not what the claimed [sic] language requires, however. The claim actually requires retrieving documents with linguistic patterns that match the linguistic patterns from the user profile." (Motion at 11-12.) However, the language cited by Mr. Peters is taken directly from the claims, and Plaintiff provides no justification for why it should be obviated. Accordingly, Mr. Peters' analysis of enablement and written description is proper.

Plaintiff makes one additional argument with respect to enablement, and it is equally meritless. Plaintiff argues that "[w]hile Mr. Peters opines that undue experimentation is required, his statement is conclusory and entirely unsupported." (Motion at 10.) Not so. Mr. Peters explicitly states that undue experimentation would be required because the '067 Patent presents no guidance as to how to "use combinations of parts of speech to return results relating to a person's cultural and economic background." (Ex. A to Motion at ¶ 208.) Mr. Peters elaborates on that considerably in the preceding paragraph, pointing out the specification's unjustified assumption that "people with similar, cultural, educational, and social backgrounds will have similar linguistic patterns." (*Id.* at ¶ 207.) Thus, Mr. Peters amply explains why the patent does not enable one of ordinary skill in the art to make use of the invention. To the extent Plaintiff believes Mr. Peters' explanation to be unpersuasive, Plaintiff can explore its weaknesses on cross-examination.

B. **Mr. Peters Correctly Analyzed Utility.**

With respect to utility, Mr. Peters opines that the '067 Patent lacks utility because it does nothing but "[r]eturn search results to a user that contain similar combinations of nouns, verbs and adjectives as the user's search query," and cannot actually work for its stated purpose of "present[ing] different information to people with different backgrounds." (*Id.* at ¶ 212.) Plaintiff first repeats the argument that the patent's stated purpose is simply to "return results that have linguistic patterns that match the linguistic patterns from the user profile." (Motion at 12.) This argument directly contravenes the claim language, and fails for the reasons discussed above.

Plaintiff further argues that Mr. Peters' opinion should be excluded because he does not have "any understanding as to what degree an invention should work for its stated purpose in order to meet the requirements of 35 U.S.C. § 101. Mr. Peters, however, is not a lawyer, and was not tasked with obtaining a detailed understanding of § 101 requirements. In fact, under § 101, a patent claim lacks utility if it is inoperable. "A claim is inoperable when it contains a limitation that is impossible to meet." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1358-1359 (Fed. Cir. 1999). Mr. Peters will testify, as disclosed in his report, that the "psychological profile" limitations of claims 1 and 45 are impossible to meet using the linguistic pattern method disclosed in the patent. Again, to the extent Plaintiff believes Mr. Peters' analysis unpersuasive, it is free to cross-examine him.

III. **MR. PETERS PROPERLY ANALYZED THE MATERIALITY OF THE DASAN AND SIEFERT PATENTS.**

Finally, Plaintiff argues that Mr. Peters improperly analyzes the materiality of the Dasan and Siefert patents because he "misstate[s] the rule for materiality as including only the cumulativeness analysis." (Motion at 14.) This is false. Mr. Peters explicitly states: "I understand that courts consider a piece of art to be "material" when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." (Ex. A to Motion at ¶ 193.) He then proceeds to explain that the Dasan patent "discloses the utilization of user profiles in order to provide users with information of personal relevance," which is "a

critical aspect of the '067 patent." (*Id.* at ¶ 196.) With respect to the Siefert patent, Mr. Peters explains that it "discloses the display of documents to a user through the use of a user profile and a learning profile. The patent contemplates finding documents that correspond to a user's learning history or educational background. . . . These, too, are critically important aspects of the '067 Patent . . . ." (*Id.* at ¶ 197.) Clearly, therefore, Mr. Peters did not focus solely on cumulativeness.

Plaintiff further criticizes Mr. Peters' materiality analysis for failing to show how either patent establishes "a prima facie case of unpatentability" under 37 C.F.R. § 1.56(b) (2006) because he does not identify what "other information" the patents could be combined with to support such a prima facie case. This argument is wrong for two reasons. First, as discussed above, Mr. Peters uses the reasonable examiner test, not the "prima facie case of unpatentability" test. Both tests are equally valid to show materiality. *Cargill, Inc. v. Canbra Foods, Ltd.*, 476, F.3d 1359, 1364 (Fed. Cir. 2007). Second, Mr. Peters <u>does</u> identify the "other information" with which the Dasan and Siefert patents can be combined to show unpatentability: the patents cited on the face of the '067 patent. (Ex. A to Motion at ¶ 198.)

This argument, like almost every other argument in Plaintiff's Motion to Exclude, comes down to Plaintiff's position that Mr. Peters' opinions are not persuasive, or are insufficient to carry Defendants' burden of proof on invalidity or unenforceability. Such concerns go to the weight to be afforded the testimony by the jury, not the testimony's admissibility. They have nothing to do with the *Daubert* standards or Federal Rule of Evidence 702, which are the putative bases for Plaintiff's Motion. Plaintiff has put forth <u>no</u> legitimate reasons to exclude any of Mr. Peters' testimony, and Plaintiff's Motion should be denied in its entirety.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiff's Motion to Exclude the Testimony of Mr. Stanley Peters.

Dated: February 24, 2010

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By       /s/ *David A. Perlson*

David A. Perlson
Email: davidperlson@quinnemanuel.com
State Bar No. 209502
Charles K. Verhoeven
Email: charlesverhoeven@quinnemanuel.com
State Bar No. 170151
Quinn Emanuel Urquhart Oliver & Hedges LLP
50 California St.
San Francisco, CA   94111
Telephone:   (415) 875-6600

Brian C. Cannon
Email: briancannon@quinnemanuel.com
State Bar No.   193071
Andrea Pallios Roberts
Email: andreaproberts@quinnemanuel.com
State Bar No.   228128
Quinn Emanuel Urquhart Oliver & Hedges LLP
555 Twin Dolphin Dr. Ste. 560
Redwood Shores, CA   94065
Telephone:   (650) 801-5000

Harry L. Gillam, Jr.
State Bar No. 07921800
Email:   gil@gillamsmithlaw.com
Melissa R. Smith
State Bar No. 24001351
Email:   melissa@gillamsmithlaw.com
Gillam & Smith, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone:   (903) 934-8450

*Counsel for Google Inc*.

_____
William C. Rooklidge
Email: rooklidgew@howrey.com
State Bar No. 134483
Howrey, LLP

4 Park Plaza, Suite 1700
Irvine CA 92614-2559
Telephone: (949) 721-6900

Jason C. White
Email: whitej@howrey.com
State Bar No. 6238352
Howrey, LLP
321 N. Clark Street, Suite 3400
Chicago IL 60654
Telephone: (312) 595-1239

Brian A.E. Smith
Email:   smithbrian@howrey.com
State Bar No. 188147
Howrey LLP
525 Market Street, Suite 3600
San Francisco CA 94105-2708
Telephone:   (415) 848-4900

Jennifer Doan
Email:   jdoan@haltondoan.com
State Bar No. 08809050
Joshua Reed Thane
Email:   jthane@haltondoan.com
State Bar No. 24060713
John Scott Andrews
Email:   sandrews@haltondoan.com
State Bar No. 24064823
Halton & Doan
Crown Executive Center, Suite 100
6500 Summerhill Road
Texarkana TX 75503
Telephone: (903) 255-10002

*Counsel for Yahoo! Inc*.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's ECF system per Local Rule CV-5(a)(3), as well as by electronic mail. Any other counsel of record will be served via electronic mail, facsimile transmission and/or first class mail on today's date.

                                               By         */s/ David A. Perlson*
                                                                David A. Perlson