IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PA ADVISORS, LLC,<br>　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 2:07-cv-480-RRR |
| GOOGLE INC., et al., | §<br>§ | JURY TRIAL DEMANDED |
| 　　Defendants. | §<br>§<br>§ | |

**nXn TECH, LLC'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE NUMBER 3: DEFENDANTS' MOTION TO PRECLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING ILYA GELLER, INVENTOR OF THE PATENT-IN-SUIT**

nXn Tech, LLC (f/k/a PA Advisors, LLC) ("nXn") respectfully files this response in opposition to Defendants' Motion in Limine No. 3 (Dkt. No. 427) seeking to avoid mention of certain background information concerning the inventor of the patent-in-suit, Ilya Geller (the "Motion"). The motion should be denied because this testimony is relevant to several of Defendants' defenses.

**I.　INTRODUCTION AND SUMMARY OF ARGUMENT.**

Mr. Geller is the inventor of the patent-in-suit, and the inventor's testimony concerning the environment in which he was raised, how he became the person he is with the knowledge and expertise applied to obtain the patent, and his battle with multiple sclerosis is highly relevant and evidence of those facts should be allowed. In Defendants' recent filing seeking more trial days than the four the Court ordered in December 2009, Defendants call Mr. Geller "a crucial witness necessitating thorough examination." *See* Defendants' Motion for Additional Trial Days, Dkt. No. 436 at 1. In nevertheless seeking to exclude evidence regarding Mr. Geller's personal background and experience leading up to his invention, Defendants (i) cite a Seventh Circuit, not

1

Fifth Circuit, standard for applying Rule 403; and (ii) completely disregard that it is typically the case that evidence that is material or relevant will be "prejudicial" to one party over or another. But the evidence on which Defendants focus is significant contextual evidence. They seek to exclude: (i) Mr. Geller's multiple sclerosis, a disease known to affect cognitive ability and physical stamina[1] (which is highly relevant to Defendants' defenses of laches and estoppel, negates Defendants' proffered evidence and argument about Geller's failure to commercialize the patent, and negates Defendants' suggestion that nXn "dithered" in obtaining a date that Mr. Geller could manage to have a deposition[2]), (ii) Mr. Geller's experiences that compelled him to immigrate to the United States from Russia to complete his education and his experience as the son of Holocaust survivors; and (iii) why Mr. Geller sees the rights to his inventions being misappropriated. Sanitizing this witness's testimony to the degree Defendants seek, which would eliminate much of Mr. Geller's own personal history, could only lead to confusion or speculation by the jury and prejudice nXn. Moreover, it would be unfair, as Defendants will seek to introduce evidence regarding their history, such as how Google was started in a garage, etc.

The very information that Defendants seek to exclude answers questions that could reasonably be left in a juror's mind concerning (i) why Mr. Geller left Russia in the first place (an uncreative, anti-Semitic environment)—rather than some wrongdoing or suspect circumstances in Russia; (ii) how his environment and life experiences evolved into the concepts in his inventions comprising the patent-in-suit—such as his parents' professional experiences and his being raised by parents who were Holocaust survivors; (iii) why his demeanor or manner

---

[1] *See, e.g.,* Wiley Decl. Ex. A (8-16-09) at 128 (counsel for nXn after examination by Google counsel completed inquiring as to extent to which Mr. Geller would be able to answer any more questions).

[2] Defendants' Motion in Limine at 1.

2

on the witness stand may appear unsettling or unseemly without context—i.e., the symptoms of his advanced stage multiple sclerosis; and (iv) why Geller did not commercialize the invention himself. The jury should not be left to speculate. The jury is entitled to hear the truth about Mr. Geller's condition and his background and assess the evidence for themselves, including any discrediting or undermining that Defendants wish to pursue through cross-examination.

Moreover, Defendants have suggested all manner of impropriety concerning Mr. Geller, such as his interaction with Mr. Spangenberg in terms of securing monies for a stem cell treatment in Russia and emails that have no proper context without any information about Mr. Geller's battles with multiple sclerosis. Indeed, it would be impossible to properly examine Mr. Geller regarding his interaction with Mr. Spangenberg without the context of Mr. Geller's struggles to pursue adequate treatment of his disease given that this context was the foundation of the interaction. It would appear that Defendants seek introduce the evidence of this interaction as a sword against Plaintiff, while simultaneously shielding from the jury the very context on which the interaction was based – such conduct is improper as should be countenanced by this Court. To strip his testimony of the background that clearly explains these circumstances is an improper, preemptive credibility determination. The jury has the "experience and intelligence"[3] to assess the impact of such information necessary to explain Mr. Geller's limitations that will, in all probability, be apparent to the jury just by his presence on the witness stand. None of the information that Defendants request be excluded is the type of highly inflammatory evidence that can reasonably be construed as leading a jury to ignore the facts of the infringement and invalidity case and render a decision based only on sympathy or a "visceral

---

[3] *U.S. v. Holmes*, 452 F.2d 249, 273 (7th Cir. 1971).

reaction" to Mr. Geller's personal history.[4]  Mr. Geller's battle with MS is a central fact of his life, not a dramatic play to the jury's emotions.

## II. ARGUMENT

### A. The Motion Misunderstands the Purpose of Rule 403 and Seeks to Preclude Important Context Evidence from the Jury.

Because Rule 403 addresses the exclusion of what is plainly relevant evidence, it is an extraordinary measure that should be used "sparingly." *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998); *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir.1993) (same).  It is used most appropriately for excluding such evidence, to cite a "classic example," as "[p]hotographs of [a] victim bleeding profusely," *Campbell*, 138 F.3d at 1004, where the risk of a "visceral response" from the jury, diverting focus on evidence concerning the legal theories and cause of action presented, is plain.  *Id*.  As stated in a case on which Defendants rely, although that decision was vacated and later re-heard en banc, *Moore v. Ashland Chemical, Inc.*, "'[v]irtually all evidence is prejudicial or it isn't material.'" 126 F.3d 679, 692 (5th Cir. 1997) (quoting *Dollar v. Long Mfg. N.C., Inc*., 561 F.2d 613, 618 (5th Cir. 1977)).  Indeed, "[p]robative evidence will frequently be prejudicial to a party, but that ***does not mean*** that it will cause the factfinder to ground a decision on an emotional basis." *Gross v. Black & Decker*, 695 F.2d 858, 863 (5th Cir. 1983) (emphasis added).  Because of this maxim, the proper Rule 403 test is whether the "prejudice" is unfair.  And because the rule requires that evidence be excluded only if it is ***substantially*** outweighed by the danger of prejudice, Fifth Circuit law states that "the rule favors admissibility of relevant evidence," *Gross*, 695 F.2d at 863, such that "a slight danger that the admission of such evidence will cause unfair prejudice is to be ignored." *Id*.  Defendants recite a different standard, however, suggesting a mere

---

[4] *Campbell v. Keystone Aerial Surveys, Inc*., 138 F.3d 996, 1004 (5th Cir. 1998).

"tendency toward prejudice" will support exclusion, but this standard is from a Seventh Circuit decision, which cannot trump controlling Fifth Circuit authority.[5] *See* Motion in Limine at 3 (stating standard for exclusion as evidence that has "tendency toward prejudice" and citing *Yumich v. Cotter*, 452 F.2d 59, 64 (7th Cir. 1971)).

Although Mr. Geller's personal background facts are admittedly not ordinary, the evidence describing those facts is not so exceptional, inflammatory, or overwhelming in quantity that it would divert the jury's attention to a side issue without focus on the merits of infringement and invalidity arguments. That a witness's personal background may be interesting or even compelling does not require sanitizing the witness's testimony and renders the testimony markedly non-genuine. "Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion" exclusion under Rule 403 must be kept to its limited and primary function: to exclude "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Barrera v. E. I. Du Pont De Nemours and Co.,* 653 F.2d 915, 921 n.6 (5th Cir. 1981); *United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir.1993) (same). Mr. Geller, as the inventor and a significant witness in a patent infringement lawsuit, certainly cannot be said to be "dragged" in only to provide extraneous and irrelevant information to place before the jury—particularly when Defendants recognize he is a "crucial" witness and have represented to this Court their intent to subject him to "thorough examination." Defendants' Motion for Additional Trial Days, Dkt. No. 436 at 1.

---

[5] Evidentiary matters in a patent case are decided under regional circuit law. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004) (noting that evidentiary rulings reviewed under law of regional circuit).

### B. Mr. Geller's Physical Health Is Highly Relevant, and Rule 403 Balancing Requires Admitting It.

The most clearly relevant and significant information the jury should be entitled to hear and understand Mr. Geller's entire manner is the very information Defendants seek to exclude: evidence of Mr. Geller's multiple sclerosis. The nature of this terminal and debilitating illness is that it causes extreme fatigue and affects cognitive ability.[6] Because Mr. Geller is significant ("crucial"—to use Defendants' term) to the patentee's case by virtue of his status as inventor, it will be necessary to provide the jury with the context to explain conditions that impact the manner in which he presents himself to the jury.

For example, his illness affects his ability to testify for a particular stretch of time;[7] and may manifest itself in a words or actions that to the jury would appear unseemly or unsettling without context of that condition. Wiley Decl. **Ex. A** at 128, 153 (August 2009 depo). Leaving the jury without the information that (i) he has a terminal illness; (ii) that illness is multiple sclerosis; and (iii) what the symptoms of that illness are that affect his ability to testify and manner of testifying would be instead unfairly prejudicial to nXn. The jury must not be left to speculate as to why Mr. Geller has challenges with focus and stamina lest his testimony be incorrectly held against the Plaintiff, the party presenting the witness. A "correct explanation" of a witness's circumstances cannot be assumed to compel undue sympathy from the jury. *Cf. U.S. v. Holmes*, 452 F.2d 249, 273 (7th Cir. 1971) (rejecting as "without merit" argument that jury was improperly advised agent's testimony interrupted because of father's death such that created

---

[6] For additional information on this specific issue, Plaintiff refers the Court to, and incorporate by reference, the briefing and exhibits already on file with the Court, as part of Plaintiff's Response to the Motion for Sanctions (Dkt. No. 377 & 379), which filing nXn also incorporates by reference herein for all purposes.

[7] *See, e.g.*, Wiley Decl. Ex. A at 128, 153 (regarding stamina, fatigue of witness).

undue sympathy: "The statement was true and we fail to perceive any reason why a correct explanation for the interruption should not have been given to the jury…The jury certainly has the experience and intelligence to appraise the significance of such an ordinary misfortune.").

Defendants are plainly inclined to use Mr. Geller's illness to their advantage—as seen in their Motion for Sanctions seeking to malign Mr. Geller and his dire financial situation with these pressing health problems just at the age of 41. Wiley Decl. Ex. A (8-16-09 depo) at 128 (stating year of birth: 1969). This means, aside from the Plaintiff's right to let the inventor's story of his invention unfold, the Plaintiff must be given ample leeway to show the extenuating circumstances of how and why Mr. Geller approached Mr. Spangenberg for financial help to secure last-resort experimental stem cell treatment in Russia. The jury is entitled to all evidence to perform its exclusive role of judging the credibility of witnesses. *Shepherd v. Dallas County*, 591 F.3d 445, 457 (5th Cir. 2009) (regarding evidence that was a report: "Questions of credibility are properly for the jury. *United States v. Thompson*, 615 F.2d 329, 332-33 (5th Cir. 1980) ('Rule 403 does not permit exclusion of evidence because the judge does not find it credible.')"). Because there is substantive purpose in allowing the jury to hear Mr. Geller's personal background and providing context for his demeanor on the stand with explanation of his illness, this is not merely inflammatory information to incite the jury to render an improper verdict.[8]

---

[8] Background evidence to place an issue or the parties in context is clearly admissible as part of the building blocks of presenting the facts supporting a particular legal theory to the jury. Background information to provide context for the issues, which must necessarily and logically include the parties, is entirely appropriate, relevant, and admissible evidence. *See, e.g., Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, No. 05-CV-1887, 2009 WL 3754170, at *4 (D.N.J. Nov. 5, 2009) (in motion in limine context recognizing background information appropriate as context and allowing before jury: "Testimony concerning generic drugs and the Hatch-Waxman Act **will likely aid in the jury in understanding the context in which the case arises**. Further, given that this testimony concerns background information…") (emphasis added); *Khan v. HIP Centralized Lab. Servs., Inc*., No. CV-03-2411, 2009 WL 2259643, at *3 (E.D.N.Y. July 29, 2009) ("Even if plaintiff were asserting only his retaliation claims, some investigation

7

### C. None of this Evidence—Mr. Geller's Parents' Experience, His Leaving Russia, or His Financial Distress Creates a "Side Issue"[9] or Invites an Irrational Decision.

Rule 403 is intended, as stated in the case on which Defendants rely, to ensure the evidence is not unfairly prejudicial insofar as it "arouses its sense of horror, provokes its instinct to punish, triggers other mainsprings of human action, or may cause a jury to base its decision on something other than the established propositions of the case." *Moore*, 126 F.3d at 692. This case is about how Google and Yahoo allegedly infringe Mr. Geller's invention. That Mr. Geller believes this to be the case is no different than any other plaintiff stating his opinion for how the case should be resolved and his subjective belief that he has been wronged and injured financially by that wrong. Mr. Geller is entitled to believe those wrongs contributed to his financial distress, even "poverty," which is not an improper term given his actual financial status.[10] Thus, the evidence Defendants find improper regarding financial consequences to Mr. Geller reflect nothing inflammatory—just the real-life consequences of the legal theories at issue: that Google and Yahoo have misappropriated a technology that Mr. Geller invented. Excluding evidence because Defendants consider it detrimental to their case or reputation is not the test for Rule 403 exclusion, and it should not be applied here to limit Mr. Geller's belief of how Yahoo's and Google's actions have cost him personally, thereby judicially "even[ing] out"

---

into his general employment history with CIS would have been necessary to provide background and context."); *United States v. Hollis*, 490 F.3d 1149, 1153 (9th Cir. 2007) (affirming admission of evidence and noting limiting instruction avoided any prejudice: "[The district court] found the evidence to have ***little prejudice but to be helpful in providing the jury with the necessary background to put the charged transactions between Hollis and the cooperating witness into context.*** In addition, the court gave the jury a limiting instruction to consider the testimony only on the question of Hollis's intent or knowledge, not for any other purpose.") (emphasis added).

[9] *Moore v Ashland Chem. Inc.,* 126 F.3d 679, 692 (5th Cir. 1997), *reh'g granted and op. vacated*, 151 F.3d 269 (5th Cir. 1998) (cited in Defendants' Motion at 3).

[10] *See, e.g.*, Plaintiff's Response in Opposition to Motion for Sanctions, Dkt. No. 377 (filed under seal) at 3-4 (noting that Mr. Geller is destitute and citing supporting documentation).

the facts the jury is allowed to hear. *Barrera*, 653 at 921 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979): "…[Rule 403] is not designed to permit the court to "even out" the weight of the evidence").

Similarly not-inflammatory are the statements regarding his experience in Russia: his reasons for leaving and his experience as the son of Holocaust survivors. This evidence is a necessary and natural part of, for example, Mr. Geller's educational background and how his studies led to the ideas and concepts in the invention.[11] Those studies began in Russia but continued in the United States, where he studied computer science in addition to his earlier studies in Philosophy. Wiley Decl. Ex. A (8-16-19) at 132-34. To leave a gap in the story of why he left Russia—explained by the small-town and anti-Semitic environment—leaves the jury without an answer to an entirely well-founded question: Why did Mr. Geller leave Russia? To cut off any speculation that could be held against Mr. Geller, and perhaps by implication against nXn as the party presenting Mr. Geller as witness, makes the reference to his town's anti-Semitic sentiment appropriate. Indeed, there is little emphasis on the point in the deposition on which Defendants base their arguments, and little detail on the point at all except to fill in Mr. Geller's upbringing in a small town in Russia:

> Q. What was it like for you growing up as a Jewish person in -- in Russia?
>
> A. Not pleasant, not pleasant at all because all the -- of anti-Semitism. And also I grew up in a small provincial town and it was awful. Because you see I had nothing to do. I am a creator. I have a spirit of creator. I -- yes, and it wasn't -- could I ask the translator?

Wiley Decl. Ex. A at 132.

---

[11] *Gross v. Black & Decker*, 695 F.2d 858, 863 (5th Cir. 1983) ("In weighing the probative value of the evidence against the danger of unfair prejudice, the courts must first examine the necessity for and probative effect of the evidence.").

There is little fodder here to even craft a stream of prejudicial commentary that could improperly sway a jury to render a verdict on sympathy. Because there is nothing inherently inflammatory to the facts that Mr. Geller left Russia to come to America due to an anti-Semitic environment and his parents are Holocaust survivors, this issue should be left to review of the entire record for whether the evidence caused a verdict based only on passion and prejudice. It is indeed difficult to imagine that this could be the case when Plaintiff has ample expert testimony and analysis raising a fact question on infringement and damages.

### III. CONCLUSION

For the above-stated reasons, Defendants' Motion in Limine No. 3 should be denied.

Dated: February 25, 2010                    Respectfully submitted,

Andrew W. Spangler                          By: /s/ Elizabeth A. Wiley
LEAD COUNSEL
SPANGLER LAW P.C.                           Elizabeth A. Wiley
208 N. Green Street, Suite 300              Texas State Bar No. 00788666
Longview, Texas 75601                       THE WILEY FIRM PC
(903) 753-9300                              P.O. Box. 303280
(903) 553-0403 (fax)                        Austin, Texas 78703-3280
spangler@spanglerlawpc.com                  Telephone: (512) 420.2387
                                            Facsimile: (512) 551.0028
David M. Pridham                            Email: lizwiley@wileyfirmpc.com
LAW OFFICE OF DAVID PRIDHAM
25 Linden Road                              Marc A. Fenster
Barrington, Rhode Island 02806              CA Bar No. 181067
(401) 633-7247                              mfenster@raklaw.com
(401) 633-7247 (fax)                        Andrew Weiss
david@pridhamiplaw.com                      CA Bar No. 232974
                                            aweiss@raklaw.com
John M. Bustamante                          Adam Hoffman
Texas Bar No. 24040618                      CA Bar No. 218740
BUSTAMANTE, P.C.                            ahoffman@raklaw.com
54 Rainey Street, No. 721                   RUSS, AUGUST & KABAT
Austin, Texas 78701                         12424 Wilshire Blvd., 12th Floor
Tel. 512.940.3753                           Los Angeles, CA 90025
Fax. 512.551.3773                           (310) 826-7474
Email:jmb@BustamanteLegal.com               (310) 826-6991 (fax)

Kip Glasscock                               Patrick R. Anderson
Texas State Bar No. 08011000                PATRICK R. ANDERSON PLLC
KIP GLASSCOCK P.C.                          4225 Miller Rd, Bldg. B-9, Suite 358
550 Fannin, Suite 1350                      Flint, MI 48507
Beaumont, TX 77701                          (810) 275-0751
Tel: (409) 833-8822                         (248) 928-9239 (fax)
Fax: (409) 838-4666                         patrick@prapllc.com
Email: kipglasscock@hotmail.com
                                            Debera W. Hepburn,
                                            Texas Bar No. 24049568
                                            HEPBURN LAW FIRM PLLC
                                            P.O. Box 118218
                                            Carrollton, TX 75011
                                            Telephone: 214/403-4882
                                            Facsimile: 888/205-8791
                                            Email: dhepburn@heplaw.com

## **CERTIFICATE OF SERVICE**

I certify that the foregoing Response to Defendants' Motion in Limine was by the Court's CM/ECF system on this 25th day of February 2010.

\s\ Elizabeth A. Wiley
Elizabeth A. Wiley