# Exhibit E



LEXSEE

IMX, INC., Plaintiff, v. LENDINGTREE, LLC, Defendant.

Civ. No. 03-1067-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 33179; 79 U.S.P.Q.2D (BNA) 1373

December 14, 2005, Decided

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by IMX, Inc. v. LendingTree, LLC, 405 F. Supp. 2d 479, 2005 U.S. Dist. LEXIS 33178 (D. Del., Dec. 16, 2005)

**CORE TERMS:** imx, lender, patented, website, patent, software, broker, notice, loan applications, infringement, technology, marking, database, customers, patented article, patentee, server, label, bid, moving party, nonmoving party, patented invention, invention, genuine, http, user, com, trading system, distributed, embodiment

**COUNSEL:** [*1] For IMX, Inc., Plaintiff: David Ellis Moore, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE; Margaret E. Day, Pro Hac Vice.

For LendingTree LLC, Defendant: Jack B. Blumenfeld, Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; A. Shane Nichols, Pro Hac Vice.

For IMX, Inc., Counter Defendant: David Ellis Moore, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For LendingTree, Inc., Counter Claimant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For LendingTree LLC, Counter Claimant: Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM ORDER**

At Wilmington this 14th day of December, 2005, having reviewed defendant's motion for partial summary judgment limiting damages pursuant to 35 U.S.C. § 287(a), and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 165) is granted, for the reasons that follow:

1. **Standard of review.** A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and [*2] admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light [*3] most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be

Page 2

2005 U.S. Dist. LEXIS 33179, *; 79 U.S.P.Q.2D (BNA) 1373

sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

2. **Background facts.** On November 24, 2003, plaintiff IMX, Inc. ("IMX") filed the above captioned action for alleged infringement of U.S. Patent No. 5,995,947 (the "'947 patent"). The '947 patent issued on November 30, 1999 and is entitled "Interactive Mortgage and Loan Information and Real-Time Trading System." According to the "Summary of Invention", the '947 patent

> provides a method and system for trading loans in real time by making loan applications, [*4] such as home mortgage loan applications, and placing them up for bid by a plurality of potential lenders. A transaction server maintains a database of pending loan applications and their statuses; each party to the loan can search and modify that database consistent with their role in the transaction, by requests to the server from a client device identified with their role.

('947 patent, col. 2, 11. 12-20)

3. Since 1997, IMX has marketed and sold software under the name "IMX Exchange." IMX markets the IMX Exchange software to loan brokers and wholesale lenders. Loan brokers use the IMX Exchange software to, among other things, input loan applications on behalf of borrowers, transmit those loan applications to the Exchange, and retrieve bids on those loan applications from lenders who participate in the Exchange. Lenders use the IMX Exchange software to, among other things, search for and place bids on loan applications of interest that are stored in the Exchange. IMX claims that the IMX Exchange software practices the claims of the '947 patent.

4. From 1997 to March 2000, IMX distributed copies of the IMX Exchange software to its broker customers by CD-ROM. For lender customers, [*5] IMX technicians installed the IMX Exchange software at the lender's location. In March 2000, IMX began using a web-based version of the IMX Exchange software, where the patented software was made available to customers via the Internet rather than distributing copies of the software to customers via CD-ROM. The basic features of the web-based version of the software have remained essentially the same since March 2000. The home page of the IMX website (http://www.imx.com) contains links to three main sections: http://broker.imx.com (the "Broker Section"), http://lender.imx.com (the "Lender Section"), and http://corporate.imx.com (the "Corporate Section"). In order for broker customers to access and run the IMX Exchange software, they must access the Broker Section of the IMX website and enter a user name and password from the login screen in the Broker Section. Similarly, in order for lender customers to access and run the IMX Exchange software, they must access the Lender Section of the IMX website and enter a user name and password from the login screen of the Lender Section. Public users may access the login pages for brokers and lenders, but may not access or run the actual IMX [*6] Exchange software without a user name and password.

5. It is not disputed that the CD-ROMs distributed by IMX between November 1999 and March 2000 were not marked with the '947 patent. With respect to the IMX website, a browser of the Corporate Section would read that "IMX(R), Inc. is a leading provider of software solutions for the mortgage industry. . . . IMX's patented pricing technology was developed using Java and runs in an Oracle/Sun environment." Links from "Corporate Home" include "Product Information" and "About Us". On the "About Us" page, a browser views a link identified as "Patent". Once accessed, this link includes the following information:

### IMX(R) Patents

> IMX Exchange was awarded a patent in late 1999 for our unique loan information and real-time trading system. This was a milestone for IMX Exchange. We are pleased that the Patent Office has recognized the technology innovations created by our developers, and envisioned by our founder, Steve Fraser.
>
> *Patent Press Release*
>
> *Click here to view patent*

The "Patent Press Release" page identifies the '947 patent by number and describes "the IMX Exchange invention [as] providing [*7] a method and system for trading loans in real time." In the same document, "IMX Exchange" is described as an "Internet-based, business-to-business trading network." Also in the Corporate Section is a link to "Product Information". Under the

Page 3

2005 U.S. Dist. LEXIS 33179, *; 79 U.S.P.Q.2D (BNA) 1373

heading "Lender Solutions", there is an explanation of "IMX Exchange(R) for Lenders" and of "Private Label for Lenders". The '947 patent is not mentioned, although under the "Private Label for Lenders" heading, IMX states the following: "Using patented technology, IMX's Private Label allows wholesale lenders to connect and transact business with their approved brokers on the Internet." Under the heading "Broker Solutions", there is an explanation of "IMX Exchange(R) for Brokers" and of "My Marketing for Brokers"; the latter "product" allows brokers to "access a wide variety of marketing tools, ranging from letters and flyers to professionally designed radio and print advertisements. You have access to My Marketing by signing up for either IMX Exchange."

6. **Analysis.** Generally, a patentee is "entitled to damages from the time when it either began marking its products in compliance with section 287(a) or when it actually notified [the infringer] [*8] of its infringement, whichever was earlier." *American Medical Systems, Inc. v. Medical Engineering Corp.,* 6 F.3d 1523, 1537 (Fed. Cir. 1993). [1] LendingTree contends that, because IMX failed to provide LendingTree with either constructive or actual notice of infringement prior to filing suit, IMX's damages are limited to those occurring on or after November 24, 2003.

> 1 Section 287(a) of Title 35 of the United States Code provides, in relevant part, that
>
>> patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure to so mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for the infringement occurring after such notice.

[*9] 7. In response to LendingTree's motion, IMX argues that it had no duty to mark because it does not make, offer for sale or sell any "patented article." According to IMX, "the patented invention" is a "system" that "allows" a "unique interactivity" to occur remotely over the Internet. [2] Although the patented system is made up of a variety of discrete components, specifically the database and the transaction server, IMX does not make, offer for sale or sell any of these remote components. Indeed, according to IMX, "although borrowers and lenders can remotely interact with this database and transaction server via the Internet, neither party physically views either component at any time. . . . Thus, marking either of these components would not serve the public interest notice function of Section 287." (D.I. 191 at 2-3) With respect to the only "tangible" aspect of the system, IMX argues that its website does not embody claim 19 (or any other claim) of the '947 patent, but is "simply the way in which parties to a loan transaction obtain a service that IMX provides using its patented method and apparatus. The website is not a patented article, nor is it a package containing a patented [*10] article. Accordingly, IMX has no duty to mark its website." (*Id.*)

> 2 IMX describes its patented "IMX Exchange" as "a distributed database system that allows remote client devices, through communication with a transaction server, to post loan profiles to the database, search those loan profiles, submit bids on those loan profiles and accept or reject those bids. All of this interaction occurs over the Internet." (D.I. 191 at 1)

8. As described by the United States Court of Appeals for the Federal Circuit, "the marking statute serves three related purposes: 1) helping to avoid innocent infringement . . .; 2) encouraging patentees to give notice to the public that the article is patented . . .; and 3) aiding the public to identify whether an article is patented . . . ." *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations omitted). The United States Supreme Court faced early on the problem of how to give the public such notice of "intangible" inventions, such [*11] as methods. In *Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.,* 297 U.S. 387, 56 S. Ct. 528, 80 L. Ed. 736, 1936 Dec. Comm'r Pat. 657 (1936), the Court held that marking "can only be given in connection with some fabricated article"; patentees "who did not produce" a patented article were not required to give notice to an infringer before damages could be recovered. *Id.* at 394. In exploring this question further, the Federal Circuit has more recently explained that

> the reason that the marking statute does not apply to method claims is that, ordi-

Page 4

2005 U.S. Dist. LEXIS 33179, *; 79 U.S.P.Q.2D (BNA) 1373

narily, where the patent claims are directed to only a method or process there is nothing to mark. Where the patent contains both apparatus and method claims, however, **to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given,** a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a).

*Am. Med. Sys.,* 6 F.3d at 1538-39 (emphasis added).

9. Based on the evidence of record, the commercial embodiment of the patented invention, the "IMX Exchange" system, is currently accessed and used through the IMX website.[3] Although [*12] IMX does not make or sell the computer components through which its patented system is processed, and although the IMX website itself is not the patented invention, nevertheless, consistent with the purpose of § 287(a) as interpreted by the Federal Circuit, the website is intrinsic to the patented system and constitutes a "tangible item to mark by which notice of the asserted method claims can be given".[4] Therefore, IMX had the duty to mark if it is claiming pre-litigation damages. *See Soverain Software LLC v. Amazon.com, Inc.,* 383 F. Supp. 2d 904, 911 (E.D. Tex. 2005).[5]

    3  In this regard, IMX has produced screens from LendingTree's website to prove that the accused system infringes the '947 patent.

    4  There is no meaningful distinction between a patented method that results in a product that can be marked and a patented system that results in a service implemented through an Internet-based website that can be marked.

    5  Counsel for IMX attempts to distinguish the *Soverain* case from the facts at bar by stating that "the asserted patents in the Soverain case cover Internet-implemented inventions," "Internet-based, Internet-driven patents." (D.I. 215 at 111-12) Of course, it is clear that the commercial embodiment of the '947 patent is "Internet-based" and "Internet-implemented". The fact that other embodiments of the patent need not be based on the Internet is of no import. The point of public access to the patented invention of the '947 patent since March 2000 has been through IMX's website; therefore, marking the patent on the website is required.

[*13] 10. As an alternate argument, IMX contends that it has complied with the marking requirements of § 287(a) by including on its website access to the '947 patent. The question is whether such access provides sufficient notice to pass muster under the statute. The court concludes that it has not provided a sufficiently clear nexus between the '947 patent and the patented "system". On the two website pages where IMX patents are mentioned, "IMX Exchange" refers to the corporate entity, not the patented system; the patented technology is described as "unique loan information and real-time trading system". Where "patented technology" is mentioned in connection with IMX products, it refers to "patented **pricing** technology" or "patented technology" for the "Private Label for Lenders" product, as opposed to the "IMX(R) Exchange for Lenders" product. IMX, therefore, has failed to give the public adequate notice that its "IMX Exchange" system is protected by the '947 patent.

    Sue L. Robinson

    United States District Judge